I hereby certify this to be a true and correct copy of the original.
By _____
WBAT

Accepted LJ Nov/07/2017

## AIRCRAFT GUARANTY
— OWNER TRUSTEE

No interest herein may be created in the aircraft subject hereto through the transfer and/or possession hereof.

To the extent, if any, this instrument constitutes chattel paper under the Uniform Commercial Code as in effect in any applicable jurisdiction, no security other than the counterpart containing a receipt therefor executed by Lessor.

# AIRCRAFT DRY LEASE AGREEMENT

This Aircraft Dry Lease Agreement (this "Agreement") is entered into effective as of the Effective Date (as defined below), between Aircraft Guaranty Corporation, a Wyoming corporation ("AGC or Lessor"), in its capacity as Trustee for Continent Aircraft Statutory Trust No. 2814 (the "Trust"), and Camro Transportes, SA de CV, an entity organized under the laws of Mexico, ("Lessee") (Lessor and Lessee and any approved Sub-Lessee are referred to each as a "Party" and collectively as the "Parties").

WHEREAS, AGC as trustee of the Trust is the registered owner of the Aircraft (as defined below).

WHEREAS, Lessor desires to lease the Aircraft to Lessee and Lessee desires to lease the Aircraft from Lessor.

NOW, THEREFORE, in consideration of the promises and the mutual covenants and undertakings herein contained, the Parties hereto do hereby agree as follows:

### ARTICLE 1: LEASE AND TERM

1.1 Lease. Lessor hereby agrees to dry lease to Lessee that certain LEARJET INC aircraft model 31A bearing manufacturer's serial number 080 and U.S. Registration No. N986MA, together with all engines, loose equipment, systems, appliances, parts, instruments, appurtenances, avionics, accessories and equipment (including, without limitation, communication and radar equipment), whether now or previously or hereafter installed in or attached to the aircraft, and all substitutions, replacements, and renewals and all other property that were or shall hereafter become physically incorporated or installed in or attached to the aircraft, and including all records and documentation pertaining to the aircraft (collectively, the "Aircraft").

1.2 Term. The Term of this Agreement ("Term") shall commence on the date that AGC as Trustee receives legal title to the Aircraft (the "Effective Date") and shall continue until the earlier of (a) upon fifteen (15) days written notice by Lessor to Lessee (b) termination or expiration of the Trust Agreement according to its terms, or (c) termination of this Agreement in accordance with Section 6.3 below. During the Term, Lessee shall have exclusive and sole use of the aircraft unless approved for sublease under Article 3 of this agreement. The Aircraft shall be automatically released from the terms of this Agreement upon the Lessor's filing of a bill of sale with the FAA conveying title of the Aircraft to the Lessee or other third party.

Trust 2814-Camro Transportes, SA de CV



EXHIBIT C



FILED WITH FAA
AIRCRAFT REGISTRATION BR

2017 NOV -7 A 9 49

OKLAHOMA CITY
OKLAHOMA

**ARTICLE 2: COSTS**

2.1 Net Lease. This Agreement shall constitute a net lease and Lessee shall be responsible for all costs associated with the delivery, possession, use and operation, of the Aircraft, without limitation.

2.2 Taxes. Lessee shall be responsible for all taxes (except those measured by the net income, profits, assets, turnover, capital or gains of Lessor), fines, fees or penalties arising during the Term or out of this Agreement or Lessee's operation of the aircraft (i.e., in the case of sales and use taxes, Lessee will be responsible for taxes and assessments levied against, and constituting a lien against the Aircraft which arise during the Term and are assessed in relation to the period constituting the Term).

**ARTICLE 3: OPERATION OF AIRCRAFT BY LESSEE**

3.1 Operational Control. During the Term, Lessee, or any approved sub-lessee, is and shall be the sole operator of the Aircraft and has sole operational control of the Aircraft. Lessee is responsible for operating the Aircraft in accordance and compliance with all laws, ordinances and regulations relating to the possession, use, operation, or maintenance of the Aircraft, including, but not limited to, Federal Aviation Regulations ("FAR").

3.2 Selection of Flight Crew. Lessee shall select and hire its own flight crew provided that the pilots shall be professionally trained and qualified, shall be familiar with and licensed to operate the Aircraft, have current medical certificates, be current on recurrent training, and meet any insurance requirements.

3.3 Care and Use. Lessee shall use, operate, maintain, and store the Aircraft in a careful and proper manner. Lessee shall operate the Aircraft in accordance with Lessee's FAA Part 91 certificate, including its approved OpSpecs, operations and maintenance manuals. Lessee shall not operate, use, or maintain the Aircraft in violation of any airworthiness certificate, license, or registration relating to the Aircraft, or contrary to any law or regulation.

3.4 Limits of Operations. Lessee expressly warrants and agrees that it shall not operate the Aircraft outside the geographic limits set forth in the insurance policies described in Article 4, or otherwise operate the Aircraft in a way that would violate or compromise such insurance policies, or for any illegal purpose.

3.5 Maintenance and Repair. Lessee, at its own cost and expense, will promptly repair or replace all parts, appliances, components, instruments, accessories, and furnishings that are installed in or attached to the Aircraft that may from time to time become worn out, lost, stolen, destroyed, seized, confiscated, damaged beyond repair, or permanently rendered unfit for use for any reason whatsoever during the Term. Further, Lessee shall, at its own cost and expense, perform or cause to be performed all such repair and maintenance work with respect to the Aircraft as may be required pursuant to the applicable FARs, airworthiness directives and mandatory and recommended service bulletins.

## ARTICLE 4: INSURANCE AND INDEMNITIES

**4.1** <u>Primary Liability and Property Damage Insurance</u>. Lessee shall maintain in effect, at its own expense, third party aircraft liability insurance, passenger legal liability insurance, and property damage liability insurance for the Aircraft during the Term in such amounts as are customary for similarly situated aircraft but in no case shall the carried amount of third party liability be less than $ 1,000,000 United States Dollars. Each liability policy shall be primary without right of contribution from any other insurance that is carried by Lessor, and expressly provide that all the provisions thereof, except the limits of liability, shall operate in the same manner as if there were a separate policy covering each insured.

**4.2** <u>Insurance Against Physical Damage</u>. Lessee shall maintain in effect, at its option and own expense, all-risk ground and flight aircraft hull insurance covering the Aircraft. Any such insurance shall be during the Term for an amount customary for a similar aircraft.

**4.3** <u>Lessor As Additional Named Insured</u>. All insurance policies carried by Lessee in accordance with this Article shall list AGC (as Owner Trustee and in its individual capacity) and its directors, officers and managers as an additional insured.

**4.4** <u>Deductible</u>. Any insurance policy carried by Lessee in accordance with this Article may be subject to a deductible amount which is customary under policies insuring similar aircraft similarly situated. Lessee warrants and agrees that in the event of an insurable claim, Lessee will bear the costs up the deductible amount.

**4.5** <u>Certificate of Insurance</u>. Lessee shall cause a certificate of insurance to be delivered to the Lessor evidencing the requirements of this ARTICLE prior to the Trustee accepting title to the aircraft and/or to Trustee's release of control of the aircraft to the Lessee. And said insurance coverage must be in effect at the time of aircraft title acceptance or release of aircraft control.

## ARTICLE 5: WARRANTIES AND DISCLAIMERS

**5.1** <u>Lessor's Warranty</u>. Lessor warrants that (1) Lessor has the power and authority to lease the Aircraft to Lessee pursuant to this Agreement, and (2) the Aircraft is properly registered in the name of Lessor in accordance with U.S. law.

**5.2** <u>Lessor's Disclaimer of Warranties</u>. EXCEPT AS SPECIFICALLY PROVIDED HEREIN, LESSOR NEITHER MAKES NOR SHALL BE DEEMED TO HAVE MADE AND HEREBY EXPRESSLY DISCLAIMS, AND LESSEE EXPRESSLY WAIVES ANY REPRESENTATION OR WARRANTY, EXPRESS OR IMPLIED, AS TO THE VALUE, CONDITION, WORKMANSHIP, DESIGN, OPERATION, MERCHANTABILITY OR FITNESS FOR USE FOR A PARTICULAR PURPOSE OF THE AIRCRAFT, AS TO THE ABSENCE OF LATENT OR OTHER DEFECTS, WHETHER OR NOT DISCOVERABLE, AS TO THE ABSENCE OF ANY INFRINGEMENT OF ANY PATENT, TRADEMARK OR COPYRIGHT, AS TO THE ABSENCE OF OBLIGATIONS BASED ON STRICT LIABILITY IN TORT OR ANY OTHER REPRESENTATION OR WARRANTY WHATSOEVER, EXPRESS OR IMPLIED, WITH RESPECT TO THE AIRCRAFT OR ANY PART THEREOF.

**5.3** <u>Lessee's Representation Regarding Selection</u>. Lessee represents and warrants that: (1) it has selected the Aircraft based on its own judgment and disclaims any reliance upon statements or

representations not part of this Agreement; and (2) that the Aircraft is of a size, design and capacity selected by Lessee and is suitable for Lessee's intended use.

5.4. <u>Lessee Warranty Regarding Operation</u>. Lessee represents and warrants that it shall only operate the Aircraft under the terms, conditions, and restrictions, as set forth in this Agreement.

**ARTICLE 6: MISCELLANEOUS**

6.1. <u>Title</u>. Title to the Aircraft shall remain vested in the name of Lessor during the Term and the Aircraft shall be registered at the Federal Aviation Administration (the "FAA") in the name of Lessor during such Term. Lessee shall have no right, title or interest in or to the Aircraft except as expressly provided herein and shall take no action that would impair the continued registration of the Aircraft at the FAA in the name of Lessor. Lessee shall do or cause to be done any and all acts and things which may be required to perfect and preserve the interest and title of Lessor to the Aircraft within any jurisdiction in which Lessee may operate the Aircraft, and Lessee shall also do or cause to be done any and all acts and things which may be required under the terms of any other agreement, treaty, convention, pact or by any practice, customs or understanding involving any country or state in which Lessee may operate, as may be necessary or helpful, or as Lessor may reasonably request, to perfect and preserve the rights of Lessor within the jurisdiction of any such country or state.

6.2. <u>Liens</u>. Except to the extent permitted pursuant to the last sentence of this Section 6.2, Lessee may not directly or indirectly create, incur, assume or suffer to exist any liens on or with respect to (1) the Aircraft or any part thereof; (2) Lessor's title thereto; or (3) any interest of Lessor therein. Lessee will promptly, at its own expense, take such action as may be necessary to discharge any lien prohibited under this Section 6.2. Notwithstanding anything to the contrary set forth herein, however, the following liens shall be deemed to be "permitted" for purposes of this Agreement, and Lessee shall not be obligated to discharge any such lien: (i) the respective rights of Lessor and Lessee as herein provided; (ii) liens created by Lessor (including, but not limited to, the liens described in Section 6.10 below); (iii) liens for taxes either not yet due or being contested by Lessee in good faith; and (iv) inchoate materialmen's, mechanics', workmen's, repairmen's, employees' or other like liens arising in the ordinary course of business of Lessee that are not delinquent and for the payment of which adequate reserves have been provided.

6.3. <u>Defaults</u>. Each of the following events shall constitute an "Event of Default" hereunder (whatever the reason for such event of default and whether it shall be voluntary or involuntary, or come about or be effected by operation of law, or be pursuant to or in compliance with any judgment, decree or order of any court or any order, rule or regulation of any administrative or governmental body): (1) if Lessee shall fail to pay when due any sum under this Agreement and such failure shall continue for a period of three business days after oral, facsimile, or written notice has been given by Lessor to Lessee; (2) if Lessee shall fail to perform any covenant or agreement contained herein, and such failure shall continue for a period of fifteen days after notice thereof shall have been given in writing; (3) if any representation or warranty made by Lessee in this Agreement or any agreement, document or certificate delivered by Lessee in connection herewith is or shall become incorrect in any material respect; (4) if Lessee shall operate the Aircraft in violation of any applicable law, regulation, rule or order of any governmental authority having jurisdiction thereof or shall operate the Aircraft when the insurance required hereunder shall not be in effect; (5) if any proceedings shall be commenced as to Lessee under any bankruptcy, insolvency, reorganization, readjustment of debt, receivership or liquidation law or statute of any jurisdiction; (6) if any such proceedings shall be instituted against Lessee and shall not be withdrawn or terminated within thirty (30) days after their commencement; or (7) if Lessee, as beneficiary

under the Trust Agreement (defined and described in Section 6.13 hereof), defaults under the Trust Agreement or otherwise breaches the terms and conditions thereof.

Upon the occurrence of any Event of Default Lessor may, at its option, exercise any or all remedies available at law or in equity, including, without limitation, any or all of the following remedies, as Lessor in its sole discretion shall elect: (1) by notice in writing to terminate this Agreement immediately, whereupon all rights of Lessee to the use or possession of the Aircraft or any part thereof shall absolutely cease and terminate but Lessee shall remain liable as hereinafter provided; and thereupon Lessee, if so requested by Lessor, shall at its expense promptly return the Aircraft as required by this Agreement or Lessor, at its option, may enter upon the premises where the Aircraft or any part of it is located and take immediate possession of and remove the same by summary proceedings or otherwise. Lessee specifically authorizes Lessor's entry upon any premises where the Aircraft or any part of it may be located for the purpose of, and waives any cause of action it may have arising from, a peaceful retaking of the Aircraft or any part of it; or (2) perform or cause to be performed any obligation, covenant or agreement of Lessee hereunder. Lessee agrees to pay all costs and expenses incurred by Lessor for such performance and acknowledges that such performance by Lessor shall not be deemed to cure said Event of Default.

(c) Lessee shall be liable for all costs, charges and expenses, including reasonable legal fees and disbursements, incurred by Lessor by reason of the occurrence of any Event of Default or the exercise of Lessor's remedies with respect thereto. No remedy referred to herein is intended to be exclusive, but each shall be cumulative and in addition to any other remedy referred to above or otherwise available to Lessor at law or in equity. Lessor shall not be deemed to have waived any default, Event of Default or right hereunder unless the same is acknowledged in writing by duly authorized representative of Lessor. No waiver by Lessor of any default or Event of Default hereunder shall in any way be, or be construed to be, a waiver of any future or subsequent default or Event of Default. The failure or delay of Lessor in exercising any rights granted it hereunder upon any occurrence of any such right upon the continuation or recurrence of any such contingencies or similar contingencies, and any single or partial exercise of any particular right by Lessor shall not exhaust the same or constitute a waiver of any other right provided herein.

6.4 <u>Successors and Assigns</u>. This Agreement shall be binding upon Lessor, Lessee, and their respective successors and assigns, except that Lessee may not assign or transfer any of its rights hereunder except with the prior written consent of Lessor. Subject to the foregoing, this Agreement shall inure to the benefit of Lessor and Lessee and their respective successors and assigns.

6.5. <u>Notices</u>. All notices and other communications under this Agreement shall be in writing and shall be given (and shall be deemed to have been duly given upon receipt or refusal to accept receipt) by delivery in person, by facsimile (with a simultaneous confirmation copy sent by first class mail properly addressed and postage prepaid), by email with PDF attachment (said notice in PDF to be over signature) or by a reputable overnight courier service, addressed as follows:

**If to Lessor:**

*(Physical Address – Courier Service Only)*
Aircraft Guaranty Corporation, Trustee
Continent Aircraft Statutory Trust No. 2814
13704 Portofino Strada
Oklahoma City, OK 73170

Tel: 281-445-7594
Fax: 281-445-7599
Email: agc@agcorp.com

*(Postal Mailing Address)*
Aircraft Guaranty Corporation, Trustee
Continent Aircraft Statutory Trust No. 2814
P.O. Box 891860
Oklahoma City, OK 73189

Tel: 281-445-7594
Fax: 281-445-7599
Email: agc@agcorp.com

**If to Lessee:**

Camro Transportes, SA de CV
Mr. Rodolfo Javier Camarillo Montemayor, Sole-Administrator
Carretera a Colombia Km 9 No. 100
Col. Andres Caballero
66080 Escobedo, Nuevo Leon, Mexico

Phone(s): 52-81-2475-0000
Cell Phone:
Fax:
Email(s): rodolfocamarillo@rocaacero.com;jlujan@rocaacero.com

or at such other address as either Party may designate in writing. Any notice hereunder shall be effective upon delivery.

6.6 <u>Entire Agreement</u>. This Agreement, and the Trust Agreement, constitute the final, complete, and exclusive statement of the terms of the agreement between the Parties pertaining to the subject matter of this agreement and supersede all prior and contemporaneous understandings of the Parties.

6.7 <u>Severability</u>. If any provision of this Agreement is found to be prohibited or unenforceable in any jurisdiction, such provision shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof. Any such prohibition or unenforceability in one jurisdiction shall not invalidate or render unenforceable such provision in any other jurisdiction. To the extent permitted by applicable law, each Party hereto hereby waives any provision of law that renders any provision hereof prohibited or unenforceable in any respect.

6.8 <u>Amendments and Modifications</u>. The terms of this Agreement shall not be waived, varied, contradicted, explained, amended or changed in any other manner except by an instrument in writing, executed by both Parties.

6.9 <u>Governing Law and Jurisdiction.</u> This Agreement is governed by and to be interpreted according to the laws of the state of Texas, excluding its conflict of laws provisions, and proper venue for all matters pertaining hereto shall be in the state or federal courts sitting in Harris County, Texas, and any courts having injunctive or enforcement jurisdiction. In the event that any action is filed in relation to this Agreement, the unsuccessful party shall pay to the successful party, in addition to all the sums that either

party may be called on to pay, the successful party's reasonable attorney fees and costs. Each Party irrevocably and unconditionally submits to the exclusive jurisdiction of the state or federal courts sitting in Harris County, Texas, any courts having injunctive or enforcement jurisdiction and waives any objection it may now or in the future have to the bringing of proceedings in such courts.

6.10 <u>Force Majeure</u>. No Party shall be liable for any failure to perform its obligations in connection with any action described in this Agreement, if such failure results from any act of God, riot, war, civil unrest, flood, earthquake, or other cause beyond such Party's reasonable control (including any mechanical, electronic, or communications failure, but excluding failure caused by a Party's financial condition or negligence).

6.11 <u>Execution</u>. This Agreement may for all purposes be executed in several counterparts, each of which shall be deemed an original, and all such counterparts, taken together, shall constitute one and the same instrument, even though all Parties may not have executed the same counterpart of this Agreement. Each Party may transmit its signature electronically via facsimile or electronic mail to the other Party, and any such electronically transmitted signature and counterpart of this Agreement (including any exhibit hereto) shall have the same force and effect as an original.

6.12 <u>Concerning the Owner Trustee</u>. It is expressly understood and agreed by the parties hereto that (a) this Agreement is executed and delivered by AGC not individually or personally but solely as Owner Trustee under the Trust Agreement, on behalf of Lessor in the exercise of the powers and authority expressly conferred and vested in it as Owner Trustee, (b) each of the representations, undertakings and agreements herein made on the part of Lessor is made and intended not as a personal representation, undertaking or agreement by AGC but is made and intended for the purpose of binding only Lessor and the Trust Property (as defined in the Trust Agreement), (c) nothing herein shall be construed as creating any duty or liability on AGC individually or personally or in its capacity as Owner Trustee of Lessor, to perform any duty or covenant of Lessor hereunder, either express or implied, all such liability, if any, being expressly waived by the other parties hereto and by any person claiming by, through or under any of them, (d) under no circumstances shall AGC be personally liable for the payment of any indebtedness or expenses of Lessor or be liable for the breach or failure of any obligation, representation, warranty or covenant made or undertaken by Lessor hereunder, and (e) for the avoidance of doubt, AGC, in its individual capacity or in its capacity as Owner Trustee under the Trust Agreement, shall have no duty or responsibility hereunder or under any other related document, agreement or instrument, absent receipt of appropriate written instructions pursuant to and in accordance with the Trust Agreement.

6.13. <u>FAA Trust Policy</u>. Lessee acknowledges that FAA may require the owner of an aircraft to provide certain information regarding the ownership, operation and condition of the Aircraft and there may be additional requirements applicable to the Lessor as set forth in the (i) Notice of Proposed Policy Clarification for the Registration of Aircraft to U.S. Citizen Trustees in Situations involving Non-U.S. Citizen Trustors and Beneficiaries (published in the Federal Register on February 9, 2012 (77 FR 6694)) and (ii) Notice of Policy Clarification for the Registration of Aircraft to U.S. Citizen Trustees in Situations involving Non-U.S. Citizen Trustors and Beneficiaries (published in the Federal Register on June 18, 2013 (78 FR 36412)), as each may be modified, amended or supplemented from time to time and as may be further enforced or interpreted by the FAA (collectively the "FAA Trust Policy"). Lessee acknowledges having reviewed the FAA Trust Policy and will provide Lessor and the FAA with any information required by the Trust Policy. Specifically, Lessee is a party to that certain Continent Aircraft Statutory Trust No. 2814 dated October 11, 2017 (the "Trust Agreement"), between Lessor and Lessee, which Trust is on file with the FAA and Lessee hereby agrees (i) to provide all information the Lessor, the FAA or any third

party may request pursuant to the terms of the Trust Agreement, and (ii) operate the Aircraft consistent with the terms of the Trust Agreement.

6.14. <u>Subject and Subordinate</u>. The rights of Lessee with respect to the Aircraft shall be subject and subordinate in all respects to Lessor's rights, including all rights of Lessor as Trustee under the Trust and any related documents thereto.

6.15. <u>Truth in Leasing</u>. Lessor is furnishing the aircraft to Lessee for no compensation or hire; however, unless the Lessee is operating the aircraft under this agreement under the provisions of FAR § 91.23 (b), the provisions of FAR § 91.23 apply for operation of large civil aircraft apply and are incorporated herein as follows:

FAR 91.23 NOTICE: THE AIRCRAFT DESCRIBED IN ARTICLE 1, PARAGRAPH "1.1" OF THIS AGREEMENT HAS BEEN MAINTAINED UNDER FEDERAL AVIATION REGULATIONS (FAR) PART ___ FOR THE PROCEEDING TWELVE MONTHS.
(NOT APPLICABLE IF THE AIRCRAFT IS AN IMPORT FROM A FOREIGN REGISTRY OR A NEWLY MANUFACTURED AIRCRAFT.)

THE AIRCRAFT WILL BE MAINTAINED AND INSPECTED BY THE LESSEE UNDER FAR 91.409 FOR OPERATIONS TO BE CONDUCTED UNDER THIS LEASE AGREEMENT. DURING THE DURATION OF THIS LEASE AGREEMENT LESSEE IS CONSIDERED RESPONSIBLE FOR OPERATIONAL CONTROL OF ALL AIRCRAFT IDENTIFIED AND TO BE OPERATED UNDER THIS LEASE AGREEMENT. AN EXPLANATION OF THE FACTORS BEARING ON OPERATIONAL CONTROL AND THE PERTINENT FEDERAL AVIATION REGULATIONS CAN BE OBTAINED FROM THE NEAREST FAA FLIGHT STANDARDS DISTRICT OFFICE. THE UNDERSIGNED REPRESENTATIVE OF LESSEE CERTIFIES THAT LESSEE IS RESPONSIBLE FOR OPERATIONAL CONTROL OF THE AIRCRAFT AND THAT LESSEE UNDERSTANDS ITS RESPONSIBILITIES FOR COMPLIANCE WITH APPLICABLE FAR'S. THIS SECTION IS INCLUDED IN THIS AGREEMENT FOR PURPOSES OF SATISFYING FAR 91.23 AND SHALL BE NEITHER DEEMED NOR CONSTRUED TO LIMIT OR REDUCE ANY DUTIES OR OBLIGATIONS IMPOSED UPON LESSEE UNDER OTHER PROVISIONS OF THIS AGREEMENT. LESSEE FURTHER CONFIRMS THAT IT UNDERSTANDS THAT A SIGNED COPY OF THIS AGREEMENT MUST BE CARRIED ON BOARD THE AIRCRAFT ANYTIME IT IS OPERATED.

6.14. <u>Aircraft Location Contact Data</u>. See Exhibit A attached hereto.

[SIGNATURE PAGE TO FOLLOW]

\\\\\\\\\\\\\\\\\\\\\\\\\ REMAINDER OF PAGE LEFT BLANK /////////////////////

## AIRCRAFT DRY LEASE SIGNATURE PAGE
Continent Aircraft Statutory Trust No. 2814
LEARJET INC 31A, s/n: 080, FAA Registration No. N986MA

IN WITNESS WHEREOF, the Parties hereto have caused this Agreement to be executed in their names and on their behalf by their duly authorized officers effective as of the Effective Date.

**As Lessor**

For: **Aircraft Guaranty Corporation, Trustee**
(Not in its individual capacity, but solely as Trustee of Continent Aircraft Statutory Trust No. 2814)

By: *[signature]*           Date: October 20, 2017
Debbie Mercer-Erwin, President

**As Lessee**

For: Camro Transportes, SA de CV

By: *[signature]*           Date: October 20, 2017
Mr. Rodolfo Javier Camarillo Montemayor, Sole Administrator

# EXHIBIT A to
# AIRCRAFT DRY LEASE AGREEMENT

**AIRCRAFT LOCATION AND CONTACT DATA FOR:**

**LEARJET INC 31A, s/n: 080, FAA Registration N986MA**

Camro Transportes, SA de CV
Mr. Rodolfo Javier Camarillo Montemayor, Sole-Administrator
Carretera a Colombia Km 9 No. 100
Col. Andres Caballero
66080 Escobedo, Nuevo Leon, Mexico

Phone(s): 52-81-2475-0000
Cell Phone:
Fax:
Email(s): rodolfocamarillo@rocaacero.com;jlujan@rocaacero.com

**HANGAR LOCATION:**

ENTER THE INFORMATION BELOW FOR THE PRIMARY HANGAR LOCATION FOR THIS AIRCRAFT, INCLUDING AIRPORT NAME, ADDRESS, CITY, COUNTRY, POSTAL CODE AND PHONE NUMBER IF APPLICABLE.

Aeropuerto Internacional Del Norte MMAN
Carretera Mty-Laredo Km 1006
Apodaca, Nuevo Leon, Mexico, 66600
Tel: +52 (81) 80309090

## EXHIBIT B to
## AIRCRAFT DRY LEASE AGREEMENT

# ADDENDUM TO LEASE/OPERATING AGREEMENT
# N986MA

WHEREAS, this Addendum amends that certain Lease/Operating Agreement dated October 20, 2017 (the "Lease"), by and between Lessee and Lessor, which Lease relates to a LEARJET INC 31A series aircraft bearing airframe serial number 080 to include its installed engines, avionics, accessories and associated equipment, and bearing United States of America registration mark - N986MA (the "Aircraft"), as more particularly described in the Lease.

WHEREAS, the Aircraft is registered with the FAA in the name of Aircraft Guaranty Corporation as Trustee (the "Trustee") of Continent Aircraft Statutory Trust No. 2814 created by the Trust Agreement dated October 20, 2017 (the "Trust Agreement"), with ITRC, LLC, as beneficiary (the "Beneficiary").

WHEREAS, the United States Federal Aviation Administration ("FAA") or any other duly authorized air authority representatives of the United States or the government where the Aircraft is habitually based or operated (the "Regulatory Authority") may require the owner of an aircraft to provide certain information regarding the ownership, operation and condition of the Aircraft and there may be additional requirements applicable to the Trustee as set forth in the (i) Notice of Proposed Policy Clarification for the Registration of Aircraft to U.S. Citizen Trustees in Situations involving Non-U.S. Citizen Trustors and Beneficiaries (published in the Federal Register on February 9, 2012 (77 FR 6694)) and (ii) Notice of Policy Clarification for the Registration of Aircraft to U.S. Citizen Trustees in Situations involving Non-U.S. Citizen Trustors and Beneficiaries (published in the Federal Register on June 18, 2013 (78 FR 36412)), as each may be modified, amended or supplemented from time to time, and as may be further enforced interpreted by the FAA (collectively the "FAA Trust Policy").

WHEREAS, the Trust Agreement requires the Lessor and Lessee acknowledge and agree to provide the Trustee with certain information as required in the FAA Trust Policy.

In consideration of the mutual covenants and agreements contained herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Lessee and Lessor hereby agree as follows:

1. **Lessee's Duties to Provide Information under FAA Trust Policy.**
   Lessee hereby covenants and agrees as follows:

   a. Lessee has reviewed the FAA Trust Policy and will provide Trustee and the Regulatory Authority with the information required by the FAA Trust Policy.

   b. Lessee will execute the FAA Trust Policy Affidavit (attached hereto as Exhibit 1) and in a form acceptable to the Trustee providing the information required therein. Lessee shall either monitor or cause the Aircraft to be monitored and will notify Trustee immediately if the information in the FAA Trust Policy Affidavit changes. Lessee will also provide Trustee an updated

FAA Trust Policy Affidavit on an annual basis. If requested by a Regulatory Authority, Lessee will provide the FAA Trust Policy Affidavit and related information to the Regulatory Authority.

 c. If requested by a Regulatory Authority, the Lessee shall provide:

  (i) the following specific information within two (2) business days: (A) information in relation to the Aircraft including but not limited to the location of maintenance and other aircraft records and where the Aircraft is normally based and operated, and (B) contact information of the operator of the Aircraft (including but not limited to a phone number, email address, street address and where that person resides or has its principal place of business) and any other person to whom the Regulatory Authority may look to gather information related to crew members for the Aircraft, the Aircraft's operations on specific dates, the location of the Aircraft, and maintenance and other aircraft records for the Aircraft; and

  (ii) the following specific information within five (5) business days: (A) information about the operator, crew (names and pilot certificate numbers) and aircraft operations on specific dates, including information about where the Aircraft will be on a specific date in the future; (B) copies of maintenance, operating logs and other aircraft records; and (C) the current airworthiness status of the Aircraft.

 d. To provide the identity and contact information for the operator of the Aircraft hereunder or under any lease, operating agreement or bailment agreement entered into from time to time by Lessee, or any lease, bailment, or other arrangement entered into from time to time by a third party, whether or not at Lessee's direction.

 e. To require that any lease, operating agreement, bailment, or similar arrangement transferring possession and operational control of the Aircraft provide the following or similar provisions to the same effect:

  (i) that all further transfers or the rights to possession and operational control of the Aircraft to a transferee must be in writing; provide the identity and contact information about the transferee; that a transferee provide an FAA Trust Policy Affidavit to the extent such information is available from the transferee and the transferee's assurance that if and when the transferee is notified that the Regulatory Authority, Trustee, Beneficiary, Lessor or Lessee has made a request, to promptly provide information related to crewmembers of the Aircraft and the Aircraft's operations on specific dates, the location of the Aircraft, and the maintenance and other records for the Aircraft;

  (ii) that each such further transferee or operator (x) shall provide its reasonable cooperation to the Regulatory Authority, Trustee, Beneficiary, Lessor or Lessee in an expeditious manner with respect to any request from the Regulatory Authority for information and access to records of the Aircraft which it is legally entitled to receive, and (y) shall authorize the Regulatory Authority to inspect the Aircraft; and

  (iii) that each such further transferee or operator agrees that the above-referenced information and inspection requirements would be made and agreed in all subsequent or downstream leases, operating agreements and bailment agreements thereby requiring each such

subsequent transferee or operator to provide such contact information in the event that there has been a transfer of possession and operation to another party, to update such information when any changes occur, and to promptly confirm such information at any time upon request by the Regulatory Authority, Trustee, Beneficiary, Lessor or Lessee, to provide its reasonable cooperation to the Trustee, Beneficiary, Lessor or Lessee in an expeditious manner with respect to any request from the Regulatory Authority for information and access to records of the Aircraft, and (z) to authorize the Regulatory Authority to inspect the Aircraft.

    f.    To permit the inspection of the Aircraft and/or records of the Aircraft by a Regulatory Authority.

    g.    That the information received by Trustee pursuant to this Section 1, may be delivered to the FAA or any other Regulatory Authority, without further consent or acknowledgment of the Lessee. Further, Lessee hereby releases and shall indemnify, reimburse, defend, and/or hold harmless Trustee and Lessor, individually, and each of their respective officers, directors, shareholders, employees, affiliated companies, successors, and permitted assignees (the "Indemnified Parties") on demand, from an against any and all claims, damages (whether direct, indirect, incidental, special or consequential), losses, charges, fees, liabilities, obligations, demands, suits, judgments, actions and other legal proceedings (whether civil or criminal), penalties, fines, sanctions, and any reasonable costs, expenses and attorney's fees (collectively, the "Expenses") imposed on the Indemnified Parties, the Lessee or any third party, which in any way may result from, arise out of, or are in any manner related to the Regulatory Authorities' receipt of the information provided pursuant to this Section 1.

## 2. Compliance with U.S. Law.

    a.    Lessee affirms that it is in full compliance with all laws and regulations applicable to it including, without limitation, ensuring that no person who owns a controlling interest in or otherwise controls Lessee is or shall be (1) listed on the Specially Designated Nationals and Blocked Person List maintained by the Office of Foreign Assets Control ("OFAC"), Department of the Treasury, and/or any other similar lists maintained by OFAC pursuant to any authorizing statute, Executive Order or regulation or (2) a person designated under Section 1(b), (c), or (d) of Executive Order No. 13224 (September 23, 2001), any related enabling legislation or any other similar Executive Orders.

    b.    Lessee acknowledges that the Aircraft may be subject to restrictions involving the export and re-export of the same pursuant to the laws and regulations of the United States, that the laws and regulations of the United States restrict the transfer of any interest in the Aircraft to certain persons (collectively, the "Export Restrictions") and that such Export Restrictions may apply to the Aircraft even after the Aircraft has been physically removed or transferred from the United States. Lessee acknowledges that Trustee, as an entity formed in the United States, may be subject to these laws and regulations of the United States, including, without limitation, those promulgated by OFAC and the Financial Crimes Enforcement Network (collectively, the "U.S. Laws"). Lessee agrees that it will comply with, and will not knowingly permit the Aircraft to be used in a manner that is contrary to Export Restrictions and U.S. Laws applicable to (i) the Lessee, (ii) the Trustee, or (iii) the Aircraft, including the acquisition, possession, operation, use, maintenance, leasing, subleasing, or other transfer or disposition thereof. Lessee agrees that it will not permit the assignment of this

Agreement, or a lease or sublease of the Aircraft (collectively, a "Transfer") without Trustee's prior written approval of such Transfer. Trustee shall not unreasonably delay its decision on a request for approval from Lessee nor shall it unreasonably withhold its approval to such request. To facilitate Trustee's evaluation of the Transfer, Lessee agrees that it will use reasonable efforts to provide Trustee with any information reasonably requested by the Trustee regarding the Transfer, the proposed transferee and/or the ownership of the proposed transferee. Trustee's decision to approve or disapprove the proposed Transfer shall not be deemed to have been unreasonably delayed if Trustee has not obtained the information it needs to make the decision, and Trustee's approval of the proposed Transfer shall not be deemed to have been unreasonably withheld if Trustee has determined that the Transfer will or may reasonably be expected to put Trustee at risk of violating any laws or regulations applicable to Trustee including, without limitation, the Export Restrictions and/or U.S. Laws.

    c.    Any proposed transferee shall execute and deliver to Trustee an agreement in substantially the form and substance of this Addendum satisfactory to the Trustee.

    d.    If Trustee has determined in its sole discretion that a proposed Transfer pursuant to this Section 2 may result in either of the circumstance described in 2(b) above, or in the event any proposed transferee has failed to execute and deliver to Trustee the agreement described in Section 2(c) above, then any such Transfer or purported Transfer shall be null and void and of no legal force or effect and the Trustee shall not be required to approve, effect, acknowledge, or facilitate the Transfer.

**3.** **Indemnification of Trustee.** Lessee and its successors and assigns shall indemnify, defend and hold harmless Trustee, in its individual capacity and in its capacity as Trustee, its affiliates and their respective officers, directors, employees, and agents, from and against all demands, claims, damages, fines, penalties, liability, loss, cost or expense (including, without limitation, attorneys' fees and costs) directly or indirectly arising from, or in any manner related to, Lessee's breach of any obligation, agreement or other provision contained in this Addendum.

**4.** **Miscellaneous.**

    a.    This Addendum shall be binding upon and inure to the benefit of the heirs, executors, administrators, legal representatives, successors and assigns of the parties; provided however, that Lessee may not assign or transfer its interests or rights hereunder without Trustee's prior written consent pursuant to Section 2 above.

    b.    The section headings are inserted only as a matter of convenience and for reference, and are not and shall not be deemed to be a part hereof. Time is of the essence of each and every provision of this Addendum.

    c.    This Addendum may be executed in any number of counterparts, each of which when executed and delivered shall be deemed to be an original, and all of which when taken together shall constitute one and the same agreement.

    d.    This Addendum may be amended or modified only in writing signed by all parties.

e. In the event of any conflict, ambiguity or inconsistency between the terms and conditions of this Addendum and the terms and conditions of the Lease (including without limitation any future amendments to the Lease), the terms and conditions of this Addendum shall control.

5. **Governing Law and Jurisdiction.** This Agreement is governed by and to be interpreted according to the laws of the state of Texas, excluding its conflict of laws provisions, and proper venue for all matters pertaining hereto shall be in the state or federal courts sitting in Harris County, Texas, and any courts having injunctive or enforcement jurisdiction. In the event that any action is filed in relation to this Agreement, the unsuccessful party shall pay to the successful party, in addition to all the sums that either party may be called on to pay, the successful party's reasonable attorney fees and costs. Each Party irrevocably and unconditionally submits to the exclusive jurisdiction of the state or federal courts sitting in Harris County, Texas, any courts having injunctive or enforcement jurisdiction and waives any objection it may now or in the future have to the bringing of proceedings in such courts.

[SIGNATURE PAGE TO FOLLOW]

\\\\\\\\\\\\\\\\\\\\\\\\\\\ REMAINDER OF PAGE LEFT BLANK ////////////////////////

## ADDENDUM TO LEASE/OPERATING AGREEMENT SIGNATURE PAGE
Continent Aircraft Statutory Trust No. 2814
LEARJET INC 31A, s/n: 080, FAA Registration No. N986MA

IN WITNESS WHEREOF, this Addendum shall be deemed to have been duly executed as of the date first set forth above.

**As Lessor**

For: **Aircraft Guaranty Corporation, Trustee**
(Not in its individual capacity, but solely as Trustee of Continent Aircraft Statutory Trust No. 2814)

By: _[signature]_  Date: October 20, 2017
Debbie Mercer-Erwin, President

**As Lessee**

For: **Camro Transportes, SA de CV**

By: _[signature]_  Date: October 20, 2017
Mr. Rodolfo Javier Camarillo Montemayor, Sole-Administrator

**EXHIBIT 1 TO
ADDENDUM TO LEASE/OPERATING AGREEMENT**

CONTINENT AIRCRAFT STATUTORY TRUST NO. 2814

FAA TRUST POLICY CERTIFICATE

The undersigned states as follows:

1. He/She is, or is a duly elected and qualified officer, or authorized representative of Camro Transportes, SA de CV, who is the "Lessee".

2. The Lessee is the holder of an "Aircraft Dry Lease Agreement" with Aircraft Guaranty Corporation, a Wyoming corporation in its capacity as trustee for Continent Aircraft Trust No 2814 as Lessor for one each aircraft herein described as LEARJET INC 31A series aircraft bearing airframe serial number 080 to include its installed engines, avionics, accessories and associated equipment, and bearing United States of America registration mark - N986MA (the "Aircraft").

3. As required pursuant to the Lease Addendum Agreement, Lessee confirms as follows:

    a. the identity and contact information (address, phone number and email address) of the person or entity normally operating, or maintaining the operations of the Aircraft is as follows (Attach Appendix sheets to display information as needed):

Name: Rodolfo Javier Camarillo Montemayor
Title: Administrador Unico
Company: Camro Transportes
Street Address: Carretera A Colombia Km 9 No. 100
Col. Andres Caballero
Escobedo, Nuevo Leon

Email: rodolfocamarillo@rococoero.com
Phone Number: +52 (81) 24175000

State/Jurisdiction of Incorporation: Nuevo Leon, México

AIRCRAFT DRY LEASE AGREEMENT & EXHIBITS

Trust 2814-Camro Transportes, SA de CV
Page 17 of 18

Principal Place of Business (city/state/country):

b. the location & physical address of where the aircraft maintenance and other records are as follows:

Carretera A Colombia Km 9 #100
Cd. Antes Caballero
Escobedo, Nuevo Leon
Mexico 66080

c. the ICAO identifier & name of airport where the Aircraft is normally based is:

Aeropuerto Internacional Del Late
MMAN

d. the jurisdictions where the aircraft is normally operated are as follows:

Mexico And USA

e. the names, crew position, issuing C.A.A, & pilot certificate numbers for the pilots who will normally operate the Aircraft are as follows:

Pilots:
Juan Jose Huñoz Flores    FAA Lic # 2427112
Armando Aguirre           FAA Lic # 3684471
Aaron Sanchez Perez       FAA Lic # 369153c

**As Lessee**

For: Camro Transportes, SA de CV

By: _____
Mr. Rodolfo Javier Camarillo Montemayor, Sole-Administrator

AIRCRAFT DRY LEASE AGREEMENT & EXHIBITS

Trust 2814-Camro Transportes, SA de CV
Page 18 of 18

FILED WITH FAA
AIRCRAFT REGISTRATION BR
2011 NOV -7 A 9:49
OKLAHOMA CITY
OKLAHOMA