IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | |
| | § | |
| VS. | § | CASE NO. 9:20-cv-00172-MJT |
| | § | |
| LEARJET 31A BEARING SERIAL | § | |
| NUMBER 080 AND ASSIGNED AND | § | |
| DISPLAYING REGISTRATION/TAIL | § | |
| NUMBER N260RC | § | |

**DEFENDANT'S MOTION TO DISMISS OR, ALTERNATIVELY,
<u>MOTION TO TRANSFER VENUE</u>**

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Learjet 31A Bearing Serial Number 080 and Assigned and Displaying Registration/Tail Number N260RC (hereinafter the "Aircraft"), Defendant in the above-referenced proceeding and files this, its Motion to Dismiss or, Alternatively, Motion to Transfer Venue, and in support thereof, respectfully shows the Court the following:

**I.
<u>SUMMARY OF THE ARGUMENT</u>**

In the event this Court determines that Plaintiff may bring forth an action against Defendant in this Court, Defendant moves to dismiss such claims under Federal Rules of Civil Procedure 12(b)(1), (2), (3), and (6).

Defendant is a non-resident of Texas and has had no purposeful contacts with Texas. As such, this Court lacks personal jurisdiction over Defendant.

**II.
<u>NATURE OF CASE AND STAGE OF PROCEEDINGS</u>**

This case involves claims alleged by the State of Texas, erroneously and without any credible or legitimate supporting evidence, that the Aircraft is somehow "contraband," and is

**EXHIBIT E**

therefore subject to forfeiture under Chapter 59 of the Texas Code of Criminal Procedure.

On July 14, 2020, Plaintiff filed its Notice of Seizure and Intended Forfeiture in the 411th Judicial District of Polk County, Texas in Cause No. CIV33808, styled *The State of Texas vs. Learjet 31A Bearing Serial Number 080 and Assigned and Displaying Registration/Tail Number N260RC* (the "State Court Action" or the "Action").

On August 13, 2020, Defendant timely filed its Notice of Removal on federal question and diversity grounds. Defendant timely files this Motion to Dismiss, or in the Alternative, to Transfer Venue, and brief in support thereof.

## III.
## FACTUAL BACKGROUND

Plaintiff in this case is the State of Texas. The State of Texas seeks civil forfeiture of the Aircraft apparently based solely on the fact that the Aircraft is registered in the United States to a non-citizen trust, the beneficiaries of which include a corporation based in Mexico, and a citizen of Mexico.

Title 49 U.S.C. Chapter 441, supplemented by Parts 47 and 49 of the Federal Aviation Regulations, provides the basis for the present aircraft registration and recordation systems in the United States.[1] While non-US citizens are generally ineligible to register an aircraft in the United States, a trust with a US citizen trustee may register an aircraft even if the beneficiaries of the trust are non-US citizens (a "non-citizen trust"). 14 CFR § 47.7. The Federal Aviation Administration (the "FAA") clarified the policies and procedures for non-citizen trusts to register aircraft most recently in *Notice of Policy Clarification for the Registration of Aircraft to U.S. Citizen Trustees*

---

[1]The Federal Aviation Administration (the "FAA") has occupied the entire statutory and legislative space involving the registration and operation of aircraft for many decades. The State of Texas seeks to destroy administrative regulations and requirements promulgated by the FAA under which thousands of aircraft are lawfully held in trust on the FAA registry, and operated all over the globe by noncitizen operators.

*in Situations Involving Non U.S. Citizen Trustors and Beneficiaries*, 78 Fed. Reg. 36412 (June 18, 2013). In accordance with such statutory, regulatory and policy authority, FAA counsel reviews each proposed trust arrangement before approving any application to register an aircraft to a non-citizen trust.[2]

The Aircraft is owned by the Continent Aircraft Statutory Trust No. 2814 (the "Wyoming Trust 2814"), a Wyoming Trust, with legal title to the Airplane held by Aircraft Guaranty Corporation, a Wyoming corporation, not in its individual capacity but solely as Trustee (the "2814 Trustee") under the Wyoming Trust 2814, all citizens of the United States. The Aircraft is registered with the Federal Aviation Administration ("FAA") in the name of the 2814 Trustee. *See* **Exhibit A**.

Defendant is a non-resident of Texas and has had no purposeful contacts with Texas. As such, this Court lacks personal jurisdiction over Defendant.

Respondent Rodolfo Javier Camarillo-Montemayor is a Mexican citizen and Mexican resident from Monterrey, State of Nuevo León, México.

Respondent 2814 Trustee, is a Wyoming corporation with a registered office in Jackson, Wyoming, and an administrative office in Oklahoma City, Oklahoma. Respondent Wyoming Trust 2814, is a Wyoming statutory trust with a registered office in Jackson, Wyoming, and an administrative office in Oklahoma City, Oklahoma. *See* **Exhibit A**. The State incorrectly alleges 2814 Trustee "was an entity located at 2058 FM 356 North, in Onalaska, Texas" in Polk County. When the current owner purchased the Aircraft in 2017, the 2814 Trustee was located in Oklahoma City, and had no connection whatsoever to Polk County. The 2814 Trustee maintained its

---

[2]It is highly improbable if not outright impossible to believe that FAA counsel would approve for filing a trust agreement and operating agreement specifically dedicated to the registration and operation of the Aircraft, if doing so would amount to the multiple alleged violations of federal law detailed in ¶ 6 of the Price Affidavit attached to the Original Petition in this case.

administrative office in Oklahoma City, Oklahoma with only a mailing address in Polk County. When the State Court Action was filed, the address for the 2814 Trustee of record with the FAA and on the Certificate of Aircraft Registration was 928 SW 107th Street, Oklahoma City, Oklahoma, not Polk County.

The State alleges no other connection to Polk County other than Aircraft Guaranty Corporation's alleged prior location in Polk County. The Aircraft has never been to Polk County. This controversy features no connection whatsoever to Polk County, and there was no connection at the time the notice was filed.[3]

Respondents Aircraft Guaranty Trust, LLC; Aircraft Guaranty Holdings & Trust, LLC; and Aircraft Guaranty Management & Trust, LLC have absolutely no affiliation whatsoever with Aircraft Guaranty Corporation and are not connected with the Aircraft. *See* **Exhibit A**. A record search with the Texas Secretary of State indicates that Aircraft Guaranty Trust, LLC, a foreign limited liability company, is terminated and inactive in Texas. This search did not yield records pertaining to either Aircraft Guaranty Holdings & Trust, LLC or Aircraft Guaranty Management & Trust, LLC. Upon information and belief, these entities are not Texas limited liability

---

[3]The very fact that this case was brought in Polk County, Texas is exceedingly troubling to begin with. It appears as though two individuals, one Paul Mack, a "Special Agent" with BIS, and one Polk County Constable Beau Price, operating under the auspices of the government agency known as the "South East Texas Export Investigation Group" (the "Group"), with no indication whatsoever that the Group has any particular authority above and beyond that which may be possessed by its individual constituent "members", has focused their efforts on alleged illegal export as a convenient tool to confiscate high-value pieces of equipment, including now multimillion dollar jet aircraft. The Group was ostensibly formed to provide a single Polk County Constable with extraterritorial jurisdiction or over areas where he would normally have no jurisdiction whatsoever, including other Texas airports, such as Houston Intercontinental and Hobby Airports, as well as airports located in South Texas. An article describing the efforts being made by these individuals, believed to be limited solely to the state of Texas, may be found that https://www.ktre.com/story/38643665/polk-county-law-enforcement-group-helps-fight-terrorism/ attached as **Exhibit B**. In the present case, as in others brought by these individuals, the Aircraft was in no respect being exported for any reason, bringing into serious question whether BIS had any jurisdiction whatsoever over the Aircraft to begin with. Moreover, the efforts made by these individuals are brought against citizens of Mexico only, also creating questions as to the legitimacy of the purposes behind such efforts. No states other than Texas are believed to be dealing with issues such as those being prosecuted by BIS and the State of Texas when it comes to Aircraft registration and operation, the sole and exclusive province of the FAA.

companies, and are not located anywhere in Texas.

Respondent Campo Transportes, SA de CV, is a Mexican corporation located in Monterrey, State of Nuevo León, México, and is the lessee and operator of the aircraft under the terms of the Dry Lease Agreement. *See* **Exhibit A-6**.

Respondent ITRC, LLC, is a Delaware limited liability company, and is the beneficiary of the trust. *See* **Exhibit A-3**.

Respondent Debbie Mercer a/k/a Debbie Lynn Erwin a/k/a Debbie Mercer-Erwin, is a resident of and domiciled in Oklahoma. Debbie Mercer-Erwin is owner and principal in Aircraft Guaranty Corporation. *See* **Exhibit A**.

Neither the Aircraft nor any of the Respondents are citizens of the state of Texas at this time, nor were they at the time this suit was filed in state court. *See* **Exhibit A**. Accordingly, there was and remains complete diversity of citizenship between all Respondents, the Aircraft and the Plaintiff.

In a letter dated October 30, 2017, the FAA Office of the Aeronautical Central Regional Counsel responded to counsel for Aircraft Guaranty Corporation regarding registration of the Aircraft, in pertinent part:

> Accordingly, it is our opinion that the updated forms for the Trust Agreement, Aircraft Dry Lease Agreement, and the Owner Trustee's Affidavit and Certificate of Citizenship satisfy the respective requirements of §§ 47.7(c)(2)(i) and 47.7(c)(2)(iii). Therefore, provided there is sufficient evidence of ownership, upon proper application under 14 C.F.R. Part 47, the Aircraft will be eligible for United States registration in the name of Aircraft Guaranty Corporation as Owner Trustee. Your updated forms satisfy FAA's Policy Clarification regarding non-citizen trust agreements.

*See* **Exhibit A-5**, attached hereto and incorporated herein by reference.

In view of the foregoing, our opinion is requested that:

    a)     The Trust Agreement and other documents provided are in

compliance with the FAA Policy Clarification;

b)  The Owner Trustee may register the Aircraft in its name, under Sections 44102 and 44103 of the Act upon the filing with the FAA of duly executed counterparts of the Trust Agreement and Trustee Affidavit, together with the appropriate title documents and AC Form 8050-1 Aircraft Registration Application;

c)  The Trust Agreement satisfies the requirements of 14 C.F.R. §§ 47.7(c)(2)(i) and 47.7(c)(3);

d)  The form of the Affidavit satisfies the requirements of 14 C.F.R. § 47.7(c)(20(iii); and

e)  The Lease Agreement does not affect the relationship under the trust Agreement in a manner that adversely impacts the eligibility of the Aircraft for United States Registration.

Your requests for opinion (a) through (e) of your letter of October 27, 2017, are all answered in the affirmative.

**Exhibit A-6**. The aforementioned non-citizen trust is a common – and entirely legal – ownership structure, created and administered by the FAA over many decades. In addition to being reviewed and approved by the FAA Aeronautical Center Central Region Counsel for purposes of registering the Airplane with the FAA as evidenced above, the Wyoming Trust 2814 and Lease Agreement have also been filed with the FAA Aircraft Registry and maintained of public record. Plaintiff's false allegations that the Aircraft is contraband under Article 59.01 of the Texas Code of Criminal Procedure were made in reckless disregard of the truth or even deliberately.

In the State Court Action, Plaintiff complains of several entities and individuals as possessors and/or owners of the Aircraft. Dkt. 1. However, Respondents Aircraft Guaranty Trust, LLC; Aircraft Guaranty Holdings & Trust, LLC; and Aircraft Guaranty Management & Trust, LLC have absolutely no connection to the Aircraft nor is there any affiliation whatsoever with Wyoming Trust 2814, 2814 Trustee, Campo Transportes, SA de CV, ITRC, LLC, Mr. Camarillo-Montemayor and/or Ms. Mercer-Erwin. A record search with the Texas Secretary of State indicates

that Aircraft Guaranty Trust, LLC, a foreign limited liability company, is terminated and inactive in Texas. *See* **Exhibit A**, Affidavit of Debra Mercer-Erwin. This search did not yield records pertaining to either Aircraft Guaranty Holdings & Trust, LLC or Aircraft Guaranty Management & Trust, LLC. Upon information and belief, these entities are not Texas limited liability companies, and are not located anywhere in Texas. Neither the Aircraft, Wyoming Trust 2814, 2814 Trustee, Campo Transportes, SA de CV, Mr. Camarillo-Montemayor, ITRC, LLC nor Ms. Mercer-Erwin are citizens of the state of Texas at this time, nor were they at the time this suit was filed in state court. Accordingly, there was and remains complete diversity of citizenship between all Respondents, the Aircraft and the Plaintiff.

## IV.
## STATEMENT OF THE ISSUES AND STANDARD OF REVIEW

### A.   STATEMENT OF THE ISSUES

Dismissal of Plaintiff's Action is appropriate under Federal Rule of Civil Procedure 12(b)(1), (2), (3), and (6). Accordingly, the issues to be ruled upon by the Court are as follows:

1. Whether this case should be dismissed due to the Court's lack of subject matter jurisdiction over Defendant?

2. Whether Plaintiff's claims should be dismissed due to the Court's lack of personal jurisdiction over Defendant?

3. Whether this case should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(3) for improper venue?

4. Whether this case should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted?

### B.   STANDARD OF REVIEW

Under Rule 12(b)(1), dismissal is warranted for lack of subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). To establish Article III standing, a plaintiff must show (1) an injury in fact, (2) a sufficient causal connection between the injury and the conduct complained of, and (3) a

likelihood that the injury will be redressed by a favorable decision. *Crane v. Johnson*, 783 F. 3d 244, 251 (5ᵗʰ Cir. 2015) (internal quotations omitted). The plaintiff bears the burden of proof by a preponderance of the evidence that subject matter jurisdiction exists. *New Orleans & Gulf Coast Ry. Co. v. Barrois*, 533 F.3d 321, 327 (5ᵗʰ Cir. 2008).

Rule 12(b)(2) authorizes dismissal based on the defense that a court lacks jurisdiction over the defendant. *Head v. Las Vegas Sands, LLC*, 298 F. Supp. 3d 963, 969 (S.D. Tex. 2018). Two conditions must be met to establish personal jurisdiction: "(1) the forum state's long-arm statute [must confer] personal jurisdiction over the defendant; and (2) the exercise of personal jurisdiction [must] compl[y] with the due process requirements of the *Fourteenth Amendment of the United States Constitution*." *Head*, 298 F. Supp. at 969 (quoting *A.T.N. Indus. v. Gross*, 2016 U.S. Dist. LEXIS 10629, at \*6 (S.D. Tex. 2016) (citation omitted)). Once a defendant files a motion to dismiss for lack of personal jurisdiction, the plaintiff has the burden of proving jurisdiction over the defendant. *Gundle Linin Constr. v. Adams Cty. Asphalt, Inc.*, 85 F. 3d 210, 204 (5ᵗʰ Cir. 1996).

Plaintiff's claims should be dismissed pursuant to Rule 12(b)(3) because venue is improper in this district. Again, the plaintiff bears the burden of showing that the chosen venue is proper. *Am. Gen. Life Ins. v. Rasche*, 273 FRD 391, 396 (S.D. Tex. 2011).

Rule 12(b)(6) of the Federal Rules of Civil Procedure requires dismissal of a claim if a plaintiff does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 570 (2007); *Reliable Consultants, Inc. v. Earle*, 517 F. 3d 738, 742 (5th Cir. 2008); *Guidry v. American Pub. Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007). A claim meets the plausibility test "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer

possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted).

## C.   DISMISSAL UNDER RULE 12(b)(1)— LACK OF SUBJECT MATTER JURISDICTION

Plaintiff's allegations are insufficient to invoke federal jurisdiction and the facts set forth in Mr. Price's affidavit supporting subject matter jurisdiction are questioned. *Rodriguez v. Texas Comm'n of Arts*, 992 F. Supp. 876, 878-79 (N.D. Tex. 1998), *aff'd*, 199 F. 3d 279 (5th Cir. 2000). This federal court lacks subject matter jurisdiction when there is no actual case or controversy. *Genesis Healthcare Corp. v. Symczk*, 133 S. Ct. 1523, 1528 (2013). If an event occurs that deprives the plaintiff of a personal stake in the outcome of the case or makes it impossible for a court to grant effectual relief to it, the case must be dismissed as moot. *Genesis*, 133 S. Ct. at 1528; *Sandoz v. Cingular Wireless LLC*, 553 F. 3d 913, 921 n. 5 (5th Cir. 2008).

In the Policy Clarification regarding non-citizen trust agreements, the FAA meticulously reaffirmed that absolutely no distinction is to be made between types of aircraft owners for purposes of regulatory compliance. *See* Notice of Policy Clarification for the Registration of Aircraft to U.S. Citizen Trustees in Situations Involving Non-U.S. Citizen Trustors and Beneficiaries; 78 Fed. Reg. 36,413 (June 18, 2013). All registered owners of aircraft on the FAA Aircraft Registry, whether they are individuals, partnerships, corporations, or associations, any of which may act in the capacity of owner trustees, have the same obligations to comply with applicable FAA regulations. *Id.* Once the FAA completes the registration process, the registered owner is the owner for all purposes under the regulations. *Id.* at 36, 414. The regulatory obligations of an owner trustee with regard to an aircraft registered in the U.S. using a non-citizen trust are, and always have been, the same as the regulatory obligations of all owners of U.S. registered aircraft. *Id.*

Based on the foregoing, it is well-settled that the Aircraft's ownership and operation is legal and complies with the FAA regulatory requirements for non-citizen trusts contained in 14 C.F.R. § 47.7. The issues raised are no longer live and Plaintiff now lacks a legally cognizable interest in the outcome. Plaintiff cannot seek relief based on fabricated allegations. Accordingly, Plaintiff's State Court Action should be dismissed for lack of subject matter jurisdiction.

### D.   DISMISSAL UNDER RULE 12(b)(2)— LACK OF PERSONAL JURISDICTION

The first step in the analysis can generally be ignored in Texas federal courts because the Texas long-arm statute is purportedly co-extensive with *Fourteenth Amendment* Due Process. *Id.* (citing *McFadin v. Gerber*, 587 F. 3d 753, 759 (5th Cir. 2009)). Thus, if the exercise of personal jurisdiction complies with the due process requirements of the *Fourteenth Amendment*, which it must, then the analysis is complete because personal jurisdiction automatically exists under the Texas long-arm statute, and both elements are thus simultaneously satisfied. *Id.*

Due Process is satisfied if the nonresident defendant "(1) has purposefully availed himself of the benefits and protections of the forum state by establishing minimum contacts with the forum state, and (2) the exercise of jurisdiction over that defendant does not offend traditional notions of fair play and substantial justice." *Head*, 298 F. Supp. at 969-70 (quoting *Alpine View Co. Ltd. v. Atlas Copco AB*, 205 F. 3d 208, 215 (5th Cir. 2000) (citations and internal quotation marks omitted)). There is no need to proceed to the second prong if the first is not satisfied. The first prong—"minimum contacts"—can be established in two ways specific jurisdiction or general jurisdiction, which Plaintiff fails to do, as set forth below.

#### 1.   No General Jurisdiction

A court cannot exercise general jurisdiction over a nonresident defendant unless the nonresident defendant has contacts with the forum state that are so continuous and systematic as

to render the nonresident defendant essentially "at home" in the forum state. *Daimler AG v. Bauman*, 571 U.S. 117, 138-39 (2014); *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). For a corporation, "the place of incorporation and principal place of business" are where it is "at home" and are thus paradigm bases for jurisdiction. *Monkton Ins. Servs. v. Ritter*, 768 F. 3d 429, 432 (5th Cir. 2014) (citations omitted). For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile. *Id.* (citations and internal quotation marks omitted). It is, therefore, incredibly difficult to establish general jurisdiction in a forum other than the place of incorporation or principal place of business. *Monkton Ins. Servs.*, 768 F. 3d at 432. Plaintiff alleges that the Aircraft is contraband and is subject to forfeiture by virtue of:

> Being used in the commission of any first degree felony under the Texas Penal Code;
>
> Being used or intended to be used in the commission of a felony under Chapter 34 of the Texas Penal Code (Money Laundering);
>
> Being used or intended to be used in the commission of a felony under Chapter 71 of the Texas Penal Code (Engaging in Organized Criminal Activity);
>
> Being the proceeds gained from the commission of a felony under the Penal Code; and
>
> Being acquired with proceeds gained from the commission of a felony under the Penal Code;

Dkt. 1 ¶ 5. Plaintiff's unsupported allegations fail to demonstrate that Defendant conducted any business in Texas whatsoever, let alone any business related to Plaintiff's bogus claims for seizure and forfeiture under Chapter 59 of the Texas Code of Criminal Procedure. Supporting allegations may not be vague, overgeneralized, or conclusory. *Head*, 298 F. Supp. 3d at 973 (citations and internal quotation marks omitted). Thus, Plaintiff's allegations fail to support personal jurisdiction.

Aside from the vague and conclusory statements set forth above, Plaintiff fails to provide any specific assertions that indicate the extent, duration, or frequency of Defendant's alleged contacts. "[V]ague and overgeneralized assertions that give no indication as to the extent, duration, or frequency of contacts are insufficient to support general jurisdiction." *Johnston v. Multidata Sys. Int'l Corp.*, 523 F. 3d 602, 610 (5th Cir. 2008) (citation omitted). Thus, Plaintiff's assertions are insufficient to support general jurisdiction.

Aircraft Guaranty Corporation, owner trustee was not incorporated in Texas and does not have its principal place of business in Texas either. Thus, Defendant is not "doing business" in Texas and general jurisdiction is improper.

Even if Plaintiff's allegations did demonstrate general business contacts, such contacts with a forum—even substantial, continuous, and systematic business contacts—are not enough to establish general jurisdiction over a defendant. *Head*, 298 F. Supp. 3d at 976-77. The nature and quality of Defendants' presence in Texas are too insignificant and sporadic to constitute a general presence in the state. *Johnston v. Multidata Sys. Int'l Corp.*, 523 F. 3d 602, 612 (5th Cir. 2008).

Plaintiff fails to meet its burden of proving general jurisdiction over Defendant. Defendant (1) has no office or principal place of business in Texas, (2) does not own, rent, or lease real property in Texas, (3) has no employees in Texas, and (4) maintains no financial or bank accounts in Texas. *See* **Exhibit A**, Affidavit of Debra Mercer-Erwin. Therefore, Defendant lacks the minimum contacts with Texas necessary to confer general jurisdiction.

Furthermore, Defendant's activities in Texas must be cross-referenced with Defendant's activities in other jurisdictions in order to develop an understanding of where Defendant's energies are truly and relatively focused, and thus where they may properly be considered "at home." *Id.* at 977 (citations and internal quotation marks omitted). Plaintiff has failed to cross-reference the

alleged activities. Based on the foregoing, Defendant has not had continuous or systematic contacts that renders it at home in Texas. Even repeated contacts with forum residents by a foreign defendant may not constitute the requisite substantial, continuous and systematic contacts required for a finding of general jurisdiction—in other words, while it may be doing business *with* Texas, it is not doing business *in* Texas. *Revell v. Lidov*, 317 F. 3d 467, 470 (5th Cir. 2002). Accordingly, this Court does not have general jurisdiction over Defendant.

### 2.    No Specific Jurisdiction

The Fifth Circuit has set forth a three-step analysis for determining whether specific jurisdiction exists:

> (1) Whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposed availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable.

*Evergreen Media Holdings, LLC v. Safran Co.*, 68 F. Supp. 3d 664, 675 (S. D. Tex. 2014) (citations and internal quotation marks omitted)).

The alleged reasons identified by Plaintiff that this Court has jurisdiction over Defendant are not sufficient to establish the contacts necessary for specific jurisdiction. Plaintiff alleges Texas connections without providing evidentiary support for such allegations. As a basis for this Court's jurisdiction, Plaintiff conclusively alleges:

> Jurisdiction is conferred upon this Court by virtue of Article V, Section 8 of the Texas Constitution and Article 59 of the Code of Criminal Procedure.

Dkt. 1 ¶ 3. A court should not countenance vague, overgeneralized, or otherwise conclusory allegations. *Blue Spike, LLC v. Texas Instruments, Inc.*, 2014 U.S. Dist. LEXIS 188539, at *4 (E.D. Tex. 2014).

Of paramount importance, is the fact that neither the Wyoming Trust 2814 nor the Lease Agreement were entered into in the State of Texas. Furthermore, the parties to the agreements were not citizens and/or residents of Texas at the time of execution thereof. The Trust Agreement plainly states that the Agreement shall be governed by the laws of Wyoming. Accordingly, none of Plaintiff's alleged contacts are sufficient to establish personal jurisdiction.

First, Plaintiff fails to satisfy the purposeful availment test. Defendant's contacts with Texas occurred infrequently and sporadically.

In fact, Plaintiff concedes that the Aircraft was physically located in the United States for 66 days from January 2019 to January 2020, and 40 of those days were for maintenance. Dkt. 1 at 9. Random, fortuitous, or attenuated contacts are not sufficient to establish jurisdiction. *Moncrief Oil Int'l, Inc. v. Gazprom*, 481 F. 3d 309, 312 (5th Cir. 2007) (citing *Burger King Corp.*, 471 U.S. at 476).

Furthermore, Plaintiff fails to satisfy the second element necessary to establish specific jurisdiction because the Action does not arise out of Defendant's Texas-related contacts. The Fifth Circuit has adopted the "but-for" test, which is satisfied when the plaintiff's claim would not have arisen in the absence of the defendant's contacts. *Head*, 298 F. Supp. 3d at 971 (citations and internal quotation marks omitted). Simply put, none of the agreements were entered into in Texas by Texas parties. Plaintiff fails to establish a prima facie case of specific jurisdiction.

This Court does not have specific jurisdiction over Defendant because Defendant did not purposefully direct its activities to Texas and Plaintiff's claims do not arise from or relate to Defendant's contacts with Texas. Rather, Plaintiff's State Court Action arises from, and is rooted in, baseless allegations the Aircraft is contraband under Chapter 59 of the Texas Code of Criminal Procedure. Such claims are wholly unfounded and severely lack veracity regarding the true nature

of Defendant's contacts with Texas. Therefore, no specific jurisdiction exists.

## E. DISMISSAL UNDER RULE 12(b)(3)— IMPROPER VENUE

Plaintiff alleges that venue exists in Polk County, Texas because it is the county in which venue exists for prosecution of an underlying offense for which the property is subject to forfeiture. Dkt. 1 at 12. This allegation is patently false. As set forth above, when the current owner purchased the Aircraft in 2017, the 2814 Trustee was located in Oklahoma City, and had no connection whatsoever to Polk County. The 2814 Trustee maintained its administrative office in Oklahoma City, Oklahoma with only a mailing address in Polk County. When the State Court Action was filed, the address for the 2814 Trustee of record with the FAA and on the Certificate of Aircraft Registration was 928 SW 107th Street, Oklahoma City, Oklahoma, not Polk County. Simply put, the Aircraft has never been to Polk County. *See* **Exhibit A**, Affidavit of Debra Mercer-Erwin. Based on the foregoing, Plaintiff fails to establish venue exists in Polk County as alleged in its State Court Action.

## F. DISMISSAL UNDER RULE 12(b)(6)— FAILURE TO STATE A CLAIM

### 1. No Violation of Ch. 59 of Texas Code of Criminal Procedure

Plaintiff does not allege facts from which it is plausible to conclude that Defendant violated Chapter 59 of the Texas Code of Criminal Procedure.

> The FAA does not consider the status of the trustee as the owner of the aircraft under a trust agreement as having any differing effect on its responsibilities for regulatory compliance issues compared to other owners of a U.S.-registered aircraft. The FAA has determined that there is nothing inherent in the status of a trustee owner of a U.S.-registered aircraft that would affect or limit its responsibilities for ensuring compliance with applicable laws and regulations. The FAA is not aware of any basis for treating one type of owner—such as a trustee under a non-citizen trust—differently from any other owner of a civil aircraft on the U.S. registry when considering issues of regulatory compliance.

> Non-citizen trusts that follow the attached standard trust agreement (which includes recommendations from the public) generally will be acceptable to the

FAA as a basis for registering the aircraft in the U.S. However, applicants who wish to register an aircraft in the U.S. using a non-citizen trust are not required to use any particular version of a trust agreement. The FAA will review any non-citizen trust agreement, any aircraft operating arrangement and other documents affecting a relationship under the trust, and all other documents required to be filed along with an application for registration that is based on a non-citizen trust, to ensure that they are consistent with U.S. law, the applicable regulations, and the clarified policies set forth in this Notice.

*See* **Exhibit A**. As previously set forth herein, the FAA has explicitly stated that the Wyoming Trust 2814 satisfies not only the requirements of 14 C.F.R. §§ 47.2(c)(2)(i) and 47.2(c)(2)(iii), but also complies with the FAA Policy Clarification regarding non-citizen trusts. When considering a motion to dismiss for failure to state a claim, a district court must limit itself to the contents of the pleadings, including attachments thereto. *Collins v. Morgan Stanley Dean Witter*, 224 F. 3d 496, 498 (5th Cir. 2000). The affidavit of Beau Price attached to Plaintiff's State Court Action lacks well-pled factual allegations and consists of nothing more than bare legal conclusions and fails to satisfy the pleading requirements of the Federal Rules of Civil Procedure.

### G. ALTERNATIVELY, DEFENDANT REQUESTS TRANSFER OF VENUE

Alternatively, if it be in the interest of justice, the district court of a district in which a case is filed in the wrong division or district shall transfer such case to any district or division in which it could have been brought. *See* 28 U.S.C. § 1406(a). If this court finds that it would better serve the interests of justice to transfer this case, Defendant requests transfer of this case to the United States District Court for the Southern District of Texas, where the Aircraft was seized.

### V.
### CONCLUSION AND PRAYER

**WHEREFORE, PREMISES CONSIDERED,** Defendant Learjet 31A Bearing Serial Number 080 and Assigned and Displaying Registration/Tail Number N260RC prays that this Court dismiss all of Plaintiff's claims, and that this Court grant any other and further relief, at

law or in equity, to which it may be justly entitled.

Dated: September 10, 2020

Respectfully submitted,

**MARTIN & DROUGHT, P.C.**
Weston Centre
112 East Pecan Street, Suite 1616
San Antonio, TX 78205
Telephone: (210) 227-7591
Telecopier: (210) 227-7924

By: /s/ *Mathis B. Bishop*
     GERALD T. DROUGHT
     State Bar No. 06134800
     gdrought@mdtlaw.com
     MATHIS B. BISHOP
     State Bar No. 24045500
     mbishop@mdtlaw.com

ATTORNEYS FOR DEFENDANT

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 10, 2020, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to:

Tommy L. Coleman
Assistant Criminal District Attorney
Polk Co. District Attorney's Office
101 West Mill Street, Ste. 247
Livingston, TX 77351
Email: tcoleman@polkcountyda.com

on this 10th day of September 2020.

     /s/ *Mathis B. Bishop*
     GERALD T. DROUGHT
     MATHIS B. BISHOP

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | |
| | § | |
| VS. | § | CASE NO. 9:20-cv-00172-MJT |
| | § | |
| LEARJET 31A BEARING SERIAL | § | |
| NUMBER 080 AND ASSIGNED AND | § | |
| DISPLAYING REGISTRATION/TAIL | § | |
| NUMBER N260RC | § | |

## AFFIDAVIT OF DEBRA MERCER-ERWIN

| | |
|---|---|
| STATE OF OKLAHOMA | § |
| | § |
| COUNTY OF CLEVELAND | § |

Before me, the undersigned notary, on this day personally appeared Debra Mercer-Erwin, the Affiant, whose identity is known to me. After I administered an oath, Affiant testified as follows:

1. "My name is Debra Mercer-Erwin. I am over 18 years of age, of sound mind, and capable of making this affidavit. The facts stated in this affidavit are within my personal knowledge and are true and correct.

2. I am the owner and president of Aircraft Guaranty Corporation (hereinafter "ACG") in the above-reference lawsuit.

3. AGC, as Trustee (the "**2814 Trustee**") and ITRC, LLC, as Grantor, have formed the Continent Aircraft Statutory Trust No. 2814 (the "**Wyoming Trust 2814**"), a Wyoming Statutory Trust. *See* Exhibit "A-1", Statutory Trust Certificate of Trust executed on October 5, 2017, Exhibit "A-2", Certificate of Organization dated October 11, 2017, and Exhibit "A-3", Trust Agreement dated October 20, 2017 titled "Continent Aircraft Statutory Trust No. 2814", attached hereto and incorporated herein by reference (collectively, the "**Trust Agreement**").

4. I acquired personal knowledge of the facts stated in this affidavit because I was directly involved in registering a certain Learjet 31A Bearing Serial Number 080 and Assigned and Displaying Registration/Tail Number N260RC (the "**Aircraft**") on the Federal Aviation Administration ("FAA") Aircraft Registry under the Wyoming Trust 2814.

27111804_1

EXHIBIT A

5. The documents attached to this Affidavit are business records of ACG and/or the Wyoming Trust 2814 and are within my personal knowledge and are true and accurate copies of the original documents. I am familiar with the manner in which these records are created and maintained by virtue of my duties and responsibilities as the 2814 Trustee. The attached documents are original records or exact duplicates of original records, were made at or near the time of each event, act, condition, opinion or other activity set forth therein, the records were made by, or from information transmitted by, persons with knowledge of the matters set forth, these records are systematically kept in the ordinary course of regularly conducted business activity, and it is the regular practice of ACG to make such records.

6. The Aircraft is owned by the Wyoming Trust 2814 with legal title to the Aircraft held by the 2814 Trustee. *See* Exhibit "A-1", Statutory Trust Certificate of Trust executed on October 5, 2017, Exhibit "A-2", Certificate of Organization dated October 11, 2017, and Exhibit "A-3", Trust Agreement dated October 20, 2017 titled "Continent Aircraft Statutory Trust No. 2814", attached hereto and incorporated herein by reference (collectively, the "**Trust Agreement**").

7. Wyoming Trust 2814 has a registered office in Jackson, Wyoming, and an administrative office in Oklahoma City, Oklahoma. The Wyoming Trust 2814 is formed in Wyoming, not Texas. When the current owner purchased the Aircraft in 2017, the 2814 Trustee maintained its administrative office in Oklahoma City, Oklahoma with only a mailing address in Polk County.

8. Since inception, the Wyoming Trust 2814 has remained in compliance with the FAA regulatory requirements for non-citizen trusts contained in 14 CFR 47.7. *See* Exhibit "A-4", Affidavit and Certificate of Citizenship dated November 7, 2017, attached hereto and incorporated herein by reference.

9. The FAA Office of the Aeronautical Center Regional Counsel ("**ACRC**") has reviewed the Trust Agreement and explicitly opined that (i) the Wyoming Trust 2814 satisfies not only the requirements of 14 C.F.R. §§ 47.2(c)(2)(i) and 47.2(c)(2)(iii), but also complies with the FAA Policy Clarification regarding non-citizen trusts and (ii) the Aircraft may be registered with the FAA in the name of the 2814 Trustee. *See* Exhibit "A-5", FAA Opinion Letter dated October 30, 2017, attached hereto and incorporated herein by reference. In addition, the FAA Aircraft Registry has reviewed and accepted the Trust Documents, the Trust Documents are of public record, and the FAA Aircraft Registry has registered the Aircraft in the name of the 2814 Trustee.

10. AGC is a Wyoming corporation with a registered office in Jackson, Wyoming, and an administrative office in Oklahoma City, Oklahoma. The 2814 Trustee is not incorporated in Texas (it is simply the Trustee of the Wyoming Trust 2814), does not have its principal place of business in Texas, and is not "doing business" in Texas.

2

11.     As specifically contemplated under the Trust Agreement and as required by the FAA Policy Clarification, the Aircraft is being leased by 2814 Trustee to Camro Transportes, SA de CV, as operator of the Aircraft. *See* Exhibit "A-6", Dry Lease Agreement and Addendum dated October 20, 2017, attached hereto and incorporated herein by reference (collectively, the "Lease Agreement"). The Lease Agreement has been reviewed and approved by the ACRC, filed with and accepted by the FAA Aircraft Registry and maintained of public record.

12.     The parties to the Trust Agreement and the Lease Agreement were not citizens and/or residents of Texas at the time of execution thereof. Neither the Trust Agreement nor the Lease Agreement were entered into in the State of Texas.

13.     On or about July 14, 2020, the State of Texas ("Plaintiff"), filed this action in the 411th Judicial District Court, Polk County, Texas in Cause No. CIV33808, styled *The State of Texas vs. Learjet 31A Bearing Serial Number 080 and Assigned and Displaying Registration/Tail Number N260RC* (the "State Court Action").

14.     When the State Court Action was filed, the address for the 2814 Trustee of record with the FAA and on the Certificate of Aircraft Registration was 928 SW 107th Street, Oklahoma City, Oklahoma, not Polk County.

15.     AGC, the 2814 Trustee and Wyoming Trust 2814 do not currently (1) have an office or principal place of business in Texas, (2) own, rent, or lease real property in Texas, (3) have employees in Texas, or (4) maintain financial or bank accounts in Texas.

16.     On or about August 14, 2020, I conducted a record search with the Texas Secretary of State. The results indicated that Aircraft Guaranty Trust, LLC, a foreign limited liability company, is terminated and inactive in Texas. This search yielded no records pertaining to neither Aircraft Guaranty Holdings & Trust, LLC or Aircraft Guaranty Management & Trust, LLC.

17.     Respondents Aircraft Guaranty Trust, LLC; Aircraft Guaranty Holdings & Trust, LLC; and Aircraft Guaranty Management & Trust, LLC have absolutely no affiliation whatsoever with AGC and are not connected with the Aircraft nor has the Aircraft ever been physically located in Polk County.

Further affiant sayeth naught.

Debra Mercer-Erwin

**SWORN TO AND SUBSCRIBED** before me, on this the 10th day of September, 2020.

Notary Public in and for
The State of Oklahoma
My Commission expires: 06/17/2023

4



**Ed Murray**
**Wyoming Secretary of State**
2020 Carey Avenue, Suite 700
Cheyenne, WY 82002-0020
Ph. 307.777.7311
Fax 307.777.5339
Email: Business@wyo.gov

**Ed Murray, WY Secretary of State**
**FILED: 10/11/2017 09:20 AM**
**ID: 2017-000771927**

## Statutory Trust
## Certificate of Trust

1. Name of the statutory trust:

Continent Aircraft Statutory Trust No. 2814

2. Name and address of at least one (1) of the trustees authorized to manage the statutory trust:

Name:                                    Address:

| Aircraft Guaranty Corporation | 270 W Pearl Avenue, Ste 103, Jackson, WY 83001 |
| | |
| | |

3. Name and physical address of its registered agent:

*(The registered agent may be an individual resident in Wyoming or a domestic or foreign business entity authorized to transact business in Wyoming. **The registered agent must have a physical address in Wyoming.** If the registered office includes a suite number, it must be included in the registered office address. A Drop Box is not acceptable. A PO Box is acceptable if listed **in addition to a physical address.**)*

Name:      Frontier Registered Agency Services LLC

Address:   270 W Pearl Avenue, Ste 103, Jackson, WY 83001

*(If mail is received at a Post Office Box, please list above **in addition to the physical address.**)*

4. Mailing address of the statutory trust:

PO Box 2547
Onalaska, TX 77360

5. Principal office address:

270 W Pearl Avenue, Ste 103
Jackson, WY 83001



Received
OCT - 5 2017
Secretary of State
Wyoming

ST-CertificateTrust - Revised October 2015



EXHIBIT
A-1

6. Future effective date or time of this certificate if it is NOT to be effective upon the filing of this certificate:

*(Date – mm/dd/yyyy)*

7. Execution:

**Trustee Signature:** _____  **Date:** 10/05/2017

Print Name: Janette L. Vigil, Jr. VP of Aircraft Guaranty Corp  *(mm/dd/yyyy)*

**Trustee Signature:** _____  **Date:** _____

Print Name: _____  *(mm/dd/yyyy)*

**Trustee Signature:** _____  **Date:** _____

Print Name: _____  *(mm/dd/yyyy)*

Contact Person: Jeremy W. Bouchard

Daytime Phone Number: (307) 632-1103  Email: info@wyoregisteredagent.com

*(Email provided will receive annual report reminders and filing evidence)*
*May list multiple email addresses*

**Note:**
**An annual report will be due on or before January 2 each year.** If not paid within thirty (30) days from the due date the entity will become delinquent, increasing the annual report fee to $200. If not filed by April 1, the entity will be subject to dissolution/revocation.

# STATE OF WYOMING
## Office of the Secretary of State

I, ED MURRAY, SECRETARY OF STATE of the STATE OF WYOMING, do hereby certify that the filing requirements for the issuance of this certificate have been fulfilled.

### CERTIFICATE OF ORGANIZATION

## Continent Aircraft Statutory Trust No. 2814

Accordingly, the undersigned, by virtue of the authority vested in me by law, hereby issues this Certificate.

I have affixed hereto the Great Seal of the State of Wyoming and duly executed this official certificate at Cheyenne, Wyoming on this **11th** day of **October**, **2017**.



Secretary of State

By: _____ Kit Bennett

Filed Date: 10/11/2017

**EXHIBIT**
**A-2**

Accepted LJ Nov/07/2017

I hereby certify this to be a true
and correct copy of the original.
By _____
WBAT

# CONTINENT AIRCRAFT STATUTORY TRUST NO. 2814

## DECLARATION OF TRUST

**Between**

**Aircraft Guaranty Corporation
as TRUSTEE**

**and**

**ITRC, LLC
as GRANTOR**

Copyright Notice

The format and content of the material contained herein is the proprietary information of Aircraft Guaranty Holdings LLC, and cannot be copied, reproduced, transmitted or communicated in any medium nor may any information contained hereon be faxed or transmitted over the Internet or other electronic media without the express prior written consent of Aircraft Guaranty Holdings, LLC.

DECLARATION OF TRUST & EXHIBITS                                                      Trust 2814

**EXHIBIT**
**A-3**





FILED WITH FAA
AIRCRAFT REGISTRATION BR

2011 NOV - 7 A 9 49

OKLAHOMA CITY
OKLAHOMA

# TABLE OF CONTENTS

Page No.

DEFINITIONS ....................................................................................................................... 4
    1.1    Defined Terms .......................................................................................................... 4
    1.2    Singular to Include Plural ....................................................................................... 6

ESTABLISHMENT OF TRUST ............................................................................................ 6
    2.1    Appointment of the Trustee ..................................................................................... 6
    2.2    Trust Agreement Acceptance .................................................................................. 6
    2.3    Representations and Warranties of the Grantor and Subsequent Transferor ......... 6
    2.4    Activities ................................................................................................................. 6
    2.5    Office ....................................................................................................................... 6
    2.6    Situs of Trust ........................................................................................................... 7
    2.7    Name ........................................................................................................................ 7

TRANSFER OF INTEREST ................................................................................................... 7
    3.1    Transfer ................................................................................................................... 7
    3.2    Limitations on Transfer .......................................................................................... 7
    3.3    Assignment of Right to Distributions ..................................................................... 7

CONCERNING THE BENEFICIARY ................................................................................... 7
    4.1    Restrictions on Beneficiary's Actions .................................................................... 7
    4.2    Other Expenses Liabilities of the Trust .................................................................. 8
    4.3    Beneficiary's Duties ............................................................................................... 8

CONCERNING THE TRUSTEE ............................................................................................ 9
    5.1    Status ..................................................................................................................... 10
    5.2    Acceptance of Trustee and Duties ........................................................................ 10
    5.3    Furnishing of Documents ...................................................................................... 11
    5.4    Reliance; Advice of Counsel ................................................................................. 11
    5.5    Not Acting in Individual Capacity ........................................................................ 11
    5.6    Indemnification ..................................................................................................... 11

AUTHORITY AND DUTIES OF THE TRUSTEE ............................................................. 12
    6.1    General Authority .................................................................................................. 12
    6.2    Specific Authority ................................................................................................. 12
    6.3    Trustee Duties ....................................................................................................... 13
    6.4    Limitations on Trustee's Authority ....................................................................... 13
    6.5    Accounting and Reports to the Beneficiary and Others ........................................ 14
    6.6    Signature of Returns ............................................................................................. 14
    6.7    Notice to Beneficiary ............................................................................................ 15

6.8   No Duties Except as Specified in This Agreement or in Instructions.................. 15
6.9   No Action Except Under Specified Documents or Instructions ......................... 15

COMPENSATION OF TRUSTEE.................................................................................... 15
7.1   Trustee's Fees and Expenses .......................................................................... 15
7.2   Lien on Trust Property ..................................................................................... 15
7.3   Payments to the Trustee .................................................................................. 15

INVESTMENT AND APPLICATION OF TRUST FUNDS ........................................... 16
8.1   Investment of Trust Funds .............................................................................. 16
8.2   Allocations and Distributions .......................................................................... 16
8.3   Method of Payment ......................................................................................... 17

TERMINATION OF TRUST............................................................................................ 17
9.1   Termination of Trust ....................................................................................... 17
9.2   No Termination by Grantor or Beneficiary..................................................... 17
9.3   Exercise of Trust Powers After Termination. ................................................. 17
9.4   Termination pursuant to FAA Trust Policy. ................................................... 17
9.5   Transfer of Title............................................................................................... 17

SUCCESSOR TRUSTEES AND ADDITIONAL TRUSTEES ...................................... 18
10.1  Resignation or Removal of Trustee; Appointment of Successor ..................... 18
10.2  Appointment of Additional Trustees................................................................ 19

MISCELLANEOUS........................................................................................................... 19
11.1  Supplements and Amendments ....................................................................... 19
11.2  Legal Title to Trust Property in Trustee. ........................................................ 19
11.3  Contracts Made by Trustee. ............................................................................ 19
11.4  Limitations on Rights of Others....................................................................... 20
11.5  Notices............................................................................................................. 20
11.6  Severability ..................................................................................................... 20
11.7  Separate Counterparts...................................................................................... 20
11.8  Successors and Assigns.................................................................................... 20
11.9  Headings.......................................................................................................... 20
11.10 Not Influenced by Beneficiaries who are not U.S. Citizens or Resident Aliens... 20
11.11 Governing Law................................................................................................ 20
11.12 Grantor Compliance with US Law................................................................... 21
11.13 Beneficiary Compliance with US Law ............................................................ 21
11.14 Merger of Trusts.............................................................................................. 21

SIGNATURE PAGE........................................................................................................... 22

EXHIBITS .................................................................................................... 23 thru 24

DECLARATION OF TRUST & EXHIBITS

**TRUST AGREEMENT** ("Agreement") is dated as of October 20, 2017 between ITRC, LLC, as Grantor, and Aircraft Guaranty Corporation, a Wyoming corporation, as Trustee, in order to document the creation of a trust organized and operated under the Wyoming Statutory Trust Act, Wyoming Statutes Section 4-10-101 et seq., as made applicable to the document by Section 17-23-113 of the Act. The Trustee shall hold and manage all property now or later transferred to the Trustee under this Agreement for the benefit of the beneficiaries subject to the terms, covenants, conditions, purposes and provisions of this document.

## ARTICLE I

## DEFINITIONS

**1.1** **Defined Terms.** For all purposes of this Agreement, the capitalized terms are defined as follows:

"*Aircraft*" means those certain airplanes or helicopters, including engines and parts, for which the Trustee holds title for the benefit of Beneficiary, and which shall constitute the Trust Property.

"*Agreement*" means this Trust Agreement, as it may be amended from time to time.

"*Authorized Officer*" means any officer of the Trustee who is as of the relevant time authorized to act for the Trustee in matters relating to, and binding upon, the Trust and whose name appears on a list of such authorized officers furnished by the Trustee, as such list may be amended or supplemented from time to time.

"*Beneficiary*" or "*Beneficiaries*" each means the singular or plural, and each means the Grantor and each of the successors in interest as beneficiaries of the Trust pursuant to Article III.

"*Business Day*" means any day that is not a Saturday, Sunday or any other day on which commercial banking institutions in Jackson, Wyoming, are authorized or obligated by law or executive order to be closed.

"*Code*" means the Internal Revenue Code of 1986, as it may be amended from time to time and as it may be interpreted under regulations promulgated by the United States Department of the Treasury.

"*Distribution Date*" means the first Business Day following a day on which the Trustee receives funds unless the date is changed by written consent of Beneficiary.

"*Distribution Date Statement*" means the statement described as such in Section 8.2(c) hereof.

"*FAA*" means the United States Department of Transportation, Federal Aviation Administration.

"*FAA Trust Policy*" means the (i) Notice of Proposed Policy Clarification for the Registration of Aircraft to U. S. Citizen Trustees in Situations involving Non-U. S. Citizen Trustors and Beneficiaries (published in the Federal Register on February 9, 2012 (77 FR 6694)) and (ii) Notice of Policy Clarification for the Registration of Aircraft to U.S. Citizen Trustees in Situations involving Non-U.S. Citizen Trustors and Beneficiaries (published in the Federal Register on June 18, 2013 (78 FR 36412)), as each may be modified, amended or supplemented from time to time and as may be further enforced or interpreted by the FAA.

-4-

"*FAA Trust Policy Certificate*" means the Certificate by the Beneficiary in the form attached hereto as Exhibit 2.

"*Fiscal Year*" means the period of time, regardless of duration, from the date of this Agreement through the next following December 31, and any successive calendar year from each January 1 to the following December 31.

"*Grantor*" or "*Trustor*" means Beneficiary and any successor in interest.

"*Lease*" means any lease (including subleases), operating agreement, bailment, or similar arrangement transferring possession and/or operational control of the Aircraft.

"*Operator*" means any party who (thru a written lease) exercises possession and/or operational control of the Aircraft

"*Ownership Percentage*" or "*Ownership Interest*" with respect to a Beneficiary means the proportion (expressed as a percentage) of the beneficial interest in the Trust Property held by such Beneficiary.

"*Periodic Filings*" means submissions that the Trust is required to make with any state or federal regulatory agency or under the Code.

"*Person*" means any individual, corporation, partnership, joint venture, association, company, trust, non-incorporated organization, business or other entity, institution, but not including government or any agency or political subdivision thereof.

"*Regulatory Authority*" means the FAA or any other duly authorized air authority representatives of the United States or the government where the Aircraft is habitually based or operated.

"*Transfer*" means the sale, transfer or other assignment of all of a Beneficiary's right, title and interest in all or a portion of such Beneficiary's beneficial interest in the Trust.

"*Trust*" means the trust established by this Agreement.

"*Trust Property*" means all right, title and interest in any property contributed to the Trust or otherwise acquired or held by the Trust, including without limitation all distributions, payments or proceeds thereon or thereof. Each Beneficiary shall hold beneficial title and interest only in the specific Trust Property. The Trust Property, principally, shall be a certain Aircraft.

"*Trust Property Related Agreement*" means any instrument or agreement signed by the Trustee affecting Trust Property, including, but not limited to, any lease or any operating agreement, and any financing agreements or insurance agreements.

"*Trustee*" means Aircraft Guaranty Corporation, a Wyoming corporation, not in its individual capacity, but solely as trustee under this Agreement, and any successor trustee hereunder.

1.2 **Singular to Include Plural.** Unless another meaning is clearly indicated or required by context or circumstances, either singular or plural words shall include the other.

5

## ARTICLE II

### ESTABLISHMENT OF TRUST

2.1    **Appointment of the Trustee.** The Grantor appoints the Trustee as trustee of the Trust, to have all the rights, powers and duties set forth herein. The Trustee acknowledges having received in trust from the Grantor the sum of one hundred dollars, constituting the initial Trust Property.

2.2    **Trust Agreement Acceptance.** The Trustee accepts the Trust created hereby and declares that it will hold the Trust Property in trust subject to the conditions provided in this Agreement for the use and benefit of the Trustor and any successor Beneficiary.

2.3    **Representations and Warranties of the Grantor and Subsequent Transferor.** The Grantor, and any subsequent transferor transferring property to the Trust, hereby represents and warrants to the Trustee as follows:

(a)  Upon the receipt of the Trust Property by the Trustee, under this Agreement, the Trustee will have good title to the Trust Property free and clear of any lien, encumbrance, defect or cloud in title ("Liens"). At the sole discretion of the Trustee, (i) any such Liens will be released, terminated or otherwise cured before Trustee receives title to the Trust Property, or (ii) Trustee may agree to receive title to the Trust Property subject to a title insurance policy in a form agreeable to the Trustee in its sole discretion.

(b)  This Agreement has been duly and validly authorized, executed and delivered by, and constitutes a valid and binding agreement of the Grantor and any subsequent Transferor in accordance with its terms.

2.4    **Activities.** The Trust may engage in the following activities: (i) the ownership, management, registration and leasing of Trust Property, (ii) activities which are necessary, suitable or convenient to accomplish the foregoing, and (iii) such other activities as may be required in connection with conserving the Trust Property and making distributions to the Beneficiaries.

2.5    **Registered Agent and Office.** The registered agent and street address for the Trust in the State of Wyoming is: Frontier Registered Agency Services LLC, 199 East Pearl, Suite 101, Jackson, Wyoming 83001. The address of the Trust's administrative office in the United States is POB 2549 (2058 FM 356 North), Onalaska, Texas 77360. All records of the Trust required by the Act will be maintained at the administrative office. The Trustee may at any time alter the location of the Trust's administrative office.

2.6    **Situs of Trust.** The Trust will be administered in the State of Wyoming.

2.7    **Name.** The Trust created hereby shall be known as Continent Aircraft Statutory Trust No. 2814, which name shall be used for describing this Trust under the relevant Uniform Commercial Code, and in which name the Trustee may conduct business, make and execute mortgages, leases, contracts and other instruments necessary to acquire, mortgage, lease, sell and transfer Trust Property or other property, and sue and be sued. Any Aircraft which comprises a portion of the Trust Property shall be registered with the FAA in the name of the Trustee as contemplated by Section 6.2(c) herein.

## ARTICLE III

6

Case 4:20-cv-00127-ALM-KPJ Document 416-5 Filed 09/03/22 Page 32 of 80 PageID #: 1552

## TRANSFER OF INTEREST

### 3.1 Transfer.

(a) Subject to the terms of this Agreement (including but not limited to Section 11.13 hereof), the beneficiary may Transfer all or any portion of the beneficial interest in the Trust Property. Such Transfer may be made by the registered owner in person or by an attorney-in-fact duly authorized in writing upon written instrument of Transfer (in a form satisfactory to the Trustee) and which such signature guarantees and evidence of authority of the persons signing the instrument of Transfer as the Trustee may reasonably require.

(b) As a condition precedent to any Transfer, the Trustee may require the payment of a sum sufficient to cover the payment of ay fees or other charges required to be paid in connection with such Transfer.

### 3.2 Limitations on Transfer.
No Transfer of a beneficial interest in the Trust shall be made to any person unless the Trustee determines that the transferee meets the Trustee's due diligence and vetting procedures for new customers.

### 3.3 Assignment of Right to Distributions.
A Beneficiary may, if the Trustee determines that the transferee meets the Trustee's due diligence and vetting procedures for new customers, assign all or any part of its right to receive distributions, but such assignment (in the absence of a permitted Transfer) shall cause no change in the ownership of the Ownership Interest (excepting only such assigned right to receive distributions) the Trust or the Trust Property or the Beneficiary's obligations hereunder.

## ARTICLE IV

## CONCERNING THE BENEFICIARY

### 4.1 Restrictions on Beneficiary's Actions.
Each Beneficiary shall comply with all applicable provisions of law and this Agreement in the manner necessary to effect the intention of the parties that legal title to Trust Property shall rest with the Trustee and that beneficial and equitable title shall rest in the Beneficiary according to the Ownership Percentage. Beneficiary shall enjoy all the benefits and attributes of beneficial ownership of Trust Property.

### 4.2 Other Expenses, Liabilities of the Trust.
The Beneficiary shall be liable for obligations related to the Trust Property; provided, however, if the Trust has more than one Beneficiary, each Beneficiary shall be liable solely for the Trust Property in which the Beneficiary holds a Beneficial Ownership Interest. Within ten business days of receipt of a statement delivered by the Trustee to the effect that amounts necessary to pay expenses or to meet any obligation of the Trust related to the Trust Property, and setting forth the basis for such expenses and such Beneficiary's allocable share of such expenses, each Beneficiary shall deliver to the Trustee immediately available funds in the amount of such Beneficiary's allocable share of such expenses.

The Beneficiary shall be liable for all obligations incurred by the Trustee in the performance of his duties hereunder, including, but not limited to, the payment of all fees and expenses incurred by the Trustee in the performance of his duties hereunder: provided, however, if the Trust has more than one Beneficiary, each

7

Beneficiary shall be liable solely for its allocable share of such expenses, and each Beneficiary shall deliver to the Trustee immediately available funds in the amount of such Beneficiary's allocable share of such expenses.

      **4.3     Beneficiary's Duties to Provide Information under FAA Trust Policy.** The Beneficiary acknowledges that FAA may require the owner of an aircraft to provide certain information regarding the ownership, operation and condition of the Aircraft and there may be additional requirements applicable to the Trustee as set forth in the "FAA Trust Policy", and the Beneficiary hereby covenants and agrees:

      (a)     Beneficiary has reviewed the FAA Trust Policy and will provide Trustee and the FAA with the information required by the FAA Trust Policy.

      (b)     Beneficiary will execute the FAA Trust Policy Certificate and in a form acceptable to the Trustee providing the information required therein. Beneficiary shall either monitor or cause the Aircraft to be monitored and will notify Trustee promptly if the information in the FAA Trust Policy Certificate changes. Beneficiary will also provide Trustee an updated FAA Trust Policy Certificate on an annual basis. If requested by a Regulatory Authority, Beneficiary will provide the FAA Trust Policy Certificate and related information to the Regulatory Authority within the time frame noted in such request.

      (c)     If requested by a Regulatory Authority, the Beneficiary shall provide:

      (i) the following specific information within two (2) business days: (A) information in relation to the Aircraft including but not limited to the location of maintenance and other aircraft records and where the Aircraft is normally based and operated, and (B) contact information of (x) the operator of the Aircraft (including but not limited to a phone number, email address, street address and where that person resides or has its principal place of business) and (y) any other person to whom the Regulatory Authority may look to gather information related to crew members for the Aircraft, the Aircraft's operations on specific dates, the location of the Aircraft, and maintenance and other aircraft records for the Aircraft;

      (ii) the following specific information within five (5) business days: (A) information about the operator, crew (names and pilot certificate numbers) and aircraft operations on specific dates, including information about where the Aircraft will be on a specific date in the future; (B) copies of maintenance, operating logs and other aircraft records; and (C) the current airworthiness status of the Aircraft.

      (d)     In connection with any transfer of Beneficiary's interest in the Trust (other than a collateral assignment thereof), the Transferee must comply with the terms of this Agreement and provide the Trustee a new FAA Trust Policy Certificate.

      (e)     To provide the identity and contact information for the operator of the Aircraft under any Trust Property Related Agreement, or any Lease entered into from time to time by Beneficiary, or any Lease arrangement entered into from time to time by a third party, whether or not at Beneficiary's direction.

      (f)     To require that any Trust Property Related Agreement or any Lease provide the following or similar provisions to the same effect:

Trust 2814

(i)    that all further transfers or the rights to possession and operational control of the Aircraft to a transferee must be in writing; provide the identity and contact information about the transferee; to provide an FAA Trust Policy Certificate to the extent such information is available from the transferee and the transferee's assurance that if and when the transferee is notified that the Trustee or Beneficiary has made a request, to promptly provide information related to crewmembers of the Aircraft and the Aircraft's operations on specific dates, the location of the Aircraft, and the maintenance and other records for the Aircraft;

(ii)    that each such further transferee or operator shall provide (x) its reasonable cooperation to Trustee, Beneficiary and the FAA in an expeditious manner with respect to any request from the Regulatory Authority for information and access to records of the Aircraft and (y) shall authorize the Regulatory Authority to inspect the Aircraft; and

(iii)    that each such further transferee or operator agrees that the above-referenced information and inspection requirements would be made and agreed in all subsequent or downstream Leases thereby requiring each such subsequent transferee or operator to provide such contact information in the event there has been a transfer of possession and operation to another party, to update such information when any changes occur, and to promptly confirm such information at any time upon request by Trustee or Beneficiary, to provide its reasonable cooperation to Trustee, Beneficiary and the Regulatory Authority in an expeditious manner with respect to any request from the Regulatory Authority for information and access to records of the Aircraft, and to authorize the Regulatory Authority to inspect the Aircraft.

(g)    That the information received by Trustee or Beneficiary pursuant to this Agreement or as Trustee may have in its position, may be delivered to the Regulatory Authority, without further consent or acknowledgment of the Beneficiary, or any other third party.

(h)    If the FAA amends, supplements or modifies in any way, the FAA Trust Policy, Beneficiary agrees to abide by such changes, and if necessary, agrees to amend this Agreement such that this Agreement will comply with the changes to the FAA Trust Policy.

## ARTICLE V

## CONCERNING THE TRUSTEE

5.1    **Status.** Trustee represents and warrants that it is a "citizen of the United States of America" within the meaning of Title 49, Section 40102(a) (15) of the United Stated Code.

5.2    **Acceptance of Trustee and Duties.** The Trustee accepts the trust created and accepts legal title as Trustee to the Trust Property. The Trustee agrees to perform its duties upon the terms of this Agreement. The Trustee shall not be personally liable under any circumstances, except (i) for its own willful misconduct or gross negligence, (ii) for liabilities arising from the failure by the Trustee to perform obligations expressly undertaken by it in the last sentence of Section 6.7, or (iii) for taxes, fees or other charges on, based on or measured by any fees, commissions or compensation received by the Trustee in connection with any of the transactions contemplated by this Agreement or a Trust Property Related Agreement. Pursuant to Wyoming Statute Section 14-23-105, the Trustee shall not be held to a more rigorous standard of care than

9

Trust 2814

that imposed upon directors of a business corporation under the Wyoming Business Corporation Act. In particular, but not by way of limitation:

(a)     The Trustee shall not be liable for any error of judgment made in good faith by an Authorized Officer of the Trustee;

(b)     The Trustee shall not be liable with respect to any action taken or omitted to be taken by the Trustee in good faith in accordance with the instructions of the persons holding all of the beneficial Ownership Interest.

(c)     No provision of this Agreement shall require the Trustee to expend or risk its personal funds or otherwise incur any financial liability in the performance of any of its rights or powers hereunder, if the Trustee shall have reasonable grounds for believing that repayment of such funds or adequate indemnity against such risk or liability is not reasonably assured or provided to it;

(d)     Under no circumstances shall the Trustee be personally liable for any indebtedness of the Trust under any Trust Property Related Agreement; and

(e)     The Trustee shall not be personally responsible for or in respect of the validity or sufficiency of this Agreement or for the due execution hereof by the Grantor, or for the form, character, genuineness, sufficiency, value or validity of any collateral, or for or in respect of the validity or sufficiency of a Trust Property Related Agreement.

(f)     Under no circumstance shall Trustee be liable to the Beneficiary under any provision of this Agreement or any other document, instrument or agreement entered into by the Trustee and/or the Trust with respect to the Aircraft, except and solely to the extent of any loss or claim incurred by the Beneficiary which is attributable to the gross negligence of willful misconduct of Trustee in its individual capacity or in its capacity as Trustee.

(g)     To the extent that the Trustee takes any action or inaction in accordance with any written instructions and/or advice of the Beneficiary given or in exercising its discretion under this Agreement such action or inaction shall not be deemed to be gross negligence or willful misconduct.

(h)     Trustee, in its individual capacity, shall have no liability the Beneficiary or to any other Person for any loss, claim, penalty or tax as a result of, or in connection with, the transactions contemplated by this Agreement.

(i)     Any claim by any Person other than Beneficiary resulting from or relating to the transactions contemplated by this Agreement and/or Trustee's role as Trustee hereunder shall be brought exclusively against the Trust and/or the Trustee and not against Trustee in its individual capacity, and shall be satisfied solely with and shall be limited to, the assets of the Trust Property.

(j)     To the extent that Trustee, in its capacity as Trustee hereunder, has any duties, fiduciary or otherwise to any Person, such duties are hereby eliminated and replaced solely and exclusively by the express duties of the Trustee to the Beneficiary as set forth herein.

10

Trust 2814

**5.3  Furnishing of Documents.**  The Trustee shall send to the Beneficiary, promptly upon receipt thereof, duplicates or copies of all material reports, notices, requests, demands, certificates, financial statements and any other instruments received by the Trustee hereunder (other than documents originated by or otherwise furnished to the Beneficiary).

**5.4  Reliance; Advice of Counsel.**

(a)  The Trustee shall incur no liability to anyone in acting upon any signature, instrument, notice, resolution, request, consent, order, certificate, report, opinion, bond or other document or paper believed by it to be genuine or believed by it to be signed by the proper party or parties.  The Trustee may accept a certified copy of a resolution of the board of directors or other governing body of any corporate party as conclusive evidence that such resolution has been duly adopted by such body and that the same is in full force and effect.  As to any fact or matter the manner of ascertainment of which is not specifically prescribed herein, the Trustee may for all purposes hereof rely on a certificate, signed by the president or any vice president or by the treasurer or any assistant treasurer or the secretary or any assistant secretary of the relevant party, as to such fact or matter, and such certificate shall constitute full protection to the Trustee for any action taken or omitted to be taken by it in good faith in reliance thereon.

(b)  In the exercise or administration of the Trust hereunder and in the performance of its duties and obligations under any of the Trust Property Related Agreement, the Trustee (i) may act directly or, at the expense of the Trust, through agents or attorneys pursuant to agreements entered into with any of them, and the Trustee shall not be liable for the default or misconduct of such agents or attorneys if such agents or attorneys shall have been selected by the Trustee with reasonable care; and (ii) may, at the expense of the Trust, consult with counsel, accountants and other skilled persons to be selected with reasonable care, and the Trustee shall not be liable for anything done, suffered or omitted in good faith by it in accordance with the advice or opinion of any such counsel, accountants or other skilled persons.

**5.5  Not Acting in Individual Capacity.**  In accepting the trusts hereby created the Trustee acts solely as a Trustee and not in its individual capacity, and all persons having any claim against the Trustee by reason of the transactions contemplated by this Agreement or any Trust Property Related Agreement shall look only to the Trust Property for payment or satisfaction.

**5.6  Indemnification.**  Pursuant to Wyoming Statute Section 17-23-121 the Trust shall indemnify each of its Trustee, and its officers, employees and agents and other persons designated by the Trustee to receive such indemnification, against all liabilities and expenses (including, without limitation, amounts paid in satisfaction of judgments, in compromise of as fines and penalties, and counsel fees; collectively, the "Expenses") reasonably incurred by him in connection with the defense or disposition of any action, suit or other proceeding by the Trust or any other person, whether civil or criminal , in which he may be involved or with which he may be threatened, while in office or thereafter, by reason of his being or having been such a Trustee, officer, employee, agent or otherwise designated person except as to any matter as to which he shall have been adjudicated to have acted with willful misconduct or gross negligence, provided, however, that the provisions of the Section shall not be construed to permit the indemnification of any agent of the Trust with respect to breaches by it of a contract between it and the Trust; and further provided; however, that as to any matter disposed of by a compromise payment by such Trustee, officer, employee, agent, or otherwise designated Person, no indemnification either for said payment or for any other expense shall be provided unless the Trust shall have received a written opinion from independent counsel approved by the Trustee to the effect that if the foregoing matters had been adjudicated, the defenses that could have been

11

presented on behalf of such Trustee, officer, employee, agent or otherwise designated Person were meritorious. The Trustee may make advance payments in connection with the indemnification under this paragraph provided that the indemnified Trustee, officer, employee, agent or otherwise designated person shall have given a written undertaking to reimburse the Trust in the event that it its subsequently determined that he is not entitled to such indemnification. Any action taken by, or conduct on the part of the Trustee, and officer, or an employee of the Trust in conformity with, or in good faith reliance upon, the provisions of Section 5.4 hereof shall not, for the purpose of this Declaration of Trust constitute willful misconduct, or gross negligence. For the avoidance of doubt, the foregoing indemnities shall apply to any Expenses which may result from, arise out of, or are in any manner related to the Regulatory Authority's receipt of the information set forth in Section 4.3 hereof.

## ARTICLE VI

### AUTHORITY AND DUTIES OF THE TRUSTEE

6.1     **General Authority.** The Trustee is authorized to take all actions required or permitted to be taken by it pursuant to the terms of this Agreement and any Trust Property Related Agreement.

6.2     **Specific Authority.** Beneficiary hereby confirms that the Trustee is hereby authorized and directed to take the following action, and Trustee covenants and agrees to take the following action:

(a)     Hold legal title to all Trust Property;

(b)     To accept and to return the legal title to any aircraft placed into the Trust as Trust Property by the Grantor or successor Beneficiary only from or to the Grantor or successor Beneficiary of record at the time of such title passage.

(c)     Take all actions which the Trustee deems necessary or advisable to register any Aircraft which comprises a portion of the Trust Property with the United States Federal Aviation Administration and to insure that such Aircraft maintains its registration and complies with related regulations and requirements.

(d)     Collect and dispense funds as described in this Agreement and any Trust Property Related Agreement.

(e)     Upon request by the FAA, and with the cooperation of the Beneficiary, to provide the FAA with the information required under Section 4.3. In connection with providing this information, Trustee shall have no liability in its individual capacity under this Section 6.2(e) except to the extent, and solely to the extent, that any failure to comply with any provision of this Section 6.2(e) is solely attributable to the gross negligence or willful misconduct of Trustee in its capacity as Trustee. Under no circumstance shall Trustee in its individual capacity be liable to the Beneficiary under this Section 6.2(e), or any other provision of this Agreement, if any failure to comply with the requirements of this Section 6.2(e) or any other provision of this Agreement is caused by or is otherwise attributable to any action or inaction (whether or not performed in a timely manner) of any other Person (including the Beneficiary). Under no circumstances shall Trustee, in its individual capacity, be liable to any Person (other than the Beneficiary as expressly provided in this Section 6.2(e)) for any breach of, or failure to comply with, the terms of this Section 6.2(e).

12

(f)     To immediately forward all applicable FAA airworthiness directives received by the FAA to the Beneficiary or the operator of the Aircraft, as applicable under any Trust Property Related Agreement, by the most expeditious means available.

(g)     To notify the FAA Aircraft Registry by the most expeditious means available of the Trustee's resignation or removal under Article X of this Agreement or of the termination of the Trust under Article IX of this Agreement.

(h)     To permit the inspection of the Aircraft and/or records of the Aircraft by any Regulatory Authority.

6.3     **Trustee Duties.**  It shall be the duty of the Trustee to discharge all of its responsibilities pursuant to the terms of this Agreement and to administer the Trust for the interest of the Beneficiary. Trustee shall have the right to grant to the Beneficiary the independent power to manage, control and maintain the Trust Property in all things except (i) those matters subject to the exclusive authority of the Trustee referred to in Sections 6.1 and 6.2 and (ii) the limitations set forth in Section 6.4 or as otherwise set forth herein.

6.4     **Limitations on Trustee Authority.**

(a)     Subject to paragraph (b) of this Section 6.4, and notwithstanding any other provision of this Agreement, the Beneficiary will have no rights or powers to direct, influence or control the Trustee in the performance of its duties under this Trust Agreement including matters involving the ownership and operation of the Aircraft by the Trustee, Beneficiary, or any third party. In all matters involving the ownership and operation of the Aircraft by the Trustee, Beneficiary, or any third party, Trustee shall have absolute and complete discretion in connection therewith and shall be free of any kind of influence or control whatsoever by the Beneficiary, and the Trustee shall exercise its duties under this Trust Agreement in connection with matters involving the ownership and operation of the Aircraft by the Trustee, Beneficiary, or any third party, as Trustee, in its discretion, shall deem necessary to protect the interests of the United States, notwithstanding any countervailing interest of any foreign power which, or whose citizens, may have a direct or indirect interest in the Beneficiary and any such action by the Trustee shall not be considered malfeasance or in breach of any obligation which the Trustee might otherwise have to the Beneficiary; provided, however, that subject to the foregoing limitations, the Trustee shall exercise its discretion in all matters arising under this Agreement, including the ownership and operation of the Aircraft by the Trustee, Beneficiary, or any third party, with due regard for the interests of the Beneficiary.  Notwithstanding the foregoing, and for the avoidance of doubt, the parties acknowledge that the Trustee shall not be in operational control of the Aircraft at any time during the term of this Trust.

(b)     Subject to the requirements of the preceding paragraph (a), the Trustee shall endeavor to seek the prior written consent of the Beneficiary prior to entering into any agreement to: (i) sell, mortgage, pledge or otherwise dispose of the Aircraft or other assets held in the Trust relating thereto; or (ii) amend any Trust Property Related Agreement, any Lease, or other document (other than a document over which Trustee has absolute and complete discretion established under Section 6.4(a) or give any consents thereunder except as otherwise expressly provided for herein. With respect to intent of this paragraph, it is not to be interpreted that the Trustee must have the written consent of beneficiary to act with respect to the sale, disposal, or encumbrance actions contained herein; however, Trustee reserves the right to require

13

the Beneficiary to give written consent to act in such matters if Trustee determines that such written consent is in the best interest of the Grantor and/or Beneficiary and/or Trustee.

(c)     The purpose of this Section 6.4 is to assure that (i) the Aircraft shall be controlled with respect to such matters as are described in Section 6.4(a) of this Agreement by a citizen of the United States (as defined in Sections 5.1 and 10.1(c) hereof), (ii) the Beneficiary shall have no power to influence or control the exercise of the Trustee's authority with respect to such matters, and (iii) Trustee shall be able to give the affidavit required by Section 47.7(c)(2)(iii) of the Federal Aviation Regulations. Therefore, Section 6.4 shall be construed in furtherance of the foregoing purpose.

(d)     In creating and accepting the Trust, Beneficiary and Trustee each acknowledges that in case of conflict, the limitations in Sections 6.4 and 11.10 of this Agreement are paramount and superior to any other terms and conditions in this Agreement, or in any other document or documents including without limitation, under any Trust Property Related Agreement, or any Lease to which Beneficiary and Trustee are a party in respect of the Trust. It is understood and agreed by the parties hereto that nothing in this Agreement shall relieve any of the Beneficiary, Trustee or any other Person of any obligation to comply with any law, rule or regulation of any governmental authority with respect to the ownership and operation of the Aircraft.

6.5     **Accounting and Reports to the Beneficiary and Others.**  The Trustee shall (i) maintain or cause to be maintained the financial books of the Trust relating to the receipt and disbursement of all funds received or disbursed by the Trustee, and (ii) deliver to each Beneficiary within 90 days of the end of each Fiscal Year, or more often, as may be required by applicable law, a copy of the annual financial statement of the Trust for such Fiscal Year and a statement in such form and containing such information and requirements as the beneficiary has appraised the Trustee in writing are necessary and appropriate to enable each Beneficiary to prepare its tax returns.

6.6     **Signature of Returns.**  The Trustee shall sign on behalf of the Trust any tax returns, annual return, and other Periodic Filings of the Trust, unless applicable law requires a Grantor or Beneficiary to sign such documents, in which case, the designated person shall sign such document.

6.7     **Notice to Beneficiary.**  In the event that the Trustee is unable to decide between alternative courses of action, or is unsure as to the application of any provision of this Agreement or any Trust Property Related Agreement, or such provision is ambiguous as to its application, or is, or appears to be, in conflict with any other applicable provision, or in the event that this Agreement or any Trust Property Related Agreement permits any determination by the Trustee or is silent or is incomplete as to the course of action which the Trustee is required to take with respect to a particular set of facts, the Trustee may give notice (in such form as shall be appropriate under the circumstances) to the Beneficiary requesting instructions and, to the extent that the Trustee shall have acted or refrained from acting in good faith in accordance with any instructions received from the holder of all of the Beneficial Ownership Interest, the Trustee shall not be liable on account of such action or inaction to any person. If the Trustee shall not have received appropriate instructions within ten days of such notice (or within such shorter period of time as may be specified in such notice) the Trustee may, but shall be under no duty to, take or refrain from taking such action, not inconsistent with this Agreement or the Trust Property Related Agreement, as the Trustee shall deem to be in the best interests of the Beneficiary, and the Trustee shall have no liability to any person for such action or inaction.

14

Trust 2814

**6.8** **No Duties Except as Specified in This Agreement or in Instructions.** The Trustee shall not have any duty or obligation to manage, make any payment in respect of, record or otherwise deal with the Trust Property, or to otherwise take or refrain from taking any action under, or in connection with, any document contemplated hereby to which the Trustee is a party, except as expressly provided by the terms of this Agreement, or any Trust Property Related Agreement, and no implied duties or obligations shall be read into this Agreement against the Trustee. Trustee agrees that it will deal with the Aircraft or any other part of the Trust Property in accordance with the terms of this Agreement and any Trust Property Related Agreement. The Trustee nevertheless agrees that it will, at its own cost and expense, promptly take all action as may be necessary to discharge any liens on any part of the Trust Property which result from claims against the Trustee personally that are not related to the ownership or the administration of the Trust Property or the transactions contemplated by the Trust Property Related Agreement.

**6.9** **No Action Except Under Specified Documents or Instructions.** The Trustee shall not manage, control, use, sell, dispose of or otherwise deal with any part of the Trust Property except (i) in accordance with the powers granted to and the authority conferred upon the Trustee pursuant to this Agreement, (ii) in accordance with instructions delivered to the Trustee pursuant to Section 6.7 hereof, and (iii) as required by law.

## ARTICLE VII

## COMPENSATION OF TRUSTEE

**7.1** **Trustee's Fees and Expenses.** The Trustee shall receive compensation for its services as set forth on the fee schedule attached as Exhibit 1 or as separately agreed between the Trustee and Beneficiary(s). The Trustee shall be entitled to be reimbursed for its reasonable expenses and disbursements, including, without limitation, the reasonable compensation, expenses and disbursements of such agents, representatives, experts and counsel as the Trustee may employ in connection with the exercise and performance of its rights and duties under this Agreement and Trust Property Related Agreement.

**7.2** **Lien on Trust Property.** The Trustee shall have and is hereby granted a lien on the Trust Property, and the represented Ownership Interest, for any compensation or expenses and indemnity due, and this lien shall be prior to all other liens; provided any such lien shall automatically terminate upon distribution or removal of the Aircraft from the Trust Property.

**7.3** **Payments to the Trustee.** Any amounts paid to the Trustee from the Trust Property shall be deemed not to be part of the Trust Property immediately after such payment.

## ARTICLE VIII

## INVESTMENT AND APPLICATION OF TRUST FUNDS

**8.1** **Investment of Trust Funds.** Income with respect to and proceeds of the Trust Property which are received by the Trustee more than one day prior to a Distribution Date shall be invested and reinvested by the Trustee. All such investments shall have a maturity date no later than the Business Day preceding the next Distribution Date unless they are redeemable at the option of the Trustee prior to maturity. Interest earned from such investment and reinvestment shall be credited to the Trust Property.

15

## 8.2 Allocations and Distributions.

(a)     Income with respect to and proceeds of Trust Property held by the Trustee on a Distribution Date shall be distributed by the Trustee on such Distribution Date in the following order:

(i)     first, pay any amounts due to the Trustee under this Agreement;

(ii)     second, to pay any amounts then due to any person under any Trust Property Related Agreement; and

(iii)     third, to pay any other expenses associated with the Trust Property.

(b)     Income and proceeds with respect to the Trust Property held by the Trustee on a Distribution Date after the application of funds pursuant to Section 8.2(a) shall be distributed on such Distribution Date to the Beneficiaries holding beneficial Ownership Interest in the Trust Property, in proportion to their respective Ownership Percentages, determined as of the close of business on the Business Day immediately preceding such Distribution Date, and adjusted to take into consideration the duration that the Beneficiary has held the Ownership Percentage. All payments to be made under this Agreement by the Trustee shall be made only from the income and proceeds of the Trust Property and only to the extent that the Trustee has received such income and proceeds.

(c)     With each distribution to a Beneficiary pursuant to Section 8.2(b) above, the Trustee shall deliver a Distribution Date Statement setting forth, for the period since the preceding Distribution Date:

(i)     income and proceeds received by the Trustee with respect to the Trust Property;

(ii)     amounts paid to the Trustee;

(iii)     amounts paid to any person pursuant to a Trust Property Related Agreement; and

(iv)     amounts paid for other expenses associated with the Trust Property.

(d)     Each net item of income, gain, loss, deduction, credit or allowance for any fiscal year, or applicable portion thereof, shall be allocated to the Beneficiary in the ratio of its Ownership Percentage in the Trust. In the event that any tax is imposed on the Trust, such tax shall be charged against amounts otherwise distributable to the Beneficiaries on a pro rata basis according to the Ownership Percentage. The Trustee is hereby authorized to retain from amounts otherwise distributable to the Beneficiaries sufficient funds to pay or provide for the payment of, and to actually pay, such tax as is legally owed by the Trust (but such authorization shall not prevent the Trustee from contesting any such tax in appropriate proceedings, and withholding payment of such tax, if permitted by law, pending the outcome of such proceedings).

8.3     Method of Payment. All amounts payable to a Beneficiary pursuant to this Agreement shall be paid by the Trustee to such Beneficiary or a nominee therefor by check payable to such Beneficiary, mailed first class to the address of such Beneficiary appearing on the register maintained pursuant to Section 3.2, or by crediting the amount to be distributed to such Beneficiary to an account maintained by such Beneficiary

16

with the Trustee or by transferring such amount by wire transfer in immediately available funds to a banking institution with bank wire transfer facilities for the account of such Beneficiary, as instructed in writing from time to time by such Beneficiary. The Trustee may require a Beneficiary to pay any wire transfer fees incurred in connection with any wire transfer made to such Beneficiary.

## ARTICLE IX

## TERMINATION OF TRUST

**9.1     Termination of Trust.** The Trust created hereby shall terminate and the Trust Property shall be distributed to the Beneficiary in accordance with their respective Ownership Percentages, and this Agreement shall be of no further force or effect, upon the earliest of (i) the final distribution by the Trustee of all moneys or other property or proceeds of the Trust Property in accordance with the terms of this Agreement and the Trust Property Related Agreement, (ii) a decision by the Trustee that termination of the Trust will be in the best interests of the Beneficiary, or (iii) the removal or resignation of the Trustee without the appointment of a successor Trustee.  Otherwise the Trust shall have perpetual existence pursuant to Wyoming Statute Section 17-23-112.

**9.2     No Termination by Grantor or Beneficiary.** Except as provided in Sections 9.1 and 9.4, neither the Grantor nor the Beneficiary shall be entitled to terminate or revoke the Trust established hereunder.

**9.3     Exercise of Trust Powers After Termination.** After termination of the Trust as provided in Section 9.1, Trustee shall have no authority or power to act on behalf of the Trust.

**9.4     Termination pursuant to FAA Trust Policy.** The Beneficiary agrees that it is required to abide by the FAA Trust Policy, and failure to do so, or to provide the information set forth in Section 4.3 hereof, shall constitute a breach by Beneficiary of this Agreement.  Under such circumstance, Trustee, in its sole discretion, may pursuant to Article X resign or terminate this Trust in accordance with the terms of this Agreement and the Trust Property Related Agreement and distribute the Trust Property (less any fees or other costs owed to the Trustee) in accordance with the respective Ownership Percentages. Prior to any resignation or termination, Trustee shall provide a thirty (30) day written notice to Beneficiary and all entities that are parties to any Trust Property Related Agreements.  Upon such termination, this Agreement shall be of no further force or effect.

**9.5     Transfer of Title.** Upon any termination of the Trust pursuant to the provisions of Article IX hereof, Trustee shall convey title of the Trust Property to Beneficiary, unless otherwise agreed to in the sole discretion of the Trustee. UNLESS OTHERWISE AGREED TO IN THE SOLE DISCRETION OF THE TRUSTEE, SUCH TITLE SHALL BE CONVEYED IN AN "AS-IS, WHERE IS" CONDITION WITH ALL FAULTS, WITHOUT ANY REPRESENTATION OR WARRANTY OF ANY KIND OR NATURE MADE BY TRUSTEE, INCLUDING WITHOUT LIMITATION, ANY WARRANTY OF TITLE, ANY EXPRESS OR IMPLIED (STATUTORY OR OTHERWISE) WARRANTY OF MERCHANTABILITY, CONDITION, QUALITY, AIRWORTHINESS, DURABILITY, DESIGN, VALUE, OPERATION, FITNESS FOR USE, OR SUITABILITY OF THE TRUST PROPERTY, INCLUDING ANY COMPONENT THEREOF, OR ANY OTHER ASSET IN ANY RESPECT WHATSOEVER OR IN CONNECTION WITH THE TRUST PROPERTY OR FITNESS FOR ANY PARTICULAR PURPOSE.

## ARTICLE X

17

### SUCCESSOR TRUSTEES AND ADDITIONAL TRUSTEES

#### 10.1    Resignation or Removal of Trustee; Appointment of Successor.

(a)    The Trustee may resign and appoint a successor Trustee at any time by giving the Beneficiary at least 30 days prior written notice before the effective date of Trustee's resignation given in the notice, such resignation to be effective upon the acceptance of appointment by a successor Trustee under Section 10.1(b) below or on the effective date of resignation stated in the Trustee's thirty day written notice to the Beneficiary if a successor Trustee has not been appointed by the Beneficiary or a court of competent jurisdiction. In addition, the Beneficiary holding one hundred percent of the Ownership Percentage, at any time, may remove the Trustee for cause only by an instrument in writing delivered to the Trustee - subject to the regulatory limitation that non-U.S. citizens not hold more than 25 percent of the aggregate power to remove Trustee - such removal to be effective upon the acceptance of appointment by a successor Trustee under Section 10.1(b) and 10.1(c), below. Such writing must be signed by an authorized person or persons. Said cause shall be determined by Wyoming District Court, 9th Judicial District or if applicable a United States District Court, District of Wyoming or other court with jurisdiction over the Trustee and may include willful misconduct or gross negligence, but cause will not include the refusal of Trustee to act or refrain from acting in a manner that (i) would violate the laws, regulations, court orders, or lawful directions of a government agency; (ii) is outside the scope of Trustee's authority, (iii) is contrary to Trustee's obligations hereunder; or (iv) is the subject of a mere disagreement between Trustee and Beneficiary. In case of the resignation or removal of the Trustee, the Beneficiary may appoint a successor Trustee by an instrument signed by the holder(s) of one hundred percent of the Ownership Percentage. If a successor Trustee shall not have been appointed within 30 days after the giving of written notice of such resignation or the delivery of the written instrument with respect to such removal, the Trustee or the Beneficiary may apply to any court of competent jurisdiction to appoint a successor Trustee to act until such time; if any, as a successor Trustee shall have been appointed as provided above. Any successor Trustee so appointed by such court shall immediately and without further act be superseded by any successor Trustee appointed as above provided within one year from the date of the appointment by such court.

(b)    Any successor Trustee, however appointed, shall execute and deliver to the predecessor Trustee an instrument accepting such appointment, and thereupon such successor Trustee, without further act, shall become vested with all the estates, properties, rights, powers, duties and trust of the predecessor Trustee in the Trust with like effect as if originally named the Trustee; but nevertheless, upon the written request of such successor Trustee, such predecessor Trustee shall execute and deliver an instrument transferring to such successor Trustee all the estates, properties, rights, powers, duties and trusts of such predecessor Trustee, and such predecessor Trustee shall duly assign, transfer, deliver and pay over to such successor Trustee all moneys or other property then held or subsequently received by such predecessor Trustee upon the Trust.

(c)    If the successor Trustee is not a United States citizen, then the successor Trustee shall take appropriate action to change the registration of title to Aircraft included as Trust Property to the country in which the successor Trustee qualifies for registration. For purposes of this Agreement, United States citizen means (i) an individual who is a citizen of the United States, (ii) a partnership of which each member is such an individual, or (iii) a corporation or association created or organized under the laws of the United States or of any state, territory, or possession of the United States, of which the president and two-thirds or more of the board of directors and other managing officers thereof are such individuals and in which at least seventy-

18

five percent (75%) of the voting interest is owned or controlled by persons who are citizens of the United States or of one of its possessions,

(d)     Any corporation or limited liability company into which the Trustee may be merged or converted or with which it may be consolidated, or any corporation resulting from any merger, conversion or consolidation to which the Trustee shall be a party, or any corporation to which substantially all of the corporate-trust business of the Trustee may be transferred, shall, subject to the terms of Section 10.1(c), be the Trustee under this Agreement without further act.

10.2     **Appointment of Additional Trustees.** At any time or times for the purpose of meeting any legal requirements of any jurisdiction in which any part of the Trust Property may at the time be located, the Trustee, by an instrument in writing, may appoint one or more individuals or corporations to act as separate trustee of all or any part of the Trust Property to the full extent that local law makes it necessary or appropriate for such separate trustee or separate trustees to act alone.

## ARTICLE XI

### MISCELLANEOUS

11.1     **Supplements and Amendments.** This Agreement may be amended only by a written instrument signed by the Trustee and all of the Beneficiaries at the time of such amendment; provided, however, that if, in the opinion of the Trustee, any instrument required to be so executed adversely affects any right, duty or liability of, or immunity or indemnity in favor of, the Trustee under this Agreement or any of the documents contemplated hereby to which the Trustee is a party, or would cause or result in any conflict with or breach of any terms, conditions or provisions of, or default under, the charter documents or by-laws of the Trustee or any document contemplated hereby to which the Trustee is a party, the Trustee may in its sole discretion decline to execute such instrument.

11.2     **Legal Title to Trust Property in Trustee.** The Trustee shall have legal title to the Trust Property and Beneficiary shall only have an undivided beneficial and equitable Ownership Interest therein. No transfer, by operation of law or otherwise, of any right, title or interest of the Beneficiary in and to its undivided beneficial interest in the Trust Property shall operate to terminate this Agreement or the trust or entitle any successor transferee to an accounting or to the transfer to it of legal title to any part of the Trust Property.

11.3     **Contracts Made by Trustee.** Upon receipt of written consent of the Beneficiaries, the Trustee has authority to execute any Trust Property Related Agreement and any documents provided for therein, and such action shall bind the Beneficiary and shall be effective to obligate the Trustee and the Beneficiary to the extent set forth in such Trust Property Related Agreement. No third party shall be required to inquire as to the authorization, necessity, expediency or regularity of such action or as to the application of any proceeds by the Trustee.

11.4     **Limitations on Rights of Others.** Nothing in this Agreement, whether express or implied, shall be construed to give to any person other than the Trustee and the Beneficiary any legal or equitable right, remedy or claim in the Trust Property or under or in respect of this Agreement or any covenants, conditions or provisions contained herein.

19

Trust 2814

**11.5    Notices.** Unless otherwise expressly specified or permitted by the terms hereof, all notices shall be in writing and delivered by hand or mailed by certified mail, postage prepaid, if to the Trustee, addressed to: Aircraft Guaranty Corporation, POB 2549 (2058 FM 356 North), Onalaska, Texas 77360, or to such other address as the Trustee may have set forth in a written notice to the Beneficiary; and if to a Beneficiary, addressed to it at the address set forth for the Beneficiary in the register maintained by the Trustee.

**11.6    Severability.** Any provision of this Agreement which is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof, and any such prohibition or unenforceability in any jurisdiction shall not invalidate or render unenforceable such provision in any other jurisdiction.

**11.7    Separate Counterparts.** This Agreement may be executed by the parties hereto in separate counterparts, each of which when so executed and delivered shall be an original, but all such counterparts shall together constitute but one and the same instrument.

**11.8    Successors and Assigns.** All covenants and agreements contained herein shall be binding upon, and inure to the benefit of, the Trustee and its successors and assigns, and each Beneficiary and its successors and permitted assigns, all as herein provided. Any request, notice, direction, consent, waiver or other instrument or action by a Beneficiary shall bind the successors and assigns of such Beneficiary.

**11.9    Headings.** The headings of the various articles and sections are for convenience of reference only and shall not define or limit any of the terms or provisions.

**11.10    Not Influenced by Beneficiaries or any other persons who are not U.S. Citizens or Resident Aliens.** Notwithstanding anything to the contrary in this Agreement, the Trustee and the Beneficiary hereby agree as follows:

If persons who are neither U.S. Citizens or resident aliens have the power to direct or remove the Trustee, either directly or indirectly through the control of another person, those persons shall not have more than twenty-five percent (25%) of the aggregate power to direct or remove the Trustee.

**11.11    Governing Law.** This Declaration of Trust is adopted by the Grantor and Trustee and delivered in the State of Wyoming and with reference to the laws thereof, and the rights of all parties and the validity, construction and effect of every provision hereof shall be subject to and construed according to the laws of the said State of Wyoming.

**11.12    Grantor Compliance with US Law.** Grantor affirms that it is in full compliance with all laws and regulations applicable to it including, without limitation, (a) ensuring that no person who owns a controlling interest in or otherwise controls Grantor is or shall be: (1) listed on the Specially Designated Nationals and Blocked Person List maintained by the Office of Foreign Assets Control **("OFAC")**, Department of the Treasury, and/or any other similar lists maintained by OFAC pursuant to any authorizing statute, Executive Order or regulation or (2) a person designated under Section 1(b), (c), or (d) of Executive Order No. 13224 (September 23, 2001), any related enabling legislation or any other similar Executive Orders.

**11.13    Beneficiary Compliance with US Law.** Each Beneficiary acknowledges that the Aircraft may be subject to restrictions involving the export and re-export of the same pursuant to the laws and regulations

<div align="center">20</div>

of the United States, that the laws and regulations of the United States restrict the transfer of any interest in the Aircraft to certain persons (collectively, the "Export Restrictions") and that such Export Restrictions may apply to the Aircraft even after the Aircraft has been physically removed or transferred from the United States. Beneficiary acknowledges that Trustee, as an entity formed in the United States, may be subject to the laws and regulations of the United States, including, without limitation, those promulgated by OFAC and the Financial Crimes Enforcement Network (collectively, the "U.S. Laws"). Beneficiary agrees that it will comply with, and will not knowingly permit the Aircraft to be used in a manner that is contrary to Export Restrictions and U.S. Laws applicable to (i) the Beneficiary; (ii) the Trustee, or (iii) the Aircraft, including the acquisition, possession, operation, use, maintenance, leasing, subleasing, or other transfer or disposition thereof. Beneficiary agrees that it will not permit the assignment of this Agreement, any transfer of the beneficial interest created by this Agreement, or a lease or sublease of the Aircraft (collectively, a "Transfer") without Trustee's prior written approval of such Transfer. Trustee shall not unreasonably delay its decision on a request for approval from Beneficiary nor shall it unreasonably withhold its approval to such request. To facilitate Trustee's evaluation of the Transfer, Beneficiary agrees that it will use reasonable efforts to provide Trustee with any information reasonably requested by the Trustee regarding the Transfer, the proposed transferee and/or the ownership of the proposed transferee. Trustee's decision to approve or disapprove the proposed Transfer shall not be deemed to have been unreasonably delayed if Trustee has not obtained the information it needs to make the decision, and Trustee's approval of the proposed Transfer shall not be deemed to have been unreasonably withheld if Trustee has determined that the Transfer will or may reasonably be expected to put Trustee at risk of violating any laws or regulations applicable to Trustee including, without limitation, the Export Restrictions and/or U.S. Laws. If Trustee withholds approval of a Transfer as set forth herein, then (i) subject to the terms of this Agreement, Trustee may resign and (ii) Trustee shall have no obligation to consent to or facilitate a Transfer while Trustee's resignation is pending.

**11.14 Merger of Trusts.** After notice to the Beneficiaries, a Trustee may combine two (2) or more trusts into a single trust or divide a trust into two (2) or more separate trusts, if the result does not impair the rights of any beneficiary or adversely affect achievement of the purposes of the trust.

**[SIGNATURE PAGE TO FOLLOW]**

\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\ REMAINDER OF THIS PAGE LEFT BLANK ////////////////////////////

21

**IN WITNESS WHEREOF**, the parties have caused this Trust Agreement for Continent Aircraft Statutory Trust No. 2814 to be duly executed by their respective officers, as of the day and year first above written.

For: **Aircraft Guaranty Corporation, Trustee**

By: _____

Debbie Mercer-Erwin, President

For: **ITRC, LLC, Grantor**

By: _____

Mr. Rodolfo Javier Camarillo Montemayor, Manager

22

## EXHIBIT I TO
## TRUST AGREEMENT

### SCHEDULE OF TRUSTEE FEES

Fees and charges to be paid by the Trust to Aircraft Guaranty Holdings, on behalf of Aircraft Guaranty Corporation as Trustee of the Trust known as the Continent Aircraft Statutory Trust No. 2814 created by the execution of the Trust Agreement dated _____, shall be in the annual amount of $_____ U.S. Dollars, or as agreed between the Trustee and the Beneficiary, are subject to annual adjustment at the discretion of the Trustee upon provision of 90 days notice to the Beneficiary.

The aforesaid annual fees will be prorated from the date legal title to the aircraft is acquired by the Trust to December 31, and will be billed on or after the date legal title to the aircraft is acquired. Annual fees are billed during the 4th quarter of each year for service to be rendered in the coming calendar year, and are payable in advance by February 15th for services to be rendered in the coming calendar year during the term of the Trust.

Accounts that are outstanding as of May 15th will be declared in default, non-regulatory administrative services will be suspended, a late payment collection fee will be applied to the outstanding balance, and a lien may be filed at Trustee's discretion with the FAA or a local court against the aircraft title.

Accounts that are outstanding as of July 15th will be subject to commencement of resignation proceedings by the Trustee.

Accepted and acknowledged this ____ day of _____, 20_____.


ITRC, LLC, Grantor

By: _____
Name: _____
Title: _____

23

Trust 2814

EXHIBIT 2 TO
TRUST AGREEMENT

FAA TRUST POLICY CERTIFICATE

The undersigned, _____; state(s) as follows & Checks the box as applicable:

1. He/She/They ( ) is/are the "Beneficiary(s)" or ( ) is a duly elected and qualified officer or authorized representative of _____ who/whom is/are the "Beneficiary(s)".

2. The Beneficiary(s) is/are the holder(s) of the beneficial interest under the Continent Aircraft Statutory Trust No. 2814, a trust organized under the laws of the State of Wyoming (the "Trust") formed pursuant to the Trust Agreement dated October 11, 2017 (the "Trust Agreement").

3. The Trustee is the applicant for registration of one (1) _____ (make) _____ (model) aircraft bearing manufacturer's serial number _____ and U.S. Registration No. _____ (the "Aircraft").

4. As required pursuant to the Trust Agreement, Beneficiary confirms as follows:

a. the identity and contact information (address, phone number and email address) of the person or entity normally operating, or maintaining the operations of the Aircraft is as follows (Attach Appendix sheets to display information as needed):

Name:

Title:

Company:

Street Address:

Phone Number:

Email:

State/Jurisdiction of Incorporation:

Principal Place of Business (city/state/country):

b. the location of the aircraft maintenance and other records is as follows;

c. location where the Aircraft is normally based & the ICAO airport identifier are:

d. the jurisdictions where the aircraft is normally operated are as follows:

e. the names, crew position, & pilot certificate numbers for the pilots who will normally operate the Aircraft are as follows:

For: _____, (Beneficiary)

By: _____

Name: _____        Title: _____

24

Trust 2814

FILED WITH FAA
AIRCRAFT REGISTRATION BR

2011 NOV -7 A 9 49

OKLAHOMA CITY
OKLAHOMA

Accepted LJ Nov/07/2017

## AFFIDAVIT AND CERTIFICATE OF CITIZENSHIP

STATE OF OKLAHOMA
COUNTY OF OKLAHOMA

BEFORE ME, the undersigned authority, personally appeared Kayleigh Moffett, who being by me duly sworn, deposes as follows:

My name is Kayleigh Moffett. I am over 18 years of age, of sound mind, capable of making this Affidavit, and personally acquainted with the facts stated below.

I am Secretary of Aircraft Guaranty Corporation, a corporation organized under the laws of the State of Wyoming, which is Trustee under a Wyoming Statutory Trust Agreement dated *October 20, 2017,* titled Continent Aircraft Statutory Trust No. 2814 ("Trust Agreement").

I hereby certify that Aircraft Guaranty Corporation, as Trustee is a citizen of the United States and that ITRC, LLC, as Beneficiary(s), is/are not a citizen of the United States, and that I know of no reason, situation or relationship as a result of which the beneficiary(s) or any other persons under the Trust Agreement who are not citizens or resident aliens of the United States together would have more than 25% of the aggregate power to influence or limit the exercise of Aircraft Guaranty Corporation's authority as Trustee under the Trust Agreement.

I further certify that other than the documents filed with the FAA in connection with this Affidavit, no other operating agreements, other side agreements, or arrangements exist between the Trustee and the beneficiary(s) that would modify or alter the terms of the Trust Agreement.

This affidavit is submitted in fulfillment of the requirement stated in Part 47 of the Federal Aviation Regulations § 47.7(c)(2).

For: Aircraft Guaranty Corporation, Trustee

By: _____

Kayleigh Moffett, Secretary

SUBSCRIBED AND SWORN TO BEFORE ME THIS 7TH DAY OF NOVEMBER, 2017

_____
Notary Public - State of Oklahoma

TONYA BUTLER
NOTARY
#16002661
EXP. 03/11/20
PUBLIC
STATE OF OKLAHOMA

EXHIBIT
A-4

FILED WITH FAA
AIRCRAFT REGISTRATION BR

2011 NOV 7 A 9 49

OKLAHOMA CITY
OKLAHOMA





U.S. Department
of Transportation
**Federal Aviation
Administration**

Office of the Aeronautical Central
Regional Counsel

Mike Monroney Aeronautical Center
6500 S. MacArthur Blvd., HQ Rm 251
Oklahoma City, OK  73169
Phone:  405-954-3296
Facsimile:  405-954-4676
Office e-mail:  9-AMC-007-Aeronautical-
Center-Counsel@faa.gov.

October 30, 2017

Scott D. McCreary, Esq.
McAfee & Taft, P.C.
10th Floor, Two Leadership Square
211 North Robinson
Oklahoma City, OK  73102-7103

Dear Mr. McCreary,

<div align="center">

**Civil Aircraft N986MA**

</div>

As requested in your letter of October 27, 2017, this office has reviewed the following documents, reflecting changes to the standard form currently being submitted to support registration of aircraft in the name of Aircraft Guaranty Corporation, as Owner Trustee:

1) Form of Continent Aircraft Statutory Trust Agreement dated October 20, 2017 ("**Trust Agreement**") between Owner Trustee and ITRC, LLC ("**Beneficiary**");

2) Form of Aircraft Dry Lease Agreement dated October 20, 2017 ("**Lease Agreement**") between Owner Trustee and Camro Transportes, SA de CV, as Lessee; and

3) Form of Affidavit of Citizenship (the "**Trustee Affidavit**") by the Owner Trustee.

In view of the foregoing, our opinion is requested that:

a) The Trust Agreement and other documents provided are in compliance with the FAA Policy Clarification;

b) The Owner Trustee may register the Aircraft in its name, under Sections 44102 and 44103 of the Act upon the filing with the FAA of duly executed counterparts of the Trust Agreement and Trustee Affidavit, together with the appropriate title documents and AC Form 8050-1 Aircraft Registration Application;

c) The Trust Agreement satisfies the requirements of 14 C.F.R. §§ 47.7(c)(2)(i) and 47.7(c)(3);



d) The form of the Affidavit satisfies the requirements of 14 C.F.R. § 47.7(c)(20(iii); and

e) The Lease Agreement does not affect the relationship under the trust Agreement in a manner that adversely impacts the eligibility of the Aircraft for United States Registration.

Based on our review, it appears that the legal title to the Aircraft will be held by the Owner Trustee, the applicant for registration, subject to the terms and conditions of the Statutory Trust Agreement. The Trustee represents that, while it is a citizen of the United States, the Beneficiary is not.

We have review both the updated Statutory Trust Agreement and the new Affidavit for compliance with 14 C.F.R. § 47.7(c). Upon review, it appears that the Affidavit contains all of the representations required by § 47.7(c)(2)(iii) and will be legally sufficient when executed.

Regarding the form of the updated Statutory Trust Agreement, in Article 2.2 the Owner Trustee accepts the Trust and agrees to hold the Trust Estate in accordance with the terms of the Agreement. Article 10.1 allows the Owner Trustee to be removed only for specific cause. Article 6.2(c) directs the Owner Trustee to take necessary action to effect registration of the Aircraft with the FAA. Article 11.10 complies with the regulatory requirements of 14 C.F.R. § 47.7 by prohibiting persons who are neither U.S. citizens or resident aliens from having more than 25 percent of the aggregate power to direct or remove the Owner Trustee. Article 11.11 provides that the Agreement shall be governed under Wyoming law.

It is noted that Section 4.3(c)(1) and (ii) reflect the information expectations of Section B of the FAA Policy Clarification effective September 16, 2013.

The Aircraft Dry Lease Agreement between the Owner Trustee and lessee is not in the nature of an operating agreement. However, it has been reviewed and determined to be a typical dry lease and not adverse to any trust relationship.

Accordingly, it is our opinion that the updated forms for the Trust Agreement, Aircraft Dry Lease Agreement, and the Owner Trustee's Affidavit and Certificate of Citizenship satisfy the respective requirements of §§ 47.7(c)(2)(i) and 47.7(c)(2)(iii). Therefore, provided there is sufficient evidence of ownership, upon proper application under 14 C.F.R. Part 47, the Aircraft will be eligible for United States registration in the name of Aircraft Guaranty Corporation as Owner Trustee. Your updated forms satisfy FAA's Policy Clarification regarding non-citizen trust agreements.

Your requests for opinion (a) through (e) of your letter of October 27, 2017, are all answered in the affirmative.

Sincerely,

A. Lester Haizlip
Aeronautical Central Regional Counsel
Federal Aviation Administration

JAMES M WEBSTER   Digitally signed by JAMES M WEBSTER
                  Date: 2017.10.30 15:19:36 -05'00'

By:   _____

James M. Webster
Senior Attorney
Phone:  405-954-1372
Facsimile:  405-954-4676
e-mail:  james.m.webster@faa.gov

Accepted LJ Nov/07/2017

I hereby certify this to be a true
and correct copy of the original.
By
WBAT

AIRCRAFT GUARANTY
— OWNER TRUSTEE

No interest herein may be created in the aircraft subject hereto through the transfer and/or possession hereof.

To the extent, if any, this instrument constitutes chattel paper under the Uniform Commercial Code as in effect in any applicable jurisdiction, no security other than the counterpart containing a receipt therefor executed by Lessor.

# AIRCRAFT DRY LEASE AGREEMENT

This Aircraft Dry Lease Agreement (this "Agreement") is entered into effective as of the Effective Date (as defined below), between Aircraft Guaranty Corporation, a Wyoming corporation ("AGC or Lessor"), in its capacity as Trustee for Continent Aircraft Statutory Trust No. 2814 (the "Trust"), and Camro Transportes, SA de CV, an entity organized under the laws of Mexico, ("Lessee") (Lessor and Lessee and any approved Sub-Lessee are referred to each as a "Party" and collectively as the "Parties").

WHEREAS, AGC as trustee of the Trust is the registered owner of the Aircraft (as defined below).

WHEREAS, Lessor desires to lease the Aircraft to Lessee and Lessee desires to lease the Aircraft from Lessor.

NOW, THEREFORE, in consideration of the promises and the mutual covenants and undertakings herein contained, the Parties hereto do hereby agree as follows:

## ARTICLE 1: LEASE AND TERM

1.1 Lease. Lessor hereby agrees to dry lease to Lessee that certain LEARJET INC aircraft model 31A bearing manufacturer's serial number 080 and U.S. Registration No. N986MA, together with all engines, loose equipment, systems, appliances, parts, instruments, appurtenances, avionics, accessories and equipment (including, without limitation, communication and radar equipment), whether now or previously or hereafter installed in or attached to the aircraft, and all substitutions, replacements, and renewals and all other property that were or shall hereafter become physically incorporated or installed in or attached to the aircraft, and including all records and documentation pertaining to the aircraft (collectively, the "Aircraft").

1.2 Term. The Term of this Agreement ("Term") shall commence on the date that AGC as Trustee receives legal title to the Aircraft (the "Effective Date") and shall continue until the earlier of (a) upon fifteen (15) days written notice by Lessor to Lessee (b) termination or expiration of the Trust Agreement according to its terms, or (c) termination of this Agreement in accordance with Section 6.3 below. During the Term, Lessee shall have exclusive and sole use of the aircraft unless approved for sublease under Article 3 of this agreement. The Aircraft shall be automatically released from the terms of this Agreement upon the Lessor's filing of a bill of sale with the FAA conveying title of the Aircraft to the Lessee or other third party.

Trust 2814-Camro Transportes, SA de CV

AIRCRAFT DRY LEASE AGREEMENT & EXHIBITS





FILED WITH FAA
AIRCRAFT REGISTRATION BR
2017 NOV -7 A 9 49
OKLAHOMA CITY
OKLAHOMA

Case 4:20-cv-00121-ALM-KPD Document 1-15 Filed 09-10-2022 Page 58 Page 80 Page 58 #: 1578

**ARTICLE 2: COSTS**

2.1. Net Lease. This Agreement shall constitute a net lease and Lessee shall be responsible for all costs associated with the delivery, possession, use and operation, of the Aircraft, without limitation.

2.2 Taxes. Lessee shall be responsible for all taxes (except those measured by the net income, profits, assets, turnover, capital or gains of Lessor), fines, fees or penalties arising during the Term or out of this Agreement or Lessee's operation of the aircraft (i.e., in the case of sales and use taxes, Lessee will be responsible for taxes and assessments levied against, and constituting a lien against the Aircraft which arise during the Term and are assessed in relation to the period constituting the Term).

**ARTICLE 3: OPERATION OF AIRCRAFT BY LESSEE**

3.1 Operational Control. During the Term, Lessee, or any approved sub-lessee, is and shall be the sole operator of the Aircraft and has sole operational control of the Aircraft. Lessee is responsible for operating the Aircraft in accordance and compliance with all laws, ordinances and regulations relating to the possession, use, operation, or maintenance of the Aircraft, including, but not limited to, Federal Aviation Regulations ("FAR").

3.2 Selection of Flight Crew. Lessee shall select and hire its own flight crew provided that the pilots shall be professionally trained and qualified, shall be familiar with and licensed to operate the Aircraft, have current medical certificates, be current on recurrent training, and meet any insurance requirements.

3.3 Care and Use. Lessee shall use, operate, maintain, and store the Aircraft in a careful and proper manner. Lessee shall operate the Aircraft in accordance with Lessee's FAA Part 91 certificate, including its approved OpSpecs, operations and maintenance manuals. Lessee shall not operate, use, or maintain the Aircraft in violation of any airworthiness certificate, license, or registration relating to the Aircraft, or contrary to any law or regulation.

3.4 Limits of Operations. Lessee expressly warrants and agrees that it shall not operate the Aircraft outside the geographic limits set forth in the insurance policies described in Article 4, or otherwise operate the Aircraft in a way that would violate or compromise such insurance policies, or for any illegal purpose.

3.5 Maintenance and Repair. Lessee, at its own cost and expense, will promptly repair or replace all parts, appliances, components, instruments, accessories, and furnishings that are installed in or attached to the Aircraft that may from time to time become worn out, lost, stolen, destroyed, seized, confiscated, damaged beyond repair, or permanently rendered unfit for use for any reason whatsoever during the Term. Further, Lessee shall, at its own cost and expense, perform or cause to be performed all such repair and maintenance work with respect to the Aircraft as may be required pursuant to the applicable FARs, airworthiness directives and mandatory and recommended service bulletins.

### ARTICLE 4: INSURANCE AND INDEMNITIES

4.1  Primary Liability and Property Damage Insurance.  Lessee shall maintain in effect, at its own expense, third party aircraft liability insurance, passenger legal liability insurance, and property damage liability insurance for the Aircraft during the Term in such amounts as are customary for similarly situated aircraft but in no case shall the carried amount of third party liability be less than $ 1,000,000 United States Dollars. Each liability policy shall be primary without right of contribution from any other insurance that is carried by Lessor, and expressly provide that all the provisions thereof, except the limits of liability, shall operate in the same manner as if there were a separate policy covering each insured.

4.2  Insurance Against Physical Damage.  Lessee shall maintain in effect, at its option and own expense, all-risk ground and flight aircraft hull insurance covering the Aircraft. Any such insurance shall be during the Term for an amount customary for a similar aircraft.

4.3  Lessor As Additional Named Insured.  All insurance policies carried by Lessee in accordance with this Article shall list AGC (as Owner Trustee and in its individual capacity) and its directors, officers and managers as an additional insured.

4.4  Deductible.  Any insurance policy carried by Lessee in accordance with this Article may be subject to a deductible amount which is customary under policies insuring similar aircraft similarly situated. Lessee warrants and agrees that in the event of an insurable claim, Lessee will bear the costs up the deductible amount.

4.5  Certificate of Insurance.  Lessee shall cause a certificate of insurance to be delivered to the Lessor evidencing the requirements of this ARTICLE prior to the Trustee accepting title to the aircraft and/or to Trustee's release of control of the aircraft to the Lessee. And said insurance coverage must be in effect at the time of aircraft title acceptance or release of aircraft control.

### ARTICLE 5: WARRANTIES AND DISCLAIMERS

5.1.  Lessor's Warranty.  Lessor warrants that (1) Lessor has the power and authority to lease the Aircraft to Lessee pursuant to this Agreement, and (2) the Aircraft is properly registered in the name of Lessor in accordance with U.S. law.

5.2  Lessor's Disclaimer of Warranties.  EXCEPT AS SPECIFICALLY PROVIDED HEREIN, LESSOR NEITHER MAKES NOR SHALL BE DEEMED TO HAVE MADE AND HEREBY EXPRESSLY DISCLAIMS, AND LESSEE EXPRESSLY WAIVES ANY REPRESENTATION OR WARRANTY, EXPRESS OR IMPLIED, AS TO THE VALUE, CONDITION, WORKMANSHIP, DESIGN, OPERATION, MERCHANTABILITY OR FITNESS FOR USE FOR A PARTICULAR PURPOSE OF THE AIRCRAFT, AS TO THE ABSENCE OF LATENT OR OTHER DEFECTS, WHETHER OR NOT DISCOVERABLE, AS TO THE ABSENCE OF ANY INFRINGEMENT OF ANY PATENT, TRADEMARK OR COPYRIGHT, AS TO THE ABSENCE OF OBLIGATIONS BASED ON STRICT LIABILITY IN TORT OR ANY OTHER REPRESENTATION OR WARRANTY WHATSOEVER, EXPRESS OR IMPLIED, WITH RESPECT TO THE AIRCRAFT OR ANY PART THEREOF.

5.3.  Lessee's Representation Regarding Selection.  Lessee represents and warrants that: (1) it has selected the Aircraft based on its own judgment and disclaims any reliance upon statements or

Case 4:20-cr-00212-ALM-KPD Document 716-15 Filed 09/03/22 Page 60 of 80 PageID #: 1580

representations not part of this Agreement; and (2) that the Aircraft is of a size, design and capacity selected by Lessee and is suitable for Lessee's intended use.

5.4. Lessee Warranty Regarding Operation. Lessee represents and warrants that it shall only operate the Aircraft under the terms, conditions, and restrictions, as set forth in this Agreement.

## ARTICLE 6: MISCELLANEOUS

6.1. Title. Title to the Aircraft shall remain vested in the name of Lessor during the Term and the Aircraft shall be registered at the Federal Aviation Administration (the "FAA") in the name of Lessor during such Term. Lessee shall have no right, title or interest in or to the Aircraft except as expressly provided herein and shall take no action that would impair the continued registration of the Aircraft at the FAA in the name of Lessor. Lessee shall do or cause to be done any and all acts and things which may be required to perfect and preserve the interest and title of Lessor to the Aircraft within any jurisdiction in which Lessee may operate the Aircraft, and Lessee shall also do or cause to be done any and all acts and things which may be required under the terms of any other agreement, treaty, convention, pact or by any practice, customs or understanding involving any country or state in which Lessee may operate, as may be necessary or helpful, or as Lessor may reasonably request, to perfect and preserve the rights of Lessor within the jurisdiction of any such country or state.

6.2. Liens. Except to the extent permitted pursuant to the last sentence of this Section 6.2, Lessee may not directly or indirectly create, incur, assume or suffer to exist any liens on or with respect to (1) the Aircraft or any part thereof; (2) Lessor's title thereto; or (3) any interest of Lessor therein. Lessee will promptly, at its own expense, take such action as may be necessary to discharge any lien prohibited under this Section 6.2. Notwithstanding anything to the contrary set forth herein, however, the following liens shall be deemed to be "permitted" for purposes of this Agreement, and Lessee shall not be obligated to discharge any such lien: (i) the respective rights of Lessor and Lessee as herein provided; (ii) liens created by Lessor (including, but not limited to, the liens described in Section 6.10 below); (iii) liens for taxes either not yet due or being contested by Lessee in good faith; and (iv) inchoate materialmen's, mechanics', workmen's, repairmen's, employees' or other like liens arising in the ordinary course of business of Lessee that are not delinquent and for the payment of which adequate reserves have been provided.

6.3. Defaults. Each of the following events shall constitute an "Event of Default" hereunder (whatever the reason for such event of default and whether it shall be voluntary or involuntary, or come about or be effected by operation of law, or be pursuant to or in compliance with any judgment, decree or order of any court or any order, rule or regulation of any administrative or governmental body): (1) if Lessee shall fail to pay when due any sum under this Agreement and such failure shall continue for a period of three business days after oral, facsimile, or written notice has been given by Lessor to Lessee; (2) if Lessee shall fail to perform any covenant or agreement contained herein, and such failure shall continue for a period of fifteen days after notice thereof shall have been given in writing; (3) if any representation or warranty made by Lessee in this Agreement or any agreement, document or certificate delivered by Lessee in connection herewith is or shall become incorrect in any material respect; (4) if Lessee shall operate the Aircraft in violation of any applicable law, regulation, rule or order of any governmental authority having jurisdiction thereof or shall operate the Aircraft when the insurance required hereunder shall not be in effect; (5) if any proceedings shall be commenced as to Lessee under any bankruptcy, insolvency, reorganization, readjustment of debt, receivership or liquidation law or statute of any jurisdiction; (6) if any such proceedings shall be instituted against Lessee and shall not be withdrawn or terminated within thirty (30) days after their commencement; or (7) if Lessee, as beneficiary

under the Trust Agreement (defined and described in Section 6.13 hereof), defaults under the Trust Agreement or otherwise breaches the terms and conditions thereof.

Upon the occurrence of any Event of Default Lessor may, at its option, exercise any or all remedies available at law or in equity, including, without limitation, any or all of the following remedies, as Lessor in its sole discretion shall elect: (1) by notice in writing to terminate this Agreement immediately, whereupon all rights of Lessee to the use or possession of the Aircraft or any part thereof shall absolutely cease and terminate but Lessee shall remain liable as hereinafter provided; and thereupon Lessee, if so requested by Lessor, shall at its expense promptly return the Aircraft as required by this Agreement or Lessor, at its option, may enter upon the premises where the Aircraft or any part of it is located and take immediate possession of and remove the same by summary proceedings or otherwise. Lessee specifically authorizes Lessor's entry upon any premises where the Aircraft or any part of it may be located for the purpose of, and waives any cause of action it may have arising from, a peaceful retaking of the Aircraft or any part of it; or (2) perform or cause to be performed any obligation, covenant or agreement of Lessee hereunder. Lessee agrees to pay all costs and expenses incurred by Lessor for such performance and acknowledges that such performance by Lessor shall not be deemed to cure said Event of Default.

(c) Lessee shall be liable for all costs, charges and expenses, including reasonable legal fees and disbursements, incurred by Lessor by reason of the occurrence of any Event of Default or the exercise of Lessor's remedies with respect thereto. No remedy referred to herein is intended to be exclusive, but each shall be cumulative and in addition to any other remedy referred to above or otherwise available to Lessor at law or in equity. Lessor shall not be deemed to have waived any default, Event of Default or right hereunder unless the same is acknowledged in writing by duly authorized representative of Lessor. No waiver by Lessor of any default or Event of Default hereunder shall in any way be, or be construed to be, a waiver of any future or subsequent default or Event of Default. The failure or delay of Lessor in exercising any rights granted it hereunder upon any occurrence of any such right upon the continuation or recurrence of any such contingencies or similar contingencies, and any single or partial exercise of any particular right by Lessor shall not exhaust the same or constitute a waiver of any other right provided herein.

6.4  <u>Successors and Assigns</u>.  This Agreement shall be binding upon Lessor, Lessee, and their respective successors and assigns, except that Lessee may not assign or transfer any of its rights hereunder except with the prior written consent of Lessor. Subject to the foregoing, this Agreement shall inure to the benefit of Lessor and Lessee and their respective successors and assigns.

6.5.  <u>Notices</u>.  All notices and other communications under this Agreement shall be in writing and shall be given (and shall be deemed to have been duly given upon receipt or refusal to accept receipt) by delivery in person, by facsimile (with a simultaneous confirmation copy sent by first class mail properly addressed and postage prepaid), by email with PDF attachment (said notice in PDF to be over signature) or by a reputable overnight courier service, addressed as follows:

If to Lessor:

| | |
|---|---|
| *(Physical Address – Courier Service Only)* | *(Postal Mailing Address)* |
| **Aircraft Guaranty Corporation, Trustee** | **Aircraft Guaranty Corporation, Trustee** |
| Continent Aircraft Statutory Trust No. 2814 | Continent Aircraft Statutory Trust No. 2814 |
| 13704 Portofino Strada | P.O. Box 891860 |
| Oklahoma City, OK 73170 | Oklahoma City, OK 73189 |
| | |
| Tel: 281-445-7594 | Tel: 281-445-7594 |
| Fax: 281-445-7599 | Fax: 281-445-7599 |
| Email: agc@agcorp.com | Email: agc@agcorp.com |

If to Lessee:

**Camro Transportes, SA de CV**
Mr. Rodolfo Javier Camarillo Montemayor, Sole-Administrator
Carretera a Colombia Km 9 No. 100
Col. Andres Caballero
66080 Escobedo, Nuevo Leon, Mexico

Phone(s): 52-81-2475-0000
Cell Phone:
Fax:
Email(s): rodolfocamarillo@rocaacero.com;jlujan@rocaacero.com

or at such other address as either Party may designate in writing. Any notice hereunder shall be effective upon delivery.

6.6 <u>Entire Agreement</u>. This Agreement, and the Trust Agreement, constitute the final, complete, and exclusive statement of the terms of the agreement between the Parties pertaining to the subject matter of this agreement and supersede all prior and contemporaneous understandings of the Parties.

6.7 <u>Severability</u>. If any provision of this Agreement is found to be prohibited or unenforceable in any jurisdiction, such provision shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof. Any such prohibition or unenforceability in one jurisdiction shall not invalidate or render unenforceable such provision in any other jurisdiction. To the extent permitted by applicable law, each Party hereto hereby waives any provision of law that renders any provision hereof prohibited or unenforceable in any respect.

6.8 <u>Amendments and Modifications</u>. The terms of this Agreement shall not be waived, varied, contradicted, explained, amended or changed in any other manner except by an instrument in writing, executed by both Parties.

6.9 <u>Governing Law and Jurisdiction.</u> This Agreement is governed by and to be interpreted according to the laws of the state of the state of Texas, excluding its conflict of laws provisions, and proper venue for all matters pertaining hereto shall be in the state or federal courts sitting in Harris County, Texas, and any courts having injunctive or enforcement jurisdiction. In the event that any action is filed in relation to this Agreement, the unsuccessful party shall pay to the successful party, in addition to all the sums that either

party may be called on to pay, the successful party's reasonable attorney fees and costs. Each Party irrevocably and unconditionally submits to the exclusive jurisdiction of the state or federal courts sitting in Harris County, Texas, any courts having injunctive or enforcement jurisdiction and waives any objection it may now or in the future have to the bringing of proceedings in such courts.

6.10  Force Majeure.  No Party shall be liable for any failure to perform its obligations in connection with any action described in this Agreement, if such failure results from any act of God, riot, war, civil unrest, flood, earthquake, or other cause beyond such Party's reasonable control (including any mechanical, electronic, or communications failure, but excluding failure caused by a Party's financial condition or negligence).

6.11  Execution.  This Agreement may for all purposes be executed in several counterparts, each of which shall be deemed an original, and all such counterparts, taken together, shall constitute one and the same instrument, even though all Parties may not have executed the same counterpart of this Agreement. Each Party may transmit its signature electronically via facsimile or electronic mail to the other Party, and any such electronically transmitted signature and counterpart of this Agreement (including any exhibit hereto) shall have the same force and effect as an original.

6.12  Concerning the Owner Trustee.  It is expressly understood and agreed by the parties hereto that (a) this Agreement is executed and delivered by AGC not individually or personally but solely as Owner Trustee under the Trust Agreement, on behalf of Lessor in the exercise of the powers and authority expressly conferred and vested in it as Owner Trustee, (b) each of the representations, undertakings and agreements herein made on the part of Lessor is made and intended not as a personal representation, undertaking or agreement by AGC but is made and intended for the purpose of binding only Lessor and the Trust Property (as defined in the Trust Agreement), (c) nothing herein shall be construed as creating any duty or liability on AGC individually or personally or in its capacity as Owner Trustee of Lessor, to perform any duty or covenant of Lessor hereunder, either express or implied, all such liability, if any, being expressly waived by the other parties hereto and by any person claiming by, through or under any of them, (d) under no circumstances shall AGC be personally liable for the payment of any indebtedness or expenses of Lessor or be liable for the breach or failure of any obligation, representation, warranty or covenant made or undertaken by Lessor hereunder, and (e) for the avoidance of doubt, AGC, in its individual capacity or in its capacity as Owner Trustee under the Trust Agreement, shall have no duty or responsibility hereunder or under any other related document, agreement or instrument, absent receipt of appropriate written instructions pursuant to and in accordance with the Trust Agreement.

6.13  FAA Trust Policy.  Lessee acknowledges that FAA may require the owner of an aircraft to provide certain information regarding the ownership, operation and condition of the Aircraft and there may be additional requirements applicable to the Lessor as set forth in the (i) Notice of Proposed Policy Clarification for the Registration of Aircraft to U.S. Citizen Trustees in Situations involving Non-U.S. Citizen Trustors and Beneficiaries (published in the Federal Register on February 9, 2012 (77 FR 6694)) and (ii) Notice of Policy Clarification for the Registration of Aircraft to U.S. Citizen Trustees in Situations involving Non-U.S. Citizen Trustors and Beneficiaries (published in the Federal Register on June 18, 2013 (78 FR 36412)), as each may be modified, amended or supplemented from time to time and as may be further enforced or interpreted by the FAA (collectively the "FAA Trust Policy"). Lessee acknowledges having reviewed the FAA Trust Policy and will provide Lessor and the FAA with any information required by the Trust Policy. Specifically, Lessee is a party to that certain Continent Aircraft Statutory Trust No. 2814 dated October 11, 2017 (the "Trust Agreement") between Lessor and Lessee, which Trust is on file with the FAA and Lessee hereby agrees (i) to provide all information the Lessor, the FAA or any third

Trust 2814-Camro Transportes, SA de CV

party may request pursuant to the terms of the Trust Agreement, and (ii) operate the Aircraft consistent with the terms of the Trust Agreement.

6.14. Subject and Subordinate. The rights of Lessee with respect to the Aircraft shall be subject and subordinate in all respects to Lessor's rights, including all rights of Lessor as Trustee under the Trust and any related documents thereto.

6.15. Truth in Leasing. Lessor is furnishing the aircraft to Lessee for no compensation or hire; however, unless the Lessee is operating the aircraft under this agreement under the provisions of FAR § 91.23 (b), the provisions of FAR § 91.23 apply for operation of large civil aircraft apply and are incorporated herein as follows:

FAR 91.23 NOTICE: THE AIRCRAFT DESCRIBED IN ARTICLE 1, PARAGRAPH "1.1" OF THIS AGREEMENT HAS BEEN MAINTAINED UNDER FEDERAL AVIATION REGULATIONS (FAR) PART ____ FOR THE PROCEEDING TWELVE MONTHS.
(NOT APPLICABLE IF THE AIRCRAFT IS AN IMPORT FROM A FOREIGN REGISTRY OR A NEWLY MANUFACTURED AIRCRAFT.)

THE AIRCRAFT WILL BE MAINTAINED AND INSPECTED BY THE LESSEE UNDER FAR 91.409 FOR OPERATIONS TO BE CONDUCTED UNDER THIS LEASE AGREEMENT. DURING THE DURATION OF THIS LEASE AGREEMENT LESSEE IS CONSIDERED RESPONSIBLE FOR OPERATIONAL CONTROL OF ALL AIRCRAFT IDENTIFIED AND TO BE OPERATED UNDER THIS LEASE AGREEMENT. AN EXPLANATION OF THE FACTORS BEARING ON OPERATIONAL CONTROL AND THE PERTINENT FEDERAL AVIATION REGULATIONS CAN BE OBTAINED FROM THE NEAREST FAA FLIGHT STANDARDS DISTRICT OFFICE. THE UNDERSIGNED REPRESENTATIVE OF LESSEE CERTIFIES THAT LESSEE IS RESPONSIBLE FOR OPERATIONAL CONTROL OF THE AIRCRAFT AND THAT LESSEE UNDERSTANDS ITS RESPONSIBILITIES FOR COMPLIANCE WITH APPLICABLE FAR'S. THIS SECTION IS INCLUDED IN THIS AGREEMENT FOR PURPOSES OF SATISFYING FAR 91.23 AND SHALL BE NEITHER DEEMED NOR CONSTRUED TO LIMIT OR REDUCE ANY DUTIES OR OBLIGATIONS IMPOSED UPON LESSEE UNDER OTHER PROVISIONS OF THIS AGREEMENT. LESSEE FURTHER CONFIRMS THAT IT UNDERSTANDS THAT A SIGNED COPY OF THIS AGREEMENT MUST BE CARRIED ON BOARD THE AIRCRAFT ANYTIME IT IS OPERATED.

6.14. Aircraft Location Contact Data. See Exhibit A attached hereto.

**[SIGNATURE PAGE TO FOLLOW]**

\\\\\\\\\\\\\\\\\\\\\\ REMAINDER OF PAGE LEFT BLANK ///////////////////

## AIRCRAFT DRY LEASE SIGNATURE PAGE

Continent Aircraft Statutory Trust No. 2814
LEARJET INC 31A, s/n: 080, FAA Registration No. N986MA

IN WITNESS WHEREOF, the Parties hereto have caused this Agreement to be executed in their names and on their behalf by their duly authorized officers effective as of the Effective Date.

**As Lessor**

**For:**  **Aircraft Guaranty Corporation, Trustee**
(Not in its individual capacity, but solely as Trustee of Continent Aircraft Statutory Trust No. 2814)

**By:** *Debbie Mercer-Erwin*  Date: October 20, 2017

Debbie Mercer-Erwin, President

**As Lessee**

**For:**  **Camro Transportes, SA de CV**

**By:** _____  Date: October 20, 2017
Mr. Rodolfo Javier Camarillo Montemayor, Sole-Administrator

**EXHIBIT A to**
**AIRCRAFT DRY LEASE AGREEMENT**

AIRCRAFT LOCATION AND CONTACT DATA FOR:

LEARJET INC 31A, s/n: 080, FAA Registration N986MA

Camro Transportes, SA de CV
Mr. Rodolfo Javier Camarillo Montemayor, Sole-Administrator
Carretera a Colombia Km 9 No. 100
Col. Andres Caballero
66080 Escobedo, Nuevo Leon, Mexico

Phone(s): 52-81-2475-0000
Cell Phone:
Fax:
Email(s): rodolfocamarillo@rocaacero.com;jlujan@rocaacero.com

HANGAR LOCATION:

ENTER THE INFORMATION BELOW FOR THE PRIMARY HANGAR LOCATION FOR THIS AIRCRAFT,
INCLUDING AIRPORT NAME, ADDRESS, CITY, COUNTRY, POSTAL CODE AND PHONE NUMBER IF
APPLICABLE.

_Aeropuerto Internacional Del Norte  MMAN_
_Carretera Mty-Laredo Km 1006_
_Apodaca, Nuevo Leon, Mexico, 66600_
_Tel: +52 (81) 80309090_

**EXHIBIT B to**
**AIRCRAFT DRY LEASE AGREEMENT**

# ADDENDUM TO LEASE/OPERATING AGREEMENT
## N986MA

WHEREAS, this Addendum amends that certain Lease/Operating Agreement dated October 20, 2017 (the "Lease"), by and between Lessee and Lessor, which Lease relates to a LEARJET INC 31A series aircraft bearing airframe serial number 080 to include its installed engines, avionics, accessories and associated equipment, and bearing United States of America registration mark - N986MA (the "Aircraft"), as more particularly described in the Lease.

WHEREAS, the Aircraft is registered with the FAA in the name of Aircraft Guaranty Corporation as Trustee (the "Trustee") of Continent Aircraft Statutory Trust No. 2814 created by the Trust Agreement dated October 20, 2017 (the "Trust Agreement"), with ITRC, LLC, as beneficiary (the "Beneficiary").

WHEREAS, the United States Federal Aviation Administration ("FAA") or any other duly authorized air authority representatives of the United States or the government where the Aircraft is habitually based or operated (the "Regulatory Authority") may require the owner of an aircraft to provide certain information regarding the ownership, operation and condition of the Aircraft and there may be additional requirements applicable to the Trustee as set forth in the (i) Notice of Proposed Policy Clarification for the Registration of Aircraft to U.S. Citizen Trustees in Situations involving Non-U.S. Citizen Trustors and Beneficiaries (published in the Federal Register on February 9, 2012 (77 FR 6694)) and (ii) Notice of Policy Clarification for the Registration of Aircraft to U.S. Citizen Trustees in Situations involving Non-U.S. Citizen Trustors and Beneficiaries (published in the Federal Register on June 18, 2013 (78 FR 36412)), as each may be modified, amended or supplemented from time to time, and as may be further enforced interpreted by the FAA (collectively the "FAA Trust Policy").

WHEREAS, the Trust Agreement requires the Lessor and Lessee acknowledge and agree to provide the Trustee with certain information as required in the FAA Trust Policy.

In consideration of the mutual covenants and agreements contained herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Lessee and Lessor hereby agree as follows:

1.    **Lessee's Duties to Provide Information under FAA Trust Policy.**
Lessee hereby covenants and agrees as follows:

a.    Lessee has reviewed the FAA Trust Policy and will provide Trustee and the Regulatory Authority with the information required by the FAA Trust Policy.

b.    Lessee will execute the FAA Trust Policy Affidavit (attached hereto as Exhibit 1) and in a form acceptable to the Trustee providing the information required therein. Lessee shall either monitor or cause the Aircraft to be monitored and will notify Trustee immediately if the information in the FAA Trust Policy Affidavit changes. Lessee will also provide Trustee an updated

FAA Trust Policy Affidavit on an annual basis. If requested by a Regulatory Authority, Lessee will provide the FAA Trust Policy Affidavit and related information to the Regulatory Authority.

      c.     If requested by a Regulatory Authority, the Lessee shall provide:

      (i)     the following specific information within two (2) business days: (A) information in relation to the Aircraft including but not limited to the location of maintenance and other aircraft records and where the Aircraft is normally based and operated, and (B) contact information of the operator of the Aircraft (including but not limited to a phone number, email address, street address and where that person resides or has its principal place of business) and any other person to whom the Regulatory Authority may look to gather information related to crew members for the Aircraft, the Aircraft's operations on specific dates, the location of the Aircraft, and maintenance and other aircraft records for the Aircraft; and

      (ii)     the following specific information within five (5) business days: (A) information about the operator, crew (names and pilot certificate numbers) and aircraft operations on specific dates, including information about where the Aircraft will be on a specific date in the future; (B) copies of maintenance, operating logs and other aircraft records; and (C) the current airworthiness status of the Aircraft.

      d.     To provide the identity and contact information for the operator of the Aircraft hereunder or under any lease, operating agreement or bailment agreement entered into from time to time by Lessee, or any lease, bailment, or other arrangement entered into from time to time by a third party, whether or not at Lessee's direction.

      e.     To require that any lease, operating agreement, bailment, or similar arrangement transferring possession and operational control of the Aircraft provide the following or similar provisions to the same effect:

      (i)     that all further transfers or the rights to possession and operational control of the Aircraft to a transferee must be in writing; provide the identity and contact information about the transferee; that a transferee provide an FAA Trust Policy Affidavit to the extent such information is available from the transferee and the transferee's assurance that if and when the transferee is notified that the Regulatory Authority, Trustee, Beneficiary, Lessor or Lessee has made a request, to promptly provide information related to crewmembers of the Aircraft and the Aircraft's operations on specific dates, the location of the Aircraft, and the maintenance and other records for the Aircraft;

      (ii)     that each such further transferee or operator (x) shall provide its reasonable cooperation to the Regulatory Authority, Trustee, Beneficiary, Lessor or Lessee in an expeditious manner with respect to any request from the Regulatory Authority for information and access to records of the Aircraft which it is legally entitled to receive, and (y) shall authorize the Regulatory Authority to inspect the Aircraft; and

      (iii)     that each such further transferee or operator agrees that the above-referenced information and inspection requirements would be made and agreed in all subsequent or downstream leases, operating agreements and bailment agreements thereby requiring each such

subsequent transferee or operator to provide such contact information in the event that there has been a transfer of possession and operation to another party, to update such information when any changes occur, and to promptly confirm such information at any time upon request by the Regulatory Authority, Trustee, Beneficiary, Lessor or Lessee, to provide its reasonable cooperation to the Trustee, Beneficiary, Lessor or Lessee in an expeditious manner with respect to any request from the Regulatory Authority for information and access to records of the Aircraft, and (z) to authorize the Regulatory Authority to inspect the Aircraft.

        f.     To permit the inspection of the Aircraft and/or records of the Aircraft by a Regulatory Authority.

        g.     That the information received by Trustee pursuant to this Section 1, may be delivered to the FAA or any other Regulatory Authority, without further consent or acknowledgment of the Lessee. Further, Lessee hereby releases and shall indemnify, reimburse, defend, and/or hold harmless Trustee and Lessor, individually, and each of their respective officers, directors, shareholders, employees, affiliated companies, successors, and permitted assignees (the "Indemnified Parties") on demand, from an against any and all claims, damages (whether direct, indirect, incidental, special or consequential), losses, charges, fees, liabilities, obligations, demands, suits, judgments, actions and other legal proceedings (whether civil or criminal), penalties, fines, sanctions, and any reasonable costs, expenses and attorney's fees (collectively, the "Expenses") imposed on the Indemnified Parties, the Lessee or any third party, which in any way may result from, arise out of, or are in any manner related to the Regulatory Authorities' receipt of the information provided pursuant to this Section 1.

### 2.    Compliance with U.S. Law.

        a.     Lessee affirms that it is in full compliance with all laws and regulations applicable to it including, without limitation, ensuring that no person who owns a controlling interest in or otherwise controls Lessee is or shall be (1) listed on the Specially Designated Nationals and Blocked Person List maintained by the Office of Foreign Assets Control ("OFAC"), Department of the Treasury, and/or any other similar lists maintained by OFAC pursuant to any authorizing statute, Executive Order or regulation or (2) a person designated under Section 1(b), (c), or (d) of Executive Order No. 13224 (September 23, 2001), any related enabling legislation or any other similar Executive Orders.

        b.     Lessee acknowledges that the Aircraft may be subject to restrictions involving the export and re-export of the same pursuant to the laws and regulations of the United States, that the laws and regulations of the United States restrict the transfer of any interest in the Aircraft to certain persons (collectively, the "Export Restrictions") and that such Export Restrictions may apply to the Aircraft even after the Aircraft has been physically removed or transferred from the United States. Lessee acknowledges that Trustee, as an entity formed in the United States, may be subject to these laws and regulations of the United States, including, without limitation, those promulgated by OFAC and the Financial Crimes Enforcement Network (collectively, the "U.S. Laws"). Lessee agrees that it will comply with, and will not knowingly permit the Aircraft to be used in a manner that is contrary to Export Restrictions and U.S. Laws applicable to (i) the Lessee, (ii) the Trustee, or (iii) the Aircraft, including the acquisition, possession, operation, use, maintenance, leasing, subleasing, or other transfer or disposition thereof. Lessee agrees that it will not permit the assignment of this

Agreement, or a lease or sublease of the Aircraft (collectively, a "Transfer") without Trustee's prior written approval of such Transfer. Trustee shall not unreasonably delay its decision on a request for approval from Lessee nor shall it unreasonably withhold its approval to such request. To facilitate Trustee's evaluation of the Transfer, Lessee agrees that it will use reasonable efforts to provide Trustee with any information reasonably requested by the Trustee regarding the Transfer, the proposed transferee and/or the ownership of the proposed transferee. Trustee's decision to approve or disapprove the proposed Transfer shall not be deemed to have been unreasonably delayed if Trustee has not obtained the information it needs to make the decision, and Trustee's approval of the proposed Transfer shall not be deemed to have been unreasonably withheld if Trustee has determined that the Transfer will or may reasonably be expected to put Trustee at risk of violating any laws or regulations applicable to Trustee including, without limitation, the Export Restrictions and/or U.S. Laws.

      c.    Any proposed transferee shall execute and deliver to Trustee an agreement in substantially the form and substance of this Addendum satisfactory to the Trustee.

      d.    If Trustee has determined in its sole discretion that a proposed Transfer pursuant to this Section 2 may result in either of the circumstance described in 2(b) above, or in the event any proposed transferee has failed to execute and deliver to Trustee the agreement described in Section 2(c) above, then any such Transfer or purported Transfer shall be null and void and of no legal force or effect and the Trustee shall not be required to approve, effect, acknowledge, or facilitate the Transfer.

**3.**    **Indemnification of Trustee.** Lessee and its successors and assigns shall indemnify, defend and hold harmless Trustee, in its individual capacity and in its capacity as Trustee, its affiliates and their respective officers, directors, employees, and agents, from and against all demands, claims, damages, fines, penalties, liability, loss, cost or expense (including, without limitation, attorneys' fees and costs) directly or indirectly arising from, or in any manner related to, Lessee's breach of any obligation, agreement or other provision contained in this Addendum.

**4.**    **Miscellaneous.**

      a.    This Addendum shall be binding upon and inure to the benefit of the heirs, executors, administrators, legal representatives, successors and assigns of the parties; provided however, that Lessee may not assign or transfer its interests or rights hereunder without Trustee's prior written consent pursuant to Section 2 above.

      b.    The section headings are inserted only as a matter of convenience and for reference, and are not and shall not be deemed to be a part hereof. Time is of the essence of each and every provision of this Addendum.

      c.    This Addendum may be executed in any number of counterparts, each of which when executed and delivered shall be deemed to be an original, and all of which when taken together shall constitute one and the same agreement.

      d.    This Addendum may be amended or modified only in writing signed by all parties.

e.      In the event of any conflict, ambiguity or inconsistency between the terms and conditions of this Addendum and the terms and conditions of the Lease (including without limitation any future amendments to the Lease), the terms and conditions of this Addendum shall control.

**5.   <u>Governing Law and Jurisdiction.</u>**  This Agreement is governed by and to be interpreted according to the laws of the state of Texas, excluding its conflict of laws provisions, and proper venue for all matters pertaining hereto shall be in the state or federal courts sitting in Harris County, Texas, and any courts having injunctive or enforcement jurisdiction. In the event that any action is filed in relation to this Agreement, the unsuccessful party shall pay to the successful party, in addition to all the sums that either party may be called on to pay, the successful party's reasonable attorney fees and costs. Each Party irrevocably and unconditionally submits to the exclusive jurisdiction of the state or federal courts sitting in Harris County, Texas, any courts having injunctive or enforcement jurisdiction and waives any objection it may now or in the future have to the bringing of proceedings in such courts.

<div align="center">

[SIGNATURE PAGE TO FOLLOW]

\\\\\\\\\\\\\\\\\\\\\\\\\\\\ REMAINDER OF PAGE LEFT BLANK ////////////////////////

</div>

## ADDENDUM TO LEASE/OPERATING AGREEMENT SIGNATURE PAGE

Continent Aircraft Statutory Trust No. 2814
LEARJET INC 31A, s/n: 080, FAA Registration No. N986MA

IN WITNESS WHEREOF, this Addendum shall be deemed to have been duly executed as of the date first set forth above.

**As Lessor**

**For:** **Aircraft Guaranty Corporation, Trustee**
(Not in its individual capacity, but solely as Trustee of Continent Aircraft Statutory Trust No. 2814)

**By:** _Debbie Mercer-Erwin_            Date: __October 20, 2017__

Debbie Mercer-Erwin, President

**As Lessee**

**For:** **Camro Transportes, SA de CV**

**By:** _____            Date: __October 20, 2017__

Mr. Rodolfo Javier Camarillo Montemayor, Sole-Administrator

AIRCRAFT DRY LEASE AGREEMENT & EXHIBITS

Trust 2814-Camro Transportes, SA de CV
Page 16 of 18

**EXHIBIT 1 TO**
**ADDENDUM TO LEASE/OPERATING AGREEMENT**

CONTINENT AIRCRAFT STATUTORY TRUST NO. 2814

FAA TRUST POLICY CERTIFICATE

The undersigned states as follows:

1. He/She is, or is a duly elected and qualified officer, or authorized representative of Camro Transportes, SA de CV, who is the "Lessee".

2. The Lessee is the holder of an "Aircraft Dry Lease Agreement" with Aircraft Guaranty Corporation, a Wyoming corporation in its capacity as trustee for Continent Aircraft Trust No 2814 as Lessor for one each aircraft herein described as LEARJET INC 31A series aircraft bearing airframe serial number 080 to include its installed engines, avionics, accessories and associated equipment, and bearing United States of America registration mark - N986MA (the "Aircraft").

3. As required pursuant to the Lease Addendum Agreement, Lessee confirms as follows:

a. the identity and contact information (address, phone number and email address) of the person or entity normally operating, or maintaining the operations of the Aircraft is as follows (Attach Appendix sheets to display information as needed):

Name: Rodolfo Javia Comorillo Montemayor

Title: Administrador Unico

Company: Camro Transportes

Street Address: Carretera A Colombia Km 9 No. 100
Col. Andres Caballero
Escobedo, Nuevo Leon

Email: rodolfo.camarillo@rococorc.com          Phone Number: +52 (81) 21735000

State/Jurisdiction of Incorporation: Nueva Leon, México

Principal Place of Business (city/state/country):

b. the location & physical address of where the aircraft maintenance and other records are as follows:

Carretera A Colombia Km 9 #100
Cd. Andres Cadellone
Escobedo, Nuevo Leon
Mexico 66080

c. the ICAO identifier & name of airport where the Aircraft is normally based is:

Aeropuerto Internacional Del Norte
MMAN

d. the jurisdictions where the aircraft is normally operated are as follows:

Mexico And USA

e. the names, crew position, issuing C.A.A, & pilot certificate numbers for the pilots who will normally operate the Aircraft are as follows:

Pilots:
Juan Jose Muñoz Flores        FAA Lic # 2427118
Armando Aguirre               FAA Lic # 368 4471
Aaron Sanchez Perez           FAA Lic # 369 1330

**As Lessee**

**For:** Camro Transportes, SA de CV

**By:** _____
Mr. Rodolfo Javier Camarillo Montemayor, Sole-Administrator

AIRCRAFT DRY LEASE AGREEMENT & EXHIBITS

FILED WITH FAA
AIRCRAFT REGISTRATION BR
2017 NOV -7 A 9:49
OKLAHOMA CITY
OKLAHOMA

# Polk County law enforcement group helps fight terrorism

By Haley Squiers | July 13, 2018 at 10:59 PM CDT - Updated August 9 at 5:48 PM

POLK COUNTY, TX (KTRE) - A Polk County law enforcement group said they've recently started helping the federal government with catching illegal exports.

But, according to those involved, the investigation isn't targeting your average criminal, but rather international terrorists.

"We're the first ever to get joined with an export investigation," said commander, Beau Price.

This involves working with Customs and Border Control, as well as the Department of Commerce.

"We explored the money laundering statute and found that in fact it is a violation to illegally export items outside the state," Price said.

According to Price, the criminals in this case are countries that the US is embargoed from trading with.

"And, they reach out and they try to get people to do what they're not supposed to do," Price said. "And, for the most part they don't do it."

But, he said sometimes companies mess up.

"Basically it involves the counties that are on Highway 59, Highway 69, which is where a lot of the transport is going to occur of obviously illegal goods," said Polk County Judge, Sydney Murphy.

Price said these criminals target a popular export from the Polk County area -- oil field equipment.

"They need it and they want it because they need to produce oil and use the money from the production of oil to fund terrorism groups," Price said.

Price added that, once caught, part of the value of the illegal goods will go to the investigation group.

"So, it doesn't go into the county coffers," Murphy said. "It goes to their office. And, then they have the authority to decide how the money's are spent."

Laws with seizures and forfeitures of illegal goods state that all funds must stay within law enforcement.

But, Price said the group plans to make some community-benifiting purchases.

"Metal detectors and devices like that for these small schools that don't have any funding for anything like that," Price said.

EXHIBIT B

The South East Texas Export Investigation has only been active for a little over a year, but they've already participated in the seizure of $1.3 million dollars worth of goods, that they believe would have been used to make improvised explosive devices.

*Copyright 2018 KTRE. All rights reserved.*

Case … Page 78 of 80 PageID #: 1598

8/27/2020

Case 2020-00201-RL-MRP Document 68-5 Filed 10/02/21 Page 79 of 80 PageID #: 1599

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### BEAUMONT DIVISION

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | |
| | § | |
| VS. | § | CASE NO. 9:20-cv-00172-MJT |
| | § | |
| LEARJET 31A BEARING SERIAL | § | |
| NUMBER 080 AND ASSIGNED AND | § | |
| DISPLAYING REGISTRATION/TAIL | § | |
| NUMBER N260RC | § | |

## ORDER GRANTING DEFENDANT'S MOTION TO DISMISS OR, ALTERNATIVELY, MOTION TO TRANSFER VENUE

The Court, having considered Defendant's Motion to Dismiss, the entire record in this case, and the applicable law, finds that Defendant's Motion should be GRANTED.

IT IS THEREFORE ORDERED that this case is DISMISSED with prejudice.

IT IS THEREFORE ORDERED that final judgment in this matter is entered for Defendant Learjet 31A Bearing Serial Number 080 and Assigned and Displaying Registration/Tail Number N260RC.

SIGNED ON: _____, 2020.


_____
UNITED STATES DISTRICT JUDGE