IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, § | | |
|     Plaintiff, § | | |
| § | | |
| v. § | No. 4:20-CR-212 | |
| § | | |
| DEBRA LYNN MERCER-ERWIN (1) § | | |
| KAYLEIGH MOFFETT (2) § | | |
|     Defendants. § | | |

## JOINT MOTION FOR TURNOVER ORDER

### I. INTRODUCTION

AML Global Payments, LLC ("AML Global") deposited funds into the Wright Brothers Aircraft Title ("WBAT") trust account with Bank of America ("BOA") on January 7, 2021 with the intention of purchasing an airplane. Because of the charges and their mid-December arrest in this case, Defendants Debra Lynn Mercer-Erwin and Kayleigh Moffett did not close that airplane transaction. Because the closing did not go through, AML Global demanded its airplane-purchase funds back from Defendants and/or BOA. To prevent AML Global from becoming another crime victim in this case, the government and Defendants (the "Parties") move for a turnover order directing BOA to pay the entirety of funds deposited by AML Global on January 7, 2021 to the United States Marshals Service ("USMS").

## II. FACTUAL BACKGROUND

A. **Background on WBAT's BOA escrow account.**

Defendants Debra Lynn Mercer-Erwin and Kayleigh Moffett own and operate WBAT a company that serves as an escrow agent for closing airplane deals. WBAT's escrow account was with BOA and ended in 9094. The WBAT escrow account was generally used for two types of transactions:

- First-Party Transactions: A buyer deposits funds to buy an airplane into the WBAT BOA account. Following closing, WBAT transfers those funds to the seller.

- Lender Transactions: An investor makes a short-term loan into the WBAT BOA account to assist a third-party buyer's purchase of an airplane. When that sale closes, falls through, or terminates for whatever reason, WBAT returns the loan to the lender—with interest.[1]

B. **WBAT's BOA account is zeroed out on January 2, 2021 following government seizure.**

Following an investigation into WBAT, the government sought and obtained a seizure warrant for the WBAT BOA account. The seizure warrant captured the entire balance of the funds that were in the WBAT account on

---

[1] This sort of transaction was summarized in the Third Superseding Indictment as the "Ponzi Scheme." To the best of the government's knowledge at this time, all of the Lenders mentioned in this motion are victims of the Ponzi Scheme and should be entitled to receive restitution for the amount of the losses they sustained.

December 18, 2020 and continued to capture all deposits made into that account up to January 2, 2021. The seizure warrant zeroed out the entirety of the funds in the WBAT BOA account.

### C. No Lender funds are deposited after December 18, 2020.

There were no Lender Transactions involving the WBAT BOA account after the government's seizure commenced on December 18, 2020.

### D. AML Global deposited $495,000 on January 7, 2021 for a First-Party Transaction.

On January 7, 2021, AML Global deposited $495,000 into the WBAT BOA account to purchase an airplane, N990NA. This transaction was not processed by WBAT because Defendants had been arrested in mid-December and stopped processing any and all closings, including First-Party transactions. These funds remain on deposit with BOA to this day.

### E. Lenders commence civil suits for discovery in Dallas County, Texas.

Shortly after Defendants' arrest, word spread in the airplane-transaction community. That led to several Lenders contacting the government for information in early January 2021. The government shared information insofar as it could, but the information-sharing was limited by the fact the case was still sealed. To investigate more fully, several victims filed petitions in Dallas County, Texas under Texas Rule of Civil Procedure 202.

F. **Lender Chemtov Mortgage Group files Rule 202 Petition on January 11, 2021.**

On January 11, 2021, a collection of Lenders led by Chemtov Mortgage Group ("CMG") filed a verified Rule 202 petition to seek pre-suit discovery from WBAT, including its BOA account records. *See* Exhibit A, Petition in *Chemtov Mortgage Group, et al. v. Wright Brothers Aircraft Title, Inc.*, Case No. DC-21-00333, in the 191st District Court of Dallas County, Texas. In that complaint, CMG explained its history in this case and sought discovery about deposits made into WBAT's BOA account before December 18, 2020.

G. **Lender Metrocity Holdings files Rule 202 Petition on January 19, 2021.**

On January 19, 2021, another Lender, Metrocity Holdings, filed a Rule 202 Petition against WBAT. *See* Exhibit B, Petition in *Metrocity Holdings, LLC v. Wright Brothers Aircraft Title, Inc.*, in the 192nd District Court of Dallas County, Texas. In that Petition, Metrocity explained that it had made numerous deposits with WBAT "[f]rom December 13, 2019 and continuing through December 14, 2020." *Id.* at 3. Metrocity explained that it made a demand on WBAT on January 7, 2021 to return funds Metrocity had deposited in WBAT's BOA account. *Id.* at 4.

H. **Two more Lenders intervene in CMG's Rule 202 suit.**

On February 4, 2021, another collection of Lenders intervened in CMG's Rule 202 suit pending in the 191st District Court of Dallas County,

Texas. *See* Exhibit C. CCUR's petition concerned deposits made into WBAT's BOA account between May 14 and December 4, 2020. *Id.* at ¶ 15. Like the other Rule 202 petitioners, CCUR explained that it had made a demand on WBAT to refund the entirety of the funds it had deposited in WBAT's BOA account. *Id.* at 18.

On March 9, 2021, Moncler Motors, LLC intervened in CMG's Rule 202 Petition. *See* Exhibit D. Moncler Motors's suit concerned deposits into WBAT's BOA account between February 7 and December 14, 2020. *Id.* at ¶ 12.

### I.     AML Global is unsuccessful in getting its $495,000 refunded from BOA.

After it learned of Defendants' legal troubles, AML Global contacted BOA to seek a refund of the $495,000 wire transfer made on January 7, 2021. BOA was not comfortable sending any money to anyone from WBAT's BOA account due to the types of charges against Defendants in this case and BOA's concerns about claims, and the threat of future litigation, from the Rule 202 Petitioners and other claimants of which BOA had become aware.

### J.     The government cannot seize the $495,000 in the BOA account or compel its return to AML Global without court intervention.

After the government learned of AML Global's inability to receive a refund from BOA, and BOA's (justifiable) concern about issuing a refund, it considered numerous procedural vehicles to effect the refund and to prevent

AML Global, the Defendants, and BOA from having to participate in separate litigation. The government has no basis to seize those funds because the financial tracing shows those funds were deposited on January 7, 2021 to fund a legitimate airplane transaction. Those funds had nothing to do with the Ponzi Scheme or the allegations in this case. Thus, the Parties agree that the $495,000 January 7, 2021 deposit should be returned to AML Global. Given the government's experience in collecting and enforcing restitution judgments, and given the Parties' interest in preventing AML from becoming a victim of circumstance here, the Parties move for a turnover order concerning the $495,000 January 7, 2021 deposit.

### III. ARGUMENT

**A.   The All Writs Act empowers the Court to issue orders to prevent an injustice.**

The Court has authority under the All Writs Act to issue an order restraining a defendant's assets. The All Writs Act provides "all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). The All Writs Act authorizes courts to enjoin and bind non-parties to an action when needed to preserve the court's ability to reach or enforce its decision in a case over which it has proper jurisdiction. *In re Baldwin-United Corp.*, 770 F.2d 328, 338 (2d Cir. 1985).

"This power is organic, without the need of a statute or rule for its definition, and it is necessary to the exercise of all other powers." *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 461 (4th Cir.1993). The Fifth Circuit has explained "the All Writs Act ... provide[s] a federal court with various common law equity devices to be used incidental to the authority conferred on the court by rule or statute." *ITT Cmty. Dev. Corp. v. Barton*, 569 F.2d 1351, 1359 (5th Cir. 1978).

**B.    The Court may issue a turnover order here.**

The Court has the power to issue a turnover order pursuant to the civil procedures of the Federal Debt Collection Procedures Act, 28 U.S.C. § 3001, *et seq*. The government is authorized to collect criminal restitution in favor of victims. *United States v. Phillips*, 303 F.3d 548, 550 51 (5th Cir.2002). An order of restitution may be enforced in accord with the practices and procedures of a civil judgment under federal or state law. 18 U.S.C. §§ 3613(a), (f). The Texas turnover statute, Tex. Civ. Prac. & Rem. Code § 31.002, enables a judgment creditor such as the United States to obtain a turnover order regarding nonexempt property in the debtor's possession or subject to the debtor's control. *See United States v. Messervey*, 182 F.App'x 318, 320-21 (5th Cir.2006). The government will be a judgment creditor and entitled to pursue all of Defendants' non-exempt assets on behalf of the

victims. As a disinterested stakeholder, BOA takes no position as to the Parties' request that the Court issue a turnover order here.

A turnover order may direct that the property be delivered to a sheriff, constable, or other receiver. Because this is a federal case, the USMS would be an appropriate receiver to help effect the refund of AML Global's $495,000.

### C. The funds in question are subject to Defendants' control by way of being in their BOA account, even though Defendants have no property interest in those funds.

The funds in the BOA account are subject to Defendants' control because Defendants are still technically account holders. After all, if AML Global's purchase of the airplane had closed as intended (and this criminal case did not exist), Defendants would have been the ones directing AML Global's $495,000 to the seller of the airplane. Despite their control over the funds in their BOA account, Defendants did not have an ownership interest in the $495,000 because those funds were strictly deposited in the BOA account for the benefit of others.

### D. Issuance of a turnover order prevents an innocent party from becoming a victim in this criminal case.

The government and Defendants seek assistance from the Court because AML Global's deposit is in limbo due to circumstances arising out of this prosecution. Were this any other sort of asset, the government would be remiss to allow defendants owing restitution to direct funds to anyone due to

*United States v. Mercer-Erwin, et al.*:
Joint Motion for Turnover Order                                                                                     Page 8

the risk to the crime victims. But the WBAT BOA escrow account was maintained for the benefit of third parties and the Defendants did not have, do not have, and never will have a legal property interest in those funds.

Further, BOA understandably does not wish to subject itself to further litigation by the Lenders or any other parties claiming an interest in those funds.[2] And BOA does not want to direct funds to a third party merely at Defendants' behest when those Defendants will likely owe significant restitution in the near future.

Given the current impasse, the only way AML Global would be able to recover its $495,000—aside from the Parties' immediate efforts here—would be through litigation. AML Global would sue WBAT for breach of contract for failure to refund the $495,000. Defendants, the principals of WBAT, do not have money to defend any such suit. Given the threats and the demand-riddled atmosphere of the Rule 202 Petitions in Dallas County, BOA would interplead the $495,000 with the court in that breach-of-contract suit. Then, the Lenders may attempt to intervene in the underlying breach-of-contract suit to stake a claim to the $495,000. That would be a costly and unnecessary mess for everyone, especially because it is clear from the BOA bank records

---

[2] Because none of the Lenders made any deposits into the WBAT account after December 2020, none of them have any property interest in funds that AML Global deposited in January 2021.

that the *only* party with a legitimate claim to the $495,000 on deposit in WBAT's BOA account is AML Global.

To prevent any further harm to AML Global due to this criminal case, the government and Defendants respectfully request the Court enter a turnover order directing BOA to direct $495,000 to the USMS so that USSMS may then direct those funds back to AML Global. The government owes a duty to crime victims to maximize restitution recovery, but that duty is not implicated here because the funds in question are not Defendants' or the Lenders' or anyone else's—other than AML. Although not codified in the Crime Victims' Rights Act, the government owes a more general duty to not create additional victims as a result of its prosecution.

## IV. CONCLUSION

For these reasons, the United States and Defendants Debra Lynn Mercer-Erwin and Kayleigh Moffett pray that the Court grant their motion and issue a turnover order directing Bank of America to turn over the $495,000 deposited by AML Global Payments, LLC on January 7, 2021 to the United States Marshals Service. The Parties further request that after the turnover is effected, that the United States Marshals Service be ordered to turn those funds over to the AML Global Payments, LLC consistent with the USMS policies governing refunds of seized funds. Finally, the Parties further request that Bank of America be hereinafter forever discharged from any and

all liability arising from or otherwise associated with its distribution of funds in compliance with such order.

      Respectfully submitted,

      NICHOLAS J. GANJEI
      ACTING UNITED STATES ATTORNEY

      */s/ Robert Austin Wells*
      ROBERT AUSTIN WELLS
      Assistant United States Attorney
      Texas State Bar No. 24033327
      110 N. College, Suite 700
      Tyler, Texas 75702
      Tel:  (903) 590-1400
      robert.wells3@usdoj.gov

      COUNSEL FOR THE UNITED STATES


      */s/ John W. Coyle, III\**
      John W. Coyle, III, OBA #1981
      COYLE LAW FIRM
      125 Park Avenue
      First Floor
      Oklahoma City, OK 73102
      405-232-1988
      Fax: 405-272-9859
      Email: jc@coylelaw.com

      COUNSEL FOR DEFENDANT
      DEBRA LYNN MERCER-ERWIN


      */s/ Vicki Zemp Behenna\**
      Vicki Zemp Behenna, OBA #10734
      BEHENNA, GOERKE, KRAHL & MEYER
      210 W. Park Avenue

        Suite 3030
        Oklahoma City, OK 73102
        405-232-3800
        Fax: 405-232-8999
        Email: vzb@lawfirmokc.com

        COUNSEL FOR DEFENDANT
        KAYLEIGH MOFFETT


*Signed electronically with permission by AUSA Robert Austin Wells

## CERTIFICATE OF SERVICE

This is to certify a true and correct copy of the above and foregoing pleading was electronically served on all counsel of record by way of the Court's CM/ECF system on the 5th day of April, 2021.

        */s/ Robert Austin Wells*
        Robert Austin Wells
        Assistant United States Attorney