## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | No. 4:20-CR-212-4 |
| | § | |
| DEBRA LYNN MERCER-ERWIN (1), | § | |
| KAYLEIGH MOFFETT (2) | § | |
|     Defendants. | § | |

## UNITED STATES' UNOPPOSED EXPEDITED MOTION TO RESTRAIN DISSIPATION OF ASSETS

### I. ISSUE PRESENTED

The government has preserved the non-exempt assets belonging to Defendants Debra Lynn Mercer-Erwin and Kayleigh Moffett to maximize the restitution recovery for all of the victims in this case.  To protect Defendants' assets from dissipation, and to ensure their preservation for application to the restitution judgment that will be entered for the benefit of the crime victims, the court should restrain dissipation of Defendants' assets.

### II. BACKGROUND ON WRIGHT BROTHERS AND DEFENDANTS' ASSETS

Wright Brothers Aircraft Title, Inc. ("WBAT") is an escrow company in Oklahoma City that helps to close airplane sales transactions and provide other fiduciary services.  WBAT has been in existence since 2001.  Its only officers are Debbie Lynn Mercer-Erwin and her husband, Steve Erwin.

WBAT owns no assets.  WBAT used to own an office building in Oklahoma City, but WBAT sold that building back to the builder in May 2021 to avoid foreclosure by the lending bank.  With the government's oversight and its blessing, the sales proceeds from that sale were applied to Defendants' outstanding attorneys' fees.

WBAT is a separate and distinct entity from Aircraft Guaranty Corporation ("AGC"), a company housed in the same building as WBAT. AGC is a trust company owned by Mercer-Erwin that provided a variety of services for aircraft owners.  AGC's services have been summarized in the series of indictments filed in this case. *See* Dkt. Nos. 1, 101, 151, 205, 224.

### III. THE GOVERNMENT'S ASSET RECOVERY EFFORTS FOR CRIME VICTIMS TO DATE

After Defendants were arraigned, the Court allowed them to stay on pretrial release pending trial.  The conditions of pretrial release included the obligation to not commit any crime and to cooperate with the government.

**A.    The government uses asset preservation agreements to preserve unseizable assets and maximize restitution recovery.**

Whenever the circumstances allow it, the government requests and requires defendants who will owe restitution to cooperate with the government's asset recovery efforts.  Such efforts usually include compelling a defendant to sell his assets and to direct the sales proceeds to the United States District Clerk as a down payment to the upcoming restitution

judgment.  The government monitors and approves the terms of the defendants' asset sales to ensure the sales are arm's-length transactions for fair market value.  In recent years, the government has entered into prejudgment asset preservation agreements that have resulted in defendants selling a variety of assets, including:

- An insurance agency;[1]

- A 108-foot yacht;[2]

- Airplanes;[3] and

- Numerous parcels of real estate, including homesteads.[4]

These collaborative efforts between the government and defendants have resulted in millions of dollars being deposited with the Clerk for restitution before sentencing.

Asset preservation agreements present a rare win-win-win-win scenario for everyone involved in the criminal case: the government, the defendants, the victims, and the Court.  The government wins by maximizing

---

[1] *United States v. Hahn,* Case No. 6:15cr65, in the Tyler Division of the Eastern District of Texas.
[2] *United States v. Wright*, Case No. 6:17CR40, in the Tyler Division of the Eastern District of Texas.
[3] *Id.*
[4] *See, e.g., United States v. Hunter*, Case No. 6:18CR46, in the Tyler Division of the Eastern District of Texas (homestead); *United States v. Petty*, Case No. 5:16CR15, in the Texarkana Division of the Eastern District of Texas (rental property); *United States v. Hahn,* Case No. 6:15cr65 (homestead); *United States v. Gentz*, Case No. 4:14CR60, in the Sherman Division of the Eastern District of Texas (homestead).

the return on defendants' non-exempt assets and avoids waste of assets to foreclosure or fraudulent transfer.  Defendants take control of their assets before reporting to prison, have some evidence of affirmative steps they have taken to mitigate the harm they caused the victims, and can ensure their ability to pay for counsel of their choice.[5]  Victims win because more money is paid towards restitution sooner, which means they get paid sooner by the Clerk following sentencing.  Finally, the Court wins because restitution-enforcement-and-payment issues have been addressed prior to sentencing and post-judgment litigation is minimized.

## B.   April 5, 2021: Defendants enter asset preservation agreement with the government.

On April 5, 2021, the government entered into an asset preservation agreement with Defendants concerning their assets.  That agreement established certain terms, conditions, obligations, and expectations with respect to Defendants' assets, including the following terms:

- The government's approval of a sale of Mercer-Erwin's company, AGC, to a specific buyer for $4,000,000, and setting obligations for the "to seller" proceeds to be paid to the United States District

---

[5] Asset preservation agreements provide the government and defendants some flexibility with respect to balancing the victims' right to maximum restitution recovery under the Crime Victims' Rights Act (CVRA) and defendants' Constitutional right under the Sixth Amendment to pay counsel of their choice with their untainted assets consistent with *Luis v. United States*, 136 S.Ct. 1083 (2016).

Clerk.  The sales purchase contract also contemplated the sale the remaining assets of WBAT, which comprised mainly of unsaleable intellectual property;

- The requirement that Mercer-Erwin sell her beach house in Gulf Shores, Alabama, and direct 100% of the "to seller" proceeds to the United States District Clerk;

- The requirement for Defendants to direct 100% of any "found moneys," including any potential refund of insurance premiums, to the United States District Clerk.

*See* Exhibit A, April 5, 2021 Asset Preservation Agreement.

## C. May 13, 2021: Asset preservation agreement is amended after pending sale of AGC falls through.

In late April 2021, the would-be buyer of AGC withdrew his offer.  He did so for a variety of reasons, including the threat posed by the involuntary bankruptcy filed against WBAT in the Western District of Oklahoma by several of the Ponzi-investor victims on April 19.[6]  To maintain forward progress and to continue the preservation of Defendants' assets, the government and Defendants amended the April 5 asset preservation agreement.  *See* Exhibit B, May 13, 2021 Asset Preservation Agreement ("May 13 Agreement").

---

[6] This involuntary bankruptcy is discussed *infra* in greater detail.

Consistent with the May 13 Agreement, Mercer-Erwin sold WBAT's office building in late May 2021.  WBAT had been threatened with foreclosure by the lending bank in January 2021, and needed to sell the building to preserve any of its equity.  The government approved the sale of the building provided that (1) none of the "to seller" proceeds went to the Defendants, and (2) the entire $30,000ish of sales proceeds were paid to Mercer-Erwin's criminal defense counsel to pay outstanding criminal-defense-attorneys' fees.

The other assets covered by the May 13 Agreement have not yet been sold.  Defendants are complying with their obligations to market AGC and the other assets covered by the May 13 Agreement.

### III.  COMPETING CIVIL LITIGANTS THREATEN TO DISRUPT THE GOVERNMENT'S ASSET RECOVERY EFFORTS

**A.    Involuntary bankruptcy against WBAT in the Western District of Oklahoma Bankruptcy Court threatens to pursue WBAT assets and Defendants' personal assets.**

On April 19, 2021, some of the Ponzi-investor victims filed an involuntary bankruptcy suit against WBAT in the Western District of Oklahoma.  *See* Exhibit C, Involuntary Bankruptcy Petition in *In re Wright Brothers Aircraft Title, Inc.*, Case No. 21-10994, in the United States Bankruptcy Court for the Western District of Oklahoma.  Bankruptcy counsel for Metrocity Holdings, LLC, circulated a Notice of Automatic Stay to all

counsel that purported to impose a stay on all of WBAT's assets that same day. *See* Exhibit D, Notice of Stay.

On May 26, 2021, the bankruptcy court in Oklahoma conducted a status conference. *See* generally Exhibit E, Transcript of May 26, 2021 hearing.  At the outset of that hearing, the Honorable United States Bankruptcy Judge Janice Loyd asked the involuntary bankruptcy petitioners to explain how they expected the bankruptcy to move forward. Ex. E, 4/2—5/17.

During that status conference, counsel for Metrocity Holdings, LLC and CCUR Aviation Finance, LLC (two of the Ponzi-investor victims) argued that a would-be bankruptcy estate and would-be bankruptcy trustee could be funded largely by assets already addressed by the government in this criminal case, including:

- AGC, 12/17-23;

- WBAT's office building, 17/24—18/13;

- Mercer-Erwin's personal beach house in Alabama, 18/20-24; and

- Any refunded insurance premiums that would be paid to Mercer-Erwin following a rescission of the insurance policies, 19/4-13.

Despite having knowledge of the government's May 13 Agreement with the Defendants, these civil bankruptcy litigants seek to fund their private litigation with assets that do not belong to them.

Judge Loyd has not yet entered an order for relief in the bankruptcy matter.  Instead, she elected to set the matter for an evidentiary hearing to determine whether or not an order for relief should be entered in the first place. Ex. E, 46/12—49/10.  She has now set the matter for a status conference on August 18, 2021.

**B.    Receivership in the Southern District of Florida has also expressed interest in pursuing WBAT assets while respecting this Court's orders and the government's asset recovery efforts.**

On March 1, 2021, some of the Ponzi-investor victims filed suit against Defendant Federico Andrés Machado and his company, South Aviation, in the Southern District of Florida.  *See CCUR Aviation Finance, LLC, et al. v. Federico A. Machado, et al.*, Case No. 0:21-cv-60462-BB, in the Fort Lauderdale Division of the Southern District of Florida.  On April 16, 2021, the Honorable Beth Bloom entered an order appointing a receiver for those civil plaintiffs' claims against Machado and South Aviation. *See* Exhibit F, Dkt. No. 43 ("Receivership Order").  In that order, Judge Bloom required the receiver to cooperate with the government's asset recovery efforts in this criminal case. *Id.* at ¶ 55.

The receiver has complied with its mandate and stayed within the confines of Judge Bloom's receivership order.  The receiver has worked with the government and has not interfered with the government's enforcement efforts to date.  The government agreed to not oppose the receiver's efforts to

expand the receivership as long as the involuntary bankruptcy in WDOK was dismissed.  The government agreed that expansion of the receivership to include WBAT would potentially be appropriate insofar as the receiver could reach or otherwise address assets that the government cannot: specifically, the potential insurance coverage that may or may not apply to the economic losses suffered by the victims in this case.

Following that understood agreement to terms with the government, the receiver indicated in her first 30-day report to Judge Bloom that she anticipated filing a motion for an order expanding the receivership to include WBAT. *See* Exhibit G, Temporary Receiver's First 30-Day Report.  The agreement between the receiver and the government concerning assets rests on weak ground because the receiver is not in charge of the entirety of the civil litigation related to this criminal case.  Despite the SDFL plaintiffs' indications to dismiss the WDOK bankruptcy and allow the receiver to pursue WBAT, they switched course and decided to pursue WBAT and the government's already-addressed assets in the bankruptcy.  Regardless of whatever courtesies and cooperation exist between the government and the receiver, the threat remains that the receiver would attempt to move to include *all* WBAT assets, all AGC assets, and all of Defendants' assets in the receivership.

# IV. ARGUMENT

**A.    The government's asset recovery efforts take precedence to all civil litigants' efforts to recover those same assets.**

The Fifth Circuit has long recognized the public interest in law enforcement gives priority to actions in a criminal case over those in a civil case involving similar parties and issues. *Campbell v. Eastland*, 307 F.2d 478, 487 (5th Cir. 1962).  The Bankruptcy Code also recognizes the priority of the criminal case: a bankruptcy stay does not and cannot effect the commencement or continuation of a criminal action or proceeding against the debtor. 11 U.S.C. § 362(b)(1).  Nor does the bankruptcy stay halt the commencement or continuation of governmental entities operating under its police and regulatory powers. 11 U.S.C. § 362(b)(4).   The sovereign's interest in protecting its citizens through the criminal law is fundamentally different from private financial concerns and should therefore take precedence.  *United States v. Troxler Hosiery Co., Inc.*, 796 F.2d 723 (4th Cir. 1986) (adopting the district court opinion and the quoted language found at 41 B.R. 457, 462 (M.D.N.C.1986)).

If and when the Court enters restitution in this case, it will do so pursuant to the Mandatory Victims Restitution Act, 18 U.S.C. § 366A(a)(1). The Court's judgment will and must include restitution for all of the victims who suffered net losses due to Defendants' criminal conduct. 18 U.S.C.

§ 3664(f)(1).  Because restitution is limited to a victim's actual loss offset by the value of assets provided to the victims, net winners will not be entitled to restitution. *See*, *e.g., United States v. Mahmood*, 820 F.3d 177, 195-96 (5th Cir. 2016).

The historical evaluation of lifetime recoveries and offsets that goes into determining restitution is not at play in private litigation involving investors' most recent deposits into the WBAT escrow accounts.  The civil litigants need only prove that they deposited $X on X date, made a demand for repayment, and were denied repayment.  Prior recoupments and profits do not matter.  Thus arises a potential conflict between the civil litigants and the government with respect to enforcement of restitution.  The same civil litigant who may be a civil creditor for the purposes of a bankruptcy or receivership suit may not necessarily be entitled to recover restitution in the underlying criminal case due to his net recoveries over the years.[7]

Here, the government owes a duty to *all* of the crime victims to maximize their restitution recovery in this criminal case. 18 U.S.C. § 3771(a)(6).  The government's efforts to preserve assets and to prevent innocent parties from becoming victims are all part of the continuation of the

---

[7] According to Defendant Fred Machado, the mastermind of the Ponzi scheme, "lenders were making two digits returns for five years" over the scope of the investment scheme. *See* Dkt. No. 193-1 (Fred Machado email dated March 2, 2021).

criminal case and are therefore statutorily exempted from the bankruptcy stay. 11 U.S.C. § 362(b)(1).  Private citizens are fully entitled to engage in whatever litigation they desire—so long as that litigation does not impede or interfere with the government's efforts on behalf of the entire universe of crime victims in the criminal case.

No civil creditor should be entitled to jump ahead of MVRA victims entitled to criminal restitution.  No civil creditor should be allowed to frustrate the government's ability to satisfy its CVRA duties to maximize restitution recovery or to thwart the MVRA victims' rights to recover that restitution.  That's why the Bankruptcy Code exempts criminal restitution enforcement from the onerous and ominous scope of the bankruptcy stay. That's why courts have expressly approved the government's enforcement of restitution judgments regardless of an underlying bankruptcy. *In re Partida*, 862 F.3d 909, 911 (9th Cir. 2017); *In re Robinson*, 764 F.3d 554, 560 (6th Cir. 2014); *and United States v. Colasuonno*, 697 F.3d 164, 174 (2d Cir. 2014). That's why the government has been able to execute against a bankruptcy estate to enforce a restitution judgment on behalf of a crime victim. *See United States v. Cotton*, Case No. 9:12cr23, in the Lufkin Division of the Eastern District of Texas, at Dkt. Nos. 62 (Motion for Writ of Execution); 64 (Order granting Motion); 65 (Writ).   The law is consistent and unequivocal: criminal restitution victims come first, no matter what.

**B.     The All Writs Act authorizes the Court to restrain assets here.**

The Court has authority under the All Writs Act to issue an order restraining a defendant's assets.  The All Writs Act provides "all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a).  The All Writs Act authorizes courts to enjoin and bind non-parties to an action when needed to preserve the court's ability to reach or enforce its decision in a case over which it has proper jurisdiction. *In re Baldwin-United Corp.*, 770 F.2d 328, 338 (2d Cir. 1985). "This power is organic, without the need of a statute or rule for its definition, and it is necessary to the exercise of all other powers." *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 461 (4th Cir.1993).   The Fifth Circuit has explained "the All Writs Act … provide[s] a federal court with various common law equity devices to be used incidental to the authority conferred on the court by rule or statute." *ITT Cmty. Dev. Corp. v. Barton*, 569 F.2d 1351, 1359 (5th Cir. 1978).

The All Writs Act grants the court the power to prevent a party from frustrating the proper administration of justice and from taking further affirmative actions to hinder justice. *See United States v. New York Tel. Co.*, 434 U.S. 159, 174 (1977).  The All Writs Act also authorizes a court to issue orders to restrain or preserve assets to help maximize the amount of

mandatory restitution actually recovered for victims of crime. *See, e.g.,*
*United States v. Simmons*, 2008 WL 336824, *1 (E.D. Wisc. Feb. 5, 2008);
*United States v. Abdelhadi*, 327 F.Supp.2d 587, 600 (E.D.Va. 2004); *United*
*States v. Numisgroup Intl. Corp.*, 169 F.Supp.2d 133, 138 (E.D.N.Y. 2001);
*United States v. Ross*, 1993 WL 427415, *1 (S.D.N.Y. Oct. 15, 1993); *United*
*States v. Gates*, 777 F.Supp. 1294, 1295 (E.D. Va. 1991).

**C.    The government seeks a restraining order with respect to any and all asset recovery efforts to date.**

To prevent a bankruptcy trustee, receiver, or anybody else from further interference with the government's asset recovery efforts here, the government seeks a restraining order to prevent those funds from being attached, seized, or otherwise acted against.  All of victims entitled to restitution in this criminal case are best served by the government's asset preservation agreement and the government's efforts to maximize the recovery from Defendants' assets.  The government's efforts here have also helped prevent a completely innocent party, AML Global, from becoming a victim in this case.

Accordingly, the government requests an order (1) restraining all of the assets identified in the May 13 Agreement and allowing their continued disposal consistent with that agreement; (2) restraining anyone in any civil or bankruptcy suit from attaching, seizing, enforcing, or taking any action

against the specific assets covered by this criminal case, including those

covered by the May 13 Agreement and the Court's Turnover Order (Dkt. No.

200); and (3) authorizing any other action necessary to ensure that

Defendants' real and personal property are preserved for the restitution

expected to be imposed at sentencing.

## V. GROUNDS FOR EXPEDITED RELIEF

The United States seeks expedited relief because there remains the

threat of a trustee being appointed in the WDOK bankruptcy suit and/or that

the receiver in SDFL will move to expand the receivership to include WBAT

assets that are already addressed by the government's enforcement efforts to

date.  As long as the incorrect perception persists that Defendants' non-

exempt assets subject to enforcement in this criminal case are somehow

subject to the bankruptcy stay, potential buyers for AGC or any of

Defendants' other assets are likely to stay away.  Time is money, and the

longer it takes to sell Defendants' assets, the less likely the government is to

achieve significant financial recoveries from those assets for the universe of

restitution victims.  A restraining order would inform everyone that certain

of Defendants' assets are completely off limits, and may even impact the

bankruptcy court's evaluation of whether to enter an order for relief in the

first place.  Because Judge Loyd has set a status conference in the

bankruptcy matter for August 18, 2021, the government respectfully requests the Court enter a restraining order as soon as possible.

## VI. CONCLUSION

For these reasons, the United States prays that the Court grant its motion and issue an order restraining asset dissipation under the All Writs Act.

Respectfully submitted,

NICHOLAS J. GANJEI
ACTING UNITED STATES ATTORNEY

_/s/ Robert Austin Wells_
ROBERT AUSTIN WELLS
Assistant United States Attorney
Texas State Bar No. 24033327
110 N. College, Suite 700
Tyler, Texas  75702
Tel:   (903) 590-1400
robert.wells3@usdoj.gov

## CERTIFICATE OF SERVICE

This is to certify a true and correct copy of the above and foregoing pleading was electronically served on all counsel of record by way of the Court's CM/ECF system on the 3rd day of August, 2021.

_/s/ Robert Austin Wells_
Robert Austin Wells
Assistant United States Attorney

## <u>CERTIFICATE OF CONFERENCE</u>

Because this sort of motion is permitted to be filed *ex parte*, it is exempt from the conference requirements. LOCAL R. CR-47(a)(3)(E).  It is also exempt from the conference requirements because it is related to the enforcement of a debt under the All Writs Act. LOCAL R. CR-47(a)(3)(I).  Nevertheless, Defendants do not oppose this motion.


*/s/ Robert Austin Wells*
Robert Austin Wells
Assistant United States Attorney