**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,           )<br>                                                               )<br>            **Plaintiff,**                       )<br>vs.                                                       )       Case No. 4:20-CR-00212<br>                                                               )<br>DEBRA LYNN MERCER-ERWIN (1)    )<br>KAYLEIGH MOFFETT (2)                )<br>CARLOS ROCHA VILLAURRUTIA (5) )<br>                                                               )<br>            **Defendants.**                    ) | |

## DEFENDANTS' MOTION TO SEVER

The Defendants, Debra Lynn Mercer-Erwin ("Ms. Mercer-Erwin"), by and through her counsel of record, Joe E. White, Jr., and Kayleigh Moffett ("Ms. Moffett"), by and through her counsel of record, W. Brett Behenna (collectively referred to as the "Defendants"), respectfully file this Motion to Sever pursuant to Fed. R. Crim. P. 8(b) and Fed. R. Crim. P. 14 on grounds of misjoinder of Defendants and request that the Defendants be severed for the trial of this matter.

### Statement of Facts

Ms. Mercer-Erwin and Ms. Moffett are residents of Oklahoma and are mother and daughter. Since 2014, Ms. Mercer-Erwin has been the owner of Aircraft Guaranty Corporation Holdings ("AGC") and Wright Brothers Aircraft Title, Inc. ("WBAT"). AGC provides Federal Aviation Administration ("FAA") registration and trust services to individuals who own aircraft. Like a title company's role in a house purchase, WBAT provides title management and escrow services to individuals who are purchasing or selling an aircraft. During the purchase process for an aircraft, WBAT performs title searches and ensures the aircraft transaction is legal and unencumbered. AGC assists aircraft owners with the FAA registration, licensing, and trust matters.

Tail Numbers

It is appropriate in this case to discuss the significance of a plane's tail number(s).  All civilian aircraft must be registered with the aviation authority in its country of base, just as a child is given a name or a car a license plate.  For example, all airplanes based in the U.S. must be registered with the FAA.  Like a name, an aircraft's tail number can be changed at various points during its lifetime.  All commercial aircraft are given a temporary tail number for flight testing before being delivered to an airline with a new tail number.  Likewise, if an aircraft changes airlines or owners, the new owner may decide to change the aircraft's tail number.

All United States-based tail numbers begin with the letter "N," Canadian planes begin with "C," German with "D," and so on.  The remaining numbers and letters are generally at the discretion of the owner, but in most cases will consist of a string of three numbers followed by two letters.  Many airlines have a certain amount of continuity in the way their tail numbers end.  Delta Airlines, for example, has hundreds of tail numbers that end in "DL," "DN," or "DE."

However, when it comes to private jet registration and their eccentric owners, they can get a little more interesting, and many celebrities and executives show off their private plane by registering a 'vanity tail number.'  Nike's corporate jet carries the registration "N1KE"; Michael "Air" Jordan's tail number is "N236MJ," representing his jersey number (23), championship rings (6), and initials (MJ); "G-GALX" belongs to the Dassault Falcon 900 owned by Richard Branson, the entrepreneurial owner of Virgin Galactic, Virgin Mobile, and Virgin Atlantic.

Perhaps the most important thing to understand about tail numbers is that they are fungible.  Unlike a serial number, a tail number is not unique and permanent to a certain plane.  If a plane were to be sold, go out of service, or even crash, that plane's tail number goes back into the "bank"

of numbers available to other planes. Accordingly, the tail number of a plane that crashes in Mexico in 2019 might resurface on a different plane later that same year.

### The "N" Tail Number

As mentioned above, tail numbers beginning with "N" are registered in the United States to a United States citizen. In order to own a plane with an "N" tail number, one must be a citizen of the United States. The "N" designation not only signifies a U.S. plane, but planes with those tail numbers also enjoy certain benefits.

There are several advantages to registering an aircraft in the United States. The N-Registry is widely respected for its easy, secure, and inexpensive procedures for filing aircraft title transfer, registration, and security documents. There are also maintenance and service benefits to having a plane on the N- Registry. The U.S. was also one of the first countries to adopt the Cape Town Treaty,[1] thus providing the additional comfort and assurance that interests in aircraft properly created and registered under the Cape Town Treaty will be recognized in other Contracting States. The clarity of applicable law and long history of legal precedents for enforcing rights of owners and lenders for U.S.-registered aircraft appeals to aircraft lenders, lessors, and borrowers.

The N-Registry provides an efficient system for owners and lenders to file documents and now accepts documents bearing appropriate digital signatures, which simplifies and expedites the closing process. Many parties also take comfort in the fact that the FAA, as part of the U.S.

---

[1] The Cape Town Convention on International Interests in Mobile Equipment, or Cape Town Treaty, is an international treaty intended to standardize transactions involving movable property. The treaty creates international standards for registration of contracts of sale (including dedicated registration agencies), security interests (liens), leases and conditional sales contracts, and various legal remedies for default in financing agreements, including repossession and the effect of particular states' bankruptcy laws. Four protocols to the convention are specific to four types of movable equipment: Aircraft Equipment (aircraft and aircraft engines; signed in 2001), railway rolling stock (signed in 2007), space assets (signed in 2012), and "Mining, Agricultural and Construction Equipment" (signed in 2019). The aircraft Protocol entered into force in 2006, while the others are not in effect. The treaty resulted from a diplomatic conference held in Cape Town, South Africa in 2001.
(See: https://www.faa.gov/licenses_certificates/aircraft_certification/aircraft_registry/cape_town_treaty/)

government, has the resources and wherewithal to properly oversee and enforce its rules and obligations as an aircraft registry.

Finally, there is ample evidence that registration on the N-Registry helps to preserve the value of aircraft, both because the FAA's standards for aircraft operations and maintenance are among the highest in the world and because the U.S. is the most active market for aircraft sales.

To register an aircraft on the N-Registry, the owner must be a citizen of the United States, with few exceptions. The definition of a "citizen of the United States" is provided in 49 U.S.C. §44102(a)(1)(A) and is limited to: (i) an individual who is a U.S. citizen; (ii) a corporation or LLC formed in the U.S., but only if: (A) the president and at least two thirds of the board of directors or managing officers are U.S. citizens, (B) the corporation or LLC is under the actual control of US citizens, and (C) at least 75% of voting interests are held or controlled by U.S. citizens; and (iii) a partnership in which all of the partners are individual U.S. citizens.

This means that all individuals and/or entities who are not U.S. citizens or resident aliens and many business entities that do not satisfy the definition of a U.S. citizen may not register an aircraft on the N-Registry in their name. For example, non-U.S. business entities, U.S. corporations, or LLCs that fail the management, control, or voting interest tests, partnerships that include individuals who are not U.S. citizens, and partnerships that include corporations or other business entities as partners will fail the citizenship tests. In addition, if the N-Registry registers an aircraft in the name of an entity that does not actually meet the citizenship test, the registration is considered invalid, or if the entity later has a change in ownership or management such that it no longer meets the test, the registration will no longer be effective.

There is, however, a very common structure available to non-U.S. citizens who wish to register their aircraft on the N-Registry. United States law allows aircraft registration through an

owner trust, often called a non-citizen trust ("NCT"). The terms of the NCT arrangement must comply with the Federal Aviation Regulations requirements. The trustee must be a U.S. citizen as defined by the FAA, but a non-U.S. citizen may hold all the beneficial ownership in the trust. The non-US citizen trustor or beneficiary (Beneficiary) may legally operate the aircraft under an operating agreement or operating lease and will hire the flight crew, pay all expenses, and be responsible for all maintenance. Additionally, the non-U.S. citizen may base and operate the aircraft anywhere in the world as freely as any other owner of a U.S. registered aircraft. All the tax attributes associated with the ownership and operations of the aircraft pass through to the non-U.S. Citizen Beneficiary. Finally, the Beneficiary has power to direct the trustee to terminate the trust. Essentially, the Beneficiary of an NCT has all of the power, dominion, and control over the aircraft. The trustee merely establishes the trust.

Since its founding in 1989, this is the service that AGC provides. Purchased by Ms. Mercer-Erwin in 2014, AGC serves as the trustee for any non-U.S. citizen wishing to set up an NCT. As described above, AGC is merely the trustee for the planes it holds in trust.[2] The Beneficiaries fly the planes, maintain the planes, and conduct all of the operations with the planes. With its office in Oklahoma City, Oklahoma, AGC has nothing to do with where the planes are kept, where they fly, or who flies them. AGC simply sets up the NCT so that entities or individuals can utilize the N-Registry.

## Allegations in the Indictment

The Defendants are charged in a seven-count, Fifth Superseding Indictment (the "Indictment") along with six other individuals. The Indictment charges the Defendants with six different conspiracies and one substantive count: Count 1: Conspiracy to manufacture and

---

[2] At any given time, AGC holds approximately 1,200 – 2,000 planes in trust.

distribute cocaine; Count 2: Conspiracy to manufacture and distribute cocaine intending, knowing, and with reasonable cause to believe that the cocaine will be unlawfully imported into the United States; Count 3: Manufacturing and distributing five kilograms or more of cocaine intending, knowing, and with reasonable cause to believe that the cocaine will be unlawfully imported into the United States; Count 4: Conspiracy to commit money laundering; Count 5: Conspiracy to commit export violations; Count 6: Conspiracy to commit registration violations involving aircraft not providing air transportation; and Count 7: Conspiracy to commit wire fraud.

<u>Legal Authorities on Joinder, Misjoinder, Severance</u>

Fed. R. Crim. P. 8, Joinder of Offenses or Defendants, states:

> (a) Joinder of Offenses. The indictment or information may charge a defendant in separate counts with 2 or more offenses if the offenses charged – whether felonies or misdemeanors or both – are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan.
>
> (b) Joinder of Defendants. The indictment or information may charge 2 or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses. The defendants may be charged in one or more counts together or separately. All defendants need not be charged in each count.

Fed.R.Crim.P. 14, Relief from Prejudicial Joinder, states:

> (a) Relief. If the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires.

"Where joinder is proper, the trial court may grant a severance if it appears that the defendants will be prejudiced by a joint trial." *United States v. Erwin,* 793 F.2d 656, 665 (5th Cir.

1986); see also: *United States v. Duzac,* 622 F.2d 911, 912 (5th Cir.), cert. denied, 449 U.S. 1012, 101 S. Ct. 570, 66 L.Ed.2d 471 (1980); *United States v. Wayman,* 510 F.2d 1020, 1024 (5th Cir.), cert. denied, 423 U.S. 846, 96 S. Ct. 84, 46 L.Ed.2d 67 (1975).)  The trial court has the discretion under Rule 14 to order separate trials if it appears that a defendant will be prejudiced by the joinder of offenses or defendant.  If there is a serious risk that a joint trial will prevent a jury from making a reliable judgment about the guilt or innocence of an individual co-defendant, severance may be granted.  *Zafiro v. United States,* 506 U.S. 534 (1993).

**Joinder of Defendants is Improper and so Prejudicial that Separate Trials are Required.**

The joinder of the Defendants in this case with another defendant charged with a variety of drug-related actions is wholly unrelated to the allegations against the Defendants and does not satisfy the test of Rule 8(b).  While the requirements of Rule 8(a) that the offenses must be of the same or similar character is satisfied, the allegations that the Defendants had any knowledge of drug dealings or any joint dealings with other defendants does not meet Rule 8(b)'s requirement that the Defendants participated in the same act or transaction or in the *same series of acts or transactions constituting an offense*.

At this point in the case, the only other defendant who stands to answer for the Indictment is Carlos Rocha Villaurrutia ("Mr. Villaurrutia").[3]  Presumably, Mr. Villaurrutia will stand trial at the same time as the Defendants.  Nowhere in the Indictment does the Government allege that either Ms. Mercer-Erwin or Ms. Moffett engaged in any form of business (legal or otherwise) with Mr. Villaurrutia.  Nowhere.  According to the Government's averments, Mr. Villaurrutia "purchases aircraft and illegally exports them to foreign countries using Texton, TWA, and Ford

---

[3] The Government has failed to apprehend the remaining defendants.

Electric Co." *See Indictment* at ¶ 18. The Defendants are the owners and officers of AGC and WBAT. The Defendants, AGC and WBAT, have no connection to Texton, TWA, or Ford Electric Co. In truth and fact, nowhere in the Indictment is it alleged that the Defendants and Mr. Villaurrutia even know each other. The Indictment alleges that the Defendants carried out similar crimes that had nothing to do with each other.

Mr. Villaurrutia is alleged to be the sole owner of Texton Enterprises, LLC ("Texton") and TWA International, Inc. ("TWA"). *See Indictment* at ¶¶ 16, 17, 35 & 41. The table below sets forth the allegations regarding the aircraft Mr. Villaurrutia is said to be involved with:

| Tail No. Alleged | Owner | Disposition |
|---|---|---|
| N224EA | TWA (Mr. Villaurrutia) | Crashed in Honduras w/ drugs on board on December 19, 2018. |
| N241CW | TWA (Mr. Villaurrutia) | Crashed in Venezuela w/ drugs on board on December 9, 2018. |
| N322BC | TWA (Mr. Villaurrutia) | Abandoned in Belize on October 19, 2019. "Configured for narcotics transportation." |
| N35531 | Texton (Mr. Villaurrutia) | Abandoned in Guatemala on June 6, 2019. |
| N465BC | TWA (Mr. Villaurrutia) | Landed in Guatemala on October 25, 2019. "Configured for narcotics transportation." |
| N530GA | TWA (Mr. Villaurrutia) | Landed in Guatemala on October 26, 2019. "Configured for narcotics transportation." |
| N939RR | Texton (Mr. Villaurrutia) | Seized in Guatemala on December 16, 2019, w/ drugs on board. |
| N990PA | TWA (Mr. Villaurrutia) | Crashed in Honduras on March 22, 2019, w/ drugs on board. |
| N368AG | TWA (Mr. Villaurrutia) | Sold on October 15, 2019. |

| N2000 | Registered through Ford Electric Co. by Mr. Villaurrutia | Sold on December 11, 2017. |

As the table above illustrates, the Defendants had nothing to do with the aircraft alleged to have been under Mr. Villaurrutia's control. Notably, according to the Government, of the ten aircraft identified, seven of them were either found with drugs on board or found to have been "configured for narcotics trafficking."

Of the thousands of aircraft that AGC and WBAT were involved with, the Government alleges only six were problematic according to the Government. The table below describes those six aircraft:

| Tail No. as Alleged in the Indictment | Owner | Disposition |
|---|---|---|
| N18BA | Removed from trust by AGC | Removed from trust by AGC to Daniel Regalado Orta on September 15, 2014. Crashed in Mexico w/ drugs on board *four years and six months after being sold by AGC*. |
| N305AG | Held in trust by AGC | Seized in Guatemala on January 27, 2020, w/ drugs on board. |
| N311BD | Held in trust by AGC | Seized in Belize on February 27, 2020, w/ drugs on board. |
| N569LM | Held in trust by AGC | No drugs alleged to be found. Allegation; failure to submit export filings. |
| N515BA | Held in trust by AGC | No drugs alleged to be found. Allegation; failure to submit export filings. |
| N770SW | Held in trust by AGC | No drugs alleged to be found. Allegation; failure to submit export filings. |

Of the six planes in trust with AGC alleged in the Indictment, only three are alleged to have been involved with drugs. One of them was removed from trust with AGC <u>over</u> <u>four</u> <u>years</u> <u>before</u> the Government alleges it transported drugs. The other two planes were seized in Guatemala and Belize when drugs were located. As mentioned above, AGC, the trustee for these planes, has no hand in flying, directing, maintaining, or operating them. In truth and fact, no one at AGC knows anything about the planes but for what is in the paper file regarding their NCT.

Rule 8(b) requires the trial court to determine the propriety of joinder of defendants by looking to the substance of the counts in the indictment and whether the Defendants are alleged to have participated in the same act or transaction, or same series of acts or transactions. *United States v. Potashnik,* 2008 WL 5272807; United States District Court, N.D. Texas, Dallas Division December 17, 2008. There is no mention in the Indictment tying the Defendants together with Mr. Villaurrutia or tying them together to the "same series of acts or transactions." The Indictment sets forth three counts involving the conspiracy to distribute and the manufacture of cocaine. Yet, the Indictment is void of any allegation that the Defendants ever knew Mr. Villaurrutia. The only averment which ties the three Defendants together is that they were all involved in the aviation industry. That is simply not enough to form a conspiracy. It is not enough that the Defendants should share a trial table with Mr. Villaurrutia.

Nowhere does the Indictment allege that the Defendants acted in concert with, agreed with, or had any connection at all to Mr. Villaurrutia. This assertion is entirely absent from the Indictment and, thus, there is no allegation that the Defendants joined in an overall scheme to commit the various drug charges. Mr. Villaurrutia is not even named in the Conspiracy to Commit Export Violations (Count 5.)

The mere fact that the Defendants are involved in the same industry (aviation) does not permit the Government to join them for trial. It may be that all the Defendants were members of the same YMCA or attended the same school, but such affiliations by themselves would not permit a joinder of defendants.

A decision to grant or deny severance based on misjoinder is within the sound discretion of the trial court. *United States v. Salomon,* 609 F.2d 1172, 1175(5th Cir. 1980). A joint trial is extremely prejudicial to the Defendants since such evidence will involve separate drug crimes in which they are not alleged to have participated. The Defendants are also asserting that prejudice will occur because of evidence against Mr. Villaurrutia involving his alleged involvement in significant drug trafficking. There is no possibility that the evidence against Mr. Villaurrutia will not "spillover" to the Defendants.

Guilt by association, especially where the evidence presented as to certain crimes is much more substantial with respect to others, will taint the jury's view of the Defendants. If the jury is presented evidence that they conclude shows guilt of Mr. Villaurrutia, they are more likely to convict the Defendants just because of a perceived association. Severance is required based on the misjoinder of Defendants alleged in the Indictment.

## Conclusion

The Defendants respectfully request that, based on Fed. R. Crim. P. 8(b) and Fed. R. Crim. P. 14, this Court sever the trial of this matter and allow the Defendants to proceed to trial separate and apart from Mr. Villaurrutia.

Respectfully submitted,

| | |
|---|---|
| *s/ Joe E. White, Jr.* | *s/ W. Brett Behenna* |
| JOE E. WHITE, JR.           OBA #12930 | W. BRETT BEHENNA        OBA #30485 |
| CHARLES C. WEDDLE III   OBA #18869 | BEHENNA GOERKE KRAHL & MEYER |
| KATE C. WHITE                 OBA #30930 | Oklahoma Tower |
| MATTHEW P. CYRAN         OBA #16918 | 210 Park Avenue, Suite 3030 |
| WHITE & WEDDLE, P.C. | Oklahoma City, OK 73102 |
| 630 N.E. 63rd Street | (405) 232-3800 |
| Oklahoma City, Oklahoma 73105 | bb@lawfirmokc.com |
| (405) 858-8899 | |
| (405) 858-8844 FAX | *Attorney for Kayleigh Moffett* |
| joe@whiteandweddle.com | |
| charles@whiteandweddle.com | |
| kate@whiteandweddle.com | |
| matt@whiteandweddle.com | |

*Attorneys for Debra Lynn Mercer-Erwin*


## CERTIFICATE OF DELIVERY

☒ I hereby certify that on this 22nd day of June, 2022, I electronically transmitted the attached document to the Clerk of the Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants, to:

Ernest Gonzalez
Assistant United States Attorney
101 East Park Blvd., Ste. 500
Plano, Texas 75074
Ernest.gonzalez@usdoj.gov


☐ I hereby certify that on _____, I served the attached document by United States Certified Mail, Return Receipt Requested on the following, who are not registered participants of the ECF System:

*s/ Joe E. White, Jr.*
JOE E. WHITE, JR.

**CERTIFICATE OF CONFERENCE**

Pursuant to United States District Court for the Eastern District of Texas Local Rule CR-47(a)(3), on June 10, 2022, defense counsel for the Defendants, Debra Mercer-Erwin and Kayleigh Moffett, have conferred with Ernest Gonzalez, Assistant United States Attorney, in a good faith effort to resolve the matter without Court intervention and advise the Court that the United States opposes this motion. Counsel for the United States advises that this motion is moot due to a pending plea agreement between the United States and the Co-Defendant. As of the drafting of this motion, no such plea has been entered.

*s/ Joe E. White, Jr.*
JOE E. WHITE, JR.
