IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, § | | |
|     Plaintiff, § | | |
| § | | |
| v. § | No. 4:20-CR-212 | |
| § | | |
| DEBRA LYNN MERCER-ERWIN (1), § | | |
| KAYLEIGH MOFFETT (2) § | | |
|     Defendants. § | | |

### UNITED STATES' EXPEDITED MOTION TO VACATE RESTRAINT OF ASSETS

### I. ISSUE PRESENTED

The government and Defendants Debra Lynn Mercer-Erwin and Kayleigh Moffett agreed to asset preservation in April 2021, which then led to the Court's adoption of that agreement into an Order Restraining Assets, Dkt. No. 251. Because of recent developments in competing litigation, the government is concerned that continuing asset restraint may harm some victims or may delay their recovery from Defendants' assets. To keep that from happening, the government now moves to vacate the asset-restraint order entered in August 2021.

### II. WHAT HAS CHANGED SINCE AUGUST 2021

The government moved for an order restraining assets in August 2021 to formalize the parties' April 2021 asset preservation agreement. *See* Dkt. No. 250 at 2-6. At the time, the government was concerned that a receiver in

the Southern District of Florida or a bankruptcy trustee in the Western District of Oklahoma would attempt to assert a superior claim to Defendants' assets that could otherwise be applied to an eventual restitution judgment. *Id.* at 6-9. The asset restraint allowed the SDFL receiver and the WDOK trustee to continue working while not interfering with the government's efforts on behalf of all the victims in this case.

Since the Court entered the asset restraint order, the following things have happened, which obviate the continued need for the order:

**1. Some EDTX Victims/WDOK Claimants are unable to pursue insurance litigation against WBAT's liability/crime-insurance carriers due to restraining order.**

Some of the Ponzi-investors victims in this case—who are also claimants in the WDOK Bankruptcy—may have rights to pursue with respect to liability/crime-coverage insurance that WBAT procured. When the government moved for the restraining order here, it did so with the expectation that WBAT's insurance policies were to be rescinded and that its insurance premiums would be refunded directly to them. *See* Dkt. No. 250 at 7. That did not happen.

The policies have not been rescinded and no premiums have been refunded. Instead, the investor-victims have been battling with the insurance carriers over: the scope of coverage, if any; the value of their claims; whether the policies should be rescinded; and who would be entitled

to possession of the rescission-related premium refunds. Because of the breadth of the agreed-to-with-defendants restraining order, the victims have reported that they have been hampered from engaging in self-help with respect to WBAT's insurance carrier. As long as there is a chance of the policies being rescinded and the money going straight to Defendants, the victim-insureds cannot fully and fairly negotiate with the insurance carrier. Based on the government's discussions with some of the victim-insureds, the restraining order impedes their ability to seek relief against the insurance carrier(s). They have expressed concerns about statutes of limitations potentially limiting their remedies as long as the restraining order remains in place.

The government never intended to create an impediment for victims seeking to help themselves. If there is insurance coverage and the insurance company ends up being a victim, federal law provides a vehicle for this Court to award the insurer with restitution. 18 U.S.C. § 3664(j)(1). The restraining order needs to be vacated for the insurance coverage litigation—even within the confines of the bankruptcy—to proceed.

2. **WDOK Bankruptcy Trustee claims that $495,000 subject of the Court's April 21, 2021 turnover order is somehow property of the bankruptcy estate.**

The Court entered a turnover order on April 21, 2021 pursuant to the All Writs Act to help facilitate the return of $495,000 to AML Global, an

innocent party that had the misfortune of depositing funds into a Bank of America account subject of competing litigation. *See* Dkt. No. 200.  In its motion for turnover order, the government explained that AML Global's funds were completely traced to the BOA account in question, and Defendants agreed. *See* Dkt. 191.  The government showed, and Defendants agreed, that the $495,000 in question had nothing to do with the Ponzi scheme and could never have because that deposit was made on January 7, 2021, after Defendants' BOA accounts had been zeroed out due to government seizures. *Id.*  The government urged the Court to enter a turnover order for the $495,000 in question to prevent AML Global from becoming another victim in this case. *Id.*  The Court agreed and entered the turnover order on April 21, 2021. *See* Dkt. No. 200.

To date, BOA has not complied with the turnover order.  BOA was threatened by the WDOK bankruptcy litigants that doing so would be a violation of the WDOK bankruptcy stay.

Rather than filing a motion to show cause with this Court to compel BOA to comply with the turnover order, the government moved for relief from the stay in the WDOK Bankruptcy Court to see that the turnover order was effected. *See* Ex. A, Government's Motion for Relief from Stay (without attachments).

The WDOK Bankruptcy Trustee objected to the government's motion. *See* Ex. B, WDOK Trustee's Objection. In objection to the government's motion, the Trustee launched what can only be characterized as a collateral attack on this Court's turnover order effectively asking the WDOK Bankruptcy Court to disregard this Court's turnover order altogether. *Id.*

The government replied to the Trustee's objection and reiterated to the WDOK Bankruptcy Court that the turnover order entered in this criminal case is specifically exempted from the bankruptcy stay and could not be challenged, attacked, vacated, or otherwise overturned. *See* Ex. C, Government's Reply to Trustee's Objection.

The government's motion for relief from stay is scheduled for hearing in Oklahoma City on July 6, 2022.

3. **Notwithstanding the WDOK Trustee's incorrect interpretation of this Court's turnover order, the WDOK Bankruptcy currently provides the best forum for preservation of Defendants' assets and recovery for crime victims.**

The WDOK Bankruptcy is, in many ways, corollary collection litigation for the crime victims that has already started. While a restitution order against Defendants is months away, the WDOK Trustee is already at work for nearly all of the victims of this case. The WDOK Trustee is determining net winners and net losers and pursuing those who may have been unjustly enriched. In doing so, the WDOK Trustee helps the government ultimately

determine the victims who may be owed restitution in this case—that is, those who suffered a monetary loss. Any disbursements the WDOK Trustee ultimately makes to the net-loser victim-creditors can be used to offset the restitution to be imposed here. *See* 18 U.S.C. § 3664(j)(2)(A).

### III. GROUNDS FOR EXPEDITED RELIEF

The United States seeks expedited relief because its Motion for Relief from Stay is set for final hearing in the Western District of Oklahoma Bankruptcy Court on July 6, 2022. The government wants to see that the April 21, 2021 turnover order for AML Global is complied with by Bank of America as soon as possible and without further delay or threat about the purported impact of the bankruptcy stay on specifically-excluded-by-statute criminal proceedings. If the asset restraining order is vacated prior to that hearing date, the government will have direct proof for the bankruptcy court that it does not want to interfere or impede the bankruptcy process for things that can and should be within the bankruptcy estate, like everything still restrained by the restraining order. Whereas things that are not and never were part of the bankruptcy estate, like the $495,000 owed to AML Global, should be promptly excused from the stay.

## IV. CONCLUSION

For these reasons, the United States prays that the Court grant its motion and issue an order vacating the previously entered order restraining assets.

Respectfully submitted,

BRIT FEATHERSTON
UNITED STATES ATTORNEY

  */s/ Robert Austin Wells*
ROBERT AUSTIN WELLS
Assistant United States Attorney
Texas State Bar No. 24033327
110 N. College, Suite 700
Tyler, Texas 75702
Tel: (903) 590-1400
robert.wells3@usdoj.gov

## CERTIFICATE OF SERVICE

This is to certify a true and correct copy of the above and foregoing pleading was electronically served on all counsel of record by way of the Court's CM/ECF system on the 27th day of June, 2022.

  */s/ Robert Austin Wells*
Robert Austin Wells
Assistant United States Attorney

## CERTIFICATE OF CONFERENCE

     Because this sort of motion is permitted to be filed *ex parte*, it is exempt from the conference requirements. LOCAL R. CR-47(a)(3)(E).  It is also exempt from the conference requirements because it is related to the enforcement of a debt under the All Writs Act. LOCAL R. CR-47(a)(3)(I).

                                   */s/ Robert Austin Wells*
                                   Robert Austin Wells
                                   Assistant United States Attorney