IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| UNITED STATES OF AMERICA, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
| vs. | ) | Case No. 4:20-CR-00212 |
|  | ) |  |
| DEBRA LYNN MERCER-ERWIN (1) | ) |  |
|  | ) |  |
| Defendants. | ) |  |

## MOTION TO SUPPRESS CERTAIN STATEMENTS OF DEFENDANT

Defendant Debra Lynn Mercer-Erwin, (the "Defendant"), by and through her attorney, Joe E. White, Jr., respectfully files this Motion to Suppress Certain Statements taken by law enforcement as violating Fed. R. Crim. P. 5. In support, Ms. Mercer-Erwin states as follows:

## INTRODUCTION

Ms. Mercer-Erwin is a resident of Oklahoma. Since 2014, Ms. Mercer-Erwin has been the owner of Aircraft Guaranty Corporation Holdings ("AGC") and Wright Brothers Aircraft Title, Inc. ("WBAT"). AGC provides Federal Aviation Administration ("FAA") registration and trust services to individuals who own aircraft. Like a title company's role in a house purchase, WBAT provides title management and escrow services to individuals who are purchasing or selling an aircraft. During the purchase process for an aircraft, WBAT performs title searches and ensures the aircraft transaction is legal and unencumbered. AGC assists aircraft owners with the FAA registration, licensing, and trust matters.

The Indictment charges the Defendant with six different conspiracies and one substantive count: Count 1: Conspiracy to manufacture and distribute cocaine; Count 2: Conspiracy to manufacture and distribute cocaine intending, knowing, and with reasonable cause to believe that

the cocaine will be unlawfully imported into the United States; Count 3: Manufacturing and distributing five kilograms or more of cocaine intending, knowing, and with reasonable cause to believe that the cocaine will be unlawfully imported into the United States; Count 4: Conspiracy to commit money laundering; Count 5: Conspiracy to commit export violations; Count 6: Conspiracy to commit registration violations involving aircraft not providing air transportation; and Count 7: Conspiracy to commit wire fraud.

## **FACTS**

On Friday, December 18, 2020, at approximately ten o'clock in the morning, a swarm of heavily armed federal agents descended upon AGC's Oklahoma City offices. At that time, the employees inside the offices consisted of only four women. As the front door was locked, fully armed agents with battering rams and wearing body armor knocked and the door was opened by AGC's receptionist. One agent grabbed the receptionist by the arm and forcibly pulled her out of the building. Other agents rushed into the office space and separated the other employees. The Defendant's daughter, enroute to the office, had been contacted to go to her mother's house and retrieve a new pair of pants as the Defendant had urinated on herself out of fear when the agents stormed the building. Unbeknownst to the Defendant at this point, her daughter was arrested at her mother's home.

The Defendant was arrested and allowed to contact her aviation attorney who immediately came to the location with his partner. Once the aviation attorneys were present, the Defendant was taken inside of a trailer that the agents had towed to the offices. The Defendant, her attorneys, and two armed federal agents all sat at a table in a small, separate room. The room, approximately eight feet by eight feet, with five people inside seemed very small. The only door to the room was

closed and led to another room full of armed agents who were positioned between the Defendant's location and the exit to the trailer. Rather than bringing her before a magistrate for initial appearance, it was in this room inside the trailer that the agents interrogated the Defendant for hours. During her interrogation, the Defendant was advised on more than one occasion that her daughter had been taken into custody and if the Defendant cooperated with the agents, her daughter would be released.

At 5:30 p.m., once the time to bring the Defendant before a magistrate had expired, the Defendant was placed in a police car and driven to jail.[1] Because the agents deliberately elected to arrest the Defendant on a Friday and detain her until a magistrate was no longer available, she remained incarcerated throughout the weekend. On Monday, December 21, 2020, the Defendant appeared before United States Magistrate Shon T. Erwin in the Western District of Oklahoma. The Defendant's pre-trial services report at this time indicated that the probation office recommended that she be released. Nonetheless, the government moved for detention. A detention hearing was set for Wednesday, December 23, 2020. Subsequently, the Defendant was interrogated further by agents and prosecutors on December 22, 2020. On December 23, 2020, the Defendant's attorney agreed to continue detention premised on the promise of release if the Defendant continued to cooperate. On December 29, 2020, the Defendant again was interrogated by prosecutors and agents and was ultimately released on December 30, 2020. The Defendant later met again with prosecutors and agents for two days in Plano, Texas.

The only interview with the Defendant which was recorded was the interview on December 18, 2020. The reports of the Defendant's interviews were authored by agents some six months

---

[1] Initial Appearances are typically conducted in the United States Court for the Western District of Oklahoma at 3:00 p.m.

afterwards in June of 2021. There are no reports or recordings of the interviews that took place in Plano, Texas.

## ARGUMENT AND AUTHORITIES

After making an arrest, federal agents are required to bring the arrested person before a magistrate "without unnecessary delay." Fed. R. Crim. P. 5(a). More specifically, Rule 5 reads, "A person making an arrest within the United States *must* take the defendant *without unnecessary delay* before a magistrate judge, or before a state or local judicial officer as Rule 5(c) provides, unless a statute provides otherwise." [Emphasis added.]

Agents executed their raid on the AGC offices on December 18, 2020, at ten o'clock in the morning and immediately arrested the Defendant. Rather than take her before a magistrate "without unnecessary delay" as mandated by Rule 5, they waited. United States Magistrate Suzanne Mitchell called the three o'clock docket on that day. Knowing that a magistrate would hear the Defendant's initial appearance that very day at 3:00 p.m., the agents delayed.[2] They delayed in order to add pressure onto the Defendant by interrogating her for the rest of that day and then making her sit in jail all weekend. They brought her within the confines of their portable interrogation room, threatened her daughter, and detained her for seven and one-half hours while her opportunity to be presented to the court disappeared. In total, the Defendant was to be held in federal custody for over forty-eight hours before being brought before a magistrate, even though there existed ample opportunity to do so sooner. This was by design.

The day after her initial appearance, the agents again, this time with prosecutors present, interrogated the Defendant, telling her that further interrogation was necessary before the

---

[2] AGC's Oklahoma City offices are 8.7 miles away from the federal courthouse. A thirteen-minute drive.

government would allow her release, and the detention hearing scheduled for December 23, 2020, was waived. The agents and prosecutors again interrogated the Defendant on December 29, 2020, and she was ultimately released the following day.

In 1943, the Supreme Court decided *McNabb v. United States*, 318 U.S. 332 (1943). Three of the McNabb brothers were convicted for the second-degree murder of a federal officer. Given that two of the brothers were held for fourteen hours and interrogated before being brought before a magistrate and another for five or six hours, the Court reversed the convictions. In so holding, the Court stated, "…a conviction in the federal courts, the foundation of which is evidence obtained in disregard of liberties deemed fundamental by the Constitution, cannot stand." *Id.* at 339.

> Congress has explicitly commanded that "It shall be the duty of the marshal, his deputy, or other officer, who may arrest a person charged with any crime or offense, to take the defendant before the nearest United States commissioner or the nearest judicial officer having jurisdiction under existing laws for a hearing, commitment, or taking bail for trial." *Id.* at 342.
>
> \*\*\*
>
> The mere fact that a confession was made while in the custody of the police does not render it inadmissible...But where in the course of a criminal trial in the federal courts it appears that evidence has been obtained in such violation of legal rights as this case discloses, it is the duty of the trial court to entertain a motion for the exclusion of such evidence and to hold a hearing, as was done here, to determine whether such motion should be granted or denied. *Id.* at 346.

In 1957, the Court decided *Mallory v. United States*, 354 U.S. 449 (1957). The *Mallory* Court was faced with the same question regarding the prolonged detention of an individual who ultimately confessed through interrogation. *Mallory*, in reliance on *McNabb*, acknowledged that there can be circumstances where delay is reasonable. The Court went on to clearly state, "But the delay must not be of a nature to give opportunity for the extraction of a confession." *Mallory* at 455.

The so-called *McNabb-Mallory*[3] rule came into effect in the mid-twentieth century to prevent agents from detaining and interrogating suspects for lengthy periods before presentment to a magistrate.

"In the *McNabb* case, we held that the plain purpose of the requirement that prisoners should promptly be taken before committing magistrates was to check resort by officers to 'secret interrogation of persons accused of crime.'" *Corley v. United States*, 556 U.S. 303, 308 (2009), (quoting *McNabb v. United States*, 318 U.S. 332, 344 (1943).

Eventually, the *McNabb-Mallory* rule evolved in Fed. R. Crim. P. 5. Rule 5 codifies the common-law rule of "prompt presentment," which required that an officer take an arrested person before a magistrate "as soon as he reasonably could." *United States v. Boche-Perez*, 755 F.3d 327, 333 (5th Cir. 2014), citing *Corley v. United States*, 556 U.S. 303, 306 (2009).

Regarding Rule 5, the Court has held, "In *Upshaw v. United States*, 335 U.S. 410, (1948), which came here after the Federal Rules of Criminal Procedure had been in operation, the Court made it clear that Rule 5(a)'s standard of 'without unnecessary delay' implied no relaxation of the McNabb doctrine." *Mallory* at 453.

In 1968, Congress enacted 18 U.S.C. §3501, which provides for a six-hour "safe harbor" time within which agents may legally extract a confession. Section 3501(c) also permits for an extension of the six-hour safe harbor in any case in which the delay in bringing such a person before a magistrate is found by the trial judge to be reasonable considering the means of transportation and the distance to be traveled to the nearest magistrate. 18 U.S.C. §3501(c) and *United States v. Boche-Perez*, 755 F.3d 327, 333 (5th Cir. 2014). Confessions provided outside

---

[3] See *McNabb v. United States*, 318 U.S. 332, (1943) and *Mallory v. United States*, 354 U.S. 449 (1957).

§3501(c)'s safe harbor, however, remain subject to the *McNabb–Mallory* exclusionary rule. *Corley v. United States*, 556 U.S. 303, 322 (2009); see also *United States v. Cantu–Ramirez*, 669 F.3d 619, 625 (5th Cir.2012) (Holding that the Supreme Court held that Section 3501(c) did not supplant the *McNabb–Mallory* rule, but rather modified the rule to "provide immunization to voluntary confessions given within six hours of a suspect's arrest." Citing *Corley*, 556 U.S. at 311.)

In this case, however, there was no reasonable basis to delay bringing the Defendant before a magistrate. Agents arrested the Defendant some five hours before the next scheduled initial appearances but clearly did not want to lose the opportunity to interrogate the Defendant. Detaining her past the three o'clock hour would have the added benefit of securing her incarceration over the weekend and, thus, adding to the pressure upon her to talk. Once she had spent the weekend in jail, she was advised that her only avenue to freedom was to cooperate *in spite* of the pre-trial services report recommending her release.

In *Upshaw v. United States*, 335 U.S. 410, (1948) the Supreme Court condemned the same behavior conducted by agents in this case.

> In this case we are left in no doubt as to why this petitioner was not brought promptly before a committing magistrate. The arresting officer himself stated that petitioner was not carried before a magistrate on Friday or Saturday morning after his arrest on Friday at 2 a.m., because the officer thought there was "not a sufficient case" for the court to hold him, adding that even "if the police court did hold him we would lose custody of him and I no longer would be able to question him." Thus the arresting officer in effect conceded that the confessions here were "the fruits of wrongdoing" by the police officers. He conceded more: He admitted that petitioner was illegally detained for at least thirty hours for the very purpose of securing these challenged confessions. He thereby refutes any possibility of an argument that after arrest he was carried before a magistrate "without unnecessary delay."

\*\*\*

The argument was made to the trial court that this method of arresting, holding, and questioning people on mere suspicion, was in accordance with the "usual police procedure of questioning a suspect * * *." However usual this practice, it is in violation of law, and confessions thus obtained are inadmissible under the McNabb rule.

*Upshaw* at 414.

The Defendant was detained for over seven hours on December 18, 2020, when she should have and could have been brought before a magistrate who was less than nine miles away. Whether or not her statements on that day could be considered voluntary or not is no longer an issue. As the *Corley* Court stated, "*Upshaw* consequently emphasized that even voluntary confessions are inadmissible if given after an unreasonable delay in presentment." *Corley v. United States*, 556 U.S. 303, 308, citing *Upshaw v. United States*, at 413 (1948).

The test before the Court is set forth in *Corley*:

a district court with a suppression claim must find whether the defendant confessed within six hours of arrest (unless a longer delay was "reasonable considering the means of transportation and the distance to be traveled to the nearest available [magistrate judge]"). If the confession came within that period, it is admissible, subject to the other Rules of Evidence, so long as it was "made voluntarily and ... the weight to be given [it] is left to the jury." Ibid. If the confession occurred before presentment and beyond six hours, however, the court must decide whether delaying that long was unreasonable or unnecessary under the McNabb–Mallory cases, and if it was, the confession is to be suppressed.

*Id.* at 322; see also, *United States v. Cantu-Ramirez*, 669 F.3d 619, 625 (2012).

The government agents were obliged under Rule 5 to promptly present the Defendant to a magistrate once she was arrested. There was ample opportunity to do so. The fact that the Defendant had counsel present and was cooperating does not relieve the government agents of their obligation. They could just have easily made the thirteen-minute drive to the courthouse, presented the Defendant, and resumed their interrogation. They chose not to do so. The agents

kept the Defendant detained past the time possible to present the Defendant in the hopes of extracting a confession. Their obligation under Rule 5 was not obviated by the presence of counsel or their hopes of gaining a confession. Accordingly, the question here is not one of voluntariness but rather of reasonableness and necessity of delay. The government cannot justify the delay in presentment in this case given these facts.

The Defendant's statement on December 18, 2020, was made during over seven hours of detention. She was incarcerated and held over the weekend before appearing before a magistrate. There is no reasonable explanation for the delay in presentment in this case. All totaled, the Defendant was kept in custody for twelve days and provided three separate statements to law enforcement during that period. The Defendant's statements made on December 22, 2020, and December 29, 2020, were not recorded while the statement of December 18, 2020, was. Moreover, these three statements were not reduced to written reports for a period of six months. The veracity and authenticity of the statements which the government attributes to the Defendant do not provide sufficient reliability to be admitted into evidence before a jury.

Finally, there are no recordings or reports of the statements provided by the Defendant to agents and prosecutors during the two meetings in Plano, Texas. There exists virtually no record of such meetings. Whatever statements the government attributes to the Defendant from the Plano meetings are a secret only the government has. These are the types of mechanisms which the Supreme Court has expressly proscribed since *McNabb-Mallory* and their progeny. Given these facts, the statements made by the Defendant on December 18, 2020, December 22, 2020, and December 29, 2020, as well as any statements made in Plano, should be suppressed.

## CONCLUSION

The Defendant respectfully requests that the Court suppress the statements of the Defendant made on December 18, 2020, December 22, 2020, December 29, 2020, and any statements allegedly made during the meetings conducted in Plano, Texas. Alternatively, the Defendant requests that the Court set the Defendant's motion for an evidentiary hearing on a date certain.

Respectfully submitted,

*s/ Joe E. White, Jr.*
JOE E. WHITE, JR.　　　OBA #12930
CHARLES C. WEDDLE III　OBA #18869
KATE C. WHITE　　　　　OBA # 30930
MATTHEW P. CYRAN　　　OBA # 16918
WHITE & WEDDLE, P.C.
630 N.E. 63rd Street
Oklahoma City, Oklahoma 73105
(405) 858-8899
(405) 858-8844 FAX
joe@whiteandweddle.com
charles@whiteandweddle.com
kate@whiteandweddle.com
matt@whiteandweddle.com

*Attorneys for the Defendant,*
*Debra Lynn Mercer-Erwin*

## CERTIFICATE OF DELIVERY

☒　　I hereby certify that on this 6th day of March, 2023, I electronically transmitted the foregoing document to the Clerk of the Court using the ECF System for filing and transmittal of a Notice of Electronic Filing, which will automatically send e-mail notification of such filing to all attorneys of record.

*s/ Joe E. White, Jr.*
JOE E. WHITE, JR.