IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>DEBRA LYNN MERCER-ERWIN (1)<br>KAYLEIGH MOFFETT (2) | 4:20-CR-212 |

**THE UNITED STATES' RESPONSE TO**
**MOTION TO SUPPRESS AND REQUEST FOR A *FRANKS* HEARING**

Comes now the United States and files this opposition to the Motion to Suppress and Request for a *Franks* Hearing filed by Kayleigh Moffett. Dkt. 324.[1]

## INTRODUCTION

The Defendants, Debra Lynn Mercer-Erwin and Kayleigh Moffett, along with six others, were charged with Conspiracy to Manufacture and Distribute Cocaine Intending, Knowing and with Reasonable Cause to Believe that the Cocaine will be Unlawfully Imported into the United States, Manufacturing and Distributing Five Kilograms or More of Cocaine Intending, Knowing and with Reasonable Cause to Believe that the Cocaine will be Unlawfully Imported into the United States, Conspiracy to Commit Money Laundering, Conspiracy to Commit Export

---

[1] On March 8, 2023, Defendant Debra Lynn Mercer-Erwin filed an amended motion to join and adopt this motion. Dkt. 331. As part of the notice of the hearing on the motion to suppress, the Court has indicated it will entertain Mercer-Erwin's motion to join.

1

Violations, Conspiracy to Commit Registration Violations Involving Aircraft Not Providing Air Transportation, and Conspiracy to Commit Wire Fraud.

The present motion involves two search warrants for records related to two companies owned by Mercer-Erwin. The Defendants argue that these warrants "contain misrepresentations, false statements, and omissions" and that absent these, the warrants would lack probable cause.

This motion should be denied. The Defendants have failed to make the substantial showing necessary to entitle them to a *Franks* hearing. The applications contain no misrepresentations, false statements, or omissions. The Defendants' claims are the result of isolating and taking out of context statements made by the affiants. Read in context, the statements were justified and appropriate. There is also no evidence that the applicants made deliberate or reckless false statements. Finally, even if this Court were to excise these statements, what remains would provide more than ample probable cause to issue the warrants.

Moreover, although this motion is ostensibly a motion to suppress, what the Defendants are seeking at several points is, in effect, a hearing on the sufficiency of the Indictment. Disguised as claims that DHS Special Agents made false statements to two courts, the Defendants are really asking this Court to rule that a matter of law the Defendants cannot be guilty of several counts of the Fifth Superseding Indictment. But a *Franks* hearing is not an appropriate forum for such a ruling. The Defendants may bring a motion challenge to the United States' case pursuant to Rule 29 at the close of the United States' case, or, in the event they are found guilty, after the verdict is issued.

## FACTS

Debra Lynn Mercer-Erwin and Kayleigh Moffett are principals of Aircraft Guaranty Corporation Holdings (AGC) and Wright Brothers Aircraft Title, Inc. (WBAT). Dkt. 224 at 4.

AGC registered and holds in trust thousands of aircraft for foreign nationals. *Id.* WBAT often serves as an escrow agent for transactions involving AGC and at times, makes FAA filings related to AGC aircraft. Among the aircraft for which AGC serves as trustee were aircraft that were used to transport large volumes of cocaine (including more than 5,000 kilograms spread across three planes). *Id.* at 8-10.

On December 17, 2020, DHS Special Agent Jack Stevens filed an application (the "2020 Application") for a search warrant in the Western District of Oklahoma to search the business premises of WBAT and AGC.[2] On February 25, 2022, DHS Special Agent Justin Marshall filed an application (the "2022 Application") for a search warrant in this Court to search the business premises of the CyrusOne Carrolton Data Center for records of WBAT and AGC stored on servers maintained by CyrusOne.[3] Both Applications were granted and the warrants were executed shortly after their issuance.

In setting forth the facts supporting probable cause, the Applications copied the appropriate indictment and reflect the United States' understanding of the facts at the time the applications were filed.[4] As important here, the Applications are substantively identical.

## ARGUMENT

The Defendants seek a *Franks* hearing to determine whether the evidence obtained pursuant to the warrants should be suppressed. "A defendant is only entitled to a *Franks* hearing

---

[2] A copy of this application is included as Exhibit 1 to the Motion to Suppress.

[3] A copy of this application is included as Exhibit 2 to the Motion to Suppress.

[4] The 2020 Application was filed shortly after the United States filed the Second Superseding Indictment. Dkt. 101. The 2022 Application was filed after the United States filed the Fifth Superseding Indictment. Dkt. 224.

if they show: (1) the supporting affidavit contains false statements or material omissions; (2) the false statements or omissions were deliberate or were made with a reckless disregard for the truth; and (3) the false statements or omissions are so material that, once they are excised, the remainder of the affidavit is insufficient to support a finding of probable cause." *United States v. Gates*, No. 419CR237ALMKPJ1, 2021 WL 3022037, at *3 (E.D. Tex. July 16, 2021) (Mazzant, J.) (citing *Franks v. Delaware*, 438 U.S. 154, 155 (1978)). "Even if a defendant satisfies the first two prongs of the test, they are not entitled to a Franks hearing if, when the falsehood is set aside, 'there remains sufficient content in the warrant affidavit to support a finding of probable cause.'" *Id*. (quoting *United States v. Dickey*, 102 F.3d 157, 161-62 (5th Cir. 1996)).

The threshold for a *Franks* hearing is high. An affidavit supporting a warrant application is presumed valid "and a defendant must make a 'substantial showing' in proving the evidence should be suppressed." *United States v. McKinney*, No. 4:19-CR-00068, 2021 WL 765200 (E.D. Tex. Feb. 26, 2021) (Mazzant, J.) (quoting *Franks*, 438 U.S. at 156).

**A.     The Statement that Companies Identified in the Applications are Interrelated was not False.**

At paragraphs 8 through 26 of the 2020 Application and paragraphs 6 through 24 of the 2022 Application, the Applications identify "key conspirators" including, but not limited to, Mercer-Erwin, Moffett, WBAT, and AGC. At paragraph 26 of the 2020 Application and paragraph 25 of the 2022 Application, the Applications state that "the above-mentioned companies are interrelated."

The Defendants claim that this statement is a false and material omission because, "[n]one of these entities or individuals share ownership, bank accounts, employees, phone numbers, addresses, business expenses, or coordinate business operations with WBAT and AGC." Dkt. 324 at 6. The Defendants argument in its essence is that because *all* of the

4

companies identified in the Applications do not share common ownership to call them interrelated is false and misleading.

In making this claim, the Defendants isolate this statement from its context.  The paragraphs immediately prior to the statement describe the ownership and relationship between the various companies.  More, importantly, in the immediately following sentences, the Application state what is meant be "interrelated: "[f]or example, GMAVIACION is the Mexican representative of AGC"; and "AGC and WBAT commingle leadership, employees, resources, and office spaces." 2020 Application at ¶ 27.  These statements are true.  It also true, as the Defendants concede, that WBAT have served as an escrow agent or performed title searches for five of the other companies listed in the application (South Aviation, Inc. (SAI), Pampa Aircraft Financing (PAF), Ford Electric Co., Texton Enterprises, LLC, and TWA International, Inc.).  Dkt. 324 at 6-7.

Moreover, other of the companies are also interrelated.  SAI and PAF are both owned and operated by Federico Machado and Ford Electric, Texton, and TWA International are all operated by Carlos Rocha Villarutia.  It may not be that all the companies listed in the Application have the same ultimate ownership but given the qualifying examples and given the context—an application for a search warrant, not an SEC filing—it was not false or misleading to refer to the companies as interrelated.[5]

Even where this Court to find that the statement was false, there is no reason to believe that it was deliberately so or made with a reckless disregard for the truth.  There are significant

---

[5] Notably, although the Defendants insist on strict construction, they do not offer the same.  The Application states that the *companies* are interrelated.  But the Defendants dedicate much of their argument to attempting to show the *individuals* identified in the Applications are not interrelated—a claim not made in the Applications.  Dkt. 324 at 7.

connections between the various companies identified in the applications and referring to the companies as interrelated does not mean the Special Agents deliberately mislead the courts.

Finally, even accepting the Defendants arguments that these statements were deliberate falsehoods, more than adequate probable cause remained for the warrants to be issued. The statement that the "companies are interrelated" was part of a background section.  All or most of this section could have been removed without affecting a court's probable cause analysis.

**B.     The Statement that AGC made Fraudulent Representations to the FAA was not False.**

The Defendant's second claim is that at paragraph 28 of the 2020 Application and paragraph 26 of the 2022 Application, the affiants made false statements when they stated that AGC "made several fraudulent representations or filings in the process [of setting up U.S. trusts]."  According to the Defendants, this is not true: "[a]ll information that was submitted to the FAA accurately reflected the information provided by its clients."  Dkt. 324 at 8.

The parties disagree about whether the AGC made fraudulent representations, but this disagreement did not make the applicants' statements false.  Moreover, even if this Court concludes that the applicants' statements were false, the Defendants have failed to demonstrate the statements were deliberately false or made with a reckless disregard for the truth.

Ultimately, however, what is at issue here is not whether the applicants' statements were false.  Although framed as a claim that the Special Agents lied in their applications, the statement that AGC made fraudulent representations in filings with the FAA is lifted from the Second Superseding Indictment (in the case of the 2020 Application) and the Fifth Superseding Indictment (in the case of the 2022 Indictment) and forms the basis for Count Six of the Fifth Superseding Indictment.  At that count the United States alleges that the Defendants and others conspired "to intentionally obtain and cause to be obtained a certificate authorized to be issued

under Title 49, United States Code, Section 44103, that is, an owner's certificate of registration, by knowingly and willfully falsifying and concealing . . . material facts with respect . . . aircraft" identified in the Indictment. Dkt. 224 at 38-39. Put more clearly, what the Defendants are seeking in a *Franks* hearing is a ruling that AGC did not make fraudulent representations to the FAA. A *Franks* hearing is not the appropriate forum for this dispute. The appropriate forum for such a challenge would be pursuant to Rule 29 where the Defendants can argue that the United States failed to introduce sufficient evidence with respect to Count Six.

**C.     The Statements Regarding the Filing of an EEI were not False.**

The Defendant's third claim concerns the filing of Electronic Export Information. The Defendants claim that the applicants made a false statement and material omission when they "claimed that AGC failed to ensure the required Electronic Export Information ('EEI') was filed when a plane in AGC's trust was exported." Dkt. 324 at 8. According to the Defendants the applicants "failed to inform the courts that AGC, as the trustee in a non-citizen trust, is not the USPPI [United States Principal Party In Interest], and therefore is not responsible for filing the EEI." *Id*. at 9.

The Defendants are dressing up a dispute over whether AGC was required to file EEI as a claim that the applicant made false statements. But, as with most of the Defendant's claims in this motion, this question is not amenable to a *Franks* hearing where the Court would determine if the applicants made false statements. It is question of interpreting federal regulations to determine if the AGC bears responsibility for filing EEI. It may be that the applicants are wrong and AGC was not required to file EEI. But wrongly interpreting federal export regulations is not the same as providing false facts or making reckless claims.

7

The Defendants also argue that the applicants falsely claimed that AGC failed to comply with the United States demand that it file EEI. According to the Defendants, the applicants "failed to inform the court that the confrontation referred to came in the form of a subpoena from the Office of Export Enforcement." Dkt. 324 at 9. The applicants' statements were correct: AGC refused to comply with a demand to file EEI. Indeed, in the same paragraph, the Defendants go on to admit that "AGC's counsel informed government agents on June 19, 2019 that it was their legal opinion to Mrs. Mercer-Erwin and the government that, as a trustee, Mrs. Mercer-Erwin was not responsible for filing the EEI." *Id*. at 10.

As with their second claim, the Defendants are using their request for a *Franks* hearing as a chance to challenge the sufficiency of the Indictment. Count Five of the Superseding Indictment alleges that the Defendants, with others, conspired to [k]nowingly fail[] to file an EEI, in violation of 13 U.S.C. § 305." Dkt. 224 at 37. Thus, the Defendants want to use a *Franks* hearing to have this Court rule that it was not required to file an EEI.

**D.        The Statements that the Defendants Circumvented U.S. Laws and Regulations were not False.**

The Defendant's fourth and fifth claims are that at paragraph 31 of the 2020 Application and paragraph 29 of the 2022 Application, the applicants made false statements when they stated that the "defendants circumvent United States laws and regulations by placing 'N' numbers in the hands of drug traffickers and prohibited foreign nationals" and that "the defendants violate FAA and Department of Commerce regulations by registering an aircraft with the United States while concealing the true ownership and exportation." Dkt. 324 at 10-12.

As with most of the other claims by the Defendants these statements are not amenable to a *Franks* hearing. The applicants' statements that the defendants circumvented or violated United States laws and regulations is not the presentation of a fact that can be evaluated by

8

measuring the credibility of the applicant. It is a conclusion of the United States investigators and is a summary of the United States' theory of its case. It is unclear how a *Franks* hearing on these (or most) of the Defendant's claims would even operate. What the Defendants appear to request is a mini trial where the United States would be expected to present its case and the Defendants could challenge the evidence as a dry run prior to trial. That is not the purpose of a *Franks* hearing. A Franks hearing is intended to measure the veracity of factual statements that an affiant made in a application for a search warrant.

E.   **The Statements Identifying and Describing Aircraft were not False.**

At paragraphs 38 through 56 of the 2020 Application and paragraphs 31 through 49 of the 2022 Application, the applicants summarized their investigation and walked through the registration history of several suspect aircraft. Several of these aircraft (listed at paragraphs 39-46 of the 2020 application and paragraphs 32-39 of the 2022 application) had connections to AGC. The remaining aircraft had connections with the Defendants' co-conspirators and co-defendants. The Defendants argue that the applicants bolstered their application by including these additional aircraft "to falsely bolster [their] attempt to establish probable cause of criminal activity." Dkt. 324 at 12.

The applicants' statements were not false. The applications set forth an accurate recitation of the facts lifted directly from the Second and Fifth Superseding Indictments. Where the aircraft have a connection to AGC and the Defendants that connection is identified. Where there is no direct connection, the applicants do not state or imply there is one.

F.   **The Statements Concerning the Trust Scheme were not False.**

The Defendants' seventh claim that the Applicants made a series of false statements or omissions in describing the trust scheme in which the Defendants and their co-conspirators

participated (set out at paragraphs 57-61 of the 2020 Application and paragraphs 50-54 of the 2022 Application).

None of the statements made by the applicants were false. The applicants stated that "AGC does not specifically identify any aircraft in its trust agreements by unique identifier. This runs contrary to the model trust agreement promulgated by the FAA in 2013." This is correct. The Defendants also claim that the applicants "failed to disclose to the court that the Bill of Sale used by AGC was sent to the FAA when the plane was put in trust." Dkt. 324 at 17. The Defendants are wrong. The Applicants stated that "AGC executes an Aircraft Purchase Agreement *and files a one-page Bill of Sale*." (emphasis added).

The Defendants also claim that "the applicants made a false statement when he claimed that AGC 'attempts to shirk its responsibilities by delegating regulation obligations to the foreign national.'" As with so many of the other claims by the Defendants' this is the Applicants characterization of the Defendants' actions and is not the type of statement amenable to a *Franks* hearing.

**G.**     **The Statements Describing the Scheme to Conceal Funds were not False.**

At paragraphs 62 through 67 of the 2020 Application and paragraphs 55-67[6] of the 2022 Application, the applicants described a scheme whereby WBAT served as an escrow agent for a Ponzi scheme whereby a fraudulent buyer would borrow funds to purchase an unsellable aircraft and place those funds in an WBAT escrow but never actually consummate the aircraft purchase. Ultimately funds from a second loan from another bank would be used to pay off the first loan with some the money from the first loan being paid to the conspirators.

---

[6] The paragraphs in the 2022 application appear to be misnumbered and jump from paragraph 56 to 64. There are no paragraphs 57-63.

The Defendant do not claim that they did not set up escrow accounts or that the statements by the Applicants were not false. Instead, they deny any knowing involvement in the scheme. It is, in effect, a plea of not guilty. But this is not a basis for a *Franks* hearing.

## CONCLUSION

For the reasons set forth above, the motion should be denied.

Respectfully submitted,

BRIT FEATHERSTON
United States Attorney

\_\_\_/s/_____
ERNEST GONZALEZ
Assistant United States Attorney
Texas Bar No. 00789318
101 E. Park Blvd., Suite 500
Plano, Texas 75074
(972) 509-1201
(972) 509-1209 (fax)
Ernest.Gonzalez@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was filed via electronic filing to defense counsel on March 17, 2023.

\_\_\_/s/_____
ERNEST GONZALEZ
