IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Crim. No. 4:20-cr-212-ALM-KPJ |
| | § | |
| DEBRA LYNN MERCER-ERWIN (1) | § | |
| and KAYLEIGH MOFFETT (2), | § | |
| | § | |
| Defendants. | § | |

### REPORT AND RECOMMENDATION
### OF UNITED STATES MAGISTRATE JUDGE

Pending before the Court are Defendants Debra Lynn Mercer-Erwin ("Defendant Mercer-Erwin") and Defendant Kayleigh Moffett's ("Defendant Moffett", and together with Defendant Mercer-Erwin, "Defendants") Motion to Suppress Certain Statements of Defendant (the "Motion to Suppress Statements") (Dkt. 321) and Motion to Suppress and Request for a *Franks* Hearing (the "Motion to Suppress Evidence", and together with the Motion to Suppress Statements, the "Motions") (Dkt. 324).[1] The Government filed responses and a supplemental response opposing the Motion to Suppress Statements (Dkt. 321) and the Motion to Suppress Evidence (Dkt. 324). *See* Dkts. 336, 337, 338. The Motions (Dkts. 321, 324) were referred to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636. *See* Dkts. 322, 327. On March 27, 2023,

---

[1] Defendant Mercer-Erwin filed the Motion to Suppress Statements (Dkt. 321) and Defendant Moffett filed the Motion to Join and Adopt Defendant Debra Lynn Mercer-Erwin's Motion to Suppress Certain Statements of Defendant ("Defendant Moffett's Motion to Join") (Dkt. 326). Defendant Moffett filed the Motion to Suppress Evidence (Dkt. 324) and Defendant Mercer-Erwin filed an Amended Motion to Join and Adopt Defendant Kayleigh Moffett's Motion to Suppress and Request for a Franks Hearing ("Defendant Mercer-Erwin's Motion to Join") (Dkt. 331). At the March 27, 2023 hearing, the Court orally granted Defendant Moffett's Motion to Join (Dkt. 326) and Defendant Mercer-Erwin's Motion to Join (Dkt. 331). *See* Docket Entry for March 27, 2023.

As Defendants have joined one another's arguments in both Motions (Dkts. 321, 324), the Court refers to the respective arguments as to both Defendants.

1

the Court held a hearing (the "Hearing") on the Motions (Dkts. 321, 324). *See* Docket Entry for March 27, 2023. Upon consideration, the Court recommends the Motion to Suppress Statements (Dkt. 321) and the Motion to Suppress Evidence (Dkt. 324) be **DENIED**.

## I.   BACKGROUND

On August 12, 2020, the Grand Jury returned an Indictment charging Defendants, as well as other co-defendants, with violating 21 U.S.C. § 846 (Conspiracy to Manufacture and Distribute Cocaine); 21 U.S.C. § 963 (Conspiracy to Manufacture and Distribute Cocaine Intending, Knowing, and with Reasonable Cause to Believe that the Cocaine will be Unlawfully Imported into the United States); 21 U.S.C. § 959, 18 U.S.C. § 2 (Manufacturing and Distributing Five Kilograms or More of Cocaine Intending, Knowing and with Reasonable Cause to Believe that the Cocaine will be Unlawfully Imported into the United States); and 18 U.S.C. § 1956(h) (Conspiracy to Commit Money Laundering).[2] *See* Dkt. 1. On December 17, 2020, Department of Homeland Security ("DHS") Special Agent Jack Stevens ("Agent Stevens") filed an application for a search warrant (the "2020 Application") (Dkt. 324-1) in the Western District of Oklahoma to search the business premises of Aircraft Guaranty Corporation Holdings ("AGC") and Wright Brother Aircraft Title, Inc. ("WBAT"). *See* Dkt. 337 at 3. On February 25, 2022, DHS Special Agent Justin Marshall ("Agent Marshall") filed an application for a search warrant (the "2022 Application") (Dkt. 324-2) in the Eastern District of Texas to search the business premises of the CyrusOne

---

[2] After returning Second, Third, and Fourth Superseding Indictments, on May 5, 2021, the Grand Jury returned a Fifth Superseding Indictment charging Defendants with the following: 21 U.S.C. § 846 (Conspiracy to Manufacture and Distribute Cocaine); 21 U.S.C. § 963 (Conspiracy to Manufacture and Distribute Cocaine Intending, Knowing, and with Reasonable Cause to Believe that the Cocaine will be Unlawfully Imported into the United States); 21 U.S.C. § 959, 18 U.S.C. § 2 (Manufacturing and Distributing Five Kilograms or More of Cocaine Intending, Knowing and with Reasonable Cause to Believe that the Cocaine will be Unlawfully Imported into the United States); 18 U.S.C. § 1956(h) (Conspiracy to Commit Money Laundering in violation of 18 U.S.C. §§ 1956(a)(1)(A)(i), 1956(a)(1)(B)(i), 1956(a)(2)(A), 1956(a)(2)(B)(i), and 1957); 18 U.S.C. § 371 (Conspiracy to Commit Export Violations); 18 U.S.C. § 371 (Conspiracy to Commit Registration Violations Involving Aircraft Not Providing Air Transportation in violation of 49 U.S.C. § 46306); and l8 U.S.C. § 1349 (Conspiracy to Commit Wire Fraud). *See* Dkt. 224.

Carrolton Data Center for records of AGC and WBAT stored on servers maintained by CyrusOne. *See* Dkt. 337 at 3.

Defendant Mercer-Erwin is the owner of AGC and WBAT. *See* Dkt. 321 at 1. Defendant Moffett is the daughter of Defendant Mercer-Erwin and an employee of AGC and WBAT. *See* Dkt. 324 at 2. AGC provides Federal Aviation Administration ("FAA") registration and trust services to individuals who own aircraft, as well as assists aircraft owners with FAA registration, licensing, and trust matters. *See* Dkt. 321 at 1–2. WBAT provides title management and escrow services to individuals who are purchasing or selling aircraft, as well as title searches to ensure aircraft transactions are legal and unencumbered. *See id.*

On Friday, December 18, 2020, Defendant Mercer-Erwin was arrested at AGC's offices at approximately 10:00 a.m., and Defendant Moffett was arrested at Defendant Mercer-Erwin's home at approximately 10:30 a.m. *See* Dkt. 336 at 2. Defendant Mercer-Erwin's interview with federal agents initially began at 10:34 a.m., and was then delayed to afford Defendant Mercer-Erwin the opportunity to speak with her attorneys upon her request. *See id.* Defendant Mercer-Erwin conferred with her attorneys and then reconvened the interview at 12:28 p.m., which lasted for approximately two hours and forty-five minutes. *See id.* at 2–3. Defendant Moffett agreed to be interviewed by federal agents at approximately 5:49 p.m., and the interview lasted for approximately one hour and thirty-one minutes. *See id.* at 3. Following their arrest on Friday, Defendants were detained over the weekend and presented for an initial appearance before United States Magistrate Judge Shon T. Erwin in the Western District of Oklahoma on Monday, December 21, 2020. *See* Dkt. 336 at 3; *see also* Docket Entry for December 21, 2020. Following their initial appearance, federal agents interviewed Defendants again on December 22 and 29,

3

2020, while Defendants remained in custody. *See* Dkt. 321 at 9. Defendants were released on pretrial conditions on December 30, 2020. *See* Dkt. 336 at 3.

On March 27, 2023, the Court held the Hearing on the Motions (Dkts. 321, 324). During the Hearing, Defendants called Agent Stevens to testify as to the 2020 Application. Agent Stevens acknowledged certain facts were not included in the 2020 Application.[3] On cross-examination, Agent Stevens testified there were no false statements or material omissions in the 2020 Application. Defendants proffered, without objection, and the Court admitted an email titled "BIS OEE Outreach Packet" from Ernest Payton to Dwana Peters and Defendant Mercer-Erwin dated March 21, 2019, as Defendant Exhibit 1.[4] *See* Dkt. 343.

## II.  LEGAL STANDARD

The Fourth Amendment provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. CONST. amend. IV. Thus, under the Fourth Amendment: (1) all searches and seizures must be "reasonable"; and (2) a warrant may not be issued unless probable cause is properly established and the scope of the authorized search is set forth with particularity. *Kentucky v. King*, 563 U.S. 452, 459 (2011) (citing *Payton v. New York*, 445 U.S. 573, 584 (1980)). Generally, a warrant must

---

[3] During the Hearing, Defendants questioned Agent Stevens regarding the alleged false statements and material omissions raised in the Motion to Suppress Evidence (Dkt. 324). At the conclusion of the Hearing, Defendants offered as proof and made arguments as to the alleged false statements and material omissions raised in the Motion to Suppress Evidence (Dkt. 324).

[4] The email appears to be part of a larger email chain that was not proffered, as it references the forwarding of the March 21, 2019 email by Ernest Payton to Paul Mack, as well as attachments not included in Defendant Exhibit 1. *See* Dkt. 343.

be obtained prior to conducting a search and seizing evidence; warrantless searches and seizures are presumptively unreasonable. *Id.* (quoting *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006)).

Evidence obtained through an unreasonable search may be suppressed under the exclusionary rule. *See Herring v. United States*, 555 U.S. 135, 139 (2009) ("Nonetheless, our decisions establish an exclusionary rule that, when applicable, forbids the use of improperly obtained evidence at trial."). However, "suppression is not an automatic consequence of a Fourth Amendment violation." *Id.* at 137. "Instead, the question turns on the culpability of the police and the potential of exclusion to deter wrongful police conduct." *Id.* The "exclusionary rule is not an individual right" and only applies where it "results in appreciable deterrence." *Id.* at 141 (internal brackets and citations omitted). To suppress evidence on Fourth Amendment grounds, "[t]he party seeking suppression 'has the burden of proving, by a preponderance of the evidence, that the evidence in question was obtained in violation of his Fourth Amendment rights.'" *United States v. Wallace*, 885 F.3d 806, 809 (5th Cir. 2018) (quoting *United States v. Smith,* 978 F.2d 171, 176 (5th Cir. 1992) (internal citation omitted)).

### III.   ANALYSIS

#### A. Motion to Suppress Statements

Rule 5 of the Federal Rules of Criminal Procedure requires that "[a] person making an arrest within the United States must take the defendant without unnecessary delay before a magistrate judge." FED. R. CRIM. P. 5(a)(1)(A). Rule 5 codifies the common-law rule of "prompt presentment," which required that an officer take an arrested person before a magistrate judge "as soon as he reasonably could." *Corley v. United States*, 556 U.S. 303, 306 (2009). In *McNabb v. United States*, 318 U.S. 332 (1943), and *Mallory v. United States*, 354 U.S. 449 (1957), the Supreme Court established a remedy for violations of the prompt-presentment requirement:

suppression of any confession obtained during a period of unreasonable delay. *Corley*, 556 U.S. at 309.

In 1968, Congress modified the *McNabb–Mallory* framework by enacting 18 U.S.C. § 3501. Section 3501(c) provides that a court may not suppress a confession made during a six-hour safe-harbor period solely due to a delay in presentment if the confession was made voluntarily. *See Corley*, 556 U.S. at 322. Section 3501(c) also permits an extension of the six-hour safe harbor in any case in which the delay in bringing such a person before a magistrate judge is found by the trial judge to be reasonable considering the means of transportation and the distance to be traveled to the nearest magistrate judge. Confessions provided outside of Section 3501(c)'s safe-harbor, however, remain subject to the *McNabb–Mallory* exclusionary rule. *Id.*; *see also United States v. Cantu–Ramirez*, 669 F.3d 619, 625 (5th Cir. 2012). The Fifth Circuit has explained that "a *McNabb-Mallory* challenge requires a district court to make two determinations:" (1) courts must determine the length of the delay, and, if the delay is determined to fall outside of the Section 3501(c) "safe harbor", (2) then the court needs to consider "whether the causes of the delay were justifiable." *United States v. Boche-Perez*, 755 F.3d 327, 336 (5th Cir. 2014). "The defendant has the burden of demonstrating a *McNabb-Mallory* violation." *Id.* (collecting cases).

In the Motion to Suppress Statements (Dkt. 321), Defendants argue there was unreasonable delay because Defendant Mercer-Erwin and Defendant Moffett were arrested at approximately 10:00 a.m. and 10:30 a.m., respectively, on Friday, December 18, 2020, but were not seen by a magistrate judge until Monday, December 21, 2020. *See id.* at 4. Defendants contend it was a violation of Rule 5 of the Federal Rules of Criminal Procedure for Defendants to be detained and interrogated before their presentment to a magistrate judge. *See id.* at 5–6. Defendants further argue there was no justifiable basis to delay bringing Defendants before a magistrate judge and contend

6

law enforcement received the "added benefit of securing [Defendants'] incarceration over the weekend, and, thus, adding to the pressure upon [Defendants] to talk." *Id.* at 7. Defendants further argue their statements made during interviews on December 22, 2020 and December 29, 2020—after their initial appearance before United States Magistrate Judge Shon T. Erwin—and "any statements made in Plano" should be suppressed. *Id.* at 9.

In response (Dkt. 336), the Government argues there is no basis to suppress statements made after Defendants' initial appearance on December 21, 2020. *See id.* at 3–4. The Government further argues Defendant Mercer-Erwin's statements on the day of her arrest were made within the six-hour safe harbor window between 10:00 a.m. and 4:00 p.m.—the interview beginning at 12:28 p.m., and concluding at 3:14 p.m.—and are, thus, not subject to suppression under 18 U.S.C. § 3501. *See* Dkt. 336 at 4–5. Regarding Defendant Moffett's statement on the day of her arrest, the Government argues Defendant Moffett has not met her burden in showing the delay was unjustifiable under Section 3501(c). *See id.* at 5. The Government contends the delay was justifiable because federal agents continued to execute the search warrant at AGC, process evidence, and interview AGC employees. *See* Dkt. 338 at 2–3. The Government further asserts the delay was caused by federal agents interviewing Defendant Mercer-Erwin and Defendant Moffett sequentially, with Defendant Moffett's interview beginning at 5:49 p.m., upon her request and lasting approximately one hour and thirty-one minutes. *See* Dkt. 336 at 6; Dkt. 338 at 3–5. Finally, the Government asserts the United States Marshal ("USM") in Oklahoma requires that defendants be presented to the USM by 10:00 a.m., on the day of initial appearance, and that defendants will be seen on the following business day if not presented by 10:00 a.m. *See* Dkt. 338 at 3.

Defendants have not met their burden in demonstrating a *McNabb-Mallory* violation. Defendants' statements made on December 22 and December 29, 2020, after their initial

appearances, are not subject to suppression under *McNabb-Mallory*'s requirement of prompt presentment before a magistrate judge. As the *Corley* Court explained, *McNabb-Mallory* protects against "custodial secrecy" and seeks to prevent federal agents "question[ing] suspects for extended periods before bringing them out in the open." *Corley*, 556 U.S. at 320. These interviews occurred *after* Defendants' initial appearances—i.e., "out in the open." *Id.* Defendants do not articulate a rationale or point to any case suggesting that a *McNabb-Mallory* violation can occur following presentment, or even a case suggesting that an alleged violation before presentment could render later statements to law enforcement in violation of *McNabb-Mallory*. Thus, there is no basis to suppress Defendants' statements made after their initial appearances, including statements made by Defendants Mercer-Erwin and Moffett on December 22 and 29, 2020.

Defendant Mercer-Erwin's statements made on Friday, December 18, 2020 are not subject to suppression, as they were made in the six-hour safe harbor window. "The *McNabb–Mallory* clock starts to run from when the obligation to take the defendant before the federal magistrate [judge] arises, to the point at which the confession was rendered." *Boche-Perez*, 755 F.3d at 336 (internal citations omitted). It is "'the time of confession, not the time of first appearance'" that determines whether there has been a *McNabb-Mallory* violation. *Id.* (quoting 1 CHARLES ALAN WRIGHT & ANDREW D. LEIPOLD, FEDERAL PRACTICE AND PROCEDURE: CRIMINAL § 73, at 179 (4th ed. 2008)). The six-hour window began at 10:00 a.m., and ran at 4:00 p.m. Defendant Mercer-Erwin's voluntary interview with federal agents began at 12:28 p.m., concluding approximately two hours and forty-five minutes later at 3:14 p.m. As Defendant Mercer-Erwin's interview concluded more than forty minutes before the six-hour safe harbor ran, there is simply no basis to suppress her statements under the *McNabb-Mallory* rule.

Defendant Moffett has also not met her burden in showing unjustifiable delay to suppress her statements made to federal agents on December 18, 2020. The "*McNabb–Mallory* case law rejects delays when those delays have either (1) a non-existent or (2) an unacceptable justification." *Boche-Perez*, 755 F.3d at 336. In the present case, the Government argues the delay was justifiable because federal agents continued to execute the search warrant at AGC, process evidence, and interview AGC employees, and because federal agents interviewed Defendant Mercer-Erwin and Defendant Moffett sequentially. In *Boche-Perez*, the Fifth Circuit emphasized that "law enforcement personnel are permitted, within reasonable limits, to investigate whether the crime occurred; search and secure a premises; and secure, confiscate, or destroy contraband before taking an arrestee to a magistrate [judge]." *Id.* at 337 (collecting cases). Thus, the Government has offered an acceptable justification and Defendant Moffett has not met her burden in showing federal agents went beyond reasonable limits. *See United States v. Bailey*, No. CRIM. A. C-07-627-2, 2009 WL 1098115, at *5 (S.D. Tex. Apr. 22, 2009) (finding there was not unjustifiable delay when the defendant confessed nine and a half hours after his arrest because the law enforcement "agents had to compile all of the necessary paperwork, take all of the steps necessary to preserve the evidentiary chain of custody, load all of the seized narcotics into the DEA truck, etc., and then, because the magistrate judge was not available when all of those tasks were complete, wait until the following day to present the [d]efendants to the magistrate judge").

Furthermore, Defendants' arguments focus on the timing of the interview, rather than the interview's length or nature. The *McNabb-Mallory* rule is designed to protect against custodial secrecy and is not a "beat the clock" countdown timer. *United States v. Alanis-Cuellar*, No. 5:19-CR-371, 2019 WL 4039974, at *11 (S.D. Tex. Aug. 6, 2019), *R. & R. adopted*, 2019 WL 4039976 (S.D. Tex. Aug. 27, 2019) ("It must be considered that the purpose of the rule is to protect an

incommunicado suspect from having delay and isolation used against him in order to secure a confession. It would therefore be inappropriate to require police officers to ignore established procedures to facilitate a subject interview for no other reason than to beat the clock when processing a large number of suspects."). Defendant Moffett has not shown that delay in presentment was for any other reason than federal agents duly executing the search warrant and investigating the charged offense. *See Boche-Perez*, 755 F.3d at 336–37 ("[C]ourts have been 'careful not to overextend *McNabb-Mallory*['s] prophylactic rule in cases where there was a reasonable delay unrelated to any prolonged interrogation of the arrestee.'" (quoting *United States v. Garcia–Hernandez*, 569 F.3d 1100, 1106 (9th Cir. 2009))). Accordingly, the Court finds the delay was justifiable and there is not a sufficient basis to suppress Defendant Moffett's statements.

Finally, Defendants' argument as to their detention over the weekend must be rejected. The "prompt presentment requirement does not require a magistrate [judge] to be available for twenty-four hours a day" and a "magistrate [judge] can be considered unavailable due to a host of reasons including: a busy docket; a closed court; or other factors, such as distance and weather . . . ." *Boche-Perez*, 755 F.3d at 338 (citations omitted); *see also United States v. Rahim*, 382 F. Supp. 3d 561, 573 (N.D. Tex. 2019) ("At the time of [the defendant's arrest], [the United States Magistrate Judge], who was assigned the case, held her initial appearances Monday to Friday at 2:00 p.m. . . . Any delay that occurred because this Court was closed on Sunday or because of [the United States Magistrate Judge's] afternoon scheduling was not unreasonable."). Appearances in the Western District of Oklahoma are scheduled on the United States Magistrate Judge's docket on Monday through Friday at 3:00 p.m. *See* Dkt. 336 at 3; *see also* Dkt. 321 at 4. Furthermore, the USM in Oklahoma requires defendants be presented by 10:00 a.m., on the day of initial appearance, and, accordingly, Defendants were seen on the following business day, Monday,

December 21, 2020. *See* Dkt. 338 at 3. Thus, Defendants cannot argue that any delay, including their detention over the weekend, caused by the scheduling of initial appearances violates Rule 5(a) of the Federal Rules of Criminal Procedure.

As neither Defendant Mercer-Erwin nor Defendant Moffett has shown her statements to federal agents were made in violation of Rule 5(a) and Section 3501(c), the Motion to Suppress Statements (Dkt. 321) should be denied.

### B. Motion to Suppress Evidence

"[T]he Supreme Court has determined that the Fourth Amendment entitles a defendant to a hearing on the veracity of a warrant affidavit if he can make a sufficient preliminary showing that the affiant officer obtained the warrant by recklessly including material falsehoods in a warrant application." *United States v. Kendrick*, 980 F.3d 432, 439–40 (5th Cir. 2020) (internal quotation marks and citations omitted). Under *Franks v. Delaware*, "there is a 'presumption of validity with respect to the affidavit supporting the search warrant' and a defendant must make a 'substantial showing' in proving the evidence should be suppressed." *United States v. Gates*, No. 419CR237, 2021 WL 3022037, at *3 (E.D. Tex. July 16, 2021) (quoting *Franks v. Delaware*, 438 U.S. 154, 156 (1978)); *see also United States v. Arispe*, 328 F. App'x 905, 906 (5th Cir. 2009) (per curiam) (holding the defendant is "required to make a 'substantial preliminary showing'" that he is entitled to a *Franks* hearing).

The *Franks* inquiry requires courts consider: (1) "does the affidavit contain a false statement?"; (2) "was the false statement made intentionally or with reckless disregard for the truth?"; and (3) "if the false statement is excised, does the remaining content in the affidavit fail to establish probable cause." *United States v. Ortega*, 854 F.3d 818, 826 (5th Cir. 2017) (citations omitted). The Fifth Circuit applies *Franks* not just to material allegations, but also to material

omissions. *See Kendrick*, 980 F.3d at 440. However, "[u]nless the defendant makes a strong preliminary showing that the affiant excluded critical information from the affidavit with the intent to mislead the magistrate [judge], the Fourth Amendment provides no basis for a subsequent attack on the affidavit's integrity." *United States v. Tomblin*, 46 F.3d 1369, 1377 (5th Cir. 1995) (citing *United States v. Colkley*, 899 F.2d 297, 303 (4th Cir. 1990)).

In the Motion to Suppress Evidence (Dkt. 324), Defendants argue Agent Stevens made several false statements and material omissions in the 2020 Application that are allegedly also present in the 2022 Application, and thus, the search warrants were not supported by probable cause. *See id.* at 19–20.[5] Specifically, Defendants contend Agent Stevens made the following false statements and material omissions: asserting "[t]he above-mentioned companies are interrelated" to the "Key Conspirators" although "[n]one of these entities or individuals share ownership, bank accounts, employees, phone numbers, addresses, business expenses, or coordinate business operations with WBAT and AGC," *id.* at 6; stating AGC "made several fraudulent representations or filings in the process," *id.* at 8; stating AGC failed to ensure the required Electronic Export Information ("EEI") because AGC is not the United States Principal Party in Interest ("USPPI") or the authorized agent of the USPPI pursuant to 15 C.F.R. Section 30.3(a) and (b)(3), *see id.* at 8–10; asserting AGC circumvented U.S. laws and regulations by placing "N" numbers in the hands of drug traffickers and prohibited foreign nationals as the FAA has reviewed and approved AGC's trust agreements, *see id.* at 10–11; stating AGC violated FAA and U.S. Department of Commerce

---

[5] While Defendants assert Agent Marshall also "repeatedly made false and misleading statements," Defendants do not provide any argument as to what statements are false or misleading in the 2022 Application. *See* Dkt. 324 at 3. Rather, Defendants assert the arguments as to Agent Stevens's 2020 Application "apply with equal force to the Application for Search Warrant filed by Special [A]gent Justin Marshall on February 25, 2022 because the allegations in both applications, as it relates to probable cause are identical." *Id.* at 4. Accordingly, the Court addresses Defendants' arguments singularly as to both the 2020 Application and 2022 Application. *See Franks*, 438 U.S. at 163 n.6 ("[P]olice could not insulate one officer's deliberate misstatement merely by relaying it through an officer-affiant personally ignorant of its falsity.").

12

regulations by registering an aircraft with the United States while concealing the aircraft's true ownership and exportation, *see id.* at 11–12; identifying and describing related to AGC's trust as related to those of Co-Defendant Villaurrutia's companies, *see id.* at 12–16; asserting AGC was involved in an illegal trust scheme, *see id.* at 16–17; and asserting there was a "Scheme to Conceal Funds" although "both the party loaning the money for the refundable deposit and the alleged buyer (i.e., [co-defendant] Federico Machado) knew the plane transaction was not going to close", and Defendants, WBAT, and AGC were not involved in discussions regarding the loan, *see id.* at 17–18.

In response (Dkt. 337), the Government argues the statements made by Agent Stevens are not false and do not contain material omissions, Defendants have failed to make the substantial showing necessary to entitle them to a *Franks* hearing, and even if the Court were to excise these statements, "what remains would provide more than ample probable cause to issue the warrants." *Id.* at 2. Additionally, the Government argues "a *Franks* hearing is not an appropriate forum" for a ruling on the sufficiency of the Indictment and "Defendants may bring a . . . challenge to the United States' case pursuant to Rule 29 at the close of the United Staters' case, or, in the event they are found guilty, after the verdict is issued." *Id.* As to the 2020 and 2022 Applications for the search warrants, the Government argues the following: it was not a false statement that the companies identified in the applications are interrelated, as the paragraphs immediately prior to that statement describe the ownership and relationship between the various companies and explain what is meant by "interrelated", *see id.* (citing 2020 Application at ¶ 27), and this section could be removed without affecting a court's probable cause analysis, *see id.* at 6; the statement that AGC made fraudulent representations to the FAA was not false and "[p]ut more clearly, what the Defendants are seeking in a *Franks* hearing is a ruling that AGC did not make fraudulent

13

representations to the FAA," *id.* at 7; the statements regarding the filing of EEI were not false and Defendants are seeking the Court to interpret federal export regulations and are challenging the sufficiency of the indictment, *see id.* at 7–8; the statements that Defendants circumvented U.S. laws and regulations were not false and are again a challenge to the Government's theory of the case, *see id.* at 7–8; the statements identifying and describing aircraft were not false, were taken directly from the Second and Fifth Superseding indictments, and showed connections between Defendants and co-defendants, *see id.* at 9; the statements concerning the trust scheme were not false and Defendants again challenge Agent Stevens's characterization of Defendant's actions, *see id.* at 10; and the Defendants' assertion denying any knowing involvement in the scheme to conceal funds, i.e., is "in effect, a plea of not guilty," *Id.* at 11.

As the Government has raised in its response (Dkt. 337) and at the Hearing, Defendants' argument as to alleged false statements and material omissions—i.e., that AGC made several fraudulent representations or filings, AGC failed to ensure the required EEI information was filed, AGC circumvented laws and regulations by placing "N" numbered planes in the hands of drug trafficker, AGC violated FAA and Department of Commerce regulations, and Defendants were knowingly involved in the allegedly illegal trust scheme—does not go to whether there was sufficient probable cause to support the warrant applications. Rather, Defendants appear to challenge the sufficiency of the indictment and the requisite intent element underlying several of the charged offenses. A *Franks* hearing is not the appropriate forum for such arguments. Defendants may raise these arguments at trial, under Rule 29 of the Federal Rules of Criminal Procedure, or on appeal if convicted.

Furthermore, Defendants have not offered proof by a substantial showing that any of these statements are false or that there has been a material omission. For example, Defendants assert that

none of the companies are interrelated and assert that they do not share ownership, bank accounts, employees, phone numbers, addresses, business expenses, or coordinate business operations. *See* Dkt. 324 at 6. But the 2020 Application asserts they are interrelated on the basis that AGC and WBAT comingle leadership, employees, resources, and office space and that WBAT acted as an escrow agent for Co-Defendant Villaurrutia's company, TWA International, Inc., receiving three wires comprising $220,000. *See* Dkt 324-1 at 10. In fact, Defendants concede that WBAT did in fact receive $220,0000, but Defendants aver they do not know several of the alleged co-conspirators and their transactions have been minimal with other co-conspirators. *See* Dkt. 324 at 6–7. Defendants further argue Agent Stevens "includes planes in trust by [Co-Defendant] Carlos Villaurrutia's companies" and has done so "to falsely bolster his attempt to establish probable cause of criminal activity against AGC." *Id.* at 12. Ultimately, Defendants appear to be challenging Agent Stevens's characterization of their actions. But statements are not false "when they merely summarize or characterize facts in a particular way." *United States v. Hare*, 772 F.2d 139, 141 (5th Cir. 1985); *see also United States v. Ocasio*, No. EP-11-CR-2728, 2013 WL 12442499, at *5 (W.D. Tex. June 16, 2013) ("These alleged omissions and misleading statements all relate to technical aspects of the government's investigative techniques employed in this case and how that information was communicated in the Search Warrant Affidavit . . . defense counsel failed to present any evidence to demonstrate perjury, reckless disregard, or intentional material omission on the part of the government agents." (citing *Franks*, 438 U.S. at 156; *United States v. Cavazos*, 288 F.3d 706, 710 (5th Cir. 2002))). Thus, Defendants have not shown there were false statements or material omissions in the 2020 and 2022 Applications.

Even if the Court were to find the complained of statements were false or that there were material omissions, Defendants have not shown that Agent Stevens has acted deliberately or with

reckless disregard for the truth. *See United States v. Green*, No. 3:19-CR-012, 2019 WL 6346924, at *4 (N.D. Tex. Nov. 26, 2019) ("A defendant is entitled to a *Franks* hearing only if the allegations and the offer of proof demonstrate that the affiant made false statements 'deliberate[ly] . . . or [with] reckless disregard for the truth.'" (quoting *United States v. Torres*, 694 F. App'x 937, 944 (5th Cir. 2017))). Defendants are not entitled to a *Franks* hearing because there are statements in the affidavit that are at most "debatable." *United States v. Symmank*, 397 F. App'x 991, 994 (5th Cir. 2010) (per curiam). There does not appear to be, nor have Defendants presented, any evidence that Agent Stevens deliberately misled or had reckless disregard in filing the 2020 Application. *See id.* ("It is insufficient that an affidavit was made negligently or through innocent error."); *see also Arispe*, 328 F. App'x at 907 ("There is no evidence that [the officer] intentionally or recklessly misled the magistrate [judge] by omitting information concerning [the witnesses' background and conduct]."). Rather, as discussed above, Defendants disagree with Agent Stevens's characterization of the evidence and aver they have not violated federal law. But this does not go to, and cannot meet, the substantial showing required to entitle Defendants to a *Franks* hearing.

Accordingly, the Motion to Suppress Evidence (Dkt. 324) should be denied.

## IV.   RECOMMENDATION

For the foregoing reasons, the Court recommends the Motion to Suppress Statements (Dkt. 321) and the Motion to Suppress Evidence (Dkt. 324) be **DENIED**.

Pursuant to the Court's March 7, 2023 Order (Dkt. 330), any party may serve and file written objections to the findings and recommendations set forth in this Report no later than **April 6, 2023**. Usually, a party may serve and file written objections to the findings and recommendations of the magistrate judge within fourteen (14) days after service of the magistrate judge's report. 28 U.S.C. § 636(b)(1)(C). As such, the Court conferred with the parties on the

record regarding an expedited briefing schedule, as well as an expedited objection period. Because the final pretrial conference in this case is set on April 10, 2023, *see* Dkts. 315; 316, the Court found an expedited objection deadline was necessary. *See* Dkt. 330.

A party filing objections is entitled to a *de novo* review by the district court of the findings and conclusions contained in this report only if specific objections are made, and failure to timely file written objections to any proposed findings, conclusions, and recommendations contained in this report shall bar an aggrieved party from appellate review of those factual findings and legal conclusions accepted by the district court, except on grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140 (1985); *see also Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten (10) to fourteen (14) days).

**So ORDERED and SIGNED this 31st day of March, 2023.**

_____
KIMBERLY C. PRIEST JOHNSON
UNITED STATES MAGISTRATE JUDGE