1                    UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF TEXAS
2                        SHERMAN DIVISION

3    UNITED STATES OF AMERICA        |  DOCKET 4:20-CR-212
                                     |  (1) AND (5)
4                                    |
     VS.                             |  APRIL 10, 2023
5                                    |  8:04 A.M.
     DEBRA LYNN MERCER-ERWIN AND     |
6    CARLOS ROCHA VILLAURRUTIA       |  SHERMAN, TEXAS

7    ------------------------------------------------------------

8            VOLUME 1 OF 1, PAGES 1 THROUGH 58

9         REPORTER'S TRANSCRIPT OF PRETRIAL HEARING
                     **SEALED TRANSCRIPT**
10
          BEFORE THE HONORABLE AMOS L. MAZZANT, III,
11                UNITED STATES DISTRICT JUDGE

12   ------------------------------------------------------------

13

14   APPEARANCES:

15

16   FOR THE GOVERNMENT:     ERNEST GONZALEZ
                             HEATHER RATTAN
                             U.S. ATTORNEY'S OFFICE
17                           101 E. PARK BOULEVARD, SUITE 500
                             PLANO, TX 75074
18

19

20   COURT REPORTER:        CHRISTINA L. BICKHAM, CRR, RDR
                            FEDERAL OFFICIAL REPORTER
21                          101 EAST PECAN
                            SHERMAN, TX 75090
22

23

24      PROCEEDINGS RECORDED USING MECHANICAL STENOGRAPHY;
       TRANSCRIPT PRODUCED VIA COMPUTER-AIDED TRANSCRIPTION.
25

SEALED TRANSCRIPT                                                   2

```
 1   FOR THE DEFENDANT DEBRA LYNN MERCER-ERWIN:

 2                            JOE ELLIS WHITE, JR.
                             KATE C. WHITE
 3                           MATTHEW P. CYRAN
                             WHITE & WEDDLE, PC
 4                           630 NE 63RD STREET
                             OKLAHOMA CITY, OK 73105
 5

 6

 7   FOR THE DEFENDANT CARLOS ROCHA VILLAURRUTIA:

 8                            CARLOS A. GARCIA
                             ATTORNEY AT LAW
 9                           1305 E. GRIFFIN PARKWAY
                             MISSION, TX 78572
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1              (Open court, both Defendants present.)
 2              (REPORTER'S NOTE:  Material read into the record
 3    is transcribed verbatim and, therefore, may not reflect an
 4    exact quote from documents or exhibits.)
 5              THE COURT:  Okay.  We have both Defendants here so
 6    let me call the case for pretrial conference, 4:20-cr-212,
 7    United States of America versus Debra Lynn Mercer-Erwin and
 8    Carlos Rocha Villaurrutia.
 9              Am I pronouncing that anywhere close?
10              How does he pronounce his last name?
11              MR. GARCIA:  Villaurrutia.
12              THE COURT:  Okay.  And then for the Government?
13              MR. GONZALEZ:  Your Honor, Ernest Gonzalez for the
14    Government, along with Heather Rattan.
15              THE COURT:  And then for the Defendants?
16              MR. JOE WHITE:  Joe White, Jr.; Matt Cyran; and
17    Kate White for the Defendant Deb Mercer-Erwin.
18              THE COURT:  Okay.
19              MR. GARCIA:  Carlos Garcia, your Honor, on behalf
20    of Carlos Villaurrutia.  Jaime Pena is also my partner in
21    this case, but he is awaiting a verdict in Dallas.
22              THE COURT:  I'm aware.  I heard from the judge
23    down there, so very good.
24              We're here for pretrial conference.  Just a couple
25    things.  One thing is the Court's policy is when the
```

 1  exhibits go back to the jury, I also send a copy of the

 2  Indictment so that -- just so that everyone is aware of

 3  that.  And my courtroom deputy will have a copy that -- you

 4  can each sign off on it.  It will be the same with the

 5  exhibits.

 6          Why don't we start first with -- we'll do

 7  housekeeping matters after.  There are a number of motions.

 8  We have the Motion to Enforce the Plea Agreement and for

 9  Specific Performance, which is Document 369.  I've reviewed

10  all of your exhibits as well as the Government's response.

11  Is there any additional evidence you want to offer for

12  that?

13          MR. GARCIA:  No, your Honor.

14          THE COURT:  Okay.  Any argument you want to make

15  on that or --

16          MR. GARCIA:  Your Honor, I think it's contained

17  within the pleadings.  I think the -- if I may,

18  respectfully, Judge, the Government ratified the agreement

19  that we had by moving Mr. Villaurrutia at our request.  He

20  cooperated, to his detriment, by giving up his right to

21  remain silent and also not receiving the benefit of

22  discovery up until the -- you know, the 12th hour before

23  trial, and so we'd ask the Court to grant our motion to

24  enforce the Plea Agreement.

25          THE COURT:  Any response -- or anything additional

1   in response from the Government?

2       MR. GONZALEZ:  No, your Honor.  We would rely on

3   our response and simply say there was never a Plea

4   Agreement in place, so there was never a meeting of the

5   minds in regards to what the final resolution of the case

6   would be.

7       THE COURT:  Yeah.  So I agree with the Government.

8   I understand your position.  I've reviewed the evidence.

9   None of the evidence indicates truly that there was an

10  agreement.  There was certainly a -- he was cooperating,

11  and I think there was an expectation that a Plea Agreement

12  would be entered but -- and I understand Mr. Gonzalez was

13  certainly out of touch for -- in terms of his communication

14  skills and -- but there is nothing there for the Court.

15  There is certainly a dispute whether there was ever a final

16  agreement entered.

17      So, basically, I'm denying your motion.  There is

18  just not a basis for the Court to enforce -- there is just

19  not evidence there to show there was truly a meeting of the

20  minds.  I understand that it was something you were hoping

21  to get to, but there is nothing in the record that could

22  show that that actually happened, so I'm denying that

23  motion.

24      I guess the next one I'll take up is 344.  It is

25  Defendant's MIL.  This is all regarding reference to

 1   El Chapo.

 2          Any argument on that?

 3          MR. JOE WHITE:  Your Honor, we filed that motion

 4   on behalf of Ms. Erwin.  We lay out our argument.

 5   Obviously, we do not believe there is any tie-in between

 6   this El Chapo and Ms. Erwin.  We believe that any use of

 7   the phrase "El Chapo" or "the Mexican cartel" is designed

 8   to prejudice the jury against my client's rights.  We would

 9   ask before any such mention is going to be made by the

10   Government, that they get permission rather than

11   forgiveness by this Court.

12          And I've not seen anything in the 12 terabytes of

13   information that we have been given by the Government of

14   late that shows any connection between my client and this

15   fellow named El Chapo.  So we're asking that the Court

16   utilize your discretionary power and require permission,

17   offer of proof, before any such mention is made in front of

18   this jury.

19          THE COURT:  Response?

20          MR. GONZALEZ:  Your Honor, as the Court is well

21   aware, one of the charges against Ms. Mercer-Erwin is one

22   of conspiracy to distribute cocaine as well as the

23   importation of cocaine.  So there is, in that sense, some

24   relevance to any testimony about an individual who is known

25   worldwide as one of the major drug traffickers in Mexico.

1            The link to that particular drug trafficker and

2   individuals in this case is that the Defendant Mercer-Erwin

3   has an associate that operates in Mexico as their

4   representative, an individual by the last name of Garcia

5   Mendez.  Garcia Mendez -- and on the website of the

6   Defendant, it indicated that that was an associate of

7   theirs operating in Mexico.

8            Well, in an investigation conducted into how

9   El Chapo escaped from custody, there was a cell phone that

10  was seized.  In exploiting the information in that cell

11  phone, it indicated that El Chapo was in direct

12  communication with Garcia Mendez and had numerous calls

13  with Garcia Mendez.

14           So following the chain of connection or

15  association, you have Garcia Mendez contacting and being

16  involved with a drug trafficker in Mexico and Garcia Mendez

17  being held out by this Defendant as her associate or

18  representative in Mexico.  So we believe we can link the

19  two things together, and that's how that information would

20  come in.

21           In regards to whether that information was shared

22  with Defense counsel, we believe that that information has

23  been provided in the many productions.  There's, I believe,

24  been 11 productions of evidence.  And we understand that it

25  is a continuing obligation to deliver discovery.  We've

1    done that.  The information about El Chapo and his

2    connection to Garcia Mendez is in the discovery that's been

3    provided to Defense counsel.

4            THE COURT:  Well, I'm going to grant this MIL in

5    the sense that, I mean, there is such a large amount of

6    discovery and I think El Chapo is mentioned in only a brief

7    number of documents.  I'm not saying I won't let it in, but

8    I think it's -- just approach the bench before we get into

9    that.

10           So I just don't think it should be mentioned in

11   *voir dire* or opening statement, things like that.  And when

12   we consider that evidence -- because I haven't seen the

13   documents myself, so just approach the bench before that.

14           Okay.  The next motion *in limine* is 355.  They

15   were by the Defendant Mercer-Erwin.  There were three parts

16   to this.  The first one was operational code names.  I know

17   you are objecting to that.  I don't see a problem with

18   that.  I'm going to overrule your objection to use of code

19   names.

20           Your second issue goes to hearsay.  It's more of a

21   general hearsay, the Government shouldn't be able to offer

22   hearsay evidence.  I typically don't grant that.  You have

23   some other specific issues we'll talk about here in a

24   minute on one of the other motions, but as to just general

25   hearsay, that's an objection you need to make at trial.

1          The other one is -- the third part of this was

2    prior criminal history, and I don't see a reason why that

3    shouldn't be granted and approach the bench.  That all

4    comes into whether she testifies or something like that,

5    and that may be a discussion later.  But there is no reason

6    to mention that, so I will grant the third part.  Just

7    approach the bench on that.

8          And I think that is all of that motion.

9          And then 345 is your next MIL, and that deals with

10   the issue of Federico Machado and so --

11         MR. JOE WHITE:  There is a lot to be said about

12   this --

13         THE COURT:  Well, let me just ask some questions

14   from the Government first.

15         I understand, you know, the hearsay exception in

16   terms of the issues related to that.  The concern the Court

17   has is more about the confrontation clause and I wasn't

18   sure whether Machado's evidence is coming in, if it's

19   coming in through the agent.  It's a question of whether

20   it's testimonial or not testimonial, and I couldn't tell by

21   the limited Government response whether or not -- from

22   looking at the research on this issue, it's testimonial if

23   it is just the interrogation or his interview with the

24   agent.

25              If it's something done in furtherance of the

SEALED TRANSCRIPT                                    10

1   conspiracy, like he's taped, that's fair game and the

2   confrontation clause is not implicated there.  But I wasn't

3   sure how the Government was planning on doing it, if the

4   agent was going to testify about Machado's statements, in

5   what context those statements were at.

6           MR. GONZALEZ:  As our response indicates, it would

7   be pursuant to 801(d)(2)(E), statements by a co-conspirator

8   in furtherance of the conspiracy.  It would not be the

9   post-arrest statement or any of his proffer statements,

10  your Honor.  We realize that that is a statement and

11  subject to proffer, but we don't think that any statement

12  made in furtherance of the drug conspiracy is subject to

13  proffer.

14          THE COURT:  No.  The case law is clear that if

15  it's in furtherance -- if he's taped doing things in

16  operation of the conspiracy, that's not testimonial so --

17  and the confrontation clause wouldn't be affected.  Well,

18  the hearsay exception would apply to that as well.  I

19  just --

20          MR. GONZALEZ:  And just so it's clear, it's not

21  only taped but there is also transactions that may be

22  considered a statement, something like that, but it would

23  be in furtherance of the conspiracy as well.

24          THE COURT:  Well, acts can be hearsay, too.  I

25  mean, it doesn't have to be just statements, but that would

1    still fall into that category.

2          MR. GONZALEZ:  Yes.

3          THE COURT:  So let me ask Defense counsel if

4    there's something else you want to add to that.  I agree

5    that -- I just wasn't sure the way it was going to come in.

6    The Government made the statement it was going to be in

7    furtherance of the conspiracy, but that's just so generic.

8          It doesn't look like they're going to try to

9    introduce his interrogation or his statements to the agent,

10   if there were those.  Is there something else you want to

11   add to that?  I mean, I don't think -- if it's in

12   furtherance of the conspiracy and he was acting in the

13   conspiracy, the confrontation clause isn't impacted on

14   those statements, and neither is hearsay.

15         MR. JOE WHITE:  I understand the teachings of

16   *Crawford* and testimonial/nontestimonial.  What I'm equally

17   concerned about would be the foundational issues that the

18   Government intends to rely upon in showing the "in

19   furtherance of a conspiracy."  One, are the statements in

20   furtherance of what type of conspiracy, so what's the

21   foundation for that and then, two, what is -- in terms of

22   emails and -- there are emails and WhatsApp exhibits and

23   the foundational issues behind that.

24         I certainly intend to challenge how the Government

25   believes that those documents were generated by Machado on

 1  both fronts.  I'm not aware of recordings between Machado

 2  and my client on -- at any level.

 3          I'm obviously aware of recordings that I'll take

 4  up later with this Court that I believe Machado has had

 5  with the Government whereby we've not received any reports.

 6  That's in a separate motion I know the Court is familiar

 7  with.

 8          But calls between Debbie and Machado, if any, were

 9  set up by agents, which I believe serves the purpose of

10  testimonial under *Crawford*.

11          THE COURT:  Well, at that point was Machado

12  cooperating?

13          MR. JOE WHITE:  Yes.

14          THE COURT:  Okay.

15          MR. JOE WHITE:  Machado --

16          THE COURT:  But -- go ahead.

17          MR. JOE WHITE:  Machado has lied to the

18  Government, lied to us.  He's lied to everybody while he

19  sits down there in Argentina, and he -- my client is being

20  tried at his expense.  So, it --

21          THE COURT:  Well, I understand, but the issue

22  is -- I mean, the Government has to make the foundation,

23  and typically statements come in conditionally.  The Court

24  will admit that and give an instruction to the jury that

25  they have to -- the Government has to establish, before the

SEALED TRANSCRIPT                                                13

1   evidence is closed in their case-in-chief, that she was a

2   member of the conspiracy and -- I don't have it in front of

3   me here, but those foundational requirements have to be

4   met.

5        But normally I do conditionally admit those.  Now,

6   that's -- that requires usually the Defense to make that

7   objection at that time, too, which prompts me to give that

8   instruction to the jury.

9        So I understand that distinction.  I don't know --

10  the Government has to meet the foundation.  If they do,

11  those are going to come in.  And, again, if it's in

12  furtherance of the conspiracy versus -- and I don't think

13  it makes a difference.  The case law I've looked at doesn't

14  really make a difference even if he's cooperating.  He's

15  still -- it's no different than, you know, an informant who

16  is doing something in furtherance of a conspiracy.  I don't

17  know whether that changes the dynamic in terms of the case

18  law.  The difference is really just if he interviewed with

19  the agent, the agent can't spout those comments.  Okay?

20       So what I am doing on this one, I am granting in

21  part and denying in part.  I am granting it as to -- but I

22  don't know if the Government is even going to try to offer

23  statements that are testimonial from -- in terms of -- but

24  I'm denying it as to if it's in furtherance of the

25  conspiracy, that's fair game.

SEALED TRANSCRIPT

1          The next MIL goes to 353, which is regarding

2    expert testimony.  And, of course, this is typically

3    practiced in our district in this division.  The Government

4    lists all these people really, and most of them are lay

5    witnesses.  They're not experts.  I don't -- so typically I

6    deny these kind of MILs.

7          You can make your challenges to any particular

8    person that you think they call or try to certify as an

9    expert, but typically it will be the chemists and someone

10   they designated, but most of the others are just lay

11   witnesses.  Out of an abundance of caution, the Government

12   does that catchall.  It's up to the Defense counsel to

13   object if their testimony veers off of being lay testimony

14   and becoming expert testimony, and then we can deal with

15   that.

16          But is there anything else?  I know -- we needed

17   to address?  Otherwise, we'll just deal with it during

18   trial.

19          MR. JOE WHITE:  That's fair.

20          THE COURT:  Okay.  So, technically, I'm denying

21   353.

22          The next is I have the Government's MIL, which is

23   Document 361, and we can just go through these.

24          The first one, any reference to public-authority

25   defense.  Defense isn't going to raise this, so I'm going

 1  to grant this.

 2          MR. JOE WHITE:  No, your Honor.

 3          THE COURT:  Right.  You indicated you weren't

 4  going to raise it.

 5          MS. RATTAN:  Defendant Mercer responded.  However,

 6  Villaurrutia I don't believe responded, and it relates to

 7  Villaurrutia.

 8          THE COURT:  Okay.

 9          MR. GARCIA:  We're not raising that defense,

10  Judge.

11          THE COURT:  Okay.  Very good.  Thank you.  So I

12  will grant 1.

13          The second, advice of counsel.  I guess it's moot

14  as to Mercer-Erwin.  She designated that.  I assume --

15          MR. GARCIA:  We're not raising that defense.

16          THE COURT:  Okay.  The third is any reference to a

17  mistake regarding the law or a mistake-of-law defense.

18  Again, I don't think either of the Defendants raised that,

19  so I'm going to grant that one.

20          Okay.  4 and 5 -- I guess this is the Government

21  going in reverse, you offering statements before they try

22  to offer it, because they're hearsay -- any statements of

23  your client are actually hearsay unless the Government

24  brings those things up so -- I typically -- I'm going to

25  deny 4 and 5, but the Government is right.  I just don't --

1    they have to make that objection if you're trying to offer

2    your statements, so --

3              MS. RATTAN:  May I be heard, your Honor?

4              THE COURT:  Yes.

5              MS. RATTAN:  Of course, one of our concerns is

6    opening statement and the things the Defendant might refer

7    to in opening statement.  The Defendant's statement is not

8    admissible unless the Government offers it.

9              THE COURT:  Right.

10             Well, let me just ask.  I agree with that.  I

11   mean, as soon as I mentioned that, 4 and 5 are correct

12   legally.  I typically make the parties object.  But the

13   other thing is are you planning on saying that in opening

14   statement?

15             MR. JOE WHITE:  I don't plan on referencing any

16   interviews by my client.

17             MR. GARCIA:  Your Honor, I won't -- I will not

18   allude to statements my client made during my opening

19   statement.

20             THE COURT:  Okay.  Well -- so what I'm going to do

21   is I'm going to grant in part 4 and 5 as to opening

22   statements.  I'm denying it as to the regular case.  And

23   then, you know, that will come in in due course whether the

24   Government brings it up -- or if you try to, they will

25   object.

1              6, improper impeachment of a witness with a

2     statement which the witness has neither written nor adopted

3     as his own.  What concern here is with the Government?

4              MS. RATTAN:  The concern is, of course, there's

5     reports of interview that his does just like FBI does 302s

6     and DEA does 6s.  Those are not statements of the witness.

7     To use a record that the agency may have made of their

8     interview of the witness, if the witness hasn't adopted it,

9     is not appropriate, and it's not proper impeachment.

10             MR. GARCIA:  I think with the proper foundation,

11    it can be in order to refresh a witness' recollection,

12    depending on the statements that are made by the witness.

13             THE COURT:  That's certainly fair game, use of it

14    for refreshing.  It's not necessarily for -- you can't use

15    it necessarily for impeachment because it is not their

16    statement, so -- was that the only purpose you were using?

17             MR. GARCIA:  That's the only purpose I would use

18    it for, just refreshing recollection.

19             THE COURT:  Anything additional on that?

20             So I'm going to grant 6 with the exception of if

21    you're going to use it to refresh their memory.

22             MR. GARCIA:  Thank you.

23             MS. RATTAN:  And then, of course --

24             THE COURT:  Of course, that's on the outside -- I

25    mean, the jury -- they don't read it.  They just read it

SEALED TRANSCRIPT                                                    18

 1  themselves, you know, when you ask your questions.

 2          MR. GARCIA:  Correct.

 3          THE COURT:  Did you have something else,

 4  Ms. Rattan?

 5          MS. RATTAN:  Well, there is a foundation for that.

 6  If the witness doesn't recognize it, it's done.

 7          THE COURT:  Right.  I understand.

 8          MS. RATTAN:  Okay.

 9          MR. JOE WHITE:  Judge, there is also, during these

10  interviews by these agents, discussion between the agents

11  where they're, "I can make her cry, but I'm not going to do

12  that right now.  I'm going to be the good guy right now,

13  not the bad guy."  Those kind of statements, I believe, are

14  proper cross-exam of the agents as to the method and mode

15  of interrogation of my client.

16          THE COURT:  Are those in the 302s or --

17          MR. JOE WHITE:  They are in the interviews and

18  transcripts of the interviews, the audio recordings that we

19  have that we will have to the second on playing if they

20  dispute.

21          MS. RATTAN:  May I be heard, your Honor?

22          THE COURT:  Yes.

23          MS. RATTAN:  Okay.  Those are recordings of the

24  statements of the Defendants and statements that agents

25  made while the Defendants were being interviewed after

SEALED TRANSCRIPT                    19

 1  arrest.  And the Court has already entered a ruling, made a

 2  ruling on the fact that the Defendants' statements won't

 3  come in.  So those are all part and parcel.  They're all

 4  part of the same interview, and we would object to that.

 5           THE COURT:  Well --

 6           MR. JOE WHITE:  If the Government does not want to

 7  introduce the statements -- so as the Court may be aware,

 8  there was an interview -- there were two interviews on

 9  Day 1 of the search.  There was an interview --

10           THE COURT:  I understand.  We'll deal with that

11  motion to suppress here --

12           MR. JOE WHITE:  And -- so then thereafter there

13  are the Rule 11 interviews.  If the Government is not going

14  to rely upon the first two interviews -- which the second

15  interview of the first two is what I'm talking about in

16  terms of, among other things, the hyperbole between agents

17  on how they're, I think, going about the interview in an

18  inappropriate manner.  I intend to -- if they raise the

19  interview, I believe it's fair game.

20           THE COURT:  Well, I have to presume the Government

21  is going to offer those or we wouldn't even be having an

22  issue with a motion to suppress but --

23           Correct?  I mean, the Government is going to offer

24  those statements?

25           MS. RATTAN:  Your Honor, we would reserve the

 1  right to make that decision toward the conclusion of the

 2  presentation of our evidence.  So we're not certain.

 3          THE COURT:  Okay.  So I guess it only comes up --

 4  if the statements are introduced, that's fair game.  But

 5  it's not fair game if those statements don't come in.  And,

 6  of course, the Defense can't offer those statements.

 7          MR. JOE WHITE:  The concern I have is they put the

 8  agents up there that are, in my opinion, at issue with this

 9  hyperbole.  They put those agents up there not yet having

10  opened the door, and then after those agents are called and

11  done, then they open the door and I'm not able to cross

12  those agents.

13          THE COURT:  Well, of course, you can hold open

14  your cross or ask the witness to be recalled so you have

15  that ability.  I mean, as long as that agent doesn't

16  testify to anything about those statements, that doesn't

17  open the door so -- I understand you have an issue there.

18  But until the Government gets into that area, you can't get

19  into it yourself.

20          MR. JOE WHITE:  I will ask that they be held --

21          THE COURT:  But just you can do that at the time.

22          MR. JOE WHITE:  Yes.

23          THE COURT:  What I -- just so -- you're not

24  familiar with -- my practice is when a witness is done, I

25  will ask if both sides will allow the witness to be

 1  released.  Just say "no," and then the witness is subject

 2  to recall.  Okay?

 3          MR. JOE WHITE:  Thank you, your Honor.

 4          THE COURT:  Let's see.  Okay.  7, any prior bad

 5  acts any witness may have committed not resulting in a

 6  conviction or pending charges.  Is there something in

 7  particular we're worried about here?

 8          MS. RATTAN:  There is not any specific

 9  information.  It's just not appropriate, and we'd ask that

10  they approach the bench if they think that they know

11  something that we don't know or have something.

12          MR. JOE WHITE:  That's fair.  I was given a *Giglio*

13  pleading this morning by the Government.  I'm assuming --

14          Let me have that.

15          THE COURT:  Well, I think this is just kind of

16  general bad acts.  I don't know if it's even -- I'm not

17  concerned either way, I mean, whether -- I can grant it.

18  Just approach the bench if you have something, you know,

19  that you may know that's not something submitted by the

20  Government.  Usually there is no surprises in criminal

21  cases typically, so --

22          Okay.  8 is reputation.  Typically I deny these, I

23  mean, unless the -- because y'all objected to that.  I

24  mean, you just have to follow the rules on reputation if

25  you try to go into anything like that.  The Court is going

SEALED TRANSCRIPT                                           22

1    to enforce the rules, but you have to -- the Government

2    would just have to object.  So I'm not going to usually

3    grant that.

4           9 is these issues of jury nullification.  The

5    Defense objected, but I'm going to grant 9.  I mean, the

6    statements that the Government is eliciting there, none of

7    those are appropriate.  Sometimes I know that Defense

8    counsel wants the jury to do that, but you can't say at all

9    those words.  And I've had that happen before.  A jury has

10   done that before, which surprised us, you know, so --

11          10, that counsel for Defendants or Defendants have

12   a personal belief or opinion.  Y'all objected but -- I'm

13   trying to think of what was the objection you had because I

14   don't have that in front of me.

15          Of course, credibility is always an issue, so

16   that's -- is there something -- is there something the

17   Government was going after here?  I just --

18          MS. RATTAN:  No.  Just Defense counsel -- and, of

19   course, it applies to the Government as well.  Our personal

20   opinions are not appropriate.  And so for Defense counsel

21   to get up there, "I've represented this client for two

22   years," "I know that she is," "I have a belief that," it's

23   not appropriate.

24          MR. JOE WHITE:  Right.

25          THE COURT:  I agree, so I'm going to grant 10.

1            11 is any statement asking the jury to stand in

2     shoes.  That's also -- you objected, but that's in the same

3     vein.  I'm going to grant 11.

4            12 is the health condition of Defendants and

5     family members.  In my view, this is -- it should be

6     granted unless they testify, and then their stories are

7     their stories.  So if she testifies, I'm not going to

8     restrict -- I know it is going through -- I mean,

9     Ms. Moffett pled guilty, so -- is there some other issue

10    here you're concerned about from the Defense?

11           So I'm going to grant it unless they testify, and

12    then they can tell their stories.

13           Okay.  And that's the same with 13.  I'll grant

14    unless they testify.

15           14, specific prior good acts of the Defendants.  I

16    believe this should be granted unless they testify.  They

17    get to tell their story, which I won't restrict their

18    ability to fully tell their story.

19           15 is reputation.  Again, is there something in

20    particular other than -- I usually deny this and then the

21    Government can object if you do it improperly, but you just

22    have to follow the rules.

23           16 is the impact of the jury's verdict on the

24    Defendants and their families.  I'm going to grant that.

25    That is not appropriate.

1          17, the issue of punishment.  The Defense

2     objected, indicating that the Government raised the issue

3     of punishment in their *voir dire* questions.  Of course,

4     I'll have the attorneys do their *voir dire*.  But the

5     Government only raised it in the context of letting the

6     jury know there is an issue in the fact they don't decide

7     punishment.  That's the only thing.  They're not discussing

8     the actual -- what punishment we would be looking at.

9          So is there something else I'm missing from the

10    Defense?  I mean, the jury doesn't decide punishment other

11    than discussing that fact with the jury because there are

12    jurors that have had problems with that fact, and they

13    didn't make the panel because they could not convict

14    somebody not knowing what was going to happen in

15    punishment.

16         MR. JOE WHITE:  I understand that the Court is

17    going to allow us to *voir dire* the jury.  I would like to

18    *voir dire* the jury about that very issue.

19         THE COURT:  Yes.  I mean, sometimes I bring it up

20    myself when I start -- I only have a few questions before

21    turning it over to counsel.  But sometimes I do; sometimes

22    I don't.  I mean, it's fair game to ask that question

23    generally.

24         But I'm going to grant 17 as it's written in terms

25    of this is talking about what a specific sentence would be

1   or punishment would be for either of the Defendants.

2   That's not appropriate.

3          18, conditions in penal institutions or the impact

4   of incarceration on the Defendants or their families.  I'm

5   going to grant that.  That's not appropriate to be

6   discussed.

7          19, any bolstering, including, but not limited to,

8   an argument that Defendant offered to enter a plea of

9   guilty to any specific facts.  Was that -- is that even an

10  issue in this case?

11         MR. JOE WHITE:  Well, I mean, obviously in *voir*

12  *dire* I'm going to ask the jury, "Do you understand they

13  have pled not -- my client has pled not guilty?"

14         THE COURT:  That's fair, but that's not what this

15  is going to.  This is going to trying to say, "Oh, we would

16  have pled guilty to some other charge, but the Government,

17  you know, wouldn't play ball" or whatever.

18         MR. JOE WHITE:  Not doing that.

19         THE COURT:  So I'm going to grant 19 as it's

20  written, but that does not prohibit you from asking the

21  question you did.

22         20 is any comment on the U.S. Attorney's failure

23  to follow internal directives in terms of the *Justice*

24  *Manual*.  I'm not sure what that's all about so -- that's a

25  new one for the Court, Ms. Rattan.

32711

1           MR. JOE WHITE:  If they haven't followed it, I

2    think we're entitled to know it and why they didn't and

3    what they're concerned about.  We should be entitled to

4    know all of that.

5           MS. RATTAN:  There is nothing like that, but if

6    Defense counsel thinks that there is something, the *Justice*

7    *Manual* is online.  Anybody can google any issue.  We'd ask

8    that they approach the bench and raise it with the Court.

9    It's not appropriately raised in front of the jury.

10           THE COURT:  So, yeah, I'm going to grant that.

11    Just approach the -- all the ones I've granted, just

12    approach the bench.  I'm not saying I wouldn't let anything

13    in.  It's just it's easier to deal with it in that regard.

14           21, any accusations against any AUSAs made by

15    Defendant or any organization, including discovery

16    violations.  I'm going to grant that, too.  That's not

17    appropriate for the jury.

18           And then 22 was not opposed and I'll grant that,

19    any prior rulings by the Court.

20           That concludes -- you have some briefing on

21    reputation, but that's not --

22           MS. RATTAN:  Your Honor, may I be heard on one

23    other issue?

24           THE COURT:  Yes.

25           MS. RATTAN:  Defendant Number 4 in this case is

 1  not going to trial.  He's awaiting extradition to the

 2  United States.  His name is Federico Andres Machado.  This

 3  morning during the pretrial conference, Defense counsel

 4  referenced Mr. Machado and noted that Mr. Machado has lied

 5  to everyone while he sits down there in Argentina.

 6          This is not an empty-chair defense case.  Anything

 7  that Mr. Machado may have done or said or even where

 8  Mr. Machado is is not appropriately before this jury, much

 9  the same as if the Government were to point out to the jury

10  codefendants who have pled guilty and accepted

11  responsibility for what they did if they are not

12  testifying.  Mr. Machado is not here.  He won't be

13  testifying.  Reference to Mr. Machado, where he is, what he

14  might be doing, it's not appropriate.

15          MR. JOE WHITE:  Well, if they don't mention

16  Machado, I won't mention Machado.  But they can't -- they

17  can't -- you've got to -- it's a double-edged sword for the

18  Government, this guy.

19          THE COURT:  Ms. Rattan, I'm not sure -- I assume

20  Machado's name is going to come up from the Defense

21  standpoint so -- I mean from the Government's standpoint.

22  So I don't know how I restrict that.

23          MS. RATTAN:  Well, where is Mr. Machado, the fact

24  that he's fled and awaiting extradition in Argentina, it's

25  not relevant.  And even if it were relevant, it's a 403

 1  issue.  Where is he?  What's he doing now?  Not

 2  appropriate.

 3          THE COURT:  Go ahead.

 4          MR. JOE WHITE:  So the Government, your Honor, has

 5  had three opportunities to arrest this guy when they had

 6  him in their custody post-indictment, and they let this guy

 7  go.  He's under indictment.  They interview him in

 8  Guatemala.  They interview him, I believe -- we have -- I

 9  have direct evidence from Machado that he was interviewed

10  by agents and Mr. Gonzalez in Dallas, of which we have no

11  ROI, which I've requested.

12          They have said -- and I also requested a

13  polygraph.  The Government has said -- they spoke to the

14  polygraph issue.  They were out of the loop on that

15  purportedly.  But they do not address the fact, according

16  to Machado himself, that there was such a meeting, there

17  was an interview he gave, and agents were there along with

18  the prosecution.

19          THE COURT:  Anything else?

20          MS. RATTAN:  That line of questioning in front of

21  the jury, in opening statement is not appropriate.  It's a

22  401 and a 403 problem.

23          THE COURT:  Well, I am going to grant their oral

24  motion *in limine* as to Machado until they mention it and

25  then -- so I just don't want you to mention it until they

SEALED TRANSCRIPT                    29

```
 1   bring up Machado.  If the Government brings up Machado, I
 2   am not going to hamstring the Defense.  So we can revisit
 3   it once they bring up Machado, and we'll see the context.
 4   But, you know, I assume it's going to come up from the
 5   point of the agent testifying about some of that and, you
 6   know, I am not going to restrict the Defense's ability to
 7   cross-examine.  If the Government makes Machado an issue in
 8   the trial, then the Defense has full rein to develop that.
 9            MS. RATTAN:  Your Honor, may I be heard on that?
10            THE COURT:  But I am granting it as to opening
11   statements or anything like that unless the Government
12   raises it.
13            MS. RATTAN:  Well, Defendant Mercer-Erwin did
14   conspire directly with Mr. Machado, so there will be
15   evidence during the time of the crime of her conspiracy
16   with him.  That will come in through emails, text messages,
17   bank statements, all that sort of thing.
18            But anything that the Government did to
19   investigate Defendant Machado, that's not fair game.  We
20   would object to that.
21            Anything that Mr. Machado may have said in
22   interviews with the Government, that's not admissible.
23            THE COURT:  Well, I will certainly look into that,
24   but I'm -- the evidence you're talking about doesn't have
25   a -- that doesn't concern the Court.  It's whether you have
```

```
 1   statements of Machado coming in in furtherance of the
 2   conspiracy.  That's where the -- you know, where you have
 3   Machado's statements, that's where I have a concern about
 4   how I restrict the Defense.
 5          But I'll look into that, but for purposes -- it's
 6   not that the Government just mentions Machado's name.  It's
 7   more about when we start getting into statements of Machado
 8   so --
 9          MS. RATTAN:  It's nuanced.  But in terms of
10   opening statement --
11          THE COURT:  I'll look into it, you know --
12          MS. RATTAN:  Oh, thank you, your Honor.
13          In terms of opening statement, the comments that
14   we've heard this morning -- Fred Machado is a liar, Fred
15   Machado has done this, Fred Machado has done that, Fred
16   Machado has fled, he's in Argentina -- all not admissible,
17   not relevant.
18          THE COURT:  Yeah, and I'll look into that.  I'm
19   granting the oral motion, you know, for purposes of *voir*
20   *dire* and opening statement.  Again, just approach the
21   bench, and we'll see the context of how they -- when they
22   start getting into statements of Machado by the agent.  You
23   know, right now my intent is to give you the full ability
24   to cross-examine.
25          MR. GARCIA:  I have a similar issue, your Honor,
```

CERTIFIED TRANSCRIPT                                        31

1   as it relates to someone who is missing, Ed Nunez.  That

2   individual, I believe, goes in line with what co-counsel is

3   discussing as it relates to Machado.  I won't mention it

4   unless the Government brings it up as well.

5            THE COURT:  Okay.  That's fine.

6            MR. GARCIA:  Thank you.

7            MR. JOE WHITE:  Judge, I'm assuming the Rule 11

8   proffers by Ms. Erwin are not coming in absent Ms. Erwin

9   testifying and testifying contrary to some statement she

10  purportedly made pursuant to a Rule 11 agreement.

11           MR. GONZALEZ:  That's right.

12           THE COURT:  That's generally true.  And the only

13  other time I've seen it come up is where Defense counsel

14  makes statements that denies things that were in the

15  proffer.  And the Court has allowed that to happen, so just

16  that -- just be mindful of that.

17           The next thing I have in terms of pretrial -- it's

18  not a motion, but it's 374.  The Defense noticed the issue

19  of pretrial discovery.

20           Is there anything additional?  I mean, I've read

21  that and the Government's response but --

22           MR. JOE WHITE:  There is.

23           MS. KATE WHITE:  Yes, Judge.

24           THE COURT:  Just state your name again for my

25  court reporter so --

1          MS. KATE WHITE:  Kate White.

2          We received discovery beginning in November 22nd

3    of '22 up until we even received additional discovery

4    yesterday, Saturday, and Friday leading up to trial.  The

5    discovery that we've received in this case is approximately

6    12 terabytes to review over four months.

7          I believe that -- and it's my understanding and

8    part of our objection is that there is the *Giglio*

9    information that we've received part of it today, even this

10   morning, and *Brady* information.  It's our understanding

11   that that is to be included in that 12 terabytes.

12         12 terabytes of information -- an example is

13   1 terabyte, which we received 1 terabyte of information on

14   April 3rd.  When I searched it, it's 57,998 files.  That

15   doesn't include what's contained in the files, the number

16   of pages or PDFs that are in that 1 terabyte.  That is

17   actually the file that you open and there's PDFs.

18         To review that even for one team -- my work

19   computer is 1 terabyte that I work on every day.  To review

20   that for one person, two people, is almost impossible.

21         Some of them have specialized programs that we've

22   had to go through.  And so we have done our best, but

23   12 terabytes of information is unmanageable and nothing is

24   Bates'd.

25         So when we receive the Government's exhibit list

1   to cross-reference -- and we received a new one last

2   night -- to attempt to cross-reference, nothing is

3   Bates-stamped, nothing is properly referenced, nothing is

4   even dated.

5          Ms. Erwin's Outlook box was provided to us, but

6   it's larger than 1 terabyte to even search that.  And so

7   nothing -- it was PDF.  Nothing was provided.

8          We've had two discussions with the Government

9   regarding discovery.  However, we have to send them a

10  terabyte and they send it back to us, which is what

11  happened on the April 3rd.  I offered to send a link down

12  to -- in order to get that information sooner.

13         We received seven hours of a recorded interview of

14  Mr. Machado on Monday.

15         And that is all on top of filing the motions and

16  meeting the Court's deadlines.

17         And it was our understanding that the

18  Court's deadline was to have discovery and the exhibits

19  provided by Monday.  We have requested to supplement a few

20  exhibits after we received the 1 terabyte.  But to still be

21  receiving information up until last night is somewhat

22  overwhelming and leaves us a little hamstrung.

23         MR. JOE WHITE:  And not ready.

24         MS. KATE WHITE:  And not ready, as Mr. White --

25         THE COURT:  And what are you asking?

SEALED TRANSCRIPT

1          MR. JOE WHITE:  Well, there is going to come a

2    point in time where the Court is going to ask are you ready

3    to proceed and I'm going to advise the Court no.  And the

4    reason I'm saying no is simply because of what the

5    Government has done to us on their discovery production and

6    the slow rollout of it.  To say it's frustrating doesn't

7    touch it.  You can look at White & Weddle and see how much

8    lawyers we have.

9          But for them to drop a terabyte of information on

10   us one week prior to trial when this case has been pending

11   before your Honor for years -- and for the Government to do

12   that to us is unfair.  It's prejudicial to my client.

13   There is information out there I'm not familiar with that I

14   need to be become more familiar with.

15         For instance, the Machado interview itself is

16   consuming because I know the center of the universe in this

17   case is Machado.  I know that.  I know that's how they're

18   going to prosecute my client.  You can't point to any money

19   going back to my client, which we'll talk about during the

20   substance of their case.

21         But I can't in good conscience, your Honor -- I've

22   been doing this 35 years.  I take pride in my work as a

23   criminal defense lawyer, and I know this Court is

24   frustrated.  I saw it this morning -- well, my observation.

25   I'm not saying it about you, your Honor.  You've been

1   gracious with your time, effort, energy, and your staff.

2   But having a Plea Agreement this morning, frustrating for

3   us.

4           So I've got information I still need to look at.

5   I need more time, given what the Government has caused.  I

6   was ready to go last week, but when they dropped that

7   terabyte on us Monday, my head exploded.

8           And so I understand we've got jurors here.  I get

9   we've got agents here.  The Government says they're ready

10  to go.  I'm not going to say, as an officer of this court,

11  given my experience in defending federal criminal cases,

12  that there aren't more than one needle in the haystack that

13  could be used to shank me during trial that I'm not aware

14  of, some smoking gun, some harpoon.

15          And I haven't had time to address that, and so my

16  remedy -- and I know the only remedy the Court can do -- we

17  argued at the office.  I want the Court to dismiss this for

18  their discovery violations.  My co-counsel calmed me down a

19  little bit about it and said, you know, the best we can

20  hope for is a continuance so we can manage the information

21  that they have continued to drop on us within a week of

22  this trial, sending people down from Oklahoma City to take

23  them a terabyte or to pick up documents and get back.  I

24  had a fellow in my law firm to come down here at 7:00 the

25  other night to meet with the Government to obtain more

1  information, just last week, so --

2          As my wife said -- Kate White says, we can't

3  review the information and digest it and prepare ourselves

4  to fully defend Ms. Erwin, who deserves to be fully

5  defended and heard in this trial.

6          THE COURT:  Response?

7          MR. GONZALEZ:  Well, first of all, your Honor,

8  this is the second group of attorneys that have represented

9  Ms. Mercer-Erwin, so discovery has been provided to that

10  first group of attorneys and this group of attorneys as the

11  Government has it.  The Government has produced 11

12  productions of discovery for the first group as well as

13  this group of attorneys, so they've had the information.

14          Secondly, most of the information comes from their

15  own server, their own computers, their own phones that were

16  returned to them, so they've had the information.

17          It's not the Government's obligation to set up or

18  prepare their case for defense.  We've provided them the

19  discovery.  It's an ongoing obligation.  We've met our

20  obligation.  We've given them this discovery as it has

21  become available to us.  When we've been provided it, we've

22  provided it to them.

23          Like I said, this is the second group of

24  attorneys.  We've provided discovery all along through this

25  process.  11 productions of discovery have been given to

SEALED TRANSCRIPT                    37

 1  them.  And, like I said, more importantly, the fact is they

 2  had the bulk of this information in their own servers, in

 3  their own computers, in their own phones that we returned

 4  to them a long time ago.

 5           THE COURT:  What about the allegation that

 6  1 terabyte of new information was given just a week ago?

 7           MR. GONZALEZ:  I believe that part of that was --

 8  the bulk of that was there was a video of surveillance at

 9  the location of -- the business location that we had not

10  been able to open until recently, and that's the bulk of

11  that 1 terabyte.

12           MR. JOE WHITE:  May I respond?

13           THE COURT:  Yes.

14           MR. JOE WHITE:  On February 14th, we reach out to

15  Mr. Gonzalez in an email to which we've not had a response,

16  February 14, 2023.

17           "Mr. Gonzalez, this email is written regarding the

18  discovery letter written by Mr. Cyran dated June 13th,

19  2022; our phone conversation of Monday, February 6th, 2023;

20  and Fed. Crim. Pro. Rule 16 (1)(B).  As we discussed, we

21  have concerns regarding the process in which discovery has

22  been produced in this case.  As you know, there is 12

23  terabytes of data to mine through.  I am at a loss as to

24  how to determine if everything has been produced.

25           "For instance, I have diligently searched for

1   Ms. Mercer-Erwin's recorded interviews and any associated

2   notes of said interviews, specifically interviews of

3   December 18th, 2020; December 22nd, 2020; December 29th,

4   2020; January 21st, 2021; and January 22nd, 2021, and have

5   not found any recordings of the referenced interviews or

6   agent notes.  Therefore, please provide me with a copy of

7   any recorded interview and associated notes of

8   Ms. Mercer-Erwin in the Government's control or custody.

9           "Also, I have found a few recordings made by

10  Machado of Ms. Mercer-Erwin, but I have not found the

11  recording made by Ms. Mercer-Erwin of Machado that you

12  referenced in our phone call.  Please confirm that all

13  recordings by any and/or of Machado and/or Ms. Mercer-Erwin

14  have been produced.

15          "Additionally, are there any recordings

16  documenting the accuracy of the various 302 ROI

17  interviews?"

18          I stop just to remind the Court that part of that

19  production this past Monday was a Machado interview, seven

20  hours.

21          "Also" -- reading back in this email from Kate

22  White to Ernest Gonzalez.

23          "Also, it is my understanding that there has not

24  been an expert witness disclosed by the Government.  If an

25  expert witness was disclosed to previous counsel for

 1   Ms. Mercer-Erwin, please provide me the name and contents

 2   of the disclosure that was previously made.

 3           "Finally, it was represented to us that there may

 4   be another discovery production coming.  Please confirm if

 5   there is more discovery on the way or not.  If there is,

 6   given the impending trial date, please advise when we can

 7   expect to receive it.

 8           "If you have any questions or would like to

 9   discuss my request, please contact me.

10           "Thank you, Kate White."

11           MR. GONZALEZ:  Your Honor, in regard to that --

12           MR. JOE WHITE:  I'm not finished.

13           MR. GONZALEZ:  -- we had a conversation during the

14   motion to suppress --

15           MR. JOE WHITE:  I wasn't finished making my

16   record, your Honor.

17           MS. GONZALEZ:  Oh.

18           THE COURT:  Okay.  Go ahead.

19           MR. JOE WHITE:  The prosecution has produced, by

20   way of discovery, over 10 terabytes of information.  The

21   Defendant has received the following discovery:

22           On November 22nd, 2022, a 7.27-terabyte external

23   drive containing 5.11 terabytes of data.

24           On December 7th, 2022 -- this is when we were

25   previously set for trial -- on December 7th, 2022, a

 1    7.27-terabyte external drive containing 5.17 terabytes of

 2    data.

 3              On February 21st, 2023, 6.46 megabytes of

 4    information via email containing ten files.

 5              On February 23rd, 2023, 54.5 megabytes of

 6    information via email containing 46 files and 2 folders.

 7              On February 23rd, 2023, 9 gigabytes of data on a

 8    256-gigabyte flash drive.

 9              On March 21st, 2023, a 32-gigabyte flash drive.

10              On March 22nd, 2023, 1.44 megabytes of information

11    via email containing five files.

12              On April 2nd through April 4th, 472 megabytes of

13    information via email containing 200 files and 10 folders.

14              April 3rd, 2023, a 1-terabyte external drive

15    containing 57,998 files and 1,107 folders.

16              This does not include the exhibits picked up on

17    Thursday that I sent somebody down here to pick up or

18    emails of documents that we've received Thursday through

19    Sunday.

20              That's all.

21              THE COURT:  Mr. Gonzalez?

22              MR. GONZALEZ:  Your Honor, some of those issues

23    were addressed during the motion to suppress where we

24    talked to Ms. White, and we had told her that a lot of

25    those that they were already requesting had been turned

1  over.

2        There were some -- there was some question as to

3  whether there was a report that hadn't been turned over.

4  The agent told her that there was no report created, that

5  there were some notes taken and those were handed over.

6        So all that shows the Court is that we've

7  continued to provide them with the discovery throughout

8  this entire process.

9        THE COURT:  What about the Machado interview they

10  said just was given, this seven-hour video that --

11        MR. GONZALEZ:  Well, first of all, quite honestly,

12  it being more than -- that's an interview that they

13  shouldn't even have gotten.  I consider it *Jencks*.  He's

14  not testifying.  If it's his statement, we're -- we have to

15  turn it over after he testifies so -- they requested that

16  information, and in the abundance of giving them everything

17  we had, we provided it to them.

18        In regards to their own client's statements, we

19  gave those up in discovery.  We verified that.  We answered

20  their questions.

21        In regards to -- they've complained about the

22  format that we've given them to them, that it's a discovery

23  dump.  We told them, "You can buy the same programs that

24  we're using to view the information, download it for free."

25  So we've told them.  We even sent them an email with a list

1   of the programs that they could use to view the discovery.

2           So we've done -- we've met our obligation under

3   Rule 16, the continuing obligation.  We've provided the

4   discovery, and they've had it.  And the fact that they

5   haven't had the ability to look at it all, that's on them.

6   That's not on the Government.

7           THE COURT:  Well, I agree.  I mean, it's one of

8   those things that the Government has a continuing

9   obligation to give discovery.  It does look like that's

10  what they've done.

11          You come here today -- you didn't file a motion to

12  dismiss or a motion to continue.  You orally asked me to

13  dismiss the case.  I'm not going to do that.  There is no

14  basis for that.

15          And, I mean, I also don't see a basis for a

16  continuance either.  You know, I understand there is a lot

17  of information, but, you know, we're picking a jury here at

18  10:00 and going to continue, so I'm denying that request.

19          The last discovery matter -- I know we touched on

20  it earlier -- was your Notice of Discovery Violations, 378.

21  I know we've been talking about all that.  That dealt with

22  Machado.  And I know that they don't have the polygraph.

23  But anything else you want to add to that?  I know we've --

24  it's in the same line with some of these other issues.

25          MR. JOE WHITE:  The Government has been silent on

1   this meeting that occurred with Machado in January of 2021.

2   They addressed the polygraph; they did not address our

3   request for the ROIs.  One, they have not responded whether

4   such a meeting occurred, who was present in the meeting,

5   what was discussed, and whether there were any reports or

6   recordings of that interview.

7         I understand that such an interview took place.

8   I'm just trying to get to the bottom of -- and that would

9   be another basis for not being ready today to proceed, is

10  not having the benefit of that information.

11        MR. GONZALEZ:  Again, your Honor, my response to

12  that, that that would -- we would consider *Jencks*.  It's a

13  statement made by the individual that needs to be turned

14  over at the time after he testifies.  He's not testifying,

15  so there's no obligation from Government to even turn that

16  information over.

17        In regards to whether there is a recording, we

18  even told Ms. White, during the suppression with Judge

19  Johnson, that we didn't make recordings.  There are no

20  recordings.  There are written reports.  But it is

21  Mr. Machado's statement; therefore, it's *Jencks*.  If he's

22  not testifying, there is no obligation for us to turn it

23  over.

24        MR. JOE WHITE:  How do I know, whenever they want

25  to play whatever they want to show the jury with Machado,

1   that I don't have the benefit of all that information that

2   the Government has as to the interviews that were conducted

3   when they were -- and mind you, your Honor --

4           THE COURT:  We've already discussed that.  They

5   can't play interviews of Machado.  They can't, I mean,

6   because of the confrontation clause and the *Crawford* issue.

7   So I don't see that as an issue.

8           MR. JOE WHITE:  Well, I don't know what's in the

9   interview, and I would ask they produce the ROIs to

10  your Honor for in-camera review at a minimum because I

11  don't know if Machado was questioned over the material they

12  intend to utilize that's nontestimonial, whether it's the

13  app they have, the emails they have.  I don't have any of

14  that information.

15          THE COURT:  How many are there of those?

16          MR. GONZALEZ:  My recollection, your Honor, there

17  were two interviews of Mr. Machado.

18          THE COURT:  Well, if you want to -- can you submit

19  those for in-camera review, and I'll look at them.

20          MR. GONZALEZ:  Sure.  Absolutely.

21          THE COURT:  Okay.

22          MR. JOE WHITE:  Can we make them a Court's

23  exhibit?

24          THE COURT:  Well, it will be a sealed exhibit

25  that --

 1            MR. JOE WHITE:  Thank you.

 2            THE COURT:  And if I -- it will be part of the

 3   record for appeal purposes if I don't order it to be

 4   produced or whatever so --

 5            Okay.  So let's go over some housekeeping matters,

 6   too.

 7            MS. RATTAN:  Your Honor, may I be heard?

 8            THE COURT:  Yes.

 9            MS. RATTAN:  We have a matter.  It's a *Giglio*

10   issue that relates to one of the DEA witnesses, and I'd

11   like to bring it up in a sealed way, if possible, because

12   it relates to a private matter and this witness and what

13   Defense counsel can cross the witness on.

14            THE COURT:  Okay.  Well, we can take it up at the

15   end and I'll excuse everybody and we'll seal it and then if

16   it's something that needs to -- I don't know exactly what

17   that would be to exclude the Defense so -- but we'll talk

18   about that.

19            MS. RATTAN:  And I'm fine with the Defense being

20   present.  I just don't want a public record made --

21            THE COURT:  Oh, that's fine.

22            MS. RATTAN:  -- of the witnesses' employment

23   issues.

24            THE COURT:  Okay.  That's fine.

25            MS. RATTAN:  Thank you.

 1          THE COURT:  Okay.  So how much time does the

 2   Government want for *voir dire*?

 3          MR. GONZALEZ:  There is one other issue, your

 4   Honor.  I know the Court had mentioned it previously.  I

 5   believe there was one other motion filed by both -- but

 6   Mercer-Erwin now -- in regards to having a rehearing of the

 7   motion to suppress.  I don't know if the Court is going to

 8   address that or not.

 9          THE COURT:  Yeah, we'll talk about that when I'm

10   done with all these housekeeping matters.  That will be the

11   last thing.

12          So how much time does the Government want for *voir*

13   *dire*?

14          MS. RATTAN:  Your Honor, may we please have two

15   hours?  I hope to not use that, but may we please have two

16   hours?

17          THE COURT:  That's fine.

18          And the Defense collectively can have two hours as

19   well, then, which means what we'll do is we'll --

20          Go ahead.

21          MR. JOE WHITE:  Our defense as it relates to

22   Mr. Garcia's client and my client, we're not joined at the

23   hip.  We've got separate issues that are being addressed.

24   I don't believe that there is any connection between

25   Mr. Garcia's client and my client, and I'm requesting an

1  equal amount of time, your Honor, in *voir dire* as to what

2  the Government has and not have to be burdened with

3  Mr. Garcia and his *voir dire* and my *voir dire*.  I don't

4  want Mr. Garcia being burdened by me nor me being burdened

5  by Mr. Garcia.

6          THE COURT:  Well, I've tried a number of

7  multiparty cases, and typically -- I mean, how much time do

8  you think you need?

9          MR. JOE WHITE:  I would like two hours.

10         THE COURT:  So I'm not going to do that.  You

11 know, you collectively have two hours to use and split up.

12 We'll see how it's going.  I mean, that seems like more

13 than sufficient time.  You can make a request for

14 additional time, you know, as it goes along, but, you

15 know -- so if you want to split it up and take an hour

16 or -- you can decide how you want to split that time up.

17         But you can make a request and, you know, if

18 you're actually making headway, I'll -- I'm a big believer

19 in the *voir dire* process and allowing attorneys sufficient

20 time.  So I understand you each have separate issues and --

21 so just make that request.  I'm not saying I won't give you

22 more time.  The hope is we'll get a jury seated by the end

23 of business today.  That's the hope.

24         One thing, just to let you know, my understanding

25 is this is going to take two weeks.  Is that still

1    everyone's thoughts?

2             MR. GONZALEZ:  Yes, your Honor.

3             MR. JOE WHITE:  We intend to put a case on

4    probably sometime next week.  I anticipate calling between

5    five and ten witnesses.

6             THE COURT:  Okay.  And then one thing during the

7    *voir dire* process, I do make the Government read their

8    witness list.  I do not make the Defense -- since you have

9    no burden -- to read a witness list.  Unless you guys want

10   to read your witness list, I don't require that on the

11   Defense.  I don't even bring that up, so I just wanted to

12   let you know that so you are not shocked when I don't ask

13   you.

14            So one thing about the schedule is I'm speaking at

15   Tulane law school on Friday, so I'm flying out Thursday.

16   So we'll probably stop sometime after 3:00 on Thursday and

17   be dark on Friday, just so everyone knows.

18            And then in terms of what I tell the jury to see

19   if there is any hardships, with that in mind, are you still

20   thinking we can get done by next Friday?

21            MR. GONZALEZ:  Yes, your Honor.

22            THE COURT:  So I'll just tell them it will take

23   two weeks.

24            MR. JOE WHITE:  I hope so.

25            THE COURT:  Should I tell them it could spill over

 1  into the third week?  I had blocked three weeks when we had

 2  three Defendants but --

 3       MR. GONZALEZ:  It could spill over to the third

 4  week, but we're hoping Monday or for sure Tuesday.

 5       THE COURT:  I'll tell them that, and I'll take up

 6  the issue of hardships.

 7       When we're done doing the *voir dire*, I'll have

 8  counsel come into chambers, and we'll do strikes for the

 9  record.  And then assuming there is enough -- I have

10  enough, I'll take up the issue of the hardships then, too.

11       And then in terms of peremptory challenges, the

12  Defense jointly gets ten, and the Government gets six.

13  Depending on the number of jurors, I may increase that.  I

14  know the Defense probably would like to have some more, and

15  so we'll just see if I have enough jurors.

16       And I think that we probably won't lose too many,

17  but we will have a -- we should have a decent size panel.

18  The question is just when I tell them it's going to go to

19  three weeks, there could be a number of hardship issues.

20       Our normal day is 9:00 to 5:00.  I have altered

21  when we think we need to do 8:30 or something earlier.  Do

22  we think 9:00 to 5:00 will generally work?

23       MR. GONZALEZ:  Yes, your Honor.

24       MR. JOE WHITE:  Certainly.

25       THE COURT:  Okay.  That's fine.

1           And then we will -- I was trying to -- I lost my

2     train of thought there.

3           Oh, the preliminary instructions.  Did you have a

4     chance -- did anybody have an issue with the preliminary

5     instructions?

6           MR. JOE WHITE:  Not from the Defendant --

7           MR. GARCIA:  No, your Honor --

8           MR. JOE WHITE:  -- Mercer.

9           MR. GARCIA:  -- not from Villaurrutia.

10          THE COURT:  Okay.  I assume nothing from the

11    Government?

12          MR. GONZALEZ:  No, your Honor.

13          THE COURT:  Okay.  Were there any other

14    preliminary matters or housekeeping matters?

15          The way I do the process is I will get down and

16    discuss a little bit about my background.  I tell them the

17    history of the courthouse, things like that.  And I may ask

18    just a couple questions, and then I'll turn it over to the

19    lawyers.  Since I'm giving you so much time, I probably

20    won't ask many questions and turn it over to the attorneys.

21          (Off-the-record discussion among the Court and

22    court personnel.)

23          THE COURT:  Okay.  Any other questions about just

24    general housekeeping?

25          MS. RATTAN:  Your Honor, may I be heard on the

 1  Court's questioning of the panel?

 2         THE COURT:  Yes.

 3         MS. RATTAN:  We would request that the Court ask

 4  the panel if they have had any prior convictions

 5  themselves, a family member, or a close friend.  It's an

 6  awkward question, and we would appreciate if the Court

 7  would ask it.

 8         THE COURT:  That's fine.

 9         MS. RATTAN:  Thank you.

10         THE COURT:  Okay.  Any other housekeeping matters?

11         MR. GONZALEZ:  Your Honor, if me and Mr. Garcia

12  could have some time to discuss a possible resolution of

13  his case.

14         THE COURT:  Okay.  That's fine.  I mean, we're

15  almost done.  We just have to do the suppression matter.

16         Any other housekeeping matters or any questions

17  from Defense counsel?

18         MS. RATTAN:  Just my witness issue.

19         THE COURT:  Yes, I know that.

20         MS. RATTAN:  Okay.  Thank you.

21         MR. GARCIA:  Will we be allowed to use a

22  PowerPoint, or we just go strictly from notes during *voir*

23  *dire*?

24         THE COURT:  You can use a PowerPoint.

25         MR. GARCIA:  Thank you.

SIGNED TRANSCRIPT                          52

1          THE COURT:  I don't know if the Government --

2    usually they have one.  I don't know if they're using one

3    today or not.

4          MS. RATTAN:  We won't be using it for *voir dire*,

5    and we would request advanced copy of Defense counsel's.

6          THE COURT:  Okay.  If you have one --

7          MR. GARCIA:  I can email it to you.

8          MS. RATTAN:  Thank you.

9          THE COURT:  Okay.  The issue of suppression.  Of

10   course, I've reviewed the motions.  I reviewed everything,

11   the R&R, looked at the objections.  Is there anything else

12   you want to add?

13         MR. JOE WHITE:  No, your Honor.

14         THE COURT:  I don't see an issue there, I mean, in

15   terms of when the interviews happened.  One was in the safe

16   harbor area.  The other one was so close to it.  I don't

17   believe the burden was met.

18         And then the issue of the statements -- so I

19   haven't had a chance to sign the order to adopt the

20   magistrate judge and overrule objections, but I am going to

21   overrule the objections and adopt the R&R.  I think the

22   magistrate judge did a good job, and it's exactly correct

23   on the facts and the law of the case.  So I'll be denying

24   the motion to suppress.

25         Okay.  Yes.

1           MR. JOE WHITE:  My co-counsel wishes to exchange

2    out the exhibit books that we tendered on Monday because of

3    the new production by the Government.  We supplemented the

4    exhibit books, and we have new exhibit books to give you.

5           THE COURT:  That's fine.  Keary Conrad, my

6    courtroom deputy, is the one that will handle that.  And,

7    you know, I assume that the jury is -- I'm not sure whether

8    they're done getting qualified and everything, but she's

9    the one to talk to on that.

10          Yes?

11          MR. GARCIA:  One last thing, your Honor.  I'd

12   mentioned to the Court earlier my client needs another pair

13   of pants.  And we have them in the courtroom now, and we're

14   asking for a little bit of time just so we can get them

15   changed out.

16          THE COURT:  That's fine.  We'll get everybody

17   ready.

18          And then one thing, I know you indicated you're

19   going to -- I will ask counsel if they are ready to go.  I

20   would ask in front of the jury you say yes.  I know you are

21   not waiving that -- your objection to proceeding today,

22   but --

23          MR. JOE WHITE:  Understood.

24          THE COURT:  -- I would like you to, at least for

25   form, say you are ready even though I know you're -- and I

1    indicate for the record you are not waiving that by doing

2    that.  You're just doing that at my request so you don't

3    have to explain to the jury why.

4            MR. JOE WHITE:  Thank you, your Honor.

5            And work with your courtroom deputy on our IT guy

6    setting up?

7            THE COURT:  Exactly.  That's who you would see.

8            Now, the Government has one other matter they

9    wanted to raise.  And who do you want me to exclude from --

10   the Defendants can be here but --

11           MS. RATTAN:  Yes.  We would just like to --

12           THE COURT:  You're just going to seal this portion

13   of the hearing?

14           MS. RATTAN:  Yes, please.

15           THE COURT:  So I can do it with everybody that's

16   here right now, correct?

17           MS. RATTAN:  Yes, your Honor.

18           THE COURT:  So we will seal this portion.

19           (Courtroom sealed.)

20           THE COURT:  And let me just ask.  Is there anybody

21   from the press here?

22           (No response.)

23           THE COURT:  Okay.  We've had press requests, so I

24   just wanted to make sure.

25           MS. RATTAN:  Thank you for doing that.

1          Your Honor, Witness Angela Cassady is a chemist,

2    and she's employed by the DEA.  She was terminated in 2019,

3    and the reasons for her termination were stated as lack of

4    candor and inattention to duty.  The witness appealed that,

5    and she was successful in her appeal.  And the lack of

6    candor was removed and it was -- she was reinstated in her

7    job, and she was disciplined for inattention to duty, so,

8    of course, we wanted to make the Court aware of that.

9          So, we've turned over the opinion where she

10   appealed to Defense counsel, and it would be our position

11   that the fact that she was terminated for lack of candor

12   would not be admissible before the jury but the fact that

13   she had been disciplined for inattention to duty would be

14   relevant.

15         MR. JOE WHITE:  I believe everything is relevant

16   so long as I bring up the reversal of one of the two

17   findings.

18         I have not received the full copy of the United

19   States of America Merit System Protection Board, Dallas

20   Regional Office, pleading entitled "Initial Decision."  I'm

21   missing pages 2 and 3 of an otherwise 39-page decision, and

22   I'm requesting pages 2 and 3 so we might -- I'm also --

23         THE COURT:  Is that an oversight, or is that the

24   way it's been produced?

25         MS. RATTAN:  It may have been a copy error because

1    I am looking at copy that has it.  So, we'll provide him my

2    copy.

3            THE COURT:  That's fine.  So, Ms. Rattan, why do

4    you think that should be excluded?

5            MS. RATTAN:  It's been overturned and undermined

6    and found not to be the correct reason for her firing.  I

7    think a witness -- an employee is entitled to dispute

8    something and receive due process, which apparently she

9    has.  And it was determined through due process that there

10   was not a lack of candor, and, in fact, she was disciplined

11   for inattention to duty.

12           THE COURT:  Right, but why is that not fair game

13   for cross-examination?  If you don't want to bring it up,

14   why can't they?

15           MS. RATTAN:  I just don't think it's fair to the

16   witness.  If it was overturned, it's --

17           THE COURT:  I mean, whether it was overturned or

18   not -- I guess what I'm -- the reason I bring it up is in

19   my civil trials -- and I've had over a hundred jury trials.

20   That's all fair game in a civil case.  So why wouldn't it

21   be -- why wouldn't that be fair game for -- I mean, whether

22   it's been overturned or not?  It seems like -- I mean, it

23   seems like something you'd need to deal with on direct

24   but -- but I guess I don't -- I don't see why the Court

25   should exclude their ability to bring it up if they want

1  to.

2            MS. RATTAN:  I understand.

3            THE COURT:  I will tell you it's always

4  fascinating because criminal cases are so different than

5  civil cases in terms of the way they proceed but -- so I am

6  not going to prohibit them from bringing that up so --

7            Okay.  Anything else?

8            Okay.  Then hopefully we'll be able to start as

9  close to 10:00 as possible and, again, what we will do is

10  we will -- I will -- we will probably go into the lunch

11  hour, but we will go ahead and complete the Government's

12  *voir dire* and then take a lunch break so -- because then I

13  may speak 20 or so minutes, maybe 30, depending on how

14  quick I speak.  My court reporter likes me to talk slower.

15  I tend to talk fast when I'm doing my part.

16            And then also I didn't ask you how long y'all

17  wanted for opening statements.

18            MS. RATTAN:  May I have an hour and 15 minutes,

19  please?

20            MR. JOE WHITE:  Hour.

21            MR. GARCIA:  45 minutes, Judge.

22            THE COURT:  Okay.

23            MR. JOE WHITE:  I don't think I'll use my hour

24  but --

25            THE COURT:  Okay.  So I will go ahead and give

1   Ms. Erwin an hour and then the other Defendant 45 minutes.

2   If you want equal time, I will certainly -- we won't get

3   those done today, but I will certainly give the Government

4   equal -- the combined time if they want to take that much

5   time.

6          Okay.  Again, we'll see y'all in the courtroom

7   hopefully as close to 10:00 as possible.

8          (Proceedings concluded, 8:39 a.m.)

9   COURT REPORTER'S CERTIFICATION

10          I HEREBY CERTIFY THAT ON THIS DATE, JANUARY 15,

11  2025, THE FOREGOING IS A CORRECT TRANSCRIPT FROM THE RECORD

12  OF PROCEEDINGS.

13                    /s/_____
                      CHRISTINA L. BICKHAM, CRR, RDR
14

15

16

17

18

19

20

21

22

23

24

25