# Transaction Details Report

## Search Summary

**Searched List(s):** Australia DFAT List, US Bureau of Industry and Security, Dept of State-CISADA List, Dept of State-DTC Debarred Parties, Dept of State-Intl Security & Nonproliferation, England HM Treasury Sanction List, European Union Sanction List, FBI Wanted Fugitives, International Criminal Police Organization, Office of Foreign Assets Control, OFAC Sectoral Sanctions Identifications List, Canada OSFI Sanction List, PEP Foreign Officials, Terrorist Exclusion List, United Nations Sanction List, World Bank Ineligible Firms

**Full/Partial Name:** RODOLFO JAVIER CAMARILLO MONTEMAYOR

**Country Name:** Mexico

**Address DQ:** Yes

**DOB:** 1962

**DOB Range:** 0

**Transaction ID:** 22879807662

**Transaction Date:** 2017-10-25 14:50:25

**Created By:** gmiller

**Search Threshold:** 85%

## Transaction Comments

## Possible Matches

### Australia DFAT List Search Results

| Hit Count: | List Information: |
|---|---|
| Entity Hits: 0 | Name: Australia DFAT List |
| Sanctioned Country Hits: 0 | Description: 2017-10-23 AUSTRALIA Source Data |
| Total Hits: 0 | |

### US Bureau of Industry and Security Search Results

| Hit Count: | List Information: |
|---|---|
| Entity Hits: 0 | Name: US Bureau of Industry and Security |
| Sanctioned Country Hits: 0 | Description: 2017-10-16 BIS Source Data |
| Total Hits: 0 | |

**Mercer-Erwin/Moffett Exhibit 1.a**
**Case No. 4:20-CR-00212**
**Page 001**

**Dept of State-CISADA List Search Results**

| Hit Count: | List Information: |
|---|---|
| Entity Hits: 0 | Name: Dept of State-CISADA List |
| Sanctioned Country Hits: 0 | Description: 2016-1-16 DOS_CISADA Source Data |
| Total Hits: 0 | |

**Dept of State-DTC Debarred Parties Search Results**

| Hit Count: | List Information: |
|---|---|
| Entity Hits: 0 | Name: Dept of State-DTC Debarred Parties |
| Sanctioned Country Hits: 0 | Description: 2017-8-2 DOS_DTC Source Data |
| Total Hits: 0 | |

**Dept of State-Intl Security & Nonproliferation Search Results**

| Hit Count: | List Information: |
|---|---|
| Entity Hits: 0 | Name: Dept of State-Intl Security & Nonproliferation |
| Sanctioned Country Hits: 0 | Description: 2017-1-23 DOS_ISN Source Data |
| Total Hits: 0 | |

**England HM Treasury Sanction List Search Results**

| Hit Count: | List Information: |
|---|---|
| Entity Hits: 0 | Name: England HM Treasury Sanction List |
| Sanctioned Country Hits: 0 | Description: 2017-10-19 England Source Data |
| Total Hits: 0 | |

**Mercer-Erwin/Moffett Exhibit 1.a**
**Case No. 4:20-CR-00212**
**Page 002**

**European Union Sanction List Search Results**

| Hit Count: | List Information: |
|---|---|
| Entity Hits: 0 | Name: European Union Sanction List |
| Sanctioned Country Hits: 0 | Description: 2017-10-16 Europe Source Data |
| Total Hits: 0 | |

**FBI Wanted Fugitives Search Results**

| Hit Count: | List Information: |
|---|---|
| Entity Hits: 0 | Name: FBI Wanted Fugitives |
| Sanctioned Country Hits: 0 | Description: 2017-10-24 FBI Source Data |
| Total Hits: 0 | |

**International Criminal Police Organization Search Results**

| Hit Count: | List Information: |
|---|---|
| Entity Hits: 0 | Name: International Criminal Police Organization |
| Sanctioned Country Hits: 0 | Description: 2017-10-17 Interpol Source Data |
| Total Hits: 0 | |

**Office of Foreign Assets Control Search Results**

| Hit Count: | List Information: |
|---|---|
| Entity Hits: 0 | Name: Office of Foreign Assets Control |
| Sanctioned Country Hits: 0 | Description: 2017-10-13 OFAC Source Data |
| Total Hits: 0 | |

**Mercer-Erwin/Moffett Exhibit 1.a**
**Case No. 4:20-CR-00212**
**Page 003**

**OFAC Sectoral Sanctions Identifications List Search Results**

| Hit Count: | List Information: |
|---|---|
| Entity Hits: 0 | Name: OFAC Sectoral Sanctions Identifications List |
| Sanctioned Country Hits: 0 | Description: 2017-6-20 OFAC_SSI Source Data |
| Total Hits: 0 | |

**Canada OSFI Sanction List Search Results**

| Hit Count: | List Information: |
|---|---|
| Entity Hits: 0 | Name: Canada OSFI Sanction List |
| Sanctioned Country Hits: 0 | Description: 2017-10-6 OSFI Source Data |
| Total Hits: 0 | |

**PEP Foreign Officials Search Results**

| Hit Count: | List Information: |
|---|---|
| Entity Hits: 0 | Name: PEP Foreign Officials |
| Sanctioned Country Hits: 0 | Description: 2017-02-07 PEP Foreign Official Source Data |
| Total Hits: 0 | |

**Terrorist Exclusion List Search Results**

| Hit Count: | List Information: |
|---|---|
| Entity Hits: 0 | Name: Terrorist Exclusion List |
| Sanctioned Country Hits: 0 | Description: 2009-02-03 TEL Source Data |
| Total Hits: 0 | |

**Mercer-Erwin/Moffett Exhibit 1.a**
**Case No. 4:20-CR-00212**
**Page 004**

**United Nations Sanction List Search Results**

| Hit Count: | List Information: |
|---|---|
| Entity Hits: 0 | Name: United Nations Sanction List |
| Sanctioned Country Hits: 0 | Description: 2017-10-21 UNSL Source Data |
| Total Hits: 0 | |

**World Bank Ineligible Firms Search Results**

| Hit Count: | List Information: |
|---|---|
| Entity Hits: 0 | Name: World Bank Ineligible Firms |
| Sanctioned Country Hits: 0 | Description: 2017-10-24 WBNK Source Data |
| Total Hits: 0 | |

**Mercer-Erwin/Moffett Exhibit 1.a**
**Case No. 4:20-CR-00212**
**Page 005**

# Transaction Details Report

## Search Summary

| | |
|---|---|
| **Searched List(s):** | Australia DFAT List, US Bureau of Industry and Security, Dept of State-CISADA List, Dept of State-DTC Debarred Parties, Dept of State-Intl Security & Nonproliferation, England HM Treasury Sanction List, European Union Sanction List, FBI Wanted Fugitives, International Criminal Police Organization, Office of Foreign Assets Control, OFAC Sectoral Sanctions Identifications List, Canada OSFI Sanction List, PEP Foreign Officials, Terrorist Exclusion List, United Nations Sanction List, World Bank Ineligible Firms |
| **Other Name:** | ITRC, LLC |
| **State/Province:** | DE |
| **Country Name:** | United States |
| **Address DQ:** | Yes |
| **Transaction ID:** | 22879807525 |
| **Transaction Date:** | 2017-10-25 14:45:24 |
| **Created By:** | gmiller |
| **Search Threshold:** | 85% |

## Transaction Comments

## Possible Matches

### Australia DFAT List Search Results

| Hit Count: | List Information: |
|---|---|
| Entity Hits: 0 | Name: Australia DFAT List |
| Sanctioned Country Hits: 0 | Description: 2017-10-23 AUSTRALIA Source Data |
| Total Hits: 0 | |

### US Bureau of Industry and Security Search Results

| Hit Count: | List Information: |
|---|---|
| Entity Hits: 0 | Name: US Bureau of Industry and Security |
| Sanctioned Country Hits: 0 | Description: 2017-10-16 BIS Source Data |
| Total Hits: 0 | |

**Mercer-Erwin/Moffett Exhibit 1.a**
**Case No. 4:20-CR-00212**
**Page 006**

**Dept of State-CISADA List Search Results**

| Hit Count: | List Information: |
|---|---|
| Entity Hits: 0 | Name: Dept of State-CISADA List |
| Sanctioned Country Hits: 0 | Description: 2016-1-16 DOS_CISADA Source Data |
| Total Hits: 0 | |

**Dept of State-DTC Debarred Parties Search Results**

| Hit Count: | List Information: |
|---|---|
| Entity Hits: 0 | Name: Dept of State-DTC Debarred Parties |
| Sanctioned Country Hits: 0 | Description: 2017-8-2 DOS_DTC Source Data |
| Total Hits: 0 | |

**Dept of State-Intl Security & Nonproliferation Search Results**

| Hit Count: | List Information: |
|---|---|
| Entity Hits: 0 | Name: Dept of State-Intl Security & Nonproliferation |
| Sanctioned Country Hits: 0 | Description: 2017-1-23 DOS_ISN Source Data |
| Total Hits: 0 | |

**England HM Treasury Sanction List Search Results**

| Hit Count: | List Information: |
|---|---|
| Entity Hits: 0 | Name: England HM Treasury Sanction List |
| Sanctioned Country Hits: 0 | Description: 2017-10-19 England Source Data |
| Total Hits: 0 | |

**Mercer-Erwin/Moffett Exhibit 1.a**
**Case No. 4:20-CR-00212**
**Page 007**

### European Union Sanction List Search Results

| Hit Count: | List Information: |
|---|---|
| Entity Hits: 0 | Name: European Union Sanction List |
| Sanctioned Country Hits: 0 | Description: 2017-10-16 Europe Source Data |
| Total Hits: 0 | |

### FBI Wanted Fugitives Search Results

| Hit Count: | List Information: |
|---|---|
| Entity Hits: 0 | Name: FBI Wanted Fugitives |
| Sanctioned Country Hits: 0 | Description: 2017-10-24 FBI Source Data |
| Total Hits: 0 | |

### International Criminal Police Organization Search Results

| Hit Count: | List Information: |
|---|---|
| Entity Hits: 0 | Name: International Criminal Police Organization |
| Sanctioned Country Hits: 0 | Description: 2017-10-17 Interpol Source Data |
| Total Hits: 0 | |

### Office of Foreign Assets Control Search Results

| Hit Count: | List Information: |
|---|---|
| Entity Hits: 0 | Name: Office of Foreign Assets Control |
| Sanctioned Country Hits: 0 | Description: 2017-10-13 OFAC Source Data |
| Total Hits: 0 | |

**Mercer-Erwin/Moffett Exhibit 1.a**
**Case No. 4:20-CR-00212**
**Page 008**

## OFAC Sectoral Sanctions Identifications List Search Results

| Hit Count: | List Information: |
|---|---|
| Entity Hits: 0 | Name: OFAC Sectoral Sanctions Identifications List |
| Sanctioned Country Hits: 0 | Description: 2017-6-20 OFAC_SSI Source Data |
| Total Hits: 0 | |

## Canada OSFI Sanction List Search Results

| Hit Count: | List Information: |
|---|---|
| Entity Hits: 0 | Name: Canada OSFI Sanction List |
| Sanctioned Country Hits: 0 | Description: 2017-10-6 OSFI Source Data |
| Total Hits: 0 | |

## PEP Foreign Officials Search Results

| Hit Count: | List Information: |
|---|---|
| Entity Hits: 0 | Name: PEP Foreign Officials |
| Sanctioned Country Hits: 0 | Description: 2017-02-07 PEP Foreign Official Source Data |
| Total Hits: 0 | |

## Terrorist Exclusion List Search Results

| Hit Count: | List Information: |
|---|---|
| Entity Hits: 0 | Name: Terrorist Exclusion List |
| Sanctioned Country Hits: 0 | Description: 2009-02-03 TEL Source Data |
| Total Hits: 0 | |

**Mercer-Erwin/Moffett Exhibit 1.a
Case No. 4:20-CR-00212
Page 009**

**United Nations Sanction List Search Results**

| Hit Count: | List Information: |
|---|---|
| Entity Hits: 0 | Name: United Nations Sanction List |
| Sanctioned Country Hits: 0 | Description: 2017-10-21 UNSL Source Data |
| Total Hits: 0 | |

**World Bank Ineligible Firms Search Results**

| Hit Count: | List Information: |
|---|---|
| Entity Hits: 0 | Name: World Bank Ineligible Firms |
| Sanctioned Country Hits: 0 | Description: 2017-10-24 WBNK Source Data |
| Total Hits: 0 | |

**Mercer-Erwin/Moffett Exhibit 1.a**
**Case No. 4:20-CR-00212**
**Page 010**

# Transaction Details Report

## Search Summary

| | |
|---|---|
| Searched List(s): | Australia DFAT List, US Bureau of Industry and Security, Dept of State-CISADA List, Dept of State-DTC Debarred Parties, Dept of State-Intl Security & Nonproliferation, England HM Treasury Sanction List, European Union Sanction List, FBI Wanted Fugitives, International Criminal Police Organization, Office of Foreign Assets Control, OFAC Sectoral Sanctions Identifications List, Canada OSFI Sanction List, PEP Foreign Officials, Terrorist Exclusion List, United Nations Sanction List, World Bank Ineligible Firms |
| Other Name: | Camro Transportes SA de CV |
| Country Name: | Mexico |
| Address DQ: | Yes |
| Transaction ID: | 22879807728 |
| Transaction Date: | 2017-10-25 14:53:13 |
| Created By: | gmiller |
| Search Threshold: | 85% |

## Transaction Comments

## Possible Matches

### Australia DFAT List Search Results

| Hit Count: | List Information: |
|---|---|
| Entity Hits: 0 | Name: Australia DFAT List |
| Sanctioned Country Hits: 0 | Description: 2017-10-23 AUSTRALIA Source Data |
| Total Hits: 0 | |

### US Bureau of Industry and Security Search Results

| Hit Count: | List Information: |
|---|---|
| Entity Hits: 0 | Name: US Bureau of Industry and Security |
| Sanctioned Country Hits: 0 | Description: 2017-10-16 BIS Source Data |
| Total Hits: 0 | |

**Mercer-Erwin/Moffett Exhibit 1.a
Case No. 4:20-CR-00212
Page 011**

**Dept of State-CISADA List Search Results**

| Hit Count: | List Information: |
|---|---|
| Entity Hits: 0 | Name: Dept of State-CISADA List |
| Sanctioned Country Hits: 0 | Description: 2016-1-16 DOS_CISADA Source Data |
| Total Hits: 0 | |

**Dept of State-DTC Debarred Parties Search Results**

| Hit Count: | List Information: |
|---|---|
| Entity Hits: 0 | Name: Dept of State-DTC Debarred Parties |
| Sanctioned Country Hits: 0 | Description: 2017-8-2 DOS_DTC Source Data |
| Total Hits: 0 | |

**Dept of State-Intl Security & Nonproliferation Search Results**

| Hit Count: | List Information: |
|---|---|
| Entity Hits: 0 | Name: Dept of State-Intl Security & Nonproliferation |
| Sanctioned Country Hits: 0 | Description: 2017-1-23 DOS_ISN Source Data |
| Total Hits: 0 | |

**England HM Treasury Sanction List Search Results**

| Hit Count: | List Information: |
|---|---|
| Entity Hits: 0 | Name: England HM Treasury Sanction List |
| Sanctioned Country Hits: 0 | Description: 2017-10-19 England Source Data |
| Total Hits: 0 | |

**Mercer-Erwin/Moffett Exhibit 1.a**
**Case No. 4:20-CR-00212**
**Page 012**

### European Union Sanction List Search Results

| Hit Count: | List Information: |
|---|---|
| Entity Hits: 0 | Name: European Union Sanction List |
| Sanctioned Country Hits: 0 | Description: 2017-10-16 Europe Source Data |
| Total Hits: 0 | |

### FBI Wanted Fugitives Search Results

| Hit Count: | List Information: |
|---|---|
| Entity Hits: 0 | Name: FBI Wanted Fugitives |
| Sanctioned Country Hits: 0 | Description: 2017-10-24 FBI Source Data |
| Total Hits: 0 | |

### International Criminal Police Organization Search Results

| Hit Count: | List Information: |
|---|---|
| Entity Hits: 0 | Name: International Criminal Police Organization |
| Sanctioned Country Hits: 0 | Description: 2017-10-17 Interpol Source Data |
| Total Hits: 0 | |

### Office of Foreign Assets Control Search Results

| Hit Count: | List Information: |
|---|---|
| Entity Hits: 0 | Name: Office of Foreign Assets Control |
| Sanctioned Country Hits: 0 | Description: 2017-10-13 OFAC Source Data |
| Total Hits: 0 | |

Mercer-Erwin/Moffett Exhibit 1.a
Case No. 4:20-CR-00212
Page 013

**OFAC Sectoral Sanctions Identifications List Search Results**

| Hit Count: | List Information: |
|---|---|
| Entity Hits: 0 | Name: OFAC Sectoral Sanctions Identifications List |
| Sanctioned Country Hits: 0 | Description: 2017-6-20 OFAC_SSI Source Data |
| Total Hits: 0 | |

**Canada OSFI Sanction List Search Results**

| Hit Count: | List Information: |
|---|---|
| Entity Hits: 0 | Name: Canada OSFI Sanction List |
| Sanctioned Country Hits: 0 | Description: 2017-10-6 OSFI Source Data |
| Total Hits: 0 | |

**PEP Foreign Officials Search Results**

| Hit Count: | List Information: |
|---|---|
| Entity Hits: 0 | Name: PEP Foreign Officials |
| Sanctioned Country Hits: 0 | Description: 2017-02-07 PEP Foreign Official Source Data |
| Total Hits: 0 | |

**Terrorist Exclusion List Search Results**

| Hit Count: | List Information: |
|---|---|
| Entity Hits: 0 | Name: Terrorist Exclusion List |
| Sanctioned Country Hits: 0 | Description: 2009-02-03 TEL Source Data |
| Total Hits: 0 | |

**Mercer-Erwin/Moffett Exhibit 1.a**
**Case No. 4:20-CR-00212**
**Page 014**

**United Nations Sanction List Search Results**

| Hit Count: | List Information: |
|---|---|
| Entity Hits: 0 | Name: United Nations Sanction List |
| Sanctioned Country Hits: 0 | Description: 2017-10-21 UNSL Source Data |
| Total Hits: 0 | |

**World Bank Ineligible Firms Search Results**

| Hit Count: | List Information: |
|---|---|
| Entity Hits: 0 | Name: World Bank Ineligible Firms |
| Sanctioned Country Hits: 0 | Description: 2017-10-24 WBNK Source Data |
| Total Hits: 0 | |

**Mercer-Erwin/Moffett Exhibit 1.a**
**Case No. 4:20-CR-00212**
**Page 015**



U.S. Department
of Transportation
**Federal Aviation
Administration**

Office of the Aeronautical Central
Regional Counsel

Mike Monroney Aeronautical Center
6500 S. MacArthur Blvd., HQ Rm 251
Oklahoma City, OK 73169
Phone: 405-954-3296
Facsimile: 405-954-4676
Office e-mail: 9-AMC-007-Aeronautical-
Center-Counsel@faa.gov.

October 30, 2017

Scott D. McCreary, Esq.
McAfee & Taft, P.C.
10th Floor, Two Leadership Square
211 North Robinson
Oklahoma City, OK 73102-7103

Dear Mr. McCreary,

### Civil Aircraft N986MA

As requested in your letter of October 27, 2017, this office has reviewed the following documents, reflecting changes to the standard form currently being submitted to support registration of aircraft in the name of Aircraft Guaranty Corporation, as Owner Trustee:

1) Form of Continent Aircraft Statutory Trust Agreement dated October 20, 2017 ("**Trust Agreement**") between Owner Trustee and ITRC, LLC ("**Beneficiary**");

2) Form of Aircraft Dry Lease Agreement dated October 20, 2017 ("**Lease Agreement**") between Owner Trustee and Camro Transportes, SA de CV, as Lessee; and

3) Form of Affidavit of Citizenship (the "**Trustee Affidavit**") by the Owner Trustee.

In view of the foregoing, our opinion is requested that:

a) The Trust Agreement and other documents provided are in compliance with the FAA Policy Clarification;
b) The Owner Trustee may register the Aircraft in its name, under Sections 44102 and 44103 of the Act upon the filing with the FAA of duly executed counterparts of the Trust Agreement and Trustee Affidavit, together with the appropriate title documents and AC Form 8050-1 Aircraft Registration Application;

c) The Trust Agreement satisfies the requirements of 14 C.F.R. §§ 47.7(c)(2)(i) and 47.7(c)(3);

**Mercer-Erwin/Moffett Exhibit 1.b
Case No. 4:20-CR-00212
Page 001**

2

d)  The form of the Affidavit satisfies the requirements of 14 C.F.R. § 47.7(c)(20(iii); and

e)  The Lease Agreement does not affect the relationship under the trust Agreement in a manner that adversely impacts the eligibility of the Aircraft for United States Registration.

Based on our review, it appears that the legal title to the Aircraft will be held by the Owner Trustee, the applicant for registration, subject to the terms and conditions of the Statutory Trust Agreement. The Trustee represents that, while it is a citizen of the United States, the Beneficiary is not.

We have review both the updated Statutory Trust Agreement and the new Affidavit for compliance with 14 C.F.R. § 47.7(c). Upon review, it appears that the Affidavit contains all of the representations required by § 47.7(c)(2)(iii) and will be legally sufficient when executed.

Regarding the form of the updated Statutory Trust Agreement, in Article 2.2 the Owner Trustee accepts the Trust and agrees to hold the Trust Estate in accordance with the terms of the Agreement. Article 10.1 allows the Owner Trustee to be removed only for specific cause. Article 6.2(c) directs the Owner Trustee to take necessary action to effect registration of the Aircraft with the FAA. Article 11.10 complies with the regulatory requirements of 14 C.F.R. § 47.7 by prohibiting persons who are neither U.S. citizens or resident aliens from having more than 25 percent of the aggregate power to direct or remove the Owner Trustee. Article 11.11 provides that the Agreement shall be governed under Wyoming law.

It is noted that Section 4.3(c)(1) and (ii) reflect the information expectations of Section B of the FAA Policy Clarification effective September 16, 2013.

The Aircraft Dry Lease Agreement between the Owner Trustee and lessee is not in the nature of an operating agreement. However, it has been reviewed and determined to be a typical dry lease and not adverse to any trust relationship.

Accordingly, it is our opinion that the updated forms for the Trust Agreement, Aircraft Dry Lease Agreement, and the Owner Trustee's Affidavit and Certificate of Citizenship satisfy the respective requirements of §§ 47.7(c)(2)(i) and 47.7(c)(2)(iii). Therefore, provided there is sufficient evidence of ownership, upon proper application under 14 C.F.R. Part 47, the Aircraft will be eligible for United States registration in the name of Aircraft Guaranty Corporation as Owner Trustee. Your updated forms satisfy FAA's Policy Clarification regarding non-citizen trust agreements.

Your requests for opinion (a) through (e) of your letter of October 27, 2017, are all answered in the affirmative.

**Mercer-Erwin/Moffett Exhibit 1.b**
**Case No. 4:20-CR-00212**
**Page 002**

3

Sincerely,

A.  Lester Haizlip
Aeronautical Central Regional Counsel
Federal Aviation Administration


JAMES M WEBSTER   Digitally signed by JAMES M WEBSTER
                  Date: 2017.10.30 15:19:36 -05'00'

By:    _____

James M. Webster
Senior Attorney
Phone:  405-954-1372
Facsimile:  405-954-4676
e-mail:  james.m.webster@faa.gov

**Mercer-Erwin/Moffett Exhibit 1.b**
**Case No. 4:20-CR-00212**
**Page 003**

DocuSign Envelope ID: 71B4E8B0-7B7A-40ED-A81D-54041AE4D171

| | FORM APPROVED |
|---|---|
| **UNITED STATES OF AMERICA**<br>U.S. DEPARTMENT OF TRANSPORTATION FEDERAL AVIATION ADMINISTRATION<br>**AIRCRAFT BILL OF SALE** | |

FOR AND IN CONSIDERATION OF $ 10.00 THE UNDERSIGNED OWNER(S) OF THE FULL LEGAL AND BENEFICIAL TITLE OF THE AIRCRAFT DESCRIBED AS FOLLOWS:

| UNITED STATES REGISTRATION NUMBER | **N986MA** |
|---|---|

AIRCRAFT MANUFACTURER & MODEL
                              **LEARJET INC   31A**

AIRCRAFT SERIAL No.
                              **080**

| DOES THIS           DAY OF           ,2015 HEREBY SELL, GRANT, TRANSFER AND DELIVER ALL RIGHTS, TITLE, AND INTERESTS IN AND TO SUCH AIRCRAFT UNTO: | Do Not Write In This Block FOR FAA USE ONLY |
|---|---|

**PURCHASER**

NAME AND ADDRESS
(IF INDIVIDUAL(S), GIVE LAST NAME, FIRST NAME, AND MIDDLE INITIAL.)

AIRCRAFT GUARANTY CORPORATION, TRUSTEE
(FOR: CONTINENT AIRCRAFT STATUTORY TRUST NO. 2814
UNDER TRUST AGREEMENT DATED October 20, 2017
P.O. BOX 2549 (2058 FM 356 NORTH)
ONALASKA, TEXAS 77360
USA

AND TO ITS   EXECUTORS, ADMINISTRATORS, AND ASSIGNS TO HAVE AND TO HOLD SINGULARLY THE SAID AIRCRAFT FOREVER, AND WARRANTS THE TITLE THEREOF:

IN TESTIMONY WHEREOF           HAVE SET           HAND AND SEAL THIS           DAY OF

**SELLER**

NAME(S) OF SELLER:
ITRC, qwdg LLC, By:

SIGNATURE: *Rodolfo Javier Camarillo Montemayor*
              6F37BF2CD84C4B4...

              _____
              **Mr. Rodolfo Javier Camarillo Montemayor**

Title:        **Manager**

ACKNOWLEDGMENT (NOT REQUIRED FOR PURPOSES OF FAA RECORDING: HOWEVER, MAY BE REQUIRED BY LOCAL LAW FOR VALIDITY OF THE INSTRUMENT.)

**ORIGINAL:  TO FAA**

L006643 Conveyance Recorded Nov/07/2017 01:43 PM FAA

### UNITED STATES OF AMERICA
#### U.S. DEPARTMENT OF TRANSPORTATION FEDERAL AVIATION ADMINISTRATION
### AIRCRAFT BILL OF SALE

FOR AND IN CONSIDERATION OF $ 1.00 ove THE UNDERSIGNED OWNER(S) OF THE FULL LEGAL AND BENEFICIAL TITLE OF THE AIRCRAFT DESCRIBED AS FOLLOWS:

| UNITED STATES REGISTRATION NUMBER | N 986MA |
|---|---|

AIRCRAFT MANUFACTURER & MODEL
Learjet Inc. 31A

AIRCRAFT SERIAL NUMBER
080

DOES THIS **25** DAY OF *October* 2017.
HEREBY SELL, GRANT, TRANSFER AND DELIVER ALL RIGHTS, TITLE, AND INTERESTS IN AND TO SUCH AIRCRAFT UNTO:

**PURCHASER**

NAME AND ADDRESS
(IF INDIVIDUAL(S), GIVE LAST NAME, FIRST NAME, AND MIDDLE INITIAL)

ITRC, LLC
8 The Green, Suite B
Dover, Delaware 19901

DEALER CERTIFICATE NUMBER

AND TO    its successors    , AND ASSIGNS TO HAVE AND TO HOLD SINGULARLY THE SAID AIRCRAFT FOREVER, AND WARRANTS THE TITLE THEREOF.

IN TESTIMONY WHEREOF  we    HAVE SET  our    HAND THIS **25** DAY OF *October* 2017.

**SELLER**

| NAME(S) OF SELLER (TYPED OR PRINTED) | SIGNATURE(S) (IN INK) (IF EXECUTED FOR CO-OWNERSHIP, ALL MUST SIGN.) | TITLE (TYPED OR PRINTED) |
|---|---|---|
| Mescalero Apache Tribe | *[signature]* | President |
| | | |
| | | |
| | | |

ACKNOWLEDGMENT (NOT REQUIRED FOR PURPOSES OF FAA RECORDING; HOWEVER, MAY BE REQUIRED BY LOCAL LAW FOR VALIDITY OF THE INSTRUMENT.)

ORIGINAL: TO FAA

AC FORM 8050-2 (9/92) (NSN 0052-00-629-0003) SUPERSEDES PREVIOUS EDITION

FILED WITH FAA
AIRCRAFT REGISTRATION BR

2017 OCT 25  AM 8 59

OKLAHOMA CITY
OKLAHOMA

Mercer-Erwin/Moffett Exhibit 1.d
Case No. 4:20-CR-00212
Page 003



U.S. Department
of Transportation
**Federal Aviation
Administration**

Office of the Aeronautical Central
Regional Counsel

Mike Monroney Aeronautical Center
6500 S. MacArthur Blvd., HQ Rm 251
Oklahoma City, OK 73169
Phone: 405-954-3296
Facsimile: 405-954-4676
Office e-mail: 9-AMC-007-Aeronautical-
Center-Counsel@faa.gov.

October 30, 2017

Scott D. McCreary, Esq.
McAfee & Taft, P.C.
10th Floor, Two Leadership Square
211 North Robinson
Oklahoma City, OK 73102-7103

Dear Mr. McCreary,

### Civil Aircraft N986MA

As requested in your letter of October 27, 2017, this office has reviewed the following documents, reflecting changes to the standard form currently being submitted to support registration of aircraft in the name of Aircraft Guaranty Corporation, as Owner Trustee:

1) Form of Continent Aircraft Statutory Trust Agreement dated October 20, 2017 ("**Trust Agreement**") between Owner Trustee and ITRC, LLC ("**Beneficiary**");

2) Form of Aircraft Dry Lease Agreement dated October 20, 2017 ("**Lease Agreement**") between Owner Trustee and Camro Transportes, SA de CV, as Lessee; and

3) Form of Affidavit of Citizenship (the "**Trustee Affidavit**") by the Owner Trustee.

In view of the foregoing, our opinion is requested that:

a) The Trust Agreement and other documents provided are in compliance with the FAA Policy Clarification;

b) The Owner Trustee may register the Aircraft in its name, under Sections 44102 and 44103 of the Act upon the filing with the FAA of duly executed counterparts of the Trust Agreement and Trustee Affidavit, together with the appropriate title documents and AC Form 8050-1 Aircraft Registration Application;

c) The Trust Agreement satisfies the requirements of 14 C.F.R. §§ 47.7(c)(2)(i) and 47.7(c)(3);

2

    d)   The form of the Affidavit satisfies the requirements of 14 C.F.R. § 47.7(c)(20(iii); and

    e)   The Lease Agreement does not affect the relationship under the trust Agreement in a manner that adversely impacts the eligibility of the Aircraft for United States Registration.

Based on our review, it appears that the legal title to the Aircraft will be held by the Owner Trustee, the applicant for registration, subject to the terms and conditions of the Statutory Trust Agreement. The Trustee represents that, while it is a citizen of the United States, the Beneficiary is not.

We have review both the updated Statutory Trust Agreement and the new Affidavit for compliance with 14 C.F.R. § 47.7(c). Upon review, it appears that the Affidavit contains all of the representations required by § 47.7(c)(2)(iii) and will be legally sufficient when executed.

Regarding the form of the updated Statutory Trust Agreement, in Article 2.2 the Owner Trustee accepts the Trust and agrees to hold the Trust Estate in accordance with the terms of the Agreement. Article 10.1 allows the Owner Trustee to be removed only for specific cause. Article 6.2(c) directs the Owner Trustee to take necessary action to effect registration of the Aircraft with the FAA. Article 11.10 complies with the regulatory requirements of 14 C.F.R. § 47.7 by prohibiting persons who are neither U.S. citizens or resident aliens from having more than 25 percent of the aggregate power to direct or remove the Owner Trustee. Article 11.11 provides that the Agreement shall be governed under Wyoming law.

It is noted that Section 4.3(c)(1) and (ii) reflect the information expectations of Section B of the FAA Policy Clarification effective September 16, 2013.

The Aircraft Dry Lease Agreement between the Owner Trustee and lessee is not in the nature of an operating agreement. However, it has been reviewed and determined to be a typical dry lease and not adverse to any trust relationship.

Accordingly, it is our opinion that the updated forms for the Trust Agreement, Aircraft Dry Lease Agreement, and the Owner Trustee's Affidavit and Certificate of Citizenship satisfy the respective requirements of §§ 47.7(c)(2)(i) and 47.7(c)(2)(iii). Therefore, provided there is sufficient evidence of ownership, upon proper application under 14 C.F.R. Part 47, the Aircraft will be eligible for United States registration in the name of Aircraft Guaranty Corporation as Owner Trustee. Your updated forms satisfy FAA's Policy Clarification regarding non-citizen trust agreements.

Your requests for opinion (a) through (e) of your letter of October 27, 2017, are all answered in the affirmative.

**Mercer-Erwin/Moffett Exhibit 1.d**
**Case No. 4:20-CR-00212**
**Page 005**

3

Sincerely,

A.  Lester Haizlip
Aeronautical Central Regional Counsel
Federal Aviation Administration


JAMES M WEBSTER   Digitally signed by JAMES M WEBSTER
                  Date: 2017.10.30 15:19:36 -05'00'

By:   _____

James M. Webster
Senior Attorney
Phone:  405-954-1372
Facsimile:  405-954-4676
e-mail:  james.m.webster@faa.gov

Mercer-Erwin/Moffett Exhibit 1.d
Case No. 4:20-CR-00212
Page 006



AIRCRAFT GUARANTY

OWNER TRUSTEE

November 14, 2017

**Camro Transportes, SA de CV**
**Mr. Rodolfo Javier Camarillo Montemayor, Sole-Administrator**
Carretera a Colombia Km 9 No. 100
Col. Andres Caballero
66080 Escobedo, Nuevo Leon
Mexico

Re:    Continent Aircraft Statutory Trust No. 2814
       LEARJET INC 31A, s/n: 080
       Registration No. N986MA

Dear Sir(s),

Enclosed is the **FCC Aircraft Radio Station License FCC Form 605-A** for N986MA. Please note this license is valid until November 10, 2027.

The FCC Aircraft Radio Station License, FCC Form 605-A, bearing the aircraft registration number must be in the aircraft anytime it is operated.

If you have any questions, please contact us at 1-281-445-7594, or via fax at 1-281-445-7599 or email us at AGC@agcorp.com

Sincerely,

Debbie Mercer-Erwin, President
Aircraft Guaranty Corporation, Trustee

One Enclosure as

P.O. Box 891860 Oklahoma City, Oklahoma 73189

Phone: 1-281-445-7594       Fax: 1-281-445-7599       Email: AGC@AGCORP.COM



# Federal Communications Commission
### Wireless Telecommunications Bureau

### RADIO STATION AUTHORIZATION

LICENSEE: AIRCRAFT GUARANTY CORPORATION, TRUSTEE

ATTN: KAYLEIGH MOFFETT
AIRCRAFT GUARANTY CORPORATION, TRUSTEE
PO BOX 2547
ONALASKA, TX 77360

**FCC Registration Number (FRN):** 0005890975

| FAA Number/FCC Call Sign | Radio Service | File Number |
|---|---|---|
| N 986MA | AC - Aircraft | 0007989299 |
| **Type of License** | **Number in Fleet** | **Classification** |
| Regular | | Private Aircraft |

| Grant Date | Effective Date | Expiration Date | Print Date |
|---|---|---|---|
| 11-10-2017 | 11-10-2017 | 11-10-2027 | 11-10-2017 |

**Waivers/Conditions:**

NONE



### THIS AUTHORIZATION IS NOT TRANSFERABLE

**Conditions:**
Pursuant to §309(h) of the Communications Act of 1934, as amended, 47 U.S.C. §309(h), this license is subject to the following conditions: This license shall not vest in the licensee any right to operate the station nor any right in the use of the frequencies designated in the license beyond the term thereof nor in any other manner than authorized herein. Neither the license nor the right granted thereunder shall be assigned or otherwise transferred in violation of the Communications Act of 1934, as amended. See 47 U.S.C. § 310(d). This license is subject in terms to the right of use or control conferred by §706 of the Communications Act of 1934, as amended. See 47 U.S.C. §606.

FCC 605-A
August 2007

**Mercer-Erwin/Moffett Exhibit 1.d**
**Case No. 4:20-CR-00212**
**Page 008**



November 16, 2017

**Camro Transportes, SA de CV**
**Mr. Rodolfo Javier Camarillo Montemayor, Sole-Administrator**
Carretera a Colombia Km 9 No. 100
Col. Andres Caballero
66080 Escobedo, Nuevo Leon
Mexico

   Re: Continent Aircraft Statutory Trust No. 2814
     LEARJET INC 31A, s/n: 080
     Registration No. N260RC

Dear Sir(s),

Enclosed is the **FCC Aircraft Radio Station License FCC Form 605-A** for N260RC. Please note this license is valid until November 10, 2027.

The FCC Aircraft Radio Station License, FCC Form 605-A, bearing the aircraft registration number must be in the aircraft anytime it is operated.

If you have any questions, please contact us at 1-281-445-7594, or via fax at 1-281-445-7599 or email us at AGC@agcorp.com

Sincerely,

Debbie Mercer-Erwin, President
Aircraft Guaranty Corporation, Trustee

One Enclosure as

P.O. Box 891860 Oklahoma City, Oklahoma 73189

Phone: 1-281-445-7594   Fax: 1-281-445-7599   Email: AGC@AGCORP.COM

# Federal Communications Commission
## Wireless Telecommunications Bureau

### RADIO STATION AUTHORIZATION

LICENSEE: AIRCRAFT GUARANTY CORPORATION, TRUSTEE

ATTN: KAYLEIGH MOFFETT
AIRCRAFT GUARANTY CORPORATION, TRUSTEE
PO BOX 2547
ONALASKA, TX 77360

**FCC Registration Number (FRN):** 0005890975

| FAA Number/FCC Call Sign | Radio Service | File Number |
|---|---|---|
| N 260RC | AC - Aircraft | 0007996601 |
| **Type of License** | **Number in Fleet** | **Classification** |
| Regular | | Private Aircraft |

| Grant Date | Effective Date | Expiration Date | Print Date |
|---|---|---|---|
| 11-10-2017 | 11-16-2017 | 11-10-2027 | 11-16-2017 |

**Waivers/Conditions:**

NONE



### THIS AUTHORIZATION IS NOT TRANSFERABLE

**Conditions:**
Pursuant to §309(h) of the Communications Act of 1934, as amended, 47 U.S.C. §309(h), this license is subject to the following conditions: This license shall not vest in the licensee any right to operate the station nor any right in the use of the frequencies designated in the license beyond the term thereof nor in any other manner than authorized herein. Neither the license nor the right granted thereunder shall be assigned or otherwise transferred in violation of the Communications Act of 1934, as amended. See 47 U.S.C. § 310(d). This license is subject in terms to the right of use or control conferred by §706 of the Communications Act of 1934, as amended. See 47 U.S.C. §606.

FCC 605-A
August 2007

Mercer-Erwin/Moffett Exhibit 1.d
Case No. 4:20-CR-00212
Page 010



AIRCRAFT GUARANTY
OWNER TRUSTEE

November 14, 2017

**Camro Transportes, SA de CV**
**Mr. Rodolfo Javier Camarillo Montemayor, Sole-Administrator**
Carretera a Colombia Km 9 No. 100
Col. Andres Caballero
66080 Escobedo, Nuevo Leon
Mexico

Re:     Continent Aircraft Statutory Trust No. 2814
          LEARJET INC 31A, s/n: 080
          Registration No. N986MA

Dear Sir(s),

Enclosed is the **FCC Aircraft Radio Station License FCC Form 605-A** for N986MA. Please note this license is valid until November 10, 2027.

The FCC Aircraft Radio Station License, FCC Form 605-A, bearing the aircraft registration number must be in the aircraft anytime it is operated.

If you have any questions, please contact us at 1-281-445-7594, or via fax at 1-281-445-7599 or email us at AGC@agcorp.com

Sincerely,

*Debbie Mercer-Erwin*

Debbie Mercer-Erwin, President
Aircraft Guaranty Corporation, Trustee

One Enclosure as

P.O. Box 891860 Oklahoma City, Oklahoma 73189

Phone: 1-281-445-7594          Fax: 1-281-445-7599          Email: AGC@AGCORP.COM

**Mercer-Erwin/Moffett Exhibit 1.d**
**Case No. 4:20-CR-00212**
**Page 011**



# Federal Communications Commission
## Wireless Telecommunications Bureau

### RADIO STATION AUTHORIZATION

LICENSEE: AIRCRAFT GUARANTY CORPORATION, TRUSTEE

ATTN: KAYLEIGH MOFFETT
AIRCRAFT GUARANTY CORPORATION, TRUSTEE
PO BOX 2547
ONALASKA, TX 77360

**FCC Registration Number (FRN):** 0005890975

| FAA Number/FCC Call Sign | Radio Service | File Number |
|---|---|---|
| N 986MA | AC - Aircraft | 0007989299 |
| **Type of License** | **Number in Fleet** | **Classification** |
| Regular | | Private Aircraft |

| Grant Date | Effective Date | Expiration Date | Print Date |
|---|---|---|---|
| 11-10-2017 | 11-10-2017 | 11-10-2027 | 11-10-2017 |

**Waivers/Conditions:**

NONE



### THIS AUTHORIZATION IS NOT TRANSFERABLE

**Conditions:**
Pursuant to §309(h) of the Communications Act of 1934, as amended, 47 U.S.C. §309(h), this license is subject to the following conditions: This license shall not vest in the licensee any right to operate the station nor any right in the use of the frequencies designated in the license beyond the term thereof nor in any other manner than authorized herein. Neither the license nor the right granted thereunder shall be assigned or otherwise transferred in violation of the Communications Act of 1934, as amended. See 47 U.S.C. § 310(d). This license is subject in terms to the right of use or control conferred by §706 of the Communications Act of 1934, as amended. See 47 U.S.C. §606.

FCC 605-A
August 2007

Page 1 of 1

*Mercer-Erwin/Moffett Exhibit 1.d*
*Case No. 4:20-CR-00212*
*Page 012*

Monday, March 13, 2023 at 9:28:19 AM Central Daylight Time

**Subject:** FW: Bill of sale N260RC
**Date:** Thursday, November 17, 2022 at 1:32:07 PM Central Standard Time
**From:** Debbie Mercer
**To:** Ginger Simmons
**Attachments:** N260RC BOS[5].pdf, image001.png

**From:** Kayleigh <KM@agcorp.com>
**Date:** Thursday, February 6, 2020 at 1:03 PM
**To:** Rafael Traver <traver.rafael@gmail.com>, Debbie Erwin <DM@agcorp.com>
**Subject:** Re: Bill of sale N260RC

Hi Rafael,
          Please see attached copy of the Bill of Sale you requested. Thank you.

Kayleigh Moffett, Secretary
P.O. Box 891860
Oklahoma City, OK 73189
Phone 1-281-445-7594  Fax 1-281-445-7599



AIRCRAFT GUARANTY
OWNER TRUSTEE

**From:** Rafael Traver <traver.rafael@gmail.com>
**Date:** Wednesday, February 5, 2020 at 2:43 PM
**To:** Kayleigh Moffett <KM@agcorp.com>, Debbie Mercer <DM@agcorp.com>
**Subject:** Bill of sale N260RC

Hello,

Could you please send us a copy of the bill of sale from Mescalero to ITRC LLC (Mr. Camarillo's company). It's one of the documents the DOC is requesting.
Thank you.

Best regards,

Rafael Traver.

AIRCRAFT GUARANTY
——————— OWNER TRUSTEE

February 14, 2020

Martin & Drought, P.C.
c/o Jorge A. Garcia
300 Convent St.
Bank of America Plaza
25th Floor
San Antonio, TX 78205-3789

Re:    Letter authorization in connection with one (1) 1993 Learjet Inc. model
       31A aircraft bearing manufacturer's serial number 080 and U.S.
       Registration Number N260RC (the "**Aircraft**")

Dear Mr. Garcia:

We understand (i) your firm represents ITRC, LLC (the "**Beneficiary**"), and Camro Transportes, SA de CV (the "**Operator**") and (ii) based on information provided from your office, the Aircraft, defined above, is being detained by the U.S. Department of Commerce ("**Department of Commerce**") under alleged violations of the Export Administration Regulations.

As you are aware, Aircraft Guaranty Corporation, not in its individual capacity, but solely as Trustee (the "**Trustee**") of the Continent Aircraft Statutory Trust No. 2814, is the registered owner of the Aircraft and the Beneficiary is the grantor under the related Declaration of Trust dated as of October 20, 2017 (the "**Trust**"). A copy of the Trust is being enclosed herein for reference. Further, the Trustee has entered into that certain Aircraft Dry Lease Agreement dated October 20, 2017 ("**Lease**"), with Operator as the lessee thereunder. A copy of the Lease is also being enclosed herein for reference.

In our communication with you, we understand the Department of Commerce, through Special Agent Paul Mack, has requested authorization from the registered owner of the Aircraft before providing any information to you regarding the alleged violations referenced above. For the reasons set forth below, we are providing this letter to authorize your firm, the Beneficiary, and/or the Operator to discuss matters related to the alleged violations referenced above, and this letter (and any enclosures) may be shared with the Department of Commerce.

The Trustee has not been in physical possession or control of the Aircraft, rather under the Trust and the Lease, the possession and control of the Aircraft was transferred to the Operator. The Trust and Lease provide for an affirmative obligation on the Beneficiary and Operator to comply with any export controls. The Trustee's function in connection with the Aircraft is to hold title to the Aircraft for registration of the Aircraft with the Federal Aviation Administration ("**FAA**") Civil Aircraft Registry and to

1 | P a g e

**Mercer-Erwin/Moffett Exhibit 1.d**
**Case No. 4:20-CR-00212**
**Page 014**

AIRCRAFT GUARANTY
—————————— OWNER TRUSTEE

undertake certain regulatory functions and duties prescribed by specifically by (i) the FAA and (ii) the terms of the Trust.  Please note, the Trust and Lease are filed with the FAA and maintained in the public records.

As stated above, this letter authorizes your firm, the Beneficiary and/or the Operator to discuss matters related to the detention of the Aircraft and the alleged violations.  If we can be of additional service or provide more information, please let us know.

Aircraft Guaranty Corporation, not in its individual capacity, but solely as Trustee of Continent Aircraft Statutory Trust No. 2814

By: _____
    DocuSigned by:
    *Debbie Mercer-Erwin*
    5F2C7686CE8E451...

Name: _____Debbie Mercer-Erwin_____

Title: _____President_____

Enclosures

2 | P a g e

Mercer-Erwin/Moffett Exhibit 1.d
Case No. 4:20-CR-00212
Page 015

Filed 7/15/2020 5.39 PM
Bobbye Richards
District Clerk
Polk County, Texas

Katey Nelson, Deputy

CIV33808



**WILLIAM LEE HON**
CRIMINAL DISTRICT ATTORNEY

TEL: (936) 327-6868
www.polkcountyda.com

FAX: (936) 327-6875 - FELONY DIVISION

FAX: (936) 327-6862 - MISDEMEANOR DIVISION

POLK COUNTY, TEXAS
101 W. Mill St., Ste. 247 •
LIVINGSTON, TEXAS 77351
POLK COUNTY JUDICIAL BUILDING

July 15, 2020

Bobbye J. Richards
District Clerk
Polk County
101 West Mill Street
Livingston, Texas 77351

Re: Cause No. CIV33808; Notice of Seizure and Intended Forfeiture of a Learjet 31A bearing serial number 080 and assigned and displaying registration/tail number N260RC

Ms. Richards:

I respectfully request that your office prepare citation by personal service in the above-referenced cause, directed at Respondents:

Debbie Mercer aka Debbie Lynn Erwin
13620 Portofino Strada
Oklahoma City, OK 73170

Rodolfo Javier Camarillo Montemayor
c/o Camra Transportes, S.A. DE C.V.
Carretera a Colombia Km 9 No. 100
Col. Andres Caballero
66080 Escobedo, Nuevo Leon, Mexico

Please include in the citation a file-stamped copy of the Notice of Seizure and Intended Forfeiture filed in the case. **The service of said citation will be scheduled by the Polk County District Attorney's office.** Thank you for your attention to this matter. Should you have any questions or concerns, please contact me at (936) 327-6868.

Sincerely,

Tommy L. Coleman

via: Efile

*Serve*

## CITATION -- Personal Service: TRC 99

THE STATE OF TEXAS                                    COUNTY OF POLK

CAUSE NO. CIV 33808

**TO: Debbie Mercer aka Debbie Lynn Erwin, 13620 Portofino Strada, Oklahoma City, OK 73170**
**Or Wherever He May Be Found**

Notice to defendant: You have been sued. You may employ an attorney. If you, or your attorney, do not file a written answer with the clerk who issued this citation by 10:00 A.M. on the first Monday following the expiration of twenty days after you were served this citation and petition, a default judgment may be taken against you.

| | |
|---|---|
| Court: | **411ᵗʰ Judicial District Court**<br>**101 W. Mill St.,  TX 77351** |
| Cause No.: | **CIV33808** |
| Date of Filing: | **07-14-20** |
| Document: | **Notice of Seizure and Intended Forfeiture** |
| Parties in Suit: | **Aircraft Guaranty Corporation, Aircraft Guaranty Trust, LLC, Aircraft Holdings & Trust, LLC,  Aircraft Guaranty Management & Trust, LLC., Aircraft Guaranty Corp., Trustee for Continent Aircraft Statutory Trust No. 2814, Camro Transportes, S.A. DE CV, Debbie Mercer aka Debbie Lynn Erwin, LEARJET 31A BEARING SERIAL NUMBER 080 AND ASSIGNED AND DISPLAYING REGISTRATION/TAIL NUMBER N260RC, Rodolfo Javier Camarillo-Montemayor, ITRC, LLC., State of Texas** |
| Clerk: | **Bobbye J. Richards, District Clerk**<br>**101 W. Mill St., Ste. 216,  TX 77351** |
| Party or Party's Attorney: | **Tommy Coleman, Assistant District Attorney,**<br>**101 West Mill Street, Livingston, TX 77351** |

Issued under my hand and seal of this said court on this the 17ᵗʰ day of July, 2020.

Bobbye J. Richards, District Clerk
Livingston, Polk County, Texas

BY: _____ Deputy

### Service Return

Came to hand on the _____ day of _____, 20___, at _____ m., and executed on the _____ day of _____, 20___, at _____ M by delivering to the  within named

_____ in person  a true copy of this citation, with attached copy(ies) of the _____ at

[ ] Not executed. The diligence use in finding defendant being _____

[ ] Information received as to the whereabouts of defendant being _____

| | |
|---|---|
| Service Fee: $ _____ | Sheriff/Constable<br>_____ County, Texas |
| Service ID No. | Deputy/Authorized Person |

### VERIFICATION

On this day personally appeared _____ known to me to be the person whose name is subscribed on the foregoing instrument and who has stated: upon penalty of perjury, I attest that the foregoing instrument has been executed by me in this cause pursuant to the Texas Rules of Civil Procedure.  I am over the age of eighteen years and I am not a party to or interested in the outcome of this suit, and have been authorized by the Polk County Courts to serve process.

Subscribed and sworn to before me on this the _____ day  of _____, 20___

_____ Notary Public

**Mercer-Erwin/Moffett Exhibit 1.d**
**Case No. 4:20-CR-00212**
**Page 017**

**CIVIL**

CAUSE NO. 033808

Filed 7/14/2020 3:05 PM
Bobbye Richards
District Clerk
Polk County, Texas
Katey Nelson, Deputy

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE 411TH DISTRICT COURT |
| | § | |
| VS | § | |
| | § | |
| LEARJET 31A BEARING SERIAL | § | OF |
| NUMBER 080 AND ASSIGNED AND | § | |
| DISPLAYING REGISTRATION/TAIL | § | |
| NUMBER N260RC | § | |
| | § | POLK COUNTY, TEXAS |

### NOTICE OF SEIZURE AND INTENDED FORFEITURE

COMES NOW, the State of Texas as Plaintiff by and through her Assistant District Attorney, Tommy L. Coleman and files this Notice of Seizure and Intended Forfeiture of a Learjet 31A bearing serial number 080 and assigned and displaying registration/tail number N260RC, and alleges the following:

**I.**

This proceeding is brought under and by virtue of Chapter 59 of the Texas Code of Criminal Procedure. Plaintiff alleges that discovery is intended to be conducted under Level 1 of Rule 190.3 of the Texas Rules of Civil Procedure.

**II.**

Jurisdiction is conferred upon this Court by virtue of Article V, Section 8 of the Texas Constitution and Article 59 of the Code of Criminal Procedure.

**III.**

Plaintiff complains of:

Rodolfo Javier Camarillo-Montemayor

Aircraft Guaranty Corporation

Aircraft Guaranty Trust, LLC

Aircraft Guaranty Holdings & Trust, LLC

Aircraft Guaranty Management & Trust, LLC

Aircraft Guaranty Corp., Trustee for Continent Aircraft Statutory Trust No. 2814

Camro Transportes, S.A. DE C.V.

ITRC, LLC

Debbie Mercer aka Debbie Lynn Erwin

**Mercer-Erwin/Moffett Exhibit 1.d**
**Case No. 4:20-CR-00212**
**Page 018**

hereinafter referred to as Respondents, as possessors and/or owners of said Learjet 31A bearing serial number 080 and assigned and displaying registration/tail number N260RC.

**IV.**

Plaintiff alleges that said property is contraband as defined by Article 59.01 of the Code of Criminal Procedure, and is subject to forfeiture by virtue of:

a) Being used in the commission of any first degree felony under the Penal Code, including, but not limited to:

    i. Chapter 32.46 of the Texas Penal Code (Securing the Execution of a Document by Deception);

    ii. Chapter 34.02 of the Texas Penal Code (Money Laundering); and

    iii. Chapter 71.02 of the Texas Penal Code (Engaging in Organized Criminal Activity)

b) Being used or intended to be used in the commission of a felony under Chapter 34 of the Texas Penal Code (Money Laundering)

c) Being used or intended to be used in the commission of a felony under Chapter 71 of the Texas Penal Code (Engaging in Organized Criminal Activity)

d) Being the proceeds gained from the commission a felony under the Penal Code, including, but not limited to:

    i. Chapter 32.46 of the Texas Penal Code (Securing the Execution of a Document by Deception);

    ii. Chapter 34.02 of the Texas Penal Code (Money Laundering); and

    iii. Chapter 71.02 of the Texas Penal Code (Engaging in Organized Criminal Activity)

e) Being acquired with proceeds gained from the commission a felony under the Penal Code, including, but not limited to:

    i. Chapter 32.46 of the Texas Penal Code (Securing the Execution of a Document by Deception);

    ii. Chapter 34.02 of the Texas Penal Code (Money Laundering);

    iii. Chapter 71.02 of the Texas Penal Code (Engaging in Organized Criminal Activity).

**Mercer-Erwin/Moffett Exhibit 1.d**
**Case No. 4:20-CR-00212**
**Page 019**

## V.

Plaintiff, in the alternative, seeks the forfeiture of "substitute property" as set forth under Chapter 59.021 of the Code of Criminal Procedure, and alleges the substitute property is subject to forfeiture by virtue of the fact that the contraband:

    a) Has been transferred, conveyed, sold to, or deposited with a person other than the owner or interest holder;

    b) Is not within the jurisdiction of the court;

    c) Has been commingled with other property and cannot be readily distinguished or separated; or

    d) Is proceeds described by Article 59.01(2)(C) of the Code of Criminal Procedure and was used to acquire other property that is not within the jurisdiction of the court.

## VI.

Plaintiff, in the alternative, seeks a suit for proceeds and a judgment in the amount of proceeds that are contraband under Chapter 59.023 of the Code of Criminal Procedure, and alleges that said proceeds were gained from the commission of an offense listed in Article 59.01(2)(A) or (B) of the Code of Criminal Procedure.

## VII.

The Plaintiff files this Notice of Seizure and Intended Forfeiture in a district court of Polk County, Texas which is the county in which venue exists for prosecution of an underlying offense for which the property is subject to forfeiture.

## VIII.

A copy of this notice will be served upon the Respondents, whose last known address is to be determined, in accordance with the Texas Rules of Civil Procedure.

## IX.

Plaintiff attaches the sworn affidavit of the seizing officer as Exhibit A in accordance with Article 59 of the Code of Criminal Procedure.

WHEREFORE, PREMISES CONSIDERED, the State of Texas prays that upon hearing, this Court enter a finding that the said Learjet 31A bearing serial number 080 and assigned and displaying registration/tail number N260RC is contraband, and upon such finding to order the forfeiture of said property to the State of Texas with the District Attorney's Office acting as agent for the State, and then to be administered and disposed of by said office in compliance with Article 59.06 of the Code of Criminal Procedure or in the alternative, order the forfeiture of "substitute property" as set forth under Chapter 59.021 of the Code of Criminal Procedure or award the Plaintiff a judgment in the amount of the proceeds that are contraband under Chapter 59.023 of the Code of Criminal Procedure.

Respectfully submitted,

**Tommy L. Coleman**
State Bar No. 24034383
Assistant Criminal District Attorney
Polk Co. District Attorney's Office
101 West Mill Street, Suite 247
Livingston, Texas 77351
Tel: (936) 327-6868
Fax: (936) 327-6875

**Mercer-Erwin/Moffett Exhibit 1.d**
**Case No. 4:20-CR-00212**
**Page 021**

EXHIBIT A

State of Texas     )
        )
County of  HARRIS   )

### AFFIDAVIT

  BEFORE ME, the undersigned authority, on this day personally appeared Beau Price, who after being duly sworn stated:

"1. My name is Beau Price and I am currently employed as a Captain with the Polk County Constable Precinct 1 and Commander of South East Texas Export Investigation Group (SETEIG). SETEIG is a State Task Force group consisting of multiple counties and federal partners such as; Polk County Texas, Harris County Texas, Galveston County Texas, Department of Commerce Bureau of Industry Security Office of Export Enforcement; Immigration and Customs Enforcement, Homeland Security Investigations (HSI).

2. Affiant is a Master Peace Officer with over 22 years of experience. Affiant has assisted and directed hundreds of felony investigations, search warrants, seizures, and operations. Affiant has and is currently investigating multiple money laundering and counter-proliferation investigations, which involve investigating cases of sensitive technology being smuggled from the United States or turned over to foreign nationals without proper authorization from the appropriate government agencies. Affiant also investigates financial crimes, aviation smuggling, and other state and federal felonies occurring within the State of Texas.

3. Affiant has participated in and conducted investigations of violations of various state and federal criminal laws, including aviation smuggling cases and false statements to register an aircraft. Affiant has become familiar with the regulations for the lawful use of aircraft including, federal and Texas laws and regulations pertaining to their operation, registration, and record keeping. Affiant works directly with federal agents who have spent hundreds of hours engaged in observation, surveillance, inspection, and investigation of possible illicit activity involving aircraft. Affiant has consulted with special agents and other personnel assigned to the Federal Aviation Administration (FAA) about the rules and regulations related to the lawful operation and maintenance of aircraft, as well as common schemes used to circumvent these laws. Affiant

Price Affidavit Revised 7-13-20, page 1

has also consulted with federal agents who have interviewed various airport personnel, including airport managers, mechanics, ground crew, radar operators, air traffic controllers, pilots, and airport-based United States Customs and Border Protection (CBP) agents.

4.    This affidavit is based upon Affiant's personal involvement in the investigation, including the review of documents and other evidence and conversations with law enforcement officers and others. Because this affidavit is being submitted for the limited purpose of establishing probable cause for the issuance of a civil forfeiture seizure warrant, it does not include all the facts that Affiant has learned during the course of this investigation.

5.    This Affidavit is submitted in support of an application for the issuance of a civil forfeiture seizure warrant for one Learjet 31A bearing serial number 080 and assigned and displaying registration/tail number N260RC (hereinafter "Learjet"); and all maintenance/inspection logs, flight operation logs, FAA issued Certificate of Registration, and other records required to be maintained for General Aviation Aircraft, commonly known as the "Log Book" for the Learjet, which is currently located at Brownsville South Padre Island International Airport, in Brownsville, Texas.

6.    Based on Affiant's training and experience and the facts as set forth in this affidavit, there is probable cause to believe that the individuals involved in the scheme set forth in this affidavit violated, among other things, Chapter 34 of the Texas Penal Code (Money Laundering), Title 49 of the United States Code § 46306(b)(4) (Aircraft Registration Violations), Title 18 of the United States Code § 554 (Fraudulent Export), Title 13 of the United States Code § 305 (Unlawful Export Activities), Title 50 of the United States Code § 4819 (Export Administration Regulations), Title 18 of the United States Code § 1001(Fraud), Title 26 of the United States Code § 7201 (Attempt to Evade Tax) and Title 18 of the United States Code § 1957 (Racketeering).

7.    Affiant found that Aircraft Guaranty Corporation (AGC) was an entity located at 2058 FM 356 North, in Onalaska, Texas and that maintained multiple post office boxes in Onalaska, Texas. Onalaska, Texas is wholly contained in Polk County Texas. . Affiant found that this

Price Affidavit Revised 7-13-20, page 2

Mercer-Erwin/Moffett Exhibit 1.d
Case No. 4:20-CR-00212
Page 023

company was owned by Debbie Mercer. Affiant along with Department of Commerce Bureau of Industry and Security Special Agent Payton began an investigation into AGC. Affiant found a Dallas Business Journal article where Mercer was quoted as saying "Aircraft Guaranty offers Owner Trustee services that allow entities who do not meet FAA citizenship requirements to register aircraft in the United States."

8.    After reviewing this article, AGC's websites, social network profiles, and U.S. Government export data bases, Affiant along with Participating Agent (PA) Payton contacted Mercer and in response she contacted legal counsel, PA Payton subpoenaed Mercer/ AGC for all aircraft registered to AGC and received a spreadsheet with 2934 aircraft under an AGC trust. Only 54 aircraft are listed under the jurisdiction of the United States.

9.    Affiant found that according to the Homeland Security Investigations (HSI), many of these accounts represent aircraft that do not exist, "Ghost Planes". Several aircraft under AGC trusts are linked to multiple federal investigations for drug smuggling operations and several aircraft have crashed oversees. In 2013, an audit by the Office of Inspector General for the Department of Transportation (DOT) estimated that about 5,600 planes lacked key information about true ownership. AGC was one of five trustees audited in this report.

10.    Affiant found that one aircraft Mercer registered was identified as the Learjet which is the subject of this investigation. Further investigation revealed that the purported owner of record for the Learjet is Rodolfo Javier Camarillo Montemayor.  Affiant found that Montemayor is a foreign national and citizen of Mexico who is otherwise prohibited from owning a U.S. registered aircraft.

11.    Affiant found a person may operate an aircraft in the United States only when the aircraft is registered, according to Title 49 of the United States Code § 44101. To register and obtain a certificate of registration for an aircraft, the owner of an aircraft must apply for and meet the requirements of Title 49 of the United States Code § 44102.

Price Affidavit Revised 7-13-20, page 3

12.    Affiant reviewed documents maintained by the FAA related to a purported sale of the Learjet. The documents indicate that AGC purchased the Learjet on or about November 7, 2017. Additionally, the documents indicate that Rodolfo Javier Camarillo Montemayor is the "Manager" of Continent Aircraft Statutory Trust No. 2814 and that AGC is "Trustee" for the Learjet. During the course of this investigation, Affiant did not find documentation that indicates AGC filed the legally required export documentation. AGC is listed as the most recent owner of the Learjet in multiple documents filed with the FAA, including but not limited to a 2018 "Major Repair" form, a 2017 Aircraft Registration Renewal Application and a 2017 Aircraft Bill of Sale.

13.    Furthermore, Affiant reviewed certain documents maintained by AGC and found that a Texas Aircraft Exemption Certificate Out-of-State Registration and Use form 01-907 completed by AGC, POB 2547 Onalaska, Texas 77360 reflected the purported purchaser of the Learjet is AGC (Trust 2814) and that the purported seller is ITRC, LLC, 8 The Green, Suite B, Dover Delaware. This document is signed by Montemayor and dated October 30, 2017. The documents reflect a purported purchase price for the Learjet of $635,000.00. Affiant found this document declares that the Learjet will be registered in Onalaska, Texas, and that it would not be utilized in Texas.  Affiant found the document to declare that the location of the Learjet would be Monterrey, Nuevo Leon, Mexico.

14.    Affiant reviewed a document entitled *United States of America U.S. Department of Transportation FAA Aircraft Bill of Sale* from 2017 reflecting AGC as the purported "purchaser" of the Learjet and ITRC, LLC, as the purported "seller". The documents were signed by Montemayor.

15.    Affiant reviewed a document entitled *AGC Addendum to Lease/Operating Agreement* related to the Learjet dated October 20, 2017 and found that the documents reflected "Cametra A Columbia Km 9 No. 100, Col. Andres Caballero, Escobedo, Nuevo Leon, Mexico" and "ICAO indentifier and name of airport where aircraft is normally based is Aeropuerto Internacional Del Norte MMAN". This further indicates that the Learjet was exported unlawfully.

Price Affidavit Revised 7-13-20, page 4

16.    Affiant found that on January 31, 2020, Department of Commerce Bureau of Industry and Security Special Agent Stevens, identified the, Learjet, which is the subject of this investigation in Brownsville, Texas preparing to depart to Monterrey, Mexico.

17.    SA Mack reviewed export data maintained by the U.S. Government and was unable to find Electronic Export Information (EEI) filed for this Learjet by any party. After which, the SA Mack issued a detention letter for the Learjet.

18.    A January 2020 determination by the Office of Chief Counsel for the Department of Commerce-Bureau of Industry and Security, indicated that aircraft, operated outside of the United States for more than one year, with no export declaration on file, constitutes a violation of federal law. Affiant's investigation indicates that the Learjet in this case has been operated outside of the United States for more than three years.

19.    A review of government records indicates that the Learjet has been in the United States for only sixty six (66) days during the time frame of January 2019 to January 2020. Further review revealed that forty (40) of the sixty six (66) days appears to have been for maintenance of the Learjet. A check of FAA records did not reveal any deregistration requests or documentation related to the export of the Learjet to Mexico.

20.    As part of Affiant's investigation, Affiant reviewed documents that appear to represent a purported sale of the Learjet in 2017 from Mescalero to an entity known as ITRC, LLC for $635,000.00. This transaction, if legitimate, would have been subject to a State of Texas sales tax. Additional documents reviewed by Affiant reflected a purported sale of the Learjet by ITRC, LLC to AGC for $650,000.00. This transaction, if legitimate, would have been subject to a State of Texas sales tax. It should be noted that the Texas Comptroller's Office has the ability to assess a 10% late penalty and a 50% fraud penalty per transaction. Affiant estimates the total amount of sales tax due in Texas would be more than $39,000.00. Affiant estimates that the Texas Comptroller's Office could assess a total late penalty of $3,900.00 and a total Fraud Penalty would be more than $19,000.00. The total, potential fine amount associated with the applicable criminal law violations that the subjects of this investigation face is $2,000,000.

Price Affidavit Revised 7-13-20, page 5

Mercer-Erwin/Moffett Exhibit 1.d
Case No. 4:20-CR-00212
Page 026

21.     Agents with the United States Department of Commerce-Bureau of Industry Security (BIS) queried certain databases that maintain records related to export filings and found no records related to the Learjet. Export regulations ordinarily require an Electronic Export Information declaration (EEI) for items valued over $2,500.00 which are ultimately exported from the United States and/or a licensing determination for any items that may be deemed sensitive exports. These sensitive exports include items that are single and dual use items with military applications and are commonly found in aviation components. Affiant found that the Automated Export System (AES) showed no export documentation for the Learjet.

22.     Aircraft Guaranty Financial Corporation has numerous links to a situs in Onalaska, Texas which is wholly contained in Polk County Texas and said links include the maintenance of two post office boxes (PO Box 2547 and 2549, Onalaska, TX 77360) and conducting business operations at the physical location of 2058 N FM 356, Onalaska, Texas 77360.

23.     Based on the totality of the circumstances as indicated above and my training and experience, I formed the opinion that the individuals involved in this scheme violated numerous state and federal laws, including but not limited to, the statutory provisions listed in paragraphs 6 and 11 above. Additionally, Affiant believes Learjet 31A bearing serial number 080 and assigned and displaying registration/tail number N260RC is/was being operated without a valid Certificate of Registration in violation of federal law. Furthermore, the Learjet was effectively exported from the United States in violation of federal law. The individuals involved in this scheme, acquired or maintained an interest in the Learjet, concealed, possessed, transferred or transported the proceeds of said criminal activity in violation of Chapter 34.02 of the Texas Penal Code. The individuals involved in this scheme conducted, supervised or facilitated a transaction involving the proceeds of said criminal activity in violation of Chapter 34.02 of the Texas Penal Code. The individuals involved in this scheme invested, expended or received or offered to invest, expend or receive the proceeds of criminal activity. The individuals involved in this scheme financed, invested or intended to finance and/or invest funds that they believed or intended to further the commission of the aforementioned violations of federal law and in so doing also violated Chapter 34.02 of the Texas Penal Code."

Price Affidavit Revised 7-13-20, page 6

Mercer-Erwin/Moffett Exhibit 1.d
Case No. 4:20-CR-00212
Page 027

Beau Price

SWORN TO AND SUBSCRIBED before me on this _14_ day of _July_ 2020.

Notary Public in and for
The State of Texas

SHEENA MOORE
Notary Public, State of Texas
Comm. Expires 06-14-2024
Notary ID 129021324

My Commission Expires: _06/14/2024_

Price Affidavit Revised 7-13-20, page 7



**UNITED STATES DEPARTMENT OF COMMERCE**
**Bureau of Industry and Security**
HOUSTON RESIDENT OFFICE
Office of Export Enforcement
15109 Heathrow Forest Pkwy, Suite 170
Houston, Texas 77032

17 July 2020

Camro Transportes S. A. DE C.V
Gomez Morin 900
San Pedro Garza
Garcia, Mexico
8442772330
N260RC@Hotmail.com

To whom it may concern:

The United States Department of Commerce is responsible for regulating the export of dual use goods and technology from the United States of America. The Office of Export Enforcement (OEE), Bureau of Industry and Security (BIS), U.S. Department of Commerce, is responsible for investigating allegations of, and violations of, the Export Administration Regulations (EAR), the Export Administration Act (EAA) and the International Emergency Economic Powers Act (IEEPA) and the Export Control Reform Act (ECRA).

In regards to detention letter dated 31 Jan 2020, this letter is to officially inform you that the shipment of one 1993 LEARJET INC 31A, Serial number 080, U.S. Registration Number N260RC and located at Brownsville South Padre Island International Airport, 700 Amelia Earhart Dr, Brownsville, TX 78521 is released on 17 July 2020 by OEE, Houston, Texas.

Your cooperation in this matter is appreciated. Questions may be directed to Special Agent Paul Mack at (281) 372-7138.

Respectfully,

Ron R. Kruger
Acting Resident Agent in Charge
Houston Resident Office

**NOT FOR PRINTED PUBLICATION**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
LUFKIN DIVISION

| | | |
|---|---|---|
| STATE OF TEXAS | § | |
| | § | |
| v. | § | |
| | § | CASE NO. 9:20-CV-172 |
| LEARJET 31A BEARING SERIAL | § | |
| NUMBER 080 AND ASSIGNED AND | § | JUDGE MICHAEL TRUNCALE |
| DISPLAYING REGISTRATION/TAIL | § | |
| NUMBER N260RC | § | |

## ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

Pending before the court is Defendant's Motion to Dismiss. (Doc. #6). Because Plaintiff

did not file the notice of seizure and intended forfeiture in the county where the property was

seized, and the property is not proceeds, the court grants the motion.

### I.    BACKGROUND

On July 14, 2020, Plaintiff, the State of Texas ("State"), filed a *Notice of Seizure and*

*Intended Forfeiture* in the 411th District Court of Polk County, Texas seeking forfeiture of a

Learjet 31A Bearing Serial Number 080 and Assigned and Displaying Registration/Tail Number

N260RC ("Learjet") (Doc. #2). The notice, based on a sworn affidavit of a law enforcement officer

and filed by virtue of Chapter 59 of the Texas Code of Criminal Procedure, alleged that the Learjet

was contraband and is subject to forfeiture by virtue of it having been used in, intended to be used

in, or acquired with the proceeds gained from the commission of a number of felony offenses under

the Texas Penal Code. (Doc. #2). On August 13, 2020, the Learjet removed the action to this court

asserting diversity and federal question jurisdiction. (Doc. #1). On September 10, 2020, the Learjet

1

**Mercer-Erwin/Moffett Exhibit 1.d**
**Case No. 4:20-CR-00212**
**Page 030**

filed a motion to dismiss. (Doc. #6). On November 16, 2020, the court had a hearing on the motion to dismiss. In the hearing, the court gave the parties 7 days to file supplemental briefing on whether the notice requirement of Texas Code of Criminal Procedure Article 59.04 had been met and if the Learjet could qualify as proceeds under Article 59.01(7). On November 23, 2020, the Learjet filed its post-hearing brief. (Doc. #20). Instead of filing its own post-hearing brief, on November 25, 2020, the State filed a Reply to Defendant's Post-Hearing Brief.[1] (Doc. #22).

## II.    LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Leal v. McHugh*, 731 F.3d 405, 410 (5th Cir. 2013) ("Dismissal is appropriate only if the claim fails to plead 'enough facts to state a claim to relief that is plausible on its face.'"). To be plausible, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level. " *In re Great Lakes Dredge & Dock Co., LLC*, 624 F.3d 201, 210 (5th Cir. 2010) (quoting *Twombly*, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

In deciding whether the complaint states a valid claim for relief, the court accepts all well-pleaded facts as true and construes the complaint in the light most favorable to the plaintiff. *In re Great Lakes*, 624 F.3d at 210. The court does not accept as true "conclusory allegations,

---

[1] It appears the State may have styled their brief as a reply in order to get around the fact that briefing on the matter was due on November 23, 2020, a deadline the State did not meet. This is not the first deadline the State has missed in this case. Although the court will still consider the State's brief, counsel is advised to pay close attention to deadlines in the future as the court has the discretion to reject documents that are not timely filed. The court further notes that if the State wanted to rebut the Learjet's brief, it would file a response, not a reply. *See* Local Rule CV-7.

**Mercer-Erwin/Moffett Exhibit 1.d**
**Case No. 4:20-CR-00212**
**Page 031**

unwarranted factual inferences, or legal conclusions." *Id.* While legal conclusions can provide the

complaint's framework, they must be supported by factual allegations. *Iqbal*, 556 U.S. at 679. The

inquiry focuses on the allegations in the pleadings and not on whether the plaintiff actually has

sufficient evidence to succeed on the merits. *See Ackerson v. Bean Dredging, LLC*, 589 F.3d 196,

209 (5th Cir. 2009). "Threadbare recitals of the elements of a cause of action, supported by mere

conclusory statements, do not suffice." *Id.* Likewise, a plaintiff must put forth more than

"'unadorned, the defendant-unlawfully-harmed-me accusation[s].'" *Varela v. Gonzales*, 773 F.3d

704, 707 (5th Cir. 2014) (citing *Iqbal*, 556 U.S. at 678).

### III.    DISCUSSION

In its Notice, the State offers three reasons for why seizure and forfeiture of the Learjet is

warranted: because it (a) is contraband as defined by Article 59.01; (b) is substitute property as set

forth in Article 59.021; or (c) qualifies as a suit for proceeds under Article 59.023. Each reason

will be discussed in turn.

#### A. Contraband[2]

Article 59.02 of the Texas Code of Criminal Procedure states "[p]roperty that is contraband

is subject to seizure and forfeiture." Tex. Code Crim. Proc. Ann. art. 59.02. Proceedings

commenced under Chapter 59 are subject to a notice requirement which is laid out in Article 59.04.

The pertinent parts read:

Article 59.04. Notification of forfeiture proceeding

(a) If a peace officer seizes property under this chapter, the attorney representing
the state shall commence proceedings under this section not later than the 30th
day after the date of the seizure.

---

[2] In the hearing and in its post-hearing brief, the State seems to concede that it did not meet the Chapter 59
requirements necessary to seize property as contraband. For the sake of thoroughness, the court will still address this
issue.

3

**Mercer-Erwin/Moffett Exhibit 1.d**
**Case No. 4:20-CR-00212**
**Page 032**

(b) A forfeiture proceeding commences under this chapter when the attorney representing the state files a notice of the seizure and intended forfeiture in the name of the state with the clerk of the district court in the county in which the seizure is made. The attorney representing the state must attach to the notice the peace officer's sworn statement under Article 59.03 of this code. The attorney representing the state shall cause certified copies of the notice to be served on the following persons in the same manner as provided for the service of process by citation in civil cases:

* * * * * *

(l ) Proceedings commenced under this chapter may not proceed to hearing unless the judge who is to conduct the hearing is satisfied that this article has been complied with and that the attorney representing the state will introduce into evidence at the hearing any answer received from an inquiry required by Subsections (c)–(h) of this article.

Tex. Code Crim. Proc. Ann. art. 59.04.

Texas appellate courts interpreting Article 59.04 have held that "notice must be filed as prescribed by the statute in the County where the property was seized." *Martinez v. State*, 893 S.W.2d 304, 305 (Tex. App.—Corpus Christi 1995, no pet.). If the notice is filed in a county different than the county where the property is seized, the proceeding must be dismissed. *See Martinez*, 893 S.W.2d at 305 (dismissing forfeiture proceeding because automobile was seized in Kenedy County and the notice of seizure and intended forfeiture was filed in Kleberg County).

The Notice in this case was filed in Polk County, Texas. Neither the Notice nor any other pleadings filed by the State contain any facts or evidence indicating that the Learjet was seized in Polk County or that it has ever been physically present in Polk County. The only connection with Polk County the Learjet seems to have is that one of its owners allegedly had a P.O. Box and conducted some business in Polk County at one time. The affidavit attached to the Notice was completed in Harris County. The affidavit itself states that the Learjet is currently located in Brownsville, Texas, which is in Cameron County. Additionally, in the hearing on the motion to dismiss, the attorney for the State admitted that the Learjet has never been to Polk County and that the seizure took place in Brownsville, Texas. The State further admitted in its post-hearing brief

4

that the seizure took place in Cameron County, Texas. Thus, the State has not, and cannot, prove that the property was seized in Polk County. Because the forfeiture article has not been complied with and the seizure did not occur in Polk County, this ground for seizure and forfeiture must be dismissed. *See 1976 Harley Davidson Motorcycle, VIN #2C16410H6 v. State*, 106 S.W.3d 398, 402 (Tex. App.—Corpus Christi 2003, no pet.) (holding that the State did not prove by a preponderance of the evidence that the property was subject to forfeiture because it failed to prove the property was seized in the county where the notice was filed).

## B. Substitute Property

The State's Notice states that "[p]laintiff, in the alternative, seeks the forfeiture of 'substitute property' as set forth under [Article] 59.021 of the Code of Criminal Procedure, and alleges the substitute property is subject to forfeiture by virtue of fact that the contraband a)  has been transferred, conveyed, sold to, or deposited with a person other than the owner or interest holder; b) is not within the jurisdiction of the court; c) has been commingled with other property and cannot be readily distinguished or separated; or d) is proceeds described by Article 59.01(2)(C) and was used to acquire other property that is not within the jurisdiction of the court." (Doc. #2, at 3).

There are several problems with this argument. First, substitute property is by definition not contraband. *See* Art. 59.021(a)(1). For the Learjet to be substitute property, there must be some other property that is contraband and is not available. Here, the only property at issue is the Learjet and the Notice does not say, assuming the jet is substitute property, what the underlying contraband is. In other words, the Learjet cannot simultaneously be both contraband and substitute property of the same contraband.

5

**Mercer-Erwin/Moffett Exhibit 1.d**
**Case No. 4:20-CR-00212**
**Page 034**

Even assuming that the Notice's general statement seeking forfeiture of unspecified substitute property is sufficient and that the Learjet is the underlying contraband, this argument still fails. There is no allegation that the Learjet has been transferred, conveyed, sold to, or deposited with a person other than the owner or interest holder. The Learjet is within the jurisdiction of the court. And there is clearly no way that an airplane can be comingled with other property. That leaves the question of whether the Learjet can be proceeds.

Article 59.01 of the Texas Code of Criminal Procedure states that in Chapter 59, proceeds includes

> income a person accused or convicted of a crime or the person's representative or assignee receives from:
>
> (A) a movie, book, magazine article, tape recording, phonographic record, radio or television presentation, telephone service, electronic media format, including an Internet website, or live entertainment in which the crime was reenacted; or
>
> (B) the sale of tangible property the value of which is increased by the notoriety gained from the conviction of an offense by the person accused or convicted of the crime.

Tex. Code Crim. Proc. Ann. art. 59.01(7). Looking at the other words defined in Article 59.01, it appears that this definition of proceeds is not meant to be an exhaustive list. However, both things proceeds includes must first be income. A plain reading of the statute leads to a logical conclusion that proceeds must be some type of income. The Notice never alleges that the Learjet is income.

Even assuming that proceeds need not be income, the argument that the Learjet is proceeds fails. In its post-hearing brief, the State admits that words not specifically defined by statute should be given a meaning that is consistent with the common understanding of the term. (Doc. #22, at 5). The State then cites to the fifth edition of Black's Law Dictionary, a long-outdated edition, to support its argument that "proceeds" includes that which results, proceeds or accrues from some

6

possession or transaction. (Doc. #22, at 5). However, the current edition of Black's Law Dictionary

defines proceeds as

> 1. The value of land, goods, or investments when converted into money; the amount of money received from a sale <the proceeds are subject to attachment>. 2. Something received upon selling, exchanging, collecting, or otherwise disposing of collateral. UCC § 9-102(a)(64). • Proceeds differ from other types of collateral because they constitute any collateral that has changed in form. For example, if a farmer borrows money and gives the creditor a security interest in the harvest, the harvested wheat is collateral. If the farmer then exchanges the harvest for a tractor, the tractor becomes the proceeds of the wheat.

*Proceeds*, BLACK'S LAW DICTIONARY (11th ed. 2019). As a preliminary matter, this definition

relates to proceeds in the context of secured transactions, not criminal forfeiture actions.

Regardless, to meet definition 1, the Learjet would have to be money, which it is not. Definition 2

would require the Learjet to be something received from disposing of some other collateral, which

the Notice does not allege. In other words, the Learjet cannot be both the proceeds and the

collateral that was disposed of, and the Notice references no other property that could be the

underlying collateral.

    If Black's Law Dictionary is not persuasive enough, both Garner's Modern American

Usage and Garner's Dictionary of Legal Usage defines proceeds as "the value of land, goods, or

investments when converted into money." *Proceeds*, GARNER'S DICTIONARY OF LEGAL USAGE

(3rd ed. 2011); *Proceeds*, GARNER'S MODERN AMERICAN USAGE (3rd ed. 2009). The Oxford

Advanced American Dictionary defines proceeds as "the money that you receive when you sell

something or organize a performance, etc.; profits." *Proceeds*, OXFORD ADVANCED AMERICAN

DICTIONARY,https://www.oxfordlearnersdictionaries.com/us/definition/american_english/procee

ds?q=proceeds (last visited Nov. 30, 2020). And the American Heritage Dictionary of the English

Language defines proceeds as "the amount of money derived from a commercial or fundraising

**Mercer-Erwin/Moffett Exhibit 1.d**
**Case No. 4:20-CR-00212**
**Page 036**

venture; the yield." *Proceeds*, AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE (11th ed. 2011).

In sum, it appears from the various dictionaries that the common understanding of proceeds requires it to be money. The Learjet obviously is not money. Even assuming that proceeds do not necessarily include only cash or money, proceeds at a minimum must be something obtained as a result of the sale or exchange of some other thing. Here, the Notice does not allege that the Learjet was bought with money obtained from the sale of something else or obtained as an exchange for some other good. Additionally, the State cites no case law or dictionary definition supporting its conclusion that the Learjet can qualify as proceeds. For all these reasons, the court concludes that the Learjet is not proceeds and therefore does not meet any of the definitions of substitute property laid out in Article 59.021. Thus, this ground for seizure and forfeiture must be dismissed as well.

## C. Suit for Proceeds

Lastly, in the Notice the State "in the alternative seeks a suit for proceeds and a judgment in the amount of proceeds that are contraband under [Article] 59.023 of the Code of Criminal Procedure." (Doc. #2, at 3). Article 59.023 states in pertinent part:

> A peace officer who identifies proceeds that are gained from the commission of an offense listed in Article 59.01(2)(A) or (B) shall provide the attorney representing the state with an affidavit that identifies the amount of the proceeds and that states probable cause that the proceeds are contraband subject to forfeiture. On receiving the affidavit, the attorney representing the state may file for a judgment in the amount of the proceeds in a district court in:
> (1) the county in which the proceeds were gained;
> (2) the county in which any owner or possessor of the property was prosecuted for an underlying offense for which the property is subject to forfeiture;
> (3) the county in which venue existed for prosecution of an underlying offense for which the property is subject to forfeiture;
> (4) the county in which the proceeds were seized; or
> (5) Travis County.

8

**Mercer-Erwin/Moffett Exhibit 1.d**
**Case No. 4:20-CR-00212**
**Page 037**

Tex. Code Crim. Proc. Ann. art. 59.023. The definition of proceeds in Article 59.023 is governed by Article 59.01 which is discussed above. As explained above, the Learjet is not proceeds. Moreover, the Notice was filed to specifically seize the Learjet and only the Learjet. It does not assert that it is seizing any money or income that is in any way associated with the Learjet. It also does not assert the amount of the proceeds. Therefore, because the Learjet itself cannot be proceeds, a suit for proceeds against it must fail.[3]

### IV.    CONCLUSION

Because the State cannot allege facts to meet the notice requirement of Chapter 59 of the Texas Code of Criminal Procedure, and because the Learjet cannot be proceeds, the State's claim that the Learjet is subject to seizure and forfeiture fails. The court therefore **GRANTS** Learjet's Motion to Dismiss (Doc. #6). This case is **DISMISSED** with prejudice. Accordingly, all remaining deadlines, trial settings, and pending motions are **TERMINATED**. This case is **CLOSED**, and this constitutes a final judgment for appeal purposes.

**SIGNED this 17th day of December, 2020.**

*Michael J. Truncale*

Michael J. Truncale
United States District Judge

---

[3] The State attempts to save itself by stating that the suit must proceed because the Notice provides the Learjet with fair notice and asserts that fair notice is all that is needed. However, the State discusses the Texas pleading standard. The federal pleading standard is what must be satisfied here. *See Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.,* 818 F.3d 193, 200 (5th Cir. 2016).

9

**Mercer-Erwin/Moffett Exhibit 1.d
Case No. 4:20-CR-00212
Page 038**

**Subject:**          BIS Detention Release N260RC

**From:** Jorge Garcia <jgarcia@mdtlaw.com>
**Date:** Monday, July 20, 2020 at 12:24 PM
**To:** Debbie Erwin <DM@agcorp.com>
**Subject:** FW: BIS Detention Release N260RC

Hi Debbie,

Enclosed is the release letter from Dept of Commerce, for your files.

_____

JORGE A. GARCIA
DIRECT DIAL: (210) 220-1335
EMAIL: JGARCIA@MDTLAW.COM



BANK OF AMERICA PLAZA, 25TH FLOOR
300 CONVENT STREET
SAN ANTONIO, TEXAS 78205

OUR NEW ADDRESS STARTING JULY 20, 2020:
112 E. PECAN, SUITE 1616
SAN ANTONIO, TEXAS 78205

TEL: (210) 227-7591
FAX: (210) 227-7924

WWW.MDTLAW.COM

**Confidentiality Notice:**   The information contained in this electronic mail transmission is confidential. It may also be subject to the attorney-client privilege or be privileged work product or proprietary information. This information is intended for the exclusive use of the person(s) whose name(s) is/are indicated above. If the reader of this notice is not the intended recipient, or the employee or agent responsible for delivering the same to the intended recipient, you are hereby notified that any use, dissemination, distribution or copying of this information is strictly prohibited, and that the contents hereof are strictly confidential. If you have received this information in error, you are prohibited from making a hard copy of same or from in any manner disseminating or using the information contained herein. Please contact Jorge A. Garcia at telephone number (210) 220-1335 or at e-mail address, jgarcia@mdtlaw.com to indicate your receipt of this transmission.

**Treasury Circular 230 Notice:**   Pursuant to Department of Treasury Circular 230, this electronic mail and any attachment hereto is not intended or written to be used, and may not be used by the recipient for the purpose of avoiding any Federal tax penalty which may be asserted.

**From:** Paul Mack <Paul.Mack@bis.doc.gov>
**Sent:** Monday, July 20, 2020 9:46 AM
**To:** Jorge Garcia <jgarcia@mdtlaw.com>

1

**Mercer-Erwin/Moffett Exhibit 1.d
Case No. 4:20-CR-00212
Page 039**

**Cc:** beau.price@co.polk.tx.us
**Subject:** BIS Detention Release N260RC

Mr. Garica:

The Bureau of Industry and Security (BIS), Office of Export Enforcement (OEE) released the detention on the 1993 LEARJET INC 31A, Serial number 080, U.S. Registration Number N260RC and located at Brownsville South Padre Island International Airport, 700 Amelia Earhart Dr, Brownsville, TX 78521 to the State of Texas. Please see attached release letter. CC'ed is CDR Price from the South East Texas Export Investigation Group (SETEIG).

Best Regards,

Paul MacK
Special Agent
Office of Export Enforcement, Houston
Bureau of Industry and Security
SIPR: PMACK@Commerce.sgov.gov
Desk: 281-372-7138
Cell: 202-734-9675

*"COMMERCE DEFIES EVERY WIND, OUTRIDES EVERY TEMPEST, AND INVADES EVERY ZONE."*

UNCLASSFIED (U)// FOR OFFICIAL USE ONLY (FOUO)// LAW ENFORCEMENT SENSITIVE (LES)//CONFIDENTIALITY NOTICE: This electronic transmission (and/or the accompanying documents) is from the Office of Export Enforcement and may contain personal information protected under the Privacy Act, 5 USC 552a. It is intended only to be read by the individual(s) to whom it is addressed or their designee. Do not release outside of US Government channels without prior authorization from the sender. If the reader of this message is not the intended recipient, you are on notice that any distribution of this message, in any form, is prohibited. Nothing in this message should be construed as expressing the opinion of the United States Government, the Office of Export Enforcement, the Bureau of Industry and Security or the United States Department of Commerce. If you have received this message in error, please immediately notify the sender by telephone at 281.372.7130 and delete or destroy any copy of this message. Any misuse or unauthorized disclosure may result in both civil and criminal penalties.

**Mercer-Erwin/Moffett Exhibit 1.d**
**Case No. 4:20-CR-00212**
**Page 040**



**UNITED STATES DEPARTMENT OF COMMERCE**
**Bureau of Industry and Security**
HOUSTON RESIDENT OFFICE
Office of Export Enforcement
15109 Heathrow Forest Pkwy, Suite 170
Houston, Texas 77032

17 July 2020

Camro Transportes S. A. DE C.V
Gomez Morin 900
San Pedro Garza
Garcia, Mexico
8442772330
N260RC@Hotmail.com

To whom it may concern:

The United States Department of Commerce is responsible for regulating the export of dual use goods and technology from the United States of America. The Office of Export Enforcement (OEE), Bureau of Industry and Security (BIS), U.S. Department of Commerce, is responsible for investigating allegations of, and violations of, the Export Administration Regulations (EAR), the Export Administration Act (EAA) and the International Emergency Economic Powers Act (IEEPA) and the Export Control Reform Act (ECRA).

In regards to detention letter dated 31 Jan 2020, this letter is to officially inform you that the shipment of one 1993 LEARJET INC 31A, Serial number 080, U.S. Registration Number N260RC and located at Brownsville South Padre Island International Airport, 700 Amelia Earhart Dr, Brownsville, TX 78521 is released on 17 July 2020 by OEE, Houston, Texas.

Your cooperation in this matter is appreciated. Questions may be directed to Special Agent Paul Mack at (281) 372-7138.

Respectfully,

Ron R. Kruger
Acting Resident Agent in Charge
Houston Resident Office

**Subject:**          RE: Aircraft for Release

**From:** Paul Mack <Paul.Mack@bis.doc.gov>
**Date:** Thursday, August 19, 2021 at 3:42 PM
**To:** Debbie Mercer <DM@agcorp.com>, Kayleigh Moffett <KM@agcorp.com>, Steve.Tochterman@faa.gov
<Steve.Tochterman@faa.gov>
**Subject:** FW: Aircraft for Release

Hi

Please process.

Thanks

Paul

**From:** Gonzalez, Ernest (USATXE) <Ernest.Gonzalez@usdoj.gov>
**Sent:** Thursday, August 19, 2021 3:40 PM
**To:** Paul Mack <Paul.Mack@bis.doc.gov>
**Subject:** Re: Aircraft for Release

EXTERNAL .GOV EMAIL: Do not click any links or open any attachments unless you trust the sender and know the
content is safe.

We concur.

Sent from my iPhone

On Aug 19, 2021, at 2:15 PM, Paul Mack <Paul.Mack@bis.doc.gov> wrote:

Do you concur?

N260RC –EEI on file
N51JK – No derog, EEI on file
N4422N – No derog, EEI on file
N713CT – No derog, EEI on file
N180AV – No derog, EEI on file
N868SG –Aircraft never entered the U.S.
N226KV – No derog, EEI on file
N38539 – No derog, exported prior to 2000.
N369GC –EEI on file

Best Regards,

**Mercer-Erwin/Moffett Exhibit 1.d
Case No. 4:20-CR-00212
Page 042**

Paul MacK
Special Agent
Office of Export Enforcement, Houston
Bureau of Industry and Security
SIPR: PMACK@Commerce.sgov.gov
Desk: 281-372-7138
Cell: 202-734-9675

*"COMMERCE DEFIES EVERY WIND, OUTRIDES EVERY TEMPEST, AND INVADES EVERY ZONE."*

UNCLASSFIED (U)// FOR OFFICIAL USE ONLY (FOUO)// LAW ENFORCEMENT SENSITIVE (LES)//CONFIDENTIALITY NOTICE: This electronic transmission (and/or the accompanying documents) is from the Office of Export Enforcement and may contain personal information protected under the Privacy Act, 5 USC 552a. It is intended only to be read by the individual(s) to whom it is addressed or their designee. Do not release outside of US Government channels without prior authorization from the sender. If the reader of this message is not the intended recipient, you are on notice that any distribution of this message, in any form, is prohibited. Nothing in this message should be construed as expressing the opinion of the United States Government, the Office of Export Enforcement, the Bureau of Industry and Security or the United States Department of Commerce. If you have received this message in error, please immediately notify the sender by telephone at 281.372.7130 and delete or destroy any copy of this message. Any misuse or unauthorized disclosure may result in both civil and criminal penalties.



# INSCRIPCIÓN EN EL R.F.C.

EL SERVICIO DE ADMINISTRACIÓN TRIBUTARIA, LE DA A CONOCER EL REGISTRO FEDERAL DE CONTRIBUYENTES, QUE LE HA SIDO ASIGNADO CON BASE EN LOS DATOS QUE PROPORCIONÓ, LOS CUALES HAN QUEDADO REGISTRADOS CONFORME A LO SIGUIENTE:

NOMBRE, DENOMINACIÓN O RAZÓN SOCIAL
CAMRO TRANSPORTES SA DE CV

DOMICILIO
ANTIGUA CARRETERA A MONCLOVA 300 GENERAL ESCOBEDO CENTRO GENERAL ESCOBEDO NUEVO LEÓN 66050

CLAVE DEL R.F.C          CTR090603DC1

ADMINISTRACIÓN LOCAL          ALR GUADALUPE, N.L.

ACTIVIDAD          Otro autotransporte foráneo de carga general

SITUACIÓN DE REGISTRO          **ACTIVO**

FECHA DE INSCRIPCIÓN    01-07-2009          FECHA DE INICIO DE OPERACIONES      03-06-2009

## OBLIGACIONES

| DESCRIPCIÓN | FECHA ALTA |
|---|---|
| Presentar la declaración y pago provisional mensual de retenciones de Impuesto Sobre la Renta (ISR) por sueldos y salarios. | 03-06-2009 |
| Presentar la declaración anual de Impuesto Sobre la Renta (ISR) donde se informa sobre los clientes y proveedores de bienes y servicios. | 03-06-2009 |
| Presentar la declaración anual de Impuesto Sobre la Renta (ISR) donde se informará sobre las retenciones efectuadas por pagos de rentas de bienes inmuebles. | 03-06-2009 |
| Presentar la declaración anual donde se informe sobre las relaciones de los trabajadores que realizaron sueldos y salarios y trabajadores asimilados a salarios. | 03-06-2009 |
| Presentar la declaración y pago provisional mensual de Impuesto Sobre la Renta (ISR) por las retenciones realizadas a los trabajadores asimilados a salarios. | 03-06-2009 |
| Proporcionar la información del Impuesto al Valor Agregado (IVA) que se solicite en las declaraciones del Impuesto Sobre la Renta (ISR) | 03-06-2009 |
| Presentar la declaración y pago provisional mensual de Impuesto Sobre la Renta (ISR) de personas morales del Régimen Simplificado. | 03-06-2009 |
| Presentar la declaración anual de Impuesto Sobre la Renta (ISR) de personas morales del Régimen Simplificado. | 03-06-2009 |
| Presentar la declaración mensual donde se informe sobre las operaciones con terceros para efectos del Impuesto al Valor Agregado (IVA). | 03-06-2009 |
| Presentar la declaración informativa anual de Subsidio para el empleo. | 03-06-2009 |
| Presentar la declaración y pago provisional del Impuesto Empresarial a Tasa Única (IETU). | 03-06-2009 |
| Presentar la declaración y pago mensual de retenciones de Impuesto al Valor Agregado (IVA). | 03-06-2009 |
| Presentar la declaración y pago provisional mensual de las retenciones de Impuesto Sobre la Renta (ISR) realizadas por el pago de rentas de bienes inmuebles. | 03-06-2009 |
| Presentar la declaración y pago definitivo mensual del Impuesto al Valor Agregado (IVA). | 03-06-2009 |

| TRÁMITES EFECTUADOS | FECHA DE PRESENTACIÓN | FOLIO DEL TRÁMITE |
|---|---|---|
| Reg. Federal Contribuyentes / Inscripción / Inscripción de Persona Moral | 23-06-2009 | MP2009162458I1 |

Fecha de Impresión: 07 de Julio de 2009
TELÉFONO DE ATENCIÓN CIUDADANA
(Quejas y Sugerencias) 01800-463-6728

HrXF8051ks80bZdQhitIVxNgL4mdoBXE2OqCtP2TexqECMvtHI8UUKAVFIsBlrwlvmdA5r7r4d2UuYG2+WvkUBQf4lyhuJulvS55385Vlmlv/ssUPPI3JKfjL82 WJTh4UEr10CfxA8mU47N8JTQrEsSDMKfTzA3VhS7ZOyMmg=

**Mercer-Erwin/Moffett Exhibit 1.d**
**Case No. 4:20-CR-00212**
**Page 044**

Within the cropped cédula (left side):

**CEDULA DE IDENTIFICACIÓN FISCAL**

CLAVE DE REG. FED. DE CONTRIBUYENTE
CTR090603DC1

NOMBRE, DENOMINACIÓN O RAZÓN SOCIAL
CAMRO TRANSPORTES SA DE CV

FOLIO
B3165461



REGISTRO PUBLICO DE LA PROPIEDAD Y DEL COMERCIO DEL ESTADO DE NUEVO LEON

## BOLETA DE INSCRIPCION

EL ACTO DESCRITO EN EL PRESENTE DOCUMENTO QUEDO INSCRITO EN EL:

FOLIO MERCANTIL ELECTRONICO No.     **115792 * 1**

Control Interno     Fecha de Prelación
  26     *  30 / JULIO     / 2009

RFC / No. de Serie:
NO CONSTA.-

Antecedentes Registrales:
PRIMERO

Denominación

**CAMRO TRANSPORTES, S.A. DE C.V.**

| Afectaciones al: | | | | Fecha Registro | Registro |
|---|---|---|---|---|---|
| Folio ID | Acto | Descripción | | | |
| ***** 1 | M4 | *Constitución de sociedad* | | 10-08-2009 | 1 |
| | | Caracteres de Autenticidad de Inscripción   2deb5f0397366914and3ba02e99547f634oa60d9 | | | |

Derechos de Inscripción

Fecha     **21 JUL 2009**

Importe     **$50,000.00**

Subsidio

Boleta de Pago No. :   **14077334**

Boleta de Pago No. :

EL C. REGISTRADOR DEL COMERCIO



LIC. CARLOS REYNALDO AYALA CALVO

REGISTRO PUBLICO DE LA PROPIEDAD Y DEL COMERCIO PRIMER DISTRITO MONTERREY, N. L.

**Mercer-Erwin/Moffett Exhibit 1.d**
**Case No. 4:20-CR-00212**
**Page 045**

# DIRECCIÓN GENERAL DE ASUNTOS JURÍDICOS
DIRECCIÓN DE PERMISOS ARTICULO 27 CONSTITUCIONAL
DELEGACION DE LA S.R.E.



PERMISO        1901301
EXPEDIENTE     20091901208
FOLIO          090204191012

De conformidad con lo dispuesto por los artículos 27, fracción I de la Constitución Política de los Estados Unidos Mexicanos, 28, fracción V de Ley Orgánica de la Administración Pública Federal, 15 de la Ley de Inversión Extranjera y 13, 14 y 18 del Reglamento de la Ley de Inversión Extranjera y del Registro Nacional de Inversiones Extranjeras, y en atención a la solicitud presentada por el (la) Sr(a). **LIZETTE ALEJANDRA CAMARILLO MONTEMAYOR**, con fundamento en lo dispuesto por el artículo 46 fracción I inciso a) del Reglamento Interior de la Secretaría de Relaciones Exteriores en vigor, se concede el permiso para constituir una **SA DE CV** bajo la siguiente denominación:

### CAMRO TRANSPORTES

Este permiso, quedará condicionado a que en los estatutos de la sociedad que se constituya, se inserte la cláusula de exclusión de extranjeros o el convenio previsto en la fracción I del Artículo 27 Constitucional, de conformidad con lo que establecen los artículos 15 de la Ley de Inversión Extranjera y 14 del Reglamento de la Ley de Inversión Extranjera y del Registro Nacional de Inversiones Extranjeras. Cabe señalar que el presente permiso se otorga sin perjuicio de lo dispuesto por el artículo 91 de la Ley de la Propiedad Industrial.

Este permiso quedará sin efectos si dentro de los noventa días hábiles siguientes a la fecha de otorgamiento del mismo, los interesados no acuden a otorgar ante fedatario público el instrumento correspondiente a la Constitución de que se trata, de conformidad con lo establecido por el artículo 17 del Reglamento de la Ley de Inversión Extranjera y del Registro Nacional de Inversiones Extranjeras.

Asimismo, el interesado deberá dar aviso del uso de la denominación que se autoriza mediante el presente permiso a la Secretaría de Relaciones Exteriores dentro de los seis meses siguientes a la expedición del mismo, de conformidad con lo dispuesto por el artículo 18 del Reglamento de la Ley de Inversión Extranjera y del Registro Nacional de Inversiones Extranjeras.

Monterrey, NL. a 04 de febrero de 2009

EL SUBDIRECTOR
POR AUSENCIA TEMPORAL DE LA SUBDELEGADA
CONFORME AL ARTÍCULO 56 DEL REGLAMENTO
INTERIOR DE LA SECRETARIA DE RELACIONES EXTERIORES



ING. MARIO TRUJILLO GUERRA

Mercer-Erwin/Moffett Exhibit 1.d
Case No. 4:20-CR-00212
Page 046

# SRE

SECRETARIA DE RELACIONES EXTERIORES

Consultas 782-41-44 Ext 4068
Quejas: SACTEL 91-800-703-64
Direcc. Constitucion Sociedad

090204191012

FECHA: 28 DE ENERO DEL 2009

Para uso exclusivo de S:

Folio: _____

### SOLICITUD DE PERMISO DE CONSTITUCIÓN DE SOCIEDADES
### (ARTICULO 15 DE LA LEY DE INVERSIÓN EXTRANJERA)

NOMBRE DEL SOLICITANTE:   **LIZETTE ALEJANDRA CAMARILLO MONTEMAYOR**

DOMICILIO: CALLE Y NÚMERO: **JOSE SANTOS CHOCANO No. 341,**
COLONIA:   **ANAHUAC.**
MUNICIPIO:   **SAN NICOLAS DE LOS GARZA, NUEVO LEON.**
CODIGO POSTAL:   **66450.**

PERSONAS AUTORIZADAS   **ROLANDO ROMAN MORENO.**

DENOMINACIÓN   **1.- CAMRO TRANSPORTES, S.A. DE C.V.**
SOLICITADA   **2.- ROCA TRANSPORTES, S.A. DE C.V.**
   **3.- ROCA SERVICIOS, S.A. DE C.V.**

REGIMEN JURÍDICO DE LA
PERSONA MORAL   **SOCIEDAD ANONIMA DE CAPITAL VARIABLE**

FIRMA

Toda solicitud deberá ser resuelta dentro de los 5 días hábiles siguientes a la fecha de su presentación. En caso contrario, el permiso solicitado se considerará otorgado, siendo aplicable lo establecido por el Artículo 16-A de la Ley de Inversión Extranjera.

La resolución recaída a esta solicitud únicamente será entregada al solicitante o a las personas autorizadas.

Llenar a máquina
Oficinas centrales: original y una copia
Delegaciones Estatales: Original y dos copias
Anexar. Original y copia de pago de derechos

Mercer-Erwin/Moffett Exhibit 1.d
Case No. 4:20-CR-00212
Page 047

# Constitución de Sociedad                    M-4

0. Antecedentes Registrales:
_____ ANTECE (A 80)_____ _____

Folio Mercantil Electrónico _FOLMER_NU_FOLMER_(N 8)    ___ FOLMER_IDEGEN(A 2)

1. Sociedad Mercantil    NU_TIPSOC (N 2)

- [X] (1)  Sociedad Anónima
- [ ] (2) Sociedad de Responsabilidad Limitada
- [ ] (3) Sociedad Cooperativa Limitada
- [ ] (4) Sociedad Cooperativa Suplementada
- [ ] (5) Sociedad de Producción Rural
- [ ] (6) Sociedad en Nombre Colectivo
- [ ] (7) Sociedad en Comandita Simple
- [ ] (8) Sociedad en Comandita por Acciones

Modalidad  [X] (N 1)  Capital variable

2. Por escritura No. **4737** Libro **58** Folio **011474**

3. De fecha  **03 de Junio del 2009**

4. Clave del Fedatario **NOTARIO PÚBLICO NUMERO 77      LIC. RAUL LOZANO MEDINA**

   Municipio **SAN NICOLAS DE LOS GARZA,** Estado **NUEVO LEON**

5. Se constituyó la Sociedad denominada **CAMRO TRANSPORTES, SOCIEDAD ANÓNIMA DE CAPITAL VARIABLE**

6. Con duración  de **99 años** y domicilio en  **ESCOBEDO, NUEVO LEON**

7. Objeto Social

---------- 1).- El establecimiento y la explotación del servicio público federal de carga general y la transportación de materiales y residuos peligrosos en las rutas o tramos de jurisdicción federal o local, autorizados mediante concesiones o permisos que para el efecto le otorga a la sociedad la Secretaría de Comunicaciones y Transportes y/o el Gobierno Federal o Local correspondiente o mediante las concesiones que la sociedad reciba en transferencia o en virtud de las concesiones o permisos que en goce le aporten sus propios socios, y autorice la autoridad competente.----------------------------------------------------------

---------- 2).- Compraventa, importación, exportación, distribución y transportación de todo tipo de maquinaria y sus respectivas refacciones. ----------------------------------------------------------------------------------

Mercer-Erwin/Moffett Exhibit 1.d
Case No. 4:20-CR-00212
Page 048

| CAMARILLO | MONTEMA YOR | RODOLFO JAVIER | CAMR6210077 Y7 | 198 | A-1 | $250.00 | $49,500.00 |
|---|---|---|---|---|---|---|---|
| CAMARILLO | MONTEMA YOR | LIZETTE ALEJANDRA | CAML750111B F4 | 1 | A-1 | $250.00 | $250.00 |
| CAMARILLO | MONTEMA YOR | LAURA CARMINA | CAML510506J G0 | 1 | A-1 | $250.00 | 250.00 |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

13. Cláusula de extranjería: RB_CLAUSULA (A 1)

☐ Cláusula de Admisión (A)

☒ Cláusula de Exclusión (B)

14. Administración a cargo de:

☐ Consejo de Administración integrado por:     CONADM (A 800)

☒ Administrador único     SR. RODOLFO JAVIER CAMARILLO MONTEMAYOR

☐ Gerente     GERENTE (A 100)

15. Con facultades para:-

1.- PODER GENERAL PARA PLEITOS Y COBRANZAS.
2.- PODER DE ADMINISTRACIÓN LABORAL.
3.- PODER PARA ADMINISTRAR LOS BIENES Y NEGOCIOS DE LA SOCIEDAD.
4.- PODER CAMBIARIO.
5.- PODER PARA EJERCER ACTOS DE DOMINIO.
6.- LLEVAR A CABO TODOS LOS ACTOS Y OPERACIONES PERTINENTES PARA CUMPLIR CON EL OBJETO DE LA SOCIEDAD.
7.- OTORGAR O DELEGAR PODERES GENERALES O ESPECIALES CON LAS FACULTADES QUE ESTIMEN CONVENIENTES ASI COMO REVOCAR LOS QUE ELLOS MISMOS HAYAN OTORGADO

16. Se designó Comisario o Consejo de Vigilancia a:
COMISARIO:- HERNAN FUENTES ZAMBRANO

17. Se nombró Apoderado(s) a     _APODER (A 400) _____

**Mercer-Erwin/Moffett Exhibit 1.d**
**Case No. 4:20-CR-00212**
**Page 049**

mil novecientos cincuenta y uno, con domicilio en Amayuca número (137) ciento treinta y siete, Colonia Valle Morelos, en Monterrey, Nuevo León, y de paso por este Municipio de San Nicolás de los Garza, Nuevo León; quien se identificó con credencial para votar número 160862272656 uno, seis, cero, ocho, seis, dos, dos, siete, dos, cinco, cinco, seis  y en la cual  aparece su fotografía.------------------------------------------------------------



NOTARIA PUBLICA No. 77
TITULAR
LIC. RAUL LOZANO MEDINA
SAN NICOLAS DE LOS GARZA, N.L. MEXICO
PRIMER DISTRITO REGISTRAL

LICENCIADO RAUL LOZANO MEDINA
NOTARIO PUBLICO NUMERO 77
LOMR641102-TT1

# GOBIERNO DEL ESTADO DE NUEVO LEON

GEN-620601-DTA

### RECIBO OFICIAL



**FOLIO**
**14077334**

**MUNICIPIO**
MONTERREY, N.L.

**CENTRO DE INGRESO:**
R. P. P.

**CAJA**
7505-1

**FECHA**
2009/07/21

*TRANS:* 17905

**NOMBRE:** CAMRO TRANSPORTES, SA CV
**DOMICILIO:**
**COLONIA:** C.P.
**MPIO:** NOT.P. 77   FOL.P 272958

R. F. C.
CUENTA  -000000-

**NO.PARTIDA:** 210-01   COMPRA-VENTA



VALOR OPERACION        50,000
HOJAS O LOTES          1
OFICIO O DECRETO
RECIBO SUBSIDIO

DERECHOS.- $        160.00
RECARGOS.- $          .00
SUBSIDIO.- $          .00

$        160.00

ELABORO  MUDG

13282498

** CIENTO SESENTA PESOS 00/100M.N.**

11407733401200907210000001600075051023200179051

## LIC. RAUL LOZANO MEDINA
NOTARIO PUBLICO No. 77
FRAY LUIS DE LEON 521, COL. ANAHUAC
TELS. 9352 2571, 8376 6208 Y 8376 6314
SAN NICOLAS DE LOS GARZA, N.L.

LIBRO (58) CINCUENTA Y OCHO,---FOLIO (011474) ONCE MIL CUATROCIENTOS SETENTA Y CUATRO.- ESCRITURA PUBLICA NUMERO (4737) CUATRO MIL SETECIENTOS TREINTA Y SIETE.------------------ EN SAN NICOLAS DE LOS GARZA, MUNICIPIO DEL ESTADO DE NUEVO LEON, a los (03) tres días del mes de Julio del (2009) dos mil nueve, Ante MI, LICENCIADO RAUL LOZANO MEDINA, Notario Público, Titular de la Notaría Pública número (77) setenta y siete, con ejercicio en el Primer Distrito Registral en el Estado de Nuevo León, comparecen los señores RODOLFO JAVIER CAMARILLO MONTEMAYOR, LIZETTE ALEJANDRA CAMARILLO MONTEMAYOR y LAURA CARMINA CAMARILLO MONTEMAYOR; y MANIFIESTAN: Que por medio de este Instrumento ocurren a formalizar y CONSTITUIR UNA SOCIEDAD ANONIMA DE CAPITAL VARIABLE, la cual se regirá por las disposiciones legales vigentes y por las siguientes:------------------------------------- C L A U S U L A S -----------------

--------- PRIMERA:- Los señores RODOLFO JAVIER CAMARILLO MONTEMAYOR, LIZETTE ALEJANDRA CAMARILLO MONTEMAYOR y LAURA CARMINA CAMARILLO MONTEMAYOR, en este acto y por medio de esta Escritura, constituyen una Sociedad Anónima de Capital Variable con apego a las leyes Mexicanas vigentes.------------

--------- SEGUNDA:- Que para este efecto se obtuvo de la Secretaría de Relaciones Exteriores el Permiso número (1901301) uno, nueve, cero, uno, tres, cero, uno, Expediente número (20091901208) dos, cero, cero, nueve, uno, nueve, cero, uno, dos, cero, ocho, Folio número (090204191012) cero, nueve, cero, dos, cero, cuatro, uno, nueve, uno, cero, uno, dos, de fecha (04) cuatro de febrero del (2009) dos mil nueve, mismo que en este acto me exhiben y agrego el apéndice de mi Protocolo con el mismo número de esta Escritura bajo la letra "A".---------------------

--------- TERCERA:- La Sociedad que se constituye se denominará "CAMRO TRANSPORTES", debiendo ser seguida esta denominación de las palabras "SOCIEDAD ANONIMA DE CAPITAL VARIABLE", o de las iniciales "S.A. DE C.V.".--------------------------------------------------------------

--------- CUARTA:- El Capital Social se integrará con una porción fija y otra variable. El Capital mínimo fijo será de $50,000.00 (CINCUENTA MIL PESOS 00/100 MONEDA NACIONAL), representado por (200) doscientas acciones, ordinarias, nominativas, con valor nominal de $260.00 (DOSCIENTOS CINCUENTA PESOS 00/100 MONEDA NACIONAL) cada una, totalmente suscritas y pagadas. El Capital variable no tiene límite y estará representado por acciones nominativas, cuyas características serán determinadas por la asamblea de accionistas que apruebe su emisión.-----------------------------------------------------------------------

--------- QUINTA:- La Sociedad se regirá en su funcionamiento por los Estatutos que a continuación se insertan y todo aquello que no esté previsto en ellos, por las disposiciones de la Ley General de Sociedades Mercantiles vigentes en este País y por las normas que le sean supletorias.-------------------------------------------

------------------------------------ E S T A T U T O S -----------------------------------
------------------------------------ CAPITULO PRIMERO -----------------------------------
--------------------- DENOMINACION, DOMICILIO, OBJETO, DURACION Y NACIONALIDAD.-----------------

--------- ARTICULO PRIMERO:- REGIMEN LEGAL.- La sociedad se regirá por los presentes Estatutos.- En el caso concreto que los presentes Estatutos no contemplen un caso específico, se aplicará la Ley General de Sociedades Mercantiles.------------------------------------------------------------

--------- ARTICULO SEGUNDO:- DENOMINACION.- La denominación de la Sociedad es "CAMRO TRANSPORTES" e Irá seguida siempre de las palabras "SOCIEDAD ANONIMA DE CAPITAL VARIABLE", o de su abreviatura "S.A. DE C.V.".-------------------------------------------------------------------

--------- ARTICULO TERCERO:- DOMICILIO.- El domicilio de la Sociedad estará localizado en Escobedo, Nuevo León, sin perjuicio de poder establecer agencias, sucursales o representaciones en cualquier otro lugar de la República Mexicana o del Extranjero y someterse a domicilios convencionales.-------------------------------

--------- ARTICULO CUARTO:- OBJETO SOCIAL.- El Objeto Social de la Sociedad comprenderá las siguientes actividades:------------------------------------------------------------------

--------- 1).- El establecimiento y la explotación del servicio público federal de carga general y la transportación de materiales y residuos peligrosos en las rutas o tramos de jurisdicción federal o local, autorizados mediante concesiones o permisos que para el efecto le otorga a la sociedad la Secretaría de Comunicaciones y Transportes y/o el Gobierno Federal o Local correspondiente o mediante las concesiones que la sociedad reciba en transferencia o en virtud de las concesiones o permisos que en goce le aporten sus propios socios, y autorice la autoridad competente.---

**Mercer-Erwin/Moffett Exhibit 1.d
Case No. 4:20-CR-00212
Page 052**

----------2).- Compraventa, importación, exportación, distribución y transportación de todo tipo de maquinaria y sus respectivas refacciones. ----------------------------------------------------------------------------------------------------------------

----------3).- Compraventa, importación, exportación, distribución y transportación de todo tipo de productos alimenticios en general. ---------------------------------------------------------------------------------------------------------------------

----------4).- Constituir o instalar terminales, bodegas y estaciones intermedias cuando la importancia del servicio así lo requiera. ----------------------------------------------------------------------------------------------------------------------------------

----------5).- La celebración de toda clase de contratos y convenios necesarios para la realización de su objeto social.--

----------6).- La compra, venta de bienes inmuebles o muebles necesarios o accesorios para el cumplimiento de su objeto social, así como la administración y arrendamiento o comodato de los mismos para los usos permitidos por la Ley.----------------------------------------------------------------------------------------------------------------------------------------------

----------7).- Contratar al personal técnico o profesional necesario para la ejecución, de las actividades y actos de la sociedad.----------------------------------------------------------------------------------------------------------------------------------------

----------8).- Aceptar, girar, endosar, avalar títulos de crédito, obtener préstamos y otorgar garantías en la solicitud de los créditos en el País o en el extranjero para el cumplimiento del objeto social.-----------------------------------------------------

--  ----9).- Adquirir otras sociedades o participar en el capital de otras sociedades o asociarse con personas físicas o morales para realizar uno o varios negocios.-------------------------------------------------------------------------------------------------

----------10).- Adquirir, registrar, usar, explorar y disponer, como licenciante o licenciataria, de toda clase de patentes certificados de investigación, marcas, nombres comerciales, derechos de autor y en general con cualquier derecho o privilegio en materia de propiedad industrial.----------------------------------------------------------------------------------------------

----------11).- En general, el ejercicio del comercio y la realización de actos mercantiles, civiles y distintos que se relacionen con los objetos anteriores en todas sus formas lícitas.------------------------------------------------------------------------

----------ARTICULO QUINTO:- DURACION.- La duración de la Sociedad será de (99) noventa y nueve años, contados a partir de la fecha de constitución de esta Sociedad. --------------------------------------------------------------------

----------ARTICULO SEXTO:- NACIONALIDAD. CLAUSULA DE EXCLUSION DE EXTRANJEROS.----------------------

----------La Sociedad es de NACIONALIDAD MEXICANA, "Ninguna persona extranjera física o moral, podrá tener participación social alguna o ser propietaria de acciones de la Sociedad. Si por algún motivo, alguna de las personas mencionadas anteriormente, por cualquier evento llegare a adquirir participación social o a ser propietaria de una o más acciones, contraviniendo lo establecido en el párrafo que antecede, se conviene desde ahora en que dicha adquisición será nula y, por tanto, cancelada y sin ningún valor la participación social de que se trate y los títulos que la representen, teniéndose reducido el capital social en una cantidad igual al valor de la participación cancelada".-------

------------------------------------------------- CAPITULO SEGUNDO --------------------------------------------------------

------------------------------------------- CAPITAL SOCIAL Y ACCIONES ------------------------------------------------------

----------- ARTICULO SEPTIMO:- CAPITAL.- El Capital Social se integra con una porción fija y otra variable. El Capital mínimo fijo es de $50,000.00 (CINCUENTA MIL PESOS 00/100 MONEDA NACIONAL), representado por (200) doscientas cien acciones, ordinarias, nominativas, con valor nominal de $250.00 (DOSCIENTOS CINCUENTA PESOS 00/100 MONEDA NACIONAL) cada una, totalmente suscritas y pagadas. El Capital variable no tiene límite y estará representado por acciones nominativas, cuyas características serán determinadas por la asamblea de accionistas que apruebe su emisión. Las acciones representativas del capital fijo de la sociedad serán de la serie "A-1"; las acciones representativas del capital variable serán de la serie "A-2", o según lo determine la asamblea correspondiente.-------------------------------------------------------------------------------------------------------------------------------

----------ARTICULO OCTAVO:- TITULOS DE ACCIONES.- Los títulos que representen las acciones de la Sociedad deberán contener en su texto los requisitos establecidos en el Artículo (125) ciento veinticinco de la Ley General de Sociedades Mercantiles, podrán amparar, una o varias acciones, y serán firmadas por el Administrador Único o por dos miembros del Consejo de Administración. Asimismo los títulos deberán llevar impreso el Artículo Sexto de estos Estatutos, así como también deberán constar la fecha en que deberán pagarse las exhibiciones y el monto de éstas.-----------------------------------------------------------------------------------------------------------------------------------------

-- 2 -

## LIC. RAUL LOZANO MEDINA
### NOTARIO PUBLICO No. 77
FRAY LUIS DE LEON 621, COL. ANAHUAC
TELS. 8362 2571, 8376 6200 Y 8376 6314
SAN NICOLAS DE LOS GARZA, N.L.

-------- ARTICULO NOVENO: REGISTRO DE ACCIONES.- La Sociedad llevará un libro de registro de acciones que indicará el nombre, nacionalidad y domicilio de los accionistas, indicando las acciones que les pertenezcan, con sus particulares. Así mismo en dicho libro se harán constar las exhibiciones que los accionistas efectúen y las transmisiones que de sus títulos hicieren.------------------------------------------------------------------------------------

-------- ARTICULO DECIMO: AUMENTOS Y DISMINUCIONES DE CAPITAL.- El Capital Social podrá ser aumentado o disminuido por resolución de Asamblea Extraordinaria de Accionistas, salvo el caso de incremento o disminución en la parte variable del Capital Social mismo que podrá realizarse mediante Asamblea Ordinaria de accionistas o por el Consejo de Administración.------------------------------------------------------------------------------------

-------- En caso de aumento de Capital, los accionistas tendrán derecho de preferencia para suscribir el aumento, en proporción al número de acciones de que sean propietarios debiendo ejercer su derecho dentro de un plazo de quince días hábiles siguientes a la fecha de notificación que se realice de acuerdo al artículo (132) ciento treinta y dos  de la Ley General de Sociedades; sin embargo, si al momento de votación en la Asamblea se encuentra representada la totalidad del Capital Social, dicho plazo de quince días hábiles empezará a correr a partir de la fecha de la Asamblea y los accionistas se considerarán notificados del acuerdo respectivo en ese momento.-----------------------------------

----------------------------------------CAPITULO TERCERO:----------------------------------------

----------------------------A D M I N I S T R A C I O N----------------------------

-------- ARTICULO DECIMO PRIMERO:- ADMINISTRACION DE LA SOCIEDAD.- La Administración de la Sociedad estará a cargo de un Administrador Único o de un Consejo de Administración, compuesto de (2) dos o más miembros, o según lo determine la Asamblea Ordinaria de Accionistas. Si la asamblea lo estima necesario, podrá nombrar Administrador o Consejeros Suplentes.------------------------------------------------------------------------------------

-------- El Administrador Único o Consejo de Administración, ya sean propietarios o suplentes, podrán ser o no accionistas de la Sociedad y continuarán en funciones hasta que las personas designadas para sustituirlas tomen posesión de sus cargos, podrán ser reelectos y recibirán las remuneraciones que determine la Asamblea Ordinaria de Accionistas. El Administrador Único o Consejo de Administración podrán ser removidos en cualquier tiempo por la Asamblea Ordinaria de Accionistas.------------------------------------------------------------------------------------

-------- ARTICULO DECIMO SEGUNDO:- SESIONES DE CONSEJO.- El Consejo de Administración, celebrará sus sesiones en el domicilio social o en cualquier otro lugar de la República Mexicana o del extranjero. Para que las sesiones sean declaradas legalmente instaladas se requerirá de la comparecencia de cuando menos la mayoría de sus miembros y sus resoluciones serán válidas cuando se adopten cuando menos por el (50%) cincuenta  por  ciento de los Consejeros totales. En caso de empate, el Presidente del Consejo decidirá con voto de calidad, adicional a su voto normal. De cada sesión se levantará un acta que será firmada por el Presidente y el Secretario y será asentada en el Libro que al efecto se lleve. Si el Presidente no asiste a la sesión, ésta será presidida por el Consejero que siga en orden de jerarquía y en su defecto, por el Consejero que se designe por mayoría de votos.-----------------------------

-------- ARTICULO DECIMO TERCERO:- RESOLUCIONES DEL CONSEJO DE ADMINISTRACION POR UNANIMIDAD DE SUS MIEMBROS.- Cualquier tipo de resolución que requiera de la intervención del Consejo de Administración, podrá llevarse a cabo sin la necesidad de una Junta de Consejo, siempre y cuando todos los Consejeros formalicen por escrito y en forma unánime la resolución a que han llegado. Siempre que exista la necesidad de notificar en forma previa para la reunión de los Consejeros, en los términos de los Estatutos o de la Ley General de Sociedades Mercantiles, se entenderá que los Consejeros renuncian a la necesidad de quedar notificados de la convocatoria si manifiestan por escrito, antes o después de formalizar su acuerdo por escrito, lo cual equivaldrá a que dichos Consejeros fueron debidamente convocados para la toma de decisiones a nombre del Consejo de Administración.------------------------------------------------------------------------------------

-------- ARTICULO DECIMO CUARTO:- DERECHO DE LAS MINORÍAS.- Cualquier accionista o grupo de accionistas que representen cuando menos el (25%) veinticinco por ciento del Capital Social, tendrán derecho a designar cuando menos un Consejero de Administración, en caso de que dicho órgano esté compuesto de al menos tres miembros.-----

3

----------ARTICULO DECIMO QUINTO:- FACULTADES DE LOS ADMINISTRADORES.- El Administrador Único o el Consejo de Administración, será el Representante Legal de la Sociedad y tendrá en consecuencia toda clase de facultades que en forma enunciativa mas no limitativa a continuación se mencionan:--------------------------------------------

----------1) PODER GENERAL PARA PLEITOS Y COBRANZAS, para representar a la Sociedad ante toda clase de Autoridades privadas o públicas, de los Municipios, de los Estados, del Distrito Federal o de la Federación, así como ante Autoridades del Trabajo o de cualquier otra índole, o ante árbitros con el Poder más amplio para Pleitos y Cobranzas, incluyendo las facultades que requieran Cláusula Especial conforme a la Ley, en los términos del artículo (2448) dos mil cuatrocientos cuarenta y ocho y (2481) dos mil cuatrocientos ochenta y uno del Código Civil del Estado de Nuevo León y del primer párrafo del Artículo (2554) dos mil quinientos cincuenta y cuatro  y el Artículo (2587) dos mil quinientos ochenta y siete del Código Civil Federal, y de sus correlativos de los Códigos Civiles de los Estados de la República Mexicana, quedando en forma enunciativa más no limitativa, facultados para promover y desistirse del Juicio de Amparo, absolver y articular posiciones, intentar y proseguir todo tipo de juicios, incidentes y recursos, ordinarios y extraordinarios, recusar con o sin causa, comparecer a posturas y remates, pudiendo efectuar las pujas necesarias y adjudicarse todo tipo de bienes de la Poderdante, consentir sentencias, otorgar fianzas, transigir y comprometer en árbitros, renunciar al fuero domiciliario y presentar y ratificar denuncias, acusaciones o querellas ante Autoridades Penales, Estatales o Federales, pudiendo constituir a la Sociedad en parte civil coadyuvante del Ministerio Público en proceso de esa índole y otorgar pardones.----------------------------------------------------------------

----------2) PODER DE ADMINISTRACION LABORAL, para representar a la Sociedad en toda clase de procedimientos laborales que sigan en su contra y promovidos por ella, ante juntas de conciliación y arbitraje o tribunales laborales, sean estos Estatales o Federales, con todas las facultades necesarias para realizar tales actos, sin limitación alguna dentro de dichos procedimientos incluyendo la de absolver o articular posiciones, presentar y formular demandas, toda clase de excepciones y contrademandas, efectuar réplicas y duplicas; ofrecer toda clase de pruebas, tales como documentales, testimoniales, periciales, presuncionales, confesionales y de cualquier otra índole sin limitación alguna, en los juicios y procedimientos laborales teniendo las representaciones legales a que se refieren los artículos (692) seiscientos noventa y dos, fracción (II) segunda y (III) tercera, (694) seiscientos noventa y cuatro, (695) seiscientos noventa y cinco, (786) setecientos ochenta y seis, (876) ochocientos setenta y seis  fracción (I) primera y (VI) sexta, (899) ochocientos noventa y nueve, en lo aplicable, con las normas de los Capítulos (III) Tercero y (XVII) décimo séptimo del título (XIV) catorce, todos de la Ley Federal del Trabajo en vigor, con las atribuciones, obligaciones y derechos que en materia de personalidad se refieren dichos dispositivos legales, en consecuencia el representante legal, en representación de la Sociedad podrá comparecer a Juicio Laboral, con todas las atribuciones y facultades que se mencionan y además en nombre de la empresa, absolver posiciones, transigir o convenir con la parte actora, obligándose la poderdante a lo convenido; podrá concurrir en representación de la Sociedad a la audiencia de conciliación, demandas, excepciones y ofrecimientos y admisión de pruebas con las atribuciones más amplias ratificando el poderdante todo lo que haga en la audiencia.----------------------------------------

----------3) PODER GENERAL PARA ADMINISTRAR LOS BIENES Y NEGOCIOS DE LA SOCIEDAD, con poder general para Actos de Administración con toda clase de facultades administrativas, en los términos del segundo párrafo del artículo (2448) dos mil cuatrocientos cuarenta y ocho del Código Civil vigente en el Estado de Nuevo León y del artículo (2554) dos mil quinientos cincuenta y cuatro  del Código Civil Federal, y de sus correlativos de los Códigos Civiles de los Estados de la República Mexicana.----------------------------------------------

----------4) PODER CAMBIARIO, para suscribir, endosar, aceptar, avalar y por cualquier otro concepto firmar toda clase de títulos, contratos y operaciones de crédito, con o sin garantía real o personal, en los términos del artículo (9o.) noveno de la Ley General de Títulos y Operaciones de Crédito. Pudiendo además abrir y cancelar cuentas bancarias a nombre de la Sociedad, con facultades para designar y autorizar personas que giren a cargo de las mismas.--------------

----------5) PODER GENERAL PARA EJERCER ACTOS DE DOMINIO, respecto de todos los bienes muebles, inmuebles y derechos de la Sociedad, en calidad de dueño, en los términos del tercer párrafo del artículo (2448) dos mil cuatrocientos cuarenta y ocho del Código Civil vigente en el Estado de Nuevo León y del artículo (2554) dos mil

4

Mercer-Erwin/Moffett Exhibit 1.d
Case No. 4:20-CR-00212
Page 055

**LIC. RAUL LOZANO MEDINA**
NOTARIO PUBLICO No.77
FRAY LUIS DE LEON 621, COL. ANAHUAC
TELS. 8352 2571, 8376 5208 Y 8376 8314
SAN NICOLAS DE LOS GARZA, N.L.

NOTARIA PUBLICA No. 77
TITULAR
LIC. RAUL LOZANO MEDINA
PRIMER DISTRITO REGISTRAL

----- cientos cincuenta y cuatro del Código Civil Federal, y de sus correlativos de los Códigos Civiles de los Estados de la República Mexicana.----------------------------------------------------------

----- B) Llevar a cabo todos los actos y operaciones pertinentes para cumplir con el objeto de la Sociedad.-----

----- C) Otorgar o delegar poderes generales o especiales con las facultades que se estimen convenientes así como revocar los que ellos mismos hayan otorgado.---------------------------------------------------------

----- ARTICULO DECIMO SEXTO:- RESPONSABILIDAD SOLIDARIA.- De conformidad con el artículo (158) ciento cincuenta y ocho de la Ley General de Sociedades Mercantiles, el Administrador o Administradores son solidariamente responsables para con la sociedad:----------------------------------------------------------

----- a) De la entrega de las aportaciones hechas por los Socios.---------------------------------------

----- b) Del cumplimiento de los requisitos legales y estatutarios establecidos con respecto a los dividendos que se paguen a los Accionistas.---------------------------------------------------------------

----- c) De la existencia y mantenimiento de los sistemas de contabilidad, control, registro, archivo o información que previene la Ley.---------------------------------------------------------------

----- d) Del exacto cumplimiento de los acuerdos de las Asambleas de Accionistas.-----------------------

----- ARTICULO DECIMO SEPTIMO:- FACULTADES DEL PRESIDENTE DEL CONSEJO DE ADMINISTRACION.- En caso de Consejo de Administración, el Presidente del Consejo de Administración será el Representante Legal del Propio Consejo y el ejecutor de sus resoluciones. Por el solo hecho de su nombramiento, el Presidente del Consejo de Administración tendrá respecto de la Sociedad, toda clase de facultades de administración y para pleitos y cobranzas, ya sean generales o especiales, aún las que conforme a la Ley requieran cláusula especial en los términos de los primeros párrafos del Artículo (2554) dos mil quinientos cincuenta y cuatro y del artículo (2587) dos mil quinientos ochenta y siete del Código Civil Federal y sus correlativos de los Códigos civiles de los Estados de la República Mexicana, y para desistirse de procedimientos judiciales aún de Juicio de Amparo. El Presidente no gozará de facultades de sustitución.--------------------------------------------

----- ARTICULO DECIMO OCTAVO:- ADMINISTRACION DIRECTA.- La Administración Directa de la Sociedad podrá estar a cargo de uno o más Directores, Gerentes o Ejecutivos nombrados por el Administrador Único o Consejo de Administración en su caso, o por la Asamblea Ordinaria de Accionistas, los que podrán ser o no accionistas, y tendrán facultades y obligaciones que el propio Administrador Único, Consejo de Administración o la Asamblea les señalen al hacer sus nombramientos y otorgarles los poderes necesarios. Dichos Funcionarios estarán en su cargo hasta que se les revoque sus nombramientos.-----------------------------------------------------

----- ARTICULO DECIMO NOVENO:- GARANTIAS.- De acuerdo con lo dispuesto por los Artículos (152) ciento cincuenta y dos y (153) ciento cincuenta y tres de la Ley General de Sociedades Mercantiles, los miembros del Consejo de Administración, directivos, gerentes y ejecutivos de la sociedad no están obligados a otorgar ninguna garantía o fianza para garantizar el cumplimiento de sus obligaciones, a menos que el órgano que los designe determine lo contrario.-----------------------------------------------------------

----------------------------- CAPITULO CUARTO -----------------------------
----------------------------- V I G I L A N C I A -----------------------------

----- ARTICULO VIGESIMO: VIGILANCIA.- La Vigilancia de la Sociedad estará a cargo de uno o más Comisarios designados por la Asamblea Ordinaria de Accionistas. En el caso de que se nombren tres o más Comisarios, la minoría de accionistas que represente al menos un (25%) veinticinco por ciento del Capital Social tendrá derecho a nombrar uno.-------------------------------------------------------------

----- ARTICULO VIGESIMO PRIMERO:- NUEVOS COMISARIOS.- Los Comisarios podrán ser o no Accionistas de la Sociedad, estarán en funciones hasta que sean removidos por la Asamblea Ordinaria de Accionistas y podrán ser reelectos, continuando en ejercicio de sus cargos hasta que tomen posesión las personas designadas para sustituirlos.-----------------------------------------------------------

----- ARTICULO VIGESIMO SEGUNDO:- IMPEDIMENTOS PARA SER COMISARIOS.- No podrán ser Comisarios:-----------------------------------------------------------

5

----------a) Los que conforme a la Ley estén inhabilitados para ejercer el comercio, los empleados de la Sociedad, los empleados de aquellas Sociedades que sean accionistas de esta sociedad por más de un (25%) veinticinco por ciento del Capital Social, ni los empleados de aquellas Sociedades de las que ésta sea accionista en más de un (60%) cincuenta por ciento.----------

----------b) Los parientes consanguíneos de los Administradores en línea recta sin limitación de grado, los colaterales dentro del cuarto grado y los afines dentro del segundo.----------

----------ARTICULO VIGESIMO TERCERO:- FACULTADES Y OBLIGACIONES.- Son facultades y obligaciones de los Comisarios:----------

----------a) Cerciorarse de la constitución y permanencia de la garantía a que se refiere el Artículo Décimo Noveno de estos Estatutos, dando cuenta sin demora de cualquier irregularidad a la Asamblea General de Accionistas.----------

----------b) Exigir a los Administradores una información mensual que incluya por lo menos un Estado de Situación Financiera y un Estado de Resultados.----------

----------c) Realizar un examen de las operaciones, declaraciones, documentación, registro y demás evidencias comprobatorias, en el grado y extensión que sean necesarios para efectuar la vigilancia de las operaciones que la Ley les impone y para poder rendir el dictamen que menciona el siguiente inciso.----------

----------d) Rendir anualmente a la Asamblea General de Accionistas un informe respecto a la veracidad, suficiencia y razonabilidad de la documentación presentada por los Administradores a la propia Asamblea de Accionistas.----------

----------Este informe deberá incluir por lo menos:----------

---------- La opinión del Comisario sobre si las políticas y criterios contables y de información seguidos por la Sociedad son adecuados y suficientes tomando en consideración las circunstancias de la Sociedad.----------

---------- La opinión del Comisario sobre si esas políticas y criterios han sido aplicados consistentemente en la información presentada por los Administradores.----------

---------- La opinión del Comisario sobre si como consecuencia de lo anterior, la información presentada por los administradores refleja en forma veraz y suficiente la Situación Financiera y los Resultados de la Sociedad.----------

----------e) Hacer que inserten en el orden del día de las sesiones del Consejo de Administración y de las Asambleas de Accionistas, los puntos que crean pertinentes.----------

----------f) Convocar a las Asambleas Ordinarias y Extraordinarias de Accionistas, en caso de omisión de los Administradores y en cualquier otro caso que lo juzguen conveniente.----------

----------g) Asistir con voz, pero sin voto a las Asambleas de Accionistas.----------

----------h) En general, vigilar ilimitadamente y en cualquier tiempo las operaciones de la Sociedad.----------

----------ARTICULO VIGESIMO CUARTO:- GARANTIAS.- Los Comisarios podrán otorgar garantía si así lo exige la Asamblea de Accionistas que los designe y no podrán retirarla hasta que la Asamblea apruebe su gestión.----------

---------------------------------------- CAPITULO QUINTO -----------------------------------------

---------------------------------------- ASAMBLEA DE ACCIONISTAS -----------------------------------------

----------ARTICULO VIGESIMO QUINTO:- ASAMBLEAS GENERALES DE ACCIONISTAS.- La Asamblea General de Accionistas legalmente instalada es el Órgano Supremo de la Sociedad y sus decisiones obligan aún a los ausentes y disidentes, salvo derecho de oposición a que se refiere el artículo (201) doscientos uno de la Ley General de Sociedades Mercantiles.----------

----------ARTICULO VIGESIMO SEXTO:- CLASE DE ASAMBLEAS.- Las Asambleas Generales de Accionistas serán Ordinarias y Extraordinarias.- Todas serán Ordinarias incluyendo las de incremento y disminución de la parte variable del Capital Social, salvo las que se reúnen para tratar cualquier asunto de los comprendidos en el Artículo (182) ciento ochenta y dos de la Ley General de Sociedades Mercantiles, las cuales serán Extraordinarias. Las Asambleas de Accionistas que traten el incremento y la disminución del Capital Variable de la Sociedad tendrán el carácter de Asambleas Ordinarias.----------

----------ARTICULO VIGESIMO SEPTIMO:- ASAMBLEA ANUAL.- Las Asambleas Ordinarias se reunirán por lo menos una vez al año dentro de los cuatro meses siguientes a la cláusula del ejercicio social y se ocuparán, además de los asuntos incluidos en la orden del día, de los siguientes:----------

6

## LIC. RAUL LOZANO MEDINA
### NOTARIO PUBLICO No. 77
FRAY LUIS DE LEON 621, COL. ANAHUAC
TELS. 8352 2571, 8376 6200 Y 8376 6314
SAN NICOLAS DE LOS GARZA, N.L.

NOTARIA PUBLICA No. 77
TITULAR
LIC. RAUL LOZANO MEDINA
PRIMER DISTRITO REGISTRAL

------- Distinguir, aprobar o modificar el Informe de los Administradores a que se refiere el Artículo Trigésimo Sexto de los Estatutos, tomando en cuenta el Informe de los Comisarios, además de adoptar las medidas que los accionistas juzguen apropiadas.----------------------------------------------------------------

------- Nombrar y/o remover al Administrador Único o a los miembros del Consejo de Administración y a los Comisarios.----------------------------------------------------------------

------- Determinar los emolumentos correspondientes al Administrador Único o a los Administradores y Comisarios.----------------------------------------------------------------

------- ARTICULO VIGESIMO OCTAVO:- CONVOCATORIA.- La Convocatoria para las Asambleas Generales de Accionistas deberá hacerse por el Administrador Único o Consejo de Administración o por los Comisarios, sin embargo, los accionistas que representen por lo menos un (33%) treinta y tres por ciento del Capital Social, podrán pedir por escrito en cualquier tiempo al Administrador Único o Consejo de Administración, o a los Comisarios, que convoquen a una Asamblea General de Accionistas para tratar los asuntos que indiquen en su petición. El mismo derecho tendrán el Titular de una acción en los casos a que se refiere el artículo (185) ciento ochenta y cinco de la Ley General de Sociedades Mercantiles. Si el Administrador Único o Consejo de Administración, o los Comisarios no hacen convocatoria dentro de los (15) quince días siguientes a la fecha de la solicitud, la hará un Juez de lo Civil o de Distrito del domicilio de la Sociedad, a pedimento de los interesados, quienes al efecto deberán acreditar su calidad de accionistas.----------------------------------------------------------------

------- La Convocatoria para las Asambleas deberá hacerse mediante una Publicación en el Periódico "El Norte" del domicilio de la Sociedad o en caso de no existir éste, en el Periódico Oficial del Estado o en uno de los Periódicos de mayor circulación de dicho domicilio, por lo menos con una anticipación de (15) quince días hábiles a la fecha de la Asamblea.----------------------------------------------------------------

------- ARTICULO VIGESIMO NOVENO:- ASAMBLEAS TOTALITARIAS.- Podrá celebrarse una Asamblea sin el requisito de la publicación de la convocatoria y serán válidas las resoluciones que en ella se adopten, en los siguientes casos:----------------------------------------------------------------

------- a) Cuando desde el inicio hasta la terminación de la Asamblea esté representada la totalidad del Capital Social, y----------------------------------------------------------------

------- b) Cuando se reúna una Asamblea como continuación de otra anterior y en ella se hayan señalado día y hora de continuarla, siempre y cuando no se traten mas asuntos que los indicados en la primera convocatoria.----------------------

------- ARTICULO TRIGESIMO:- REPRESENTACION.- Los Accionistas tendrán derecho a hacerse representar en la Asamblea por la persona o personas que designen, mediante simple carta poder, firmada por dos testigos. Los Accionistas no podrán ser representados por el Administrador Único o ninguno de los Administradores o Comisarios.---

------- ARTICULO TRIGESIMO PRIMERO:- ACTAS DE ASAMBLEAS.- Las Actas de las Asambleas se asentarán en el libro respectivo y serán firmadas por el Presidente y el Secretario de la Asamblea así como el o los Comisarios si asistieren.----------------------------------------------------------------

------- ARTICULO TRIGESIMO SEGUNDO:- PRESIDENTE Y SECRETARIO DE LAS ASAMBLEAS.- Las Asambleas deberán estar presididas por el Administrador Único o por el Presidente del Consejo de Administración o en su caso, por la persona que elija la mayoría de votos de los presentes. El Secretario de la Asamblea será designado por la mayoría de los accionistas presentes.----------------------------------------------------------------

------- ARTICULO TRIGESIMO TERCERO:- RESOLUCIONES ADOPTADAS POR ASAMBLEAS ORDINARIAS.- Para una Asamblea Ordinaria de accionistas que se celebre en virtud de primera convocatoria sea válida, será necesario que en ella esté representado por lo menos el (60%) cincuenta por ciento del Capital Social y las resoluciones serán válidas cuando se tomen por el voto favorable de la mayoría de las acciones representadas en la Asamblea.----------------------------------------------------------------

------- ARTICULO TRIGESIMO CUARTO:- RESOLUCIONES ADOPTADAS POR ASAMBLEAS EXTRAORDINARIAS.- Para que las Asambleas Extraordinarias reunidas en virtud de primera convocatoria sean válidas será necesario que en ella esté representado por lo menos el (75%) setenta y cinco por ciento del capital social

7

Mercer-Erwin/Moffett Exhibit 1.d
Case No. 4:20-CR-00212
Page 058

y que las resoluciones se tomen por el voto favorable de  las  acciones  que  representen  por  lo menos  la mayoría de las acciones representativas del capital social.----------------------------------------------------------------

----------ARTICULO TRIGESIMO QUINTO:- SEGUNDA CONVOCATORIA.- Si las Asambleas no pudieran reunirse en la fecha señalada en la primera convocatoria, se repetirá la convocatoria y las asambleas decidirán sobre los puntos contenidos en el orden del día establecido para la primera convocatoria. Entre la fecha de celebración de la asamblea en primera y segunda convocatoria no podrá haber un lapso de tiempo menor de (8) ocho días naturales. Las asambleas ordinarias en segunda convocatoria serán válidas con cualquier número de acciones representativas del capital social que se encuentren presentes y sus acuerdos serán válidos si se toman por la mayoría de las acciones presentes. Para que las asambleas extraordinarias reunidas en segunda convocatoria sean válidas, será necesario que en ellas esté representado al menos el (50%) cincuenta por ciento del capital social y para que las resoluciones sean válidas se requiere que se tomen por el voto favorable de las acciones que representen por lo menos el (50%) cincuenta por ciento del capital social.----------------------------------------------------------------

----------ARTICULO TRIGESIMO SEXTO:- RESOLUCIONES DE ASAMBLEA GENERAL DE ACCIONISTAS POR CONSENTIMIENTO UNANIME.- Cualquier tipo de resolución que sea necesaria o que se tenga que tomar en asambleas generales de accionistas ordinarias o extraordinarias, podrá ser tomada sin que sea necesario que se convoque a asamblea y será válida, siempre y cuando todos los accionistas formalicen por escrito y en forma unánime la resolución a que han llegado, debiendo ser firmada por los accionistas con derecho al voto con respecto a dicho asunto, de acuerdo con lo preceptuado por el Artículo (178) ciento setenta y ocho de la Ley General de Sociedades Mercantiles.----------------------------------------------------------------

------------------------------------- CAPITULO SEXTO ----------------------------------------

------------------------------------- INFORMACION FINANCIERA ----------------------------------------

----------ARTICULO TRIGESIMO SEPTIMO.- La Sociedad por conducto y bajo la responsabilidad de su Administrador Único o sus Administradores presentará a la Asamblea de Accionistas, un informe anual que incluirá por lo menos:----

----------a) Información sobre la marcha de la Sociedad en el ejercicio, así como sobre las políticas seguidas por el Administrador Único o Administradores y en su caso, sobre los principales proyectos existentes.----------------------

----------b) Información sobre las principales políticas y criterios contables y de información seguidos en la preparación de los Estados financieros.----------------------------------------------------------------

----------c) Un Estado que muestre la Situación Financiera de la Sociedad a la fecha de cierre del ejercicio.-------------

----------d) Un Estado que muestre debidamente explicados y clasificados los Estados de la Sociedad durante el ejercicio.----------------------------------------------------------------

----------e) Un Estado que muestre la Situación Financiera durante el ejercicio.-------------------------------------------

----------f) Un Estado que muestre los cambios en las partidas que integran el patrimonio social.----------------------

----------g) Las notas que sean necesarias para completar o aclarar la información que suministren los Estados anteriores.----------------------------------------------------------------

----------h) Un Estado que muestre los Resultados de la Sociedad durante el ejercicio.-----------------------------------

----------i) Un estado que muestre los cambios en la Situación Financiera durante el ejercicio.------------------------

----------j) Cualquier otro Estado que establezca la práctica contable del domicilio de la Sociedad.---------------------

---------- A la información anterior se agregará el informe de los Comisarios a que se refiere la sección "D" del Artículo Vigésimo Tercero de éstos Estatutos. El informe a que se refiere este artículo, incluido el informe de los Comisarios, deberá quedar terminado y ponerse a disposición de los accionistas por lo menos quince días hábiles antes de la fecha de la Asamblea que haya de discutirlo. Los accionistas tendrán derecho a que se les entregue una copia del informe correspondiente.----------------------------------------------------------------

------------------------------------- CAPITULO SEPTIMO ----------------------------------------

------------------------------------- UTILIDADES Y PERDIDAS ----------------------------------------

----------ARTICULO TRIGESIMO OCTAVO:- UTILIDADES.- Las Utilidades que resulten se distribuirán en la siguiente forma:----------------------------------------------------------------

8

## LIC. RAUL LOZANO MEDINA
### NOTARIO PUBLICO No. 77
FRAY LUIS DE LEON 521, COL. ANAHUAC
TELS. 8352 2671, 8376 5200 Y 8376 6314
SAN NICOLAS DE LOS GARZA, N.L.

NOTARIA PUBLICA No. 77
TITULAR
LIC. RAUL LOZANO MEDINA
PRIMER DISTRITO

---------- PRIMERO.- Se separará un mínimo del (5%) cinco por ciento para constituir y reconstituir el fondo de Reserva hasta que éste alcance el (20%) veinte por ciento del Capital Social.----------

---------- SEGUNDO.- Se separarán las cantidades que determine la Asamblea para crear fondos especiales de Previsión o de Reinversión.----------

---------- TERCERO.- Se separará la cantidad que corresponda a los empleados y trabajadores por Repartos de Utilidades en los términos de la Ley Federal del Trabajo.----------

---------- CUARTO.- El remanente se capitalizará, retendrá en la tesorería, reinvertirá o distribuirá entre todos los accionistas en proporción al monto de sus aportaciones o de acuerdo a lo que determine la Asamblea.----------

---------- La distribución de Utilidades sólo podrá hacerse después de que hayan sido debidamente aprobados por la Asamblea General de Accionistas, los Estados Financieros que las arrojen.----------

---------- ARTICULO TRIGESIMO NOVENO:- PERDIDAS.- Las Pérdidas, si las hubiere, serán redimidas por las Reservas existentes.----------

---------- ARTICULO CUADRAGESIMO:- AMORTIZACION DE PERDIDAS.- No podrá hacerse distribución de Utilidades mientras no hayan sido restituidas o absorbidas, mediante aplicación de otras partidas del patrimonio, las Pérdidas sufridas en uno o varios ejercicios anteriores o haya sido reducido el Capital Social.----------

---------- ARTICULO CUADRAGESIMO PRIMERO: FUNDADORES.- Los socios Fundadores no se reservan ninguna participación especial en la Sociedad por su carácter de Fundadores.----------

---------- CAPITULO OCTAVO ----------

---------- LIQUIDACION DE LA SOCIEDAD ----------

---------- ARTICULO CUADRAGESIMO SEGUNDO:- DISOLUCION Y LIQUIDACION.- La Sociedad se liquidará en cualquiera de los casos establecidos por el artículo (229) doscientos veintinueve de la Ley General de Sociedades Mercantiles.----------

---------- ARTICULO CUADRAGESIMO TERCERO:- LIQUIDADORES.- Disuelta la Sociedad, se pondrá en Liquidación, la cual estará a cargo de uno o más Liquidadores, nombrados por la Asamblea Extraordinaria de Accionistas. Si la Asamblea no hace la designación de liquidadores, la hará un Juez de lo Civil o de Distrito del domicilio de la Sociedad a pedimento de cualquier accionista.----------

---------- ARTICULO CUADRAGESIMO CUARTO:- REGLAS DE LIQUIDACION.- Salvo las instrucciones expresas que la Asamblea que decrete la disolución de la Sociedad, los Liquidadores practicarán la liquidación de conformidad con las siguientes bases generales:----------

---------- a) Conclusión de los negocios pendientes en la forma menos perjudicial para los acreedores y los accionistas.----------

---------- b) Formulación del Balance e Inventarios generales ----------

---------- c) Cobro de créditos y pago de deudas.----------

---------- d) Enajenación de los bienes de la Sociedad y aplicación del producto a los fines de la liquidación.----------

---------- e) Liquidar a cada Socio su haber social.----------

---------- f) Practicar el Balance Final de la Liquidación, que deberá someterse a la discusión y aprobación de los Socios, en la forma prevista por estos Estatutos.----------

---------- g) Depositar el Balance Final en el Registro Público de Comercio, una vez aprobado.----------

---------- h) Obtener del Registro Público de Comercio la cancelación de la inscripción del Contrato Social, una vez concluida la liquidación.----------

---------- ARTICULOS TRANSITORIOS ----------

---------- Estando reunidos la totalidad de los otorgantes al firmar la presente escritura, los comparecientes en este acto toman los siguientes acuerdos:----------

---------- ARTICULO PRIMERO:- EJERCICIOS SOCIALES.- Los ejercicios sociales correrán del (1o.) primero de Enero al (31) treinta y uno de Diciembre de cada año, el primer ejercicio será irregular y comenzará a partir de la fecha de firma de la presente escritura, al (31) treinta y uno de Diciembre del (2009) dos mil nueve.----------

9

**Mercer-Erwin/Moffett Exhibit 1.d**
**Case No. 4:20-CR-00212**
**Page 060**

--------- ARTICULO SEGUNDO:- CAPITAL SOCIAL.- El Capital Social mínimo fijo es de $50,000.00 (CINCUENTA MIL PESOS 00/100 MONEDA NACIONAL), representado por (200) doscientas acciones, ordinarias, nominativas, con valor nominal de $250.00 (DOSCIENTOS CINCUENTA PESOS 00/100 MONEDA NACIONAL) cada una, totalmente suscritas y pagadas en dinero efectivo de la siguiente forma:-----------------------------------------------------

| SOCIO | No. DE ACCIONES | % | VALOR: |
|-------|-----------------|---|--------|
| ---------RODOLFO JAVIER CAMARILLO MONTEMAYOR | 198 | | $49,500.00 |
| ---------LIZETTE ALEJANDRA CAMARILLO MONTEMAYOR | 1 | | $ 250.00 |
| ---------LAURA CARMINA CAMARILLO MONTEMAYOR | 1 | | $250.00 |
| TOTAL: | 200 | 100 | $50,000.00 |

--------- ARTICULO TERCERO:- ADMINISTRACION.- Hasta en tanto una Asamblea Ordinaria de Accionistas no resuelva lo contrario:---------------------------------------------------------------------------------------

--------- La Sociedad será administrada por un <u>ADMINISTRADOR UNICO</u>, designándose para tal efecto el señor RODOLFO JAVIER CAMARILLO MONTEMAYOR, quien tendrá todas las facultades que enunciativa y no limitativamente que se mencionan en el artículo décimo quinto de los estatutos sociales, los cuales se tienen aquí por reproducidos como si se insertasen a la letra.------------------------------------------------------------------------

--------- ARTICULO CUARTO:- ACEPTACION DE CARGO DE ADMINISTRADOR UNICO.- Se tiene al señor RODOLFO JAVIER CAMARILLO MONTEMAYOR, aceptando el cargo que se le confiere, quien manifiesta haber recibido en efectivo de todos los accionistas, la cantidad total de $50,000.00 (CINCUENTA MIL PESOS 00/100 MONEDA NACIONAL) que integran el Capital Social, mismo que quedó suscrito y pagado en los términos ya indicados y el cual pone a disposición de la Sociedad en la Tesorería de la misma.---------------------------------

---------ARTICULO QUINTO:- El Administrador Único durará en su cargo hasta en tanto no se tome acuerdo en contrario y podrá ser reelecto.-----------------------------------------------------------------------------------

--------- ARTICULO SEXTO:- COMISARIO.- Se designa Comisario de la Sociedad al HERNAN FUENTES ZAMBRANO, quien acepta el cargo y protesta cumplirlo fielmente.-------------------------------------------------

---------ARTICULO OCTAVO:- GARANTIAS:- Se acuerda que ni el Administrador Único ni el Comisario necesitan otorgar cantidad alguna para garantizar el cumplimiento de sus funciones.-----------------------------------------

----------------------------------------------------- G E N E R A L E S ---------------------------------------------

---------Las comparecientes, bajo protesta de decir verdad, manifestaron las siguientes:----------------------------

---------El señor RODOLFO JAVIER CAMARILLO MONTEMAYOR, mexicano, mayor de edad, casado, Comerciante, al corriente en el pago del impuesto sobre la Renta, sin justificarlo de momento, con Registro Federal de Contribuyentes CAMR-6210077Y7, así mismo doy fe de tener a la vista la Cédula de Inscripción en el RFC, en el Servicio de Administración Tributaria, Secretaría de Hacienda y Crédito Público, con fecha de inscripción el día (1°) primero de Junio de (1988) mil novecientos ochenta y ocho, con número de Folio (E3131081) letras "E", tres, uno, tres, uno, cero, ocho, uno, misma que en este acto me exhibe y agrego una copia al apéndice de mi Protocolo, originario de Monterrey, Nuevo León, con fecha de nacimiento el día (07) siete de Octubre de (1962) mil novecientos sesenta y dos, con domicilio en Antigua Carretera a Monclava kilómetros 2, número (300) trescientos, en el Municipio de General Escobedo, Nuevo León; quien se identificó con credencial para votar número 109321649802 uno, cero, nueve, tres, dos, uno, cinco, cuatro, nueve, ocho, Cero, dos, expedida por el Instituto Federal Electoral, Registro Federal de Electores, y en la cual aparece su fotografía.---------------------------------------------------------------

---------La señora LIZETTE ALEJANDRA CAMARILLO MONTEMAYOR, mexicana, mayor de edad, casada, Profesionista, al corriente en el pago del impuesto sobre la Renta, sin justificarlo de momento, con Registro Federal de Contribuyentes CAML-760111-BF4, así mismo doy fe de tener a la vista la Cédula de Inscripción en el RFC, en el Servicio de Administración Tributaria, Secretaría de Hacienda y Crédito Público, con fecha de inscripción el día (29) veintinueve de Julio del (1994) mil novecientos noventa y cuatro, con número de Folio (F3187372) letras "F", tres, uno, ocho, siete, tres, siete, dos, misma que en este acto me exhibe y agrego una copia al apéndice de mi Protocolo, originaria de Monterrey, Nuevo León, con fecha de nacimiento el día (11) once de Enero de (1975) mil novecientos setenta y cinco, con domicilio en calle José Santos Chocano número (341) trescientos cuarenta y uno, Colonia

10

Mercer-Erwin/Moffett Exhibit 1.d
Case No. 4:20-CR-00212
Page 061

## LIC. RAUL LOZANO MEDINA
### NOTARIO PUBLICO No.77
FRAY LUIS DE LEON 521, COL. ANAHUAC
TELS. 8362 2571, 8376 6206 Y 8376 6314
SAN NICOLAS DE LOS GARZA, N.L.

NOTARIA PUBLICA...
...............
TITULAR NUMERO...
LIC. RAUL LOZANO MEDINA
...........
PRIMER DISTRITO REGISTRAL

...en este Municipio de San Nicolás de los Garza, Nuevo León; quien sé identificó con credencial para votar número 1936062460367 uno, ocho, tres, seis, cero, seis, dos, cuatro, cinco, cero, tres, seis, siete, expedida por el ....... ederal Electoral, Registro Federal de Electores, y en la cual aparece su fotografía.--------------------

--------La señora LAURA CARMINA CAMARILLO MONTEMAYOR, mexicana, mayor de edad, casada, Comerciante, al corriente en el pago del Impuesto sobre la Renta, sin justificarlo de momento, con Registro Federal de Contribuyentes CAML-510506-JG0, así mismo doy fe de tener a la vista la Cédula de Inscripción en el RFC, en el Servicio de Administración Tributaria, Secretaría de Hacienda y Crédito Público, con fecha de inscripción el día (20) veinte de Junio del (2000) dos mil, con número de Folio (E3171074) letras "E", tres, uno, siete, uno, cero, siete, cuatro, misma que en este acto me exhibe y agrego una copia al apéndice de mi Protocolo, originaria de Monterrey, Nuevo León, con fecha de nacimiento el día (06) seis de Mayo de (1951) mil novecientos cincuenta y uno, con domicilio en Amayuca número (137) ciento treinta y siete, Colonia Valle Morelos, en Monterrey, Nuevo León, y de paso por este Municipio de San Nicolás de los Garza, Nuevo León; quien se identificó con credencial para votar número 160862272566 uno, seis, cero, ocho, seis, dos, dos, siete, dos, cinco, seis, seis, en la cual aparece su fotografía.---

--------El señor HERNAN FUENTES ZAMBRANO, mexicano, mayor de edad, casado, Profesionista, al corriente en el pago del impuesto sobre la Renta, sin justificarlo de momento, con Registro Federal de Contribuyentes FUZH-641010-141, originario de Monterrey, Nuevo León, con fecha de nacimiento el día (10) diez de Octubre de (1964) mil novecientos sesenta y cuatro, con domicilio en calle Venecia número (819) ochocientos diecinueve, Fraccionamiento Gonzalitos, en Monterrey, Nuevo León y de paso en este Municipio de San Nicolás de los Garza, Nuevo León; quien se identificó con credencial para votar número 133621700984 uno, tres, tres, cinco, dos, uno, siete, cero, nueve, nueve, ocho, cuatro, expedida por el Instituto Federal Electoral, Registro Federal de Electores y en la cual aparece su fotografía.-------------------------

--------YO, EL NOTARIO DOY FE: De la verdad de este acto, de conocer personalmente a las comparecientes, a quienes considero con capacidad legal para contratar y obligarse, sin que me conste nada en contrario, de que lo inserto y relacionado concuerda fielmente con el original a que me remito y he tenido a la vista; de que todas las comparecientes leyeron por sí mismas el presente instrumento; de haberles advertido sobre la necesidad que tienen de inscribir en el Registro Público de Comercio del domicilio que corresponda a la Sociedad, el Primer Testimonio que de esta escritura se expida; De que en los términos de la regla "2.3.17" de la quinta resolución de modificaciones a la Resolución Miscelánea Fiscal para (1999) mil novecientos noventa y nueve, (Diario Oficial de fecha (30) treinta de Junio de (1999) mil novecientos noventa y nueve), solicité a las comparecientes la clave del Registro Federal de Contribuyentes de las accionistas y la exhibición de las cédulas de identificación fiscal respectivas, y cumplidos los requisitos que señala el artículo (106) ciento seis y demás relativos de la Ley del Notariado vigente en el Estado, manifestaron su conformidad con esta escritura y habiéndoles explicado el alcance y consecuencias legales de su contenido, la ratificaron en todas sus partes y firman ante Mí, hoy día (03) tres de Junio del (2009) dos mil nueve, estampando el suscrito Notario mi firma y sello.- DOY FE.--------------------------------------------------

RODOLFO JAVIER CAMARILLO MONTEMAYOR.-LIZETTE ALEJANDRA CAMARILLO MONTEMAYOR.- LAURA CARMINA CAMARILLO MONTEMAYOR .- HERNAN FUENTES ZAMBRANO.- ANTE MI: LICENCIADO RAUL LOZANO MEDINA.-----------------------------------------------------------------------------------

------------------------------------- A R T I C U L O   2 4 4 8 ---------------------------------------

--------El Notario que actúa da fe de que el Artículo (2448) dos mil cuatrocientos cuarenta y ocho del Código Civil en el Estado, a la letra dice: "ARTICULO 2448: En todos los Poderes Generales para Pleitos y Cobranzas, bastará que se diga que se otorga con todas las facultades generales y las especiales que requieran Cláusula Especial conforme a la Ley, para que se entiendan conferidas sin limitación alguna. En los Poderes Generales para Administrar Bienes, bastará que se diga con ese carácter para que el Apoderado tenga todas las facultades Administrativas. En los Poderes Generales para ejercer Actos de Dominio, bastará que sea con ese carácter para que el Apoderado tenga todas las facultades de Dueño, tanto en lo relativo a los Bienes como para hacer toda clase de gestiones a fin de defenderlos. Cuando se quisieran limitar en los tres casos antes mencionados las facultades de los Apoderados se

11

consignarán las limitaciones o los Poderes serán Especiales. Los Notarios Insertarán este Artículo en los testimonios de los Poderes que otorguen".------------------------------------------------------------------------------------------------

-------- AUTORIZO PREVENTIVAMENTE, la presente ESCRITURA PUBLICA NUMERO (4737) CUATRO MIL SETECIENTOS TREINTA Y SIETE, hoy día (03) tres de Junio del (2009) dos mil nuevo, únicamente para fines fiscales.- DOY FE.-------------------------------------------------------------------------------------------------------------------------

LICENCIADO RAUL LOZANO MEDINA.- NOTARIO PUBLICO NUMERO 77.- LOMR-641102-TT1.- Firma y Sello Notarial de Autorizar.--------------------------------------------------------------------------------------------------------------

---------------------------------------------- D E L   A P E N D I C E ------------------------------------------------

--------A).------------------------ PERMISO DE LA SECRETARIA DE RELACIONES EXTERIORES ----------------------

--------"Al margen superior izquierdo: DIRECCION GENERAL DE ASUNTOS JURIDICOS.- DIRECCION DE PERMISOS ARTICULO 27 CONSTITUCIONAL DELEGACION DE LA S.R.E.- Al margen superior derecho un sello impreso con el Escudo Nacional Mexicano con la leyenda que dice: ESTADOS UNIDOS MEXICANOS, SECRETARIA DE RELACIONES EXTERIORES.- S R E.- PERMISO 1901301. EXPEDIENTE 20091901208, FOLIO 090204191012. De conformidad con lo dispuesto por los artículos 27, fracción I de la Constitución Política de los Estados Unidos Mexicanos, 28, fracción V de la Ley Orgánica de la Administración Pública Federal, 15 de la Ley de Inversión Extranjera y 13,14 y 18 del Reglamento de la Ley de Inversión Extranjera y del Registro Nacional de Inversiones Extranjeras, y en atención a la solicitud presentada por el (la) Sr(a). LIZETTE ALEJNADRA CAMARILLO MONTEMAYOR, con fundamento en lo dispuesto por el artículo 46 fracción I inciso a) del Reglamento Interior de la Secretaria de Relaciones Exteriores en vigor, se concede el permiso para constituir una SA DE CV bajo la siguiente denominación: "CAMRO TRANSPORTES". Este permiso, quedará condicionado a que en los estatutos de la sociedad que se constituya, se inserte la cláusula de exclusión de extranjeros o el convenio previsto en la fracción I del Artículo 27 Constitucional, de conformidad con lo que establecen los artículos 15 de la Ley de Inversión Extranjera y 14 del Reglamento de la Ley de Inversión Extranjera y del Registro Nacional de Inversiones Extranjeras. Asimismo, el interesado deberá dar aviso del uso de la denominación que se autoriza mediante el presente permiso a la Secretaria de Relaciones Exteriores dentro de los seis meses siguientes a la expedición del mismo, de conformidad con lo dispuesto por el artículo 18 del Reglamento de la Ley de Inversión Extranjera y del Registro Nacional de Inversiones Extranjeras.- Monterrey, NL, a 04 de febrero de 2009.- EL SUBDIRECTOR POR AUSENCIA TEMPORAL DE LA SUBDELEGADA CONFORME AL ARTICULO 66 DEL REGLAMENTO INTERIOR DE LA SECRETARIA DE RELACIONES EXTERIORES.- ING. MARIO TRUJILLO GUERRA.- Firmado y un Sello con el Escudo Nacional que dice ESTADOS UNIDOS MEXICANOS.- SECRETARIA DE RELACIONES EXTERIORES.- DELEGACION NUEVO LEON".----------------------------------------------

-------- AUTORIZO DEFINITIVAMENTE, la presente Escritura Pública hoy día (30) treinta de Junio del (2009) dos mil nuevo, fecha en que se presento la Solicitud de Inscripción y Avisos al Registro Federal de Contribuyentes de la Sociedad denominada "CAMRO TRANSPORTES", SOCIEDAD ANONIMA DE CAPITAL VARIABLE, con número de Folio (495600) cuatro, nueve, cinco, seis, cero, cero, de fecha (30) treinta de Junio del (2009) dos mil nuevo, de la cual se agrega copia al apéndice de esta Escritura. DOY FE.------------

--------ES PRIMER TESTIMONIO, de la ESCRITURA PUBLICA NUMERO (4737) CUATRO MIL SETECIENTOS TREINTA Y SIETE, de fecha (03) tres de Junio del (2009) dos mil nuevo, fué tomado de sus originales que obran en el LIBRO (58) cincuenta y ocho, FOLIO (011474) once mil cuatrocientos setenta y cuatro y siguientes de mi protocolo; y que se expide para uso de la Sociedad denominada "CAMRO TRANSPORTES", SOCIEDAD ANONIMA DE CAPITAL VARIABLE, va en (7) siete hojas, debidamente

12

**Mercer-Erwin/Moffett Exhibit 1.d**
**Case No. 4:20-CR-00212**
**Page 063**

**LIC. RAUL LOZANO MEDINA**
NOTARIO PUBLICO No.77

FRAY LUIS DE LEON 521, COL. ANAHUAC
TELS. 8352 2571, 8376 5208 Y 8376 8314
SAN NICOLAS DE LOS GARZA, N.L.

cotejadas y firmadas.- En San Nicolás de los Garza, Nuevo León, a los (30) treinta días del mes de Junio del (2009) dos mil nueve.- DOY FE.--------------------------------------------------------------------------------

LICENCIADO RAUL LOZANO MEDINA
NOTARIO PUBLICO NUMERO 77
LOMR-641102-TT1

NOTARIA PUBLICA No. 77
TITULAR
LIC. RAUL LOZANO MEDINA
SAN NICOLAS DE LOS GARZA, N.L., MEXICO
PRIMER DISTRITO REGISTRAL

13

Mercer-Erwin/Moffett Exhibit 1.d
Case No. 4:20-CR-00212
Page 064



REGISTRO PÚBLI
PROPIEDAD Y DEI
PRIMER DIS
MONTERREY



# INSCRIPCIÓN EN EL R.F.C

EL SERVICIO DE ADMINISTRACIÓN TRIBUTARIA, LE DA A CONOCER EL REGISTRO FEDERAL DE CONTRIBUYENTES, QUE LE HA SIDO ASIGNADO CON BASE EN LOS DATOS QUE PROPORCIONÓ, LOS CUALES HAN QUEDADO REGISTRADOS CONFORME A LO SIGUIENTE:

NOMBRE, DENOMINACIÓN O RAZÓN SOCIAL

CAMRO TRANSPORTES SA DE CV

DOMICILIO

ANTIGUA CARRETERA A MONCLOVA 300 GENERAL ESCOBEDO CENTRO GENERAL ESCOBEDO NUEVO LEÓN 66050

## CLAVE DEL R.F.C            CTR090603DC1

ADMINISTRACIÓN LOCAL                    ALR GUADALUPE, N.L.

ACTIVIDAD          Otro autotransporte foráneo de carga general

SITUACIÓN DE REGISTRO          **ACTIVO**

FECHA DE INSCRIPCIÓN    01-07-2009          FECHA DE INICIO DE OPERACIONES          03-06-2000

## OBLIGACIONES

| DESCRIPCIÓN | FECHA ALTA |
|---|---|
| Presentar la declaración y pago provisional mensual de retenciones de Impuesto Sobre la Renta (ISR) por sueldos y salarios. | 03-06-2009 |
| Presentar la declaración anual de Impuesto Sobre la Renta (ISR) donde se informe sobre los clientes y proveedores de bienes y servicios. | 03-06-2009 |
| Presentar la declaración anual de Impuesto Sobre la Renta (ISR) donde se informe sobre las retenciones efectuadas por pagos de rentas de bienes inmuebles. | 03-06-2000 |
| Presentar la declaración anual donde se informe sobre las retenciones de los trabajadores que trabajan sueldos y salarios y trabajadores asimilados a salarios. | 03-06-2000 |
| Presentar la declaración y pago provisional mensual de Impuesto Sobre la Renta (ISR) por las retenciones realizadas a los trabajadores asimilados a salarios. | 03-06-2000 |
| Proporcionar la información del Impuesto al Valor Agregado (IVA) que se solicite en las declaraciones del Impuesto Sobre la Renta (ISR) | 03-06-2000 |
| Presentar la declaración y pago provisional del Impuesto Sobre la Renta (ISR) de personas morales del Régimen Simplificado. | 03-06-2000 |
| Presentar la declaración anual de Impuesto Sobre la Renta (ISR) de personas morales del Régimen Simplificado. | 03-06-2000 |
| Presentar la declaración mensual donde se informe sobre las operaciones con terceros para efectos del Impuesto al Valor Agregado (IVA). | 03-06-2009 |
| Presentar la declaración y pago provisional mensual del Impuesto Empresarial a Tasa Única (IETU). | 03-06-2008 |
| Presentar la declaración informativa anual de Subsidio para el Empleo. | 03-06-2009 |
| Presentar la declaración y pago anual del Impuesto Empresarial a Tasa Única (IETU). | 03-06-2009 |
| Presentar la declaración y pago mensual de retenciones del Impuesto al Valor Agregado (IVA). | 03-06-2000 |
| Presentar la declaración y pago provisional mensual de las retenciones de Impuesto Sobre la Renta (ISR) realizadas por el pago de rentas de bienes inmuebles. | 03-06-2000 |
| Presentar la declaración y pago definitivo mensual de Impuesto al Valor Agregado (IVA). | 03-06-2009 |

| TRÁMITES EFECTUADOS | FECHA DE PRESENTACIÓN | FOLIO DEL TRÁMITE |
|---|---|---|
| Reg. Federal Contribuyentes / Inscripción / Inscripción de Persona Moral | 23-06-2009 | N°2009162450011 |

Fecha de impresión 21 de Julio de 2009
TELÉFONO DE ATENCIÓN CIUDADANA
(Quejas y Sugerencias) 01-800-463-6728

CEDULA DE IDENTIFICACIÓN FISCAL

CLAVE DE REG. FED. DE CONTRIBUYENTE

CTR090603DC1

NOMBRE, DENOMINACIÓN O RAZÓN SOCIAL

CAMRO TRANSPORTES SA DE CV

FOLIO

B3165461



**REGISTRO PUBLICO DE LA PROPIEDAD Y DEL COMERCIO DEL ESTADO DE NUEVO LEON**

## BOLETA DE INSCRIPCION

### EL ACTO DESCRITO EN EL PRESENTE DOCUMENTO QUEDO INSCRITO EN EL:

**FOLIO MERCANTIL ELECTRONICO No.**   | 115792 * 1 |

Control Interno       Fecha de Prelación

26    *   30 / JULIO       / 2009

Antecedentes Registrales:
PRIMERO

RFC / No. de Serie:
NO CONSTA.-

Denominación

**CAMRO TRANSPORTES, S.A. DE C.V.**

Afectaciones al:

| Folio | ID | Acto | Descripción | Fecha Registro | Registro |
|-------|-----|------|-------------|----------------|----------|
| ***** | 1 | M4 | *Constitución de sociedad* Caracteres de Autenticidad de Inscripción   2deb5f0397366914aad3ba02e99547f634oa60d9 | 10-08-2009 | 1 |

Derechos de Inscripción

Fecha        21 JUL 2009
Importe      $50,000.00
Subsidio

Boleta de Pago No. :    14077334
Boleta de Pago No. :

EL C. REGISTRADOR DEL COMERCIO

LIC. CARLOS REYNALDO AYALA CALVO



O DE LA
COMERCIO
ITO
N. L.

REGISTRO PUBLICO DE LA
PROPIEDAD Y DEL COMERCIO
PRIMER DISTRITO
MONTERREY, N. L.



**Mercer-Erwin/Moffett Exhibit 1.d**
**Case No. 4:20-CR-00212**
**Page 067**

## DIRECCIÓN GENERAL DE ASUNTOS JURÍDICOS
DIRECCIÓN DE PERMISOS ARTICULO 27 CONSTITUCIONAL
DELEGACION DE LA S.R.E.



**SRE**

PERMISO        1901301
EXPEDIENTE     20091901208
FOLIO          090204191012

De conformidad con lo dispuesto por los artículos 27, fracción I de la Constitución Política de los Estados Unidos Mexicanos, 28, fracción V de Ley Orgánica de la Administración Pública Federal, 15 de la Ley de Inversión Extranjera y 13, 14 y 18 del Reglamento de la Ley de Inversión Extranjera y del Registro Nacional de Inversiones Extranjeras, y en atención a la solicitud presentada por el (la) Sr(a). LIZETTE ALEJANDRA CAMARILLO MONTEMAYOR, con fundamento en lo dispuesto por el artículo 46 fracción I inciso a) del Reglamento Interior de la Secretaría de Relaciones Exteriores en vigor, se concede el permiso para constituir una **SA DE CV** bajo la siguiente denominación:

### CAMRO TRANSPORTES

Este permiso, quedará condicionado a que en los estatutos de la sociedad que se constituya, se inserte la cláusula de exclusión de extranjeros o el convenio previsto en la fracción I del Artículo 27 Constitucional, de conformidad con lo que establecen los artículos 15 de la Ley de Inversión Extranjera y 14 del Reglamento de la Ley de Inversión Extranjera y del Registro Nacional de Inversiones Extranjeras. Cabe señalar que el presente permiso se otorga sin perjuicio de lo dispuesto por el artículo 91 de la Ley de la Propiedad Industrial.

Este permiso quedará sin efectos si dentro de los noventa días hábiles siguientes a la fecha de otorgamiento del mismo, los interesados no acuden a otorgar ante fedatario público el instrumento correspondiente a la Constitución de que se trata, de conformidad con lo establecido por el artículo 17 del Reglamento de la Ley de Inversión Extranjera y del Registro Nacional de Inversiones Extranjeras.

Asimismo, el interesado deberá dar aviso del uso de la denominación que se autoriza mediante el presente permiso a la Secretaría de Relaciones Exteriores dentro de los seis meses siguientes a la expedición del mismo, de conformidad con lo dispuesto por el artículo 18 del Reglamento de la Ley de Inversión Extranjera y del Registro Nacional de Inversiones Extranjeras.

Monterrey, NL. a 04 de febrero de 2009

**EL SUBDIRECTOR**
**POR AUSENCIA TEMPORAL DE LA SUBDELEGADA**
**CONFORME AL ARTÍCULO 56 DEL REGLAMENTO**
**INTERIOR DE LA SECRETARIA DE RELACIONES EXTERIORES**

ING. MARIO TRUJILLO GUERRA

**Mercer-Erwin/Moffett Exhibit 1.d**
**Case No. 4:20-CR-00212**
**Page 068**

# SRE

SECRETARIA DE RELACIONES EXTERIORES

Consultas 782-41-44 Ext 4068
Quejas: SACTEL 91-800-703-64

Direcc Constitucion Sociedad

090204191012

FECHA: 28 DE ENERO DEL 2009

Para uso exclusivo de S

Folio: _____

## SOLICITUD DE PERMISO DE CONSTITUCIÓN DE SOCIEDADES
### (ARTICULO 15 DE LA LEY DE INVERSIÓN EXTRANJERA)

NOMBRE DEL SOLICITANTE:    **LIZETTE ALEJANDRA CAMARILLO MONTEMAYOR**

DOMICILIO: CALLE Y NÚMERO: **JOSE SANTOS CHOCANO No. 341,**
COLONIA:        **ANAHUAC.**
MUNICIPIO:      **SAN NICOLAS DE LOS GARZA, NUEVO LEON.**
CODIGO POSTAL:  **66450.**

PERSONAS AUTORIZADAS    **ROLANDO ROMAN MORENO.**

DENOMINACIÓN      1.- **CAMRO TRANSPORTES, S.A. DE C.V.**
SOLICITADA        2.- **ROCA TRANSPORTES, S.A. DE C.V.**
                  3.- **ROCA SERVICIOS, S.A. DE C.V.**

REGIMEN JURÍDICO DE LA
PERSONA MORAL        **SOCIEDAD ANONIMA DE CAPITAL VARIABLE**

FIRMA

Toda solicitud deberá ser resuelta dentro de los 5 días hábiles siguientes a la fecha de su presentación. En caso contrario, el permiso solicitado se considerará otorgado, siendo aplicable lo establecido por el Artículo 16-A de la Ley de Inversión Extranjera.
La resolución recaída a esta solicitud únicamente será entregada al solicitante o a las personas autorizadas.

SECRETARIA DE RELACIONES
EXTERIORES

RECIBIDO
04 FEB 2009

Llenar a máquina
Oficinas centrales: original y una copia
Delegaciones Estatales: Original y dos copias
Anexar: Original y copia de pago de derechos

**Mercer-Erwin/Moffett Exhibit 1.d
Case No. 4:20-CR-00212
Page 069**

# Constitución de Sociedad  M-4

0. Antecedentes Registrales:
_____ ANTECE (A 80)_____

Folio Mercantil Electrónico _FOLMER_NU_FOLMER_(N 8) ___ FOLMER_IDEGEN(A 2)

1. Sociedad Mercantil    NU_TIPSOC (N 2)

   ☒ (1)  Sociedad Anónima

   ☐ (2) Sociedad de Responsabilidad Limitada

   ☐ (3) Sociedad Cooperativa Limitada

   ☐ (4) Sociedad Cooperativa Suplementada

   ☐ (5) Sociedad de Producción Rural

   ☐ (6) Sociedad en Nombre Colectivo

   ☐ (7) Sociedad en Comandita Simple

   ☐ (8) Sociedad en Comandita por Acciones

                          Modalidad ☒ (N 1) Capital variable

2. Por escritura No. **4737** Libro **58** Folio **011474**

3. De fecha **03 de Junio del 2009**

4. Clave del Fedatario **NOTARIO PÚBLICO NUMERO 77      LIC. RAUL LOZANO MEDINA**

   Municipio **SAN NICOLAS DE LOS GARZA,** Estado **NUEVO LEON**

5. Se constituyó la Sociedad denominada **CAMRO TRANSPORTES, SOCIEDAD ANÓNIMA DE CAPITAL VARIABLE**

6. Con duración de **99 años** y domicilio en **ESCOBEDO, NUEVO LEON**

7. Objeto Social

--------- 1).- El establecimiento y la explotación del servicio público federal de carga general y la transportación de materiales y residuos peligrosos en las rutas o tramos de jurisdicción federal o local, autorizados mediante concesiones o permisos que para el efecto le otorga a la sociedad la Secretaría de Comunicaciones y Transportes y/o el Gobierno Federal o Local correspondiente o mediante las concesiones que la sociedad reciba en transferencia o en virtud de las concesiones o permisos que en goce le aporten sus propios socios, y autorice la autoridad competente.-------------------------------------------------------------------
--------- 2).- Compraventa, importación, exportación, distribución y transportación de todo tipo de maquinaria y sus respectivas refacciones. ---------------------------------------------------------------------------------

**Mercer-Erwin/Moffett Exhibit 1.d
Case No. 4:20-CR-00212
Page 070**

| CAMARILLO | MONTEMA YOR | RODOLFO JAVIER | CAMR6210077 Y7 | 198 | A-1 | $250.00 | $49,500.00 |
|-----------|-------------|----------------|----------------|-----|-----|---------|------------|
| CAMARILLO | MONTEMA YOR | LIZETTE ALEJANDRA | CAML750111B F4 | 1 | A-1 | $250.00 | $250.00 |
| CAMARILLO | MONTEMA YOR | LAURA CARMINA | CAML510506J G0 | 1 | A-1 | $250.00 | 250.00 |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

13. Cláusula de extranjería: RB_CLAUSULA (A 1)

☐ Cláusula de Admisión  (A)

☒ Cláusula de Exclusión (B)

14. Administración a cargo de:

☐ Consejo de Administración integrado por:     CONADM (A 800)

☒ Administrador único    SR. RODOLFO JAVIER CAMARILLO MONTEMAYOR

☐ Gerente    GERENTE (A 100)

15. Con facultades para:-

1.- PODER GENERAL PARA PLEITOS Y COBRANZAS.
2.- PODER DE ADMINISTRACION LABORAL
3.- PODER PARA ADMINISTRAR LOS BIENES Y NEGOCIOS DE LA SOCIEDAD.
4.- PODER CAMBIARIO.
5.- PODER PARA EJERCER ACTOS DE DOMINIO.
6.- LLEVAR A CABO TODOS LOS ACTOS Y OPERACIONES PERTINENTES PARA CUMPLIR CON EL OBJETO DE LA SOCIEDAD.
7.- OTORGAR O DELEGAR PODERES GENERALES O ESPECIALES CON LAS FACULTADES QUE ESTIMEN CONVENIENTES ASI COMO REVOCAR LOS QUE ELLOS MISMOS HAYAN OTORGADO

16. Se designó Comisario o Consejo de Vigilancia a:
COMISARIO:- HERNAN FUENTES ZAMBRANO

17. Se nombró Apoderado(s) a   _APODER (A 400) _____

**Mercer-Erwin/Moffett Exhibit 1.d**
**Case No. 4:20-CR-00212**
**Page 071**

mil novecientos cincuenta y uno, con domicilio en Amayuca número (137) ciento treinta y siete, Colonia Valle Morelos, en Monterrey, Nuevo León, y de paso por este Municipio de San Nicolás de los Garza, Nuevo León; quien se identificó con credencial para votar número 160862272556 uno, seis, cero, ocho, seis, dos, dos, siete, dos, cinco, cinco, seis y en la cual aparece su fotografía.-----------------------------------------------------------



NOTARIA PUBLICA No. 77
TITULAR
LIC. RAUL LOZANO MEDINA
SAN NICOLAS DE LOS GARZA, N.L. MEXICO
PRIMER DISTRITO REGISTRAL

LICENCIADO RAUL LOZANO MEDINA
NOTARIO PUBLICO NUMERO 77
LOMR641102-TT1

Mercer-Erwin/Moffett Exhibit 1.d
Case No. 4:20-CR-00212
Page 072



# GOBIERNO DEL ESTADO DE NUEVO LEON
### GEN−620601−DTA
### RECIBO OFICIAL



*FOLIO*
**14077334**

| | | | | |
|---|---|---|---|---|
| *MUNICIPIO* MONTERREY, N.L. | *CENTRO DE INGRESO:* R. P. P. | *CAJA* 7505−1 | *FECHA* 2009/07/21 | |

*TRANS:* 17905

*NOMBRE:*  CAMRO TRANSPORTES, SA CV
*DOMICILIO:*
*COLONIA:*  C.P.
*MPIO:*  NOT.P. 77  FOL.P  272958

*R. F. C.*
*CUENTA*  −000000−

*NO.PARTIDA:* 210−01  COMPRA−VENTA

VALOR OPERACION    50,000
HOJAS O LOTES    1
OFICIO O DECRETO
RECIBO SUBSIDIO



DERECHOS.− $        160.00
RECARGOS.− $          .00
SUBSIDIO.− $          .00

$        160.00

ELABORO  MUDG

**13282498**

** CIENTO SESENTA PESOS 00/100M.N.**

1140773340120009072100000016000750510232001 79051

**Mercer-Erwin/Moffett Exhibit 1.d**
**Case No. 4:20-CR-00212**
**Page 073**



**Control de Pago**
Grupo Mexicano de Seguros S.A. de C.V.
R.F.C. GMS971110BTA
www.gmx.com.mx
Tecoyotitla 412 Edificio GMX, Col. Ex Hacienda de Guadalupe Chimalistac, C.P. 01050,
Del. Álvaro Obregón, Ciudad de México, México Tel. (55) 5480 4000

**DATOS DEL CONTRATANTE**

| | |
|---|---|
| R.F.C. | CTR090603DC1 |
| Nombre: | CAMMO TRANSPORTES, S.A. DE C.V. |
| Calle: | CARRETERA FEDERAL COLOMBIA KM 9 . |
| Colonia: | ANDRES CABALLERO MORENO AGROP |
| Mplo. o Del.: | GENERAL ESCOBEDO, NUEVO LEON, MEXICO 66000 |
| Nombre del Agente: | LRC AGENTE DE SEGUROS Y DE FIANZAS SA DE CV |
| Clave de Agente: | 1275 | Serie: | 1/1 |
| Póliza No. | 03-034-07000064-0000-01 |
| Vigencia: | 09/11/2018 AL 09/11/2019 |

Al ejecutar su pago, solicite su recibo de primas a su agente de seguros
1-Si paga con cheque debe ser a nombre de *Grupo Mexicano de Seguros S.A. de C.V.*
Anotar la leyenda de *NO NEGOCIABLE* para abono en cuenta beneficiario *"Pago en una sola exhibición"*
2-Si su pago se realiza después del plazo de gracia, (como lo estipula el seguro en el artículo
40) con siniestro ocurrido, el importe de la prima pagada será devuelta al asegurado mediante cheque
nominativo a su favor, eximiéndole de toda responsabilidad a *Grupo Mexicano de Seguros S.A. de C.V.*

Señalar forma de pago:

Efectivo [ ]     Transferencia bancaria [ ]     Cheque [ ]

Tarjeta de Crédito o Débito [ ]     No identificado [ ]

En cualquier forma de pago de la prima, el Recibo de Primas debidamente sellado por el Banco o por la
aseguradora hará prueba plena, no obstante lo anterior y a falta de éste, el estado de cuenta en donde
aparezca dicho cargo presumirá el pago hasta en tanto la institución entregue la factura correspondiente.

---

**Aviso de Cobro**
M01 - 34764

**Fecha y Hora de Emisión**
09/11/2018 05:30:43 PM

**Expedido en:**
RIO TAMESIS 2ª PISO 1010 - DEL VALLE, C.P.SAN PEDRO
GARZA GARCIA, 66220, NUEVO LEON, MEXICO

**Expedido por:**

**EMISIÓN**

| CANTIDAD | P. UNITARIO | | IMPORTE AL COBRO | |
|---|---|---|---|---|
| 1 | 8,250.00 | PRIMA NETA | $ | 8,250.00 |
| 1 | 0.00 | RECARGOS | $ | 0.00 |
| 1 | 75.00 | DERECHOS | $ | 75.00 |
| | | SUBTOTAL | $ | 8,325.00 |
| | | I.V.A.   16.00% | $ | 1,332.00 |
| | | PRIMA TOTAL | $ | 9,657.00 |
| 1 | (0.00) | DESC. ART. 41 | $ | (0.00) |
| | | PAGO CON DESCUENTO | | NO APLICA |

Importe con letra
NUEVE MIL SEISCIENTOS CINCUENTA Y SIETE DOLARES 00/100 USD
Moneda :  DOLAR AMERICANO

Ret. No. |   03181200082018529208
Si paga con cheque debe ser a favor de Grupo Mexicano de Seguros S.A. de C.V.

| BANCOS | PESOS | DOLARES |
|---|---|---|
| Bancomer | CIE: 913839 | CIE: 913979 |
| Santander | CONTRATO: 2501 | CUENTA: 02500486214 |
| BANORTE | CEP: 142778 | CEP: 60664 |
| Scotiabank | SERVICIO: 1728 | SERVICIO: 1733 |
| citibanamex | PA: 8145/01 | |
| MULTIVA | CTA: 6422063 | No Aplica |
| Bancomer | CLABE: 012914002009138398 | No Aplica |

El importe del recibo podrá ser pagado en las ventanillas de sucursales bancarias mencionadas en la parte
superior, favor de timbrate a las cuentas o convenios según la institución que corresponda a través de la
referencia bancaria

---



**Control Agente**
Grupo Mexicano de Seguros S.A. de C.V.
R.F.C. GMS971110BTA
www.gmx.com.mx
Tecoyotitla 412 Edificio GMX, Col. Ex Hacienda de Guadalupe Chimalistac, C.P. 01050,
Del. Álvaro Obregón, Ciudad de México, México Tel. (55) 5480 4000

**DATOS DEL CONTRATANTE**

| | | | |
|---|---|---|---|
| R.F.C. | CTR090603DC1 | | |
| Nombre: | CAMMO TRANSPORTES, S.A. DE C.V. | | |
| Calle: | CARRETERA FEDERAL COLOMBIA KM 9 . | | |
| Colonia: | ANDRES CABALLERO MORENO AGROP | | |
| Mplo. o Del.: | GENERAL ESCOBEDO, NUEVO LEON, MEXICO 66000 | | |
| Tipo de seguro | CASCOS AEREOS  LGS-CRCLG | | |
| Póliza No. | 03-034-07000064-0000-01 | | |
| Vigencia desde: | 09/11/2018 AL 09/11/2019 | | |
| Conducto de envío: | | Serie o recibo: | 1/1 |
| Fecha de Expedido: | 09/11/2018 05:30:43 PM | Clave de Agente: | 1275 |
| Nombre del agente: | LRC AGENTE DE SEGUROS Y DE FIANZAS SA DE CV | | |
| Observaciones: | | | |

---

**Aviso de Cobro**
M01 - 34764

**Fecha y Hora de Emisión**
09/11/2018 05:30:43 PM

**Expedido en:**
RIO TAMESIS 2ª PISO 1010 - DEL VALLE, C.P.SAN PEDRO
GARZA GARCIA, 66220, NUEVO LEON, MEXICO

**Expedido por:**

**EMISIÓN**

| CANTIDAD | P. UNITARIO | | IMPORTE AL COBRO |
|---|---|---|---|
| 1 | 8,250.00 | PRIMA NETA | 8,250.00 |
| 1 | 0.00 | RECARGOS | 0.00 |
| 1 | 75.00 | DERECHOS | 75.00 |
| | | SUBTOTAL | 8,325.00 |
| | | I.V.A.   16.00% | 1,332.00 |
| | | PRIMA TOTAL | 9,657.00 |
| 1 | (0.00) | DESC. ART. 41 | (0.00) |
| | | PAGO CON DESCUENTO | NO APLICA |

Importe con letra
NUEVE MIL SEISCIENTOS CINCUENTA Y SIETE DOLARES 00/100 USD
Moneda :  DOLAR AMERICANO
Si paga con cheque debe ser a favor de Grupo Mexicano de Seguros S.A. de C.V.

Fecha pago de Recibo:
Código:          DX012750000000090750
Ret. No. |   03181200082018529200

| BANCOS | PESOS | DOLARES |
|---|---|---|
| Bancomer | CIE: 913839 | CIE: 913979 |
| Santander | CONTRATO: 2501 | CUENTA: 02500486214 |
| BANORTE | CEP: 142778 | CEP: 60664 |
| Scotiabank | SERVICIO: 1728 | SERVICIO: 1733 |
| citibanamex | PA: 8145/01 | |
| MULTIVA | CTA: 6422063 | No Aplica |
| Bancomer | CLABE: 012914002009138398 | No Aplica |

*"PAGO EN UNA SOLA EXHIBICIÓN"*.

**Mercer-Erwin/Moffett Exhibit 1.d**
**Case No. 4:20-CR-00212**
**Page 074**



Grupo Mexicano de Seguros S.A. de C.V.
Tecoyotitla 412 Edificio GMX
Col. Ex Hacienda de Guadalupe Chimalistac,
Ciudad de México, 01050
Tel. (55) 5480 4000
Fax (55) 5662 9714
Fax (55) 5662 9716

## PÓLIZA NUEVA  MULTIPÓLIZA
### CASCOS AÉREOS Y RC LEGAL

IDENTIFICADOR DE PÓLIZA: 03-034-07000064-0000-01

| | OFICINA | PRODUCTO | | NÚMERO DE PÓLIZA | ENDOSO | RENOVACIÓN |
|---|---|---|---|---|---|---|
| 03 | MONTERREY | LGS-CRCLG | 034 | 07000064 | 0000 | 01 |

Grupo Mexicano de Seguros, S.A. de C.V., en adelante mencionada como GMX SEGUROS, asegura de acuerdo a las condiciones generales y especiales de esta póliza a la persona física o moral denominado en adelante El Asegurado:

| | |
|---|---|
| Contratante | CAMRO TRANSPORTES, S.A. DE C.V. |
| Domicilio de Cobro | CARRETERA FEDERAL COLOMBIA KM 9  .  , ANDRES CABALLERO MORENO AGROP , GENERAL ESCOBEDO GENERAL ESCOBEDO |
| Entidad/C.P. | NUEVO LEON  66080 |
| Fecha de nacimiento / Constitución: | 03/06/2009 |

| RFC: | CTR090603DC1 |
|---|---|

| | |
|---|---|
| Agente | 1275 - LRC AGENTE DE SEGUROS Y DE FIANZAS SA DE CV |
| Vigencia | 365  Días |
| Desde | 09 NOVIEMBRE 2018   12:00 horas  de la Ciudad de México |
| Hasta | 09 NOVIEMBRE 2019   12:00 horas  de la Ciudad de México |
| Moneda | DOLAR AMERICANO |

| Forma de Pago: | CONTADO |
|---|---|

Descripción de Bienes y Riesgos Cubiertos:

Los bienes cubiertos, ubicación, giro o actividad, sumas aseguradas, deducibles y, en su caso, coaseguro se describen en la especificación anexa a esta póliza.

| | Prima Neta | Recargo | Derecho | I.V.A. | Total |
|---|---|---|---|---|---|
| Prima | US$8,250.00 | US$0.00 | US$75.00 | US$1,332.00 | US$9,657.00 |

**En cumplimiento a lo dispuesto en el artículo 202 de la Ley de Instituciones de Seguros y de Fianzas, la documentación contractual y la nota técnica que integran este producto de seguro, quedaron registradas ante la Comisión Nacional de Seguros y Fianzas, a partir del día 08 de mayo de 1998, con el número DVA-256/98.**

**Artículo. 25.- Si el contenido de la póliza o sus modificaciones no concordaran con la oferta, el Asegurado podrá pedir la rectificación correspondiente dentro de los treinta días que sigan al día que reciba la póliza. Transcurrido este plazo se considerarán aceptadas las estipulaciones de la póliza o de sus modificaciones.**

Fecha de emisión:  09 / NOVIEMBRE / 2018

En términos de lo cual Grupo Mexicano de Seguros, S.A. de C.V., firma la presente póliza en la Ciudad de México. Esta póliza no es un comprobante de pago, por lo que es necesario exigir su recibo al liquidar la prima.



_____
Firma del funcionario autorizado



**Grupo Mexicano de Seguros S.A. de C.V.**
Tecoyotitla 412 Edificio GMX
Col. Ex Hacienda de Guadalupe Chimalistac,
Ciudad de México, 01050
Tel. (55) 5480 4000
Fax (55) 5662 9714
Fax (55) 5662 9716

| POLIZA NUEVA MULTIPÓLIZA |
| :---: |
| CASCOS AÉREOS Y RC LEGAL |

GMX Seguros, pone a disposición del asegurado sus derechos y obligaciones, así como las coberturas, exclusiones, restricciones que forman parte de este Contrato de Seguro que se encuentran contenidos en esta póliza y en toda la documentación que forman parte integral del Contrato de Seguro y pueden ser consultados en www.gmx.com.mx

Las condiciones generales aplicables al presente seguro se entregan al Asegurado junto con esta póliza, de igual modo se encuentran a su disposición en las oficinas de GMX Seguros en la dirección establecida en la presente.

Asimismo, el asegurado reconoce que la elección de las coberturas amparadas, deducibles y límites máximos de responsabilidad, han sido responsabilidad suya en su carácter de asegurado y/o contratante, además de que el monto de las primas es de su conocimiento, por lo que acepta que su elección no fue influenciada por la aseguradora en forma alguna, además de que sabe y entiende que la Institución cuenta con otras coberturas a las elegidas que no fueron de su interés.

En GMX Seguros, ponemos a su disposición en caso de alguna consulta, reclamación o aclaración relacionada con su Seguro, nuestra **Unidad Especializada de Atención a Usuarios (UNE)**, ubicada en Tecoyotitla número 412, Edificio GMX, colonia Ex Hacienda de Guadalupe Chimalistac, Código Postal 01050, Delegación Álvaro Obregón, Ciudad de México, o si lo prefiere comunicarse al teléfono 01 (800) 718 89 46 y al (55) 54 80 40 00, en un horario de atención de lunes a jueves de 8:30 a 17:30 horas y viernes de 8:30 a 15:00 horas, y al correo electrónico unidad.especializada@gmx.com.mx

En caso de dudas, quejas, reclamaciones o consultar información, podrá acudir a la **Comisión Nacional para la Protección y Defensa de los Usuarios de Servicios Financieros (CONDUSEF)** con domicilio en Insurgentes Sur Número 762, Colonia del Valle, Delegación Benito Juárez, Código Postal 03100, Ciudad de México, correo electrónico asesoria@condusef.gob.mx, teléfono 01 800 999 8080 y 5340 0999 o consultar la página electrónica en internet www.condusef.gob.mx.

**Glosario de Abreviaturas**

**C.P.**    Código Postal.

**I.V.A.**    Impuesto al Valor Agregado.

**R.C.**    Responsabilidad Civil.

**R.F.C.**    Registro Federal de Contribuyentes.

**S.M.E.**    Seguro Múltiple Empresarial.

**ESPECIFICACIÓN QUE SE ADHIERE Y FORMA PARTE INTEGRANTE DE LA PÓLIZA**
**03-034-07000064-0000-01**

ESPECIFICACIONES

**Asegurado:**    Camro Transportes, S.A. de C.V.

**Dirección:** Carretera Federal a Colombia Km. 9, Col. Andrés Caballero Moreno, Agrop, Gral. Escobedo Nuevo León, C.P. 66080.

**Vigencia:** 09 de Noviembre del 2018 al 09 de Noviembre del 2019.

**Moneda:** Dólares

**Jurisdicción del Seguro:**  Mexicana.

**Tipo de Cobertura:** Todo riesgo en vuelo, taxeo, ingestión, en tierra o anclado, Guerra, Casco Aviación y Responsabilidad Civil.

**Cédula de las Aeronaves:**

| MARCA | MODELO | SERIE | AÑO | MATRICULA | CAPACIDAD |
|-------|--------|-------|-----|-----------|-----------|
| LEAR JET | 31 - A | L1080 | 1993 | N260RC | 8 + 2 |

**Pilotos:** Cualquier piloto autorizado por el asegurado con licencia en vigor y con capacidad de la aeronave asegurada mencionada en la propia licencia, con un mínimo de 300 hrs. totales registradas en bitácora incluyendo 100 hrs. en modelo de la aeronave asegurada.

**Usos de la Aeronave:** Privado y Placer, Ayuda Industrial y Aerotaxi.

**Límite Territorial de la Aeronave:** Continente Americano excluyendo Cuba.

**Aeropuerto Base de la Aeronave:**  Aeropuerto del Norte, Apodaca, N.L.

**Aeropuertos:** A, B, C, D.

**Interés Asegurable:** A elección de la Compañía se pagará, reemplazará o reparará, la pérdida accidental o los daños de la Aeronave antes descrita que surjan de los riesgos cubiertos, sin exceder la suma asegurada quedando sujeto a los deducibles señalados más adelante.

Casco

| COBERTURA | SUMA ASEGURADA |
|-----------|----------------|
| CASCO Y GUERRA | $   900,000 USCy |
| PARTES Y REFACCIONES | $     90,000 USCy |
| BUSQUEDA Y RESCATE | $     90,000 USCy |

**TOTAL SUMA ASEGURADA CASCO, PARTES Y REFACCIONES Y  BUSQUEDA Y RESCATE: $ 1,080,000.00 USCy.**

**Responsabilidad Civil:**

| COBERTURA | | SUMA ASEGURADA |
|-----------|--|----------------|
| R.C. | | $ 1, 000,000 USCy. |

1

**Mercer-Erwin/Moffett Exhibit 1.d**
**Case No. 4:20-CR-00212**
**Page 077**

**ESPECIFICACIÓN QUE SE ADHIERE Y FORMA PARTE INTEGRANTE DE LA PÓLIZA**
**03-034-07000064-0000-01**

**TOTAL SUMA ASEGURADA R.C.:** $ 1, 000,000.00 USCy.

Se excluyen pasajeros y tripulantes.

**SIEMPRE Y CUANDO:**

El asegurado hará en todo momento, todas las gestiones razonables para evitar o disminuir cualquier pérdida relacionada con esta póliza.
El asegurado se compromete a cumplir con todas las reglas de navegación aérea y condiciones de vuelo, así como con los requerimientos expedidos por cualquier autoridad competente que afecte la operación segura de la aeronave y que se asegurará de que:
    a) La aeronave esté en condiciones óptimas para volar al inicio de cada vuelo.
    b) Todos los libros de vuelo y otros registros relacionados con la aeronave que sean requeridos por cualquier regla oficial vigente serán actualizados de vez en cuando y se proporcionarán a la Compañía o a sus agentes si lo solicitan.

**Deducible:** Casco: $ 10,000 USCy Toda y cada pérdida.

**Responsabilidad civil:** Sin Deducible.

Cláusulas:
AVN   38B Cláusula de Exclusión de Riesgo Nuclear.
AVN   46B Cláusula de Exclusión de Ruido, Contaminación y otros Riesgos.
AVN   48B Cláusula de Exclusión de Guerra, Secuestro y Otros Riesgos.
AVN   52E Endoso de Extensión de Cobertura AVN 52E (Responsabilidades de Aviación)
AVN   76 Cláusula de Pagos Suplementarios.
2488  AGM00003 Cláusula de exclusión de asbestos.
LPO   344 C Texto de refacciones para aeronaves
LSW   555D Póliza de Casco de Aviación de "Guerra y Riesgos Aliados".
W_Pol. Cascos aviones_20.07.2016.2.

Sujeto a no siniestro conocido y/o reportado a la fecha al inicio de la vigencia.

GMX Seguros no serán responsable de pagar daños y/o costos originados en, basados en, atribuibles a reclamaciones generadas por o resultantes de, directa o indirectamente, total o parcialmente actividad(es) que tengan que ver con países, entidades y/o personas sancionadas por el departamento de estado de los Estados Unidos de Norteamérica.

Se entenderá que la función de análisis y defensa jurídica corresponde única y exclusivamente a GMX Seguros y operará bajo los lineamientos que establezca en su dirección y control del siniestro.

**AVN 38B CLAUSULA EXCLUSION DE CONTAMINACION RADIACTIVA DE AVIACION**

1.- Esta póliza no cubre:
    A) Pérdida o destrucción de, o daño a, la propiedad, o pérdida o gasto que resulte o se origine de ello.

    B) Responsabilidad legal de cualquier naturaleza; Directa o indirectamente causadas por, o a las cuales hayan contribuido, o resulten de, radiaciones, ionizantes o contaminación por radiactividad cualquiera que sea su origen.

2.- Quedarán cubiertos, con sujeción a todas las otras condiciones de esta póliza:
Pérdida, destrucción, daño gastos o responsabilidad civil que, de no ser por las previsiones del párrafo 1 de esta cláusula, quedarían cubiertos por esta póliza; ya sean causados directa o indirectamente por, que resulten de, o a cuya realización hayan contribuido radiaciones, ionizantes o contaminaciones por radiactividad

2

**ESPECIFICACIÓN QUE SE ADHIERE Y FORMA PARTE INTEGRANTE DE LA PÓLIZA**
**03-034-07000064-0000-01**

proveniente de cualquier material radiactivo, durante su transporte en calidad de mercancía según los reglamentos de la "Internacional Air Transporte Asociación" siempre y cuando que:

A) Sea una condición precedente a la responsabilidad de la Compañía el que el transporte de cualquier *material radiactivo cumpla, en todos sus aspectos, con los reglamentos de uso expedidos por el* "internacional Air Transporte Asociación" sobre el transporte por aire de artículos restringidos.

B) La pérdida, destrucción, daños, gastos y responsabilidad civil hayan ocurrido o resultado durante la vigencia de esta póliza, y que cualquier reclamación hecha por el asegurado en contra de la Compañía, o por cualquier reclamante en contra del asegurado, se haya realizado dentro del lapso de las tres años siguientes a la fecha del acontecimiento que haya dado lugar a la reclamación.

C) En caso de reclamación presentada al amparo de este párrafo ( 2 ) bajo la sección "cascos" de esta póliza, el nivel de contaminación haya excedido el nivel máximo permisible indicado en la siguiente escala:

| EMISORES | NIVEL MAXIMO PERMISIBLE DE SUPERFICIE DE CONTAMINACION RADIACTIVA NO DETERMINADA (Promedio sobre 300 cm2) |
|---|---|
| I.A.E.A. REGULACION DE SALUD Y SEGURIDAD DE ACUERDO CON LAS ACTUALES Y VIGENTES INSTRUCCIONES DE I.C.A.O. POR LA REGURIDAD DEL TRANSPORTE DE BIENES POR VIA AEREA. | |
| --BETA, GAMMA Y EMISORES TOXICOS BAJOS DE RAYOS ALPHA. | -NO EXCEDIENDO 4 BEQUERELES X CM2 ( 10 MICROCURIERS X CM2 ) -NO EXCEDIENDO 0.4 BEQUERELES CM2 ( 10 MICROCURIERS X CM2 ) |
| --TODOS AQUELLOS OTROS EMISORES ALPHA. | |

D) La cobertura otorgada según el párrafo (2) pueda ser cancelada por la Compañía en cualquier momento dando aviso de cancelación con 7 (siete) días de anticipación.

**AVN 38B / Traducción Libre**
**AVN 46B CLAUSULA EXCLUSION DE RUIDO, CONTAMINACION Y OTROS PELIGROS**

1.-      *La póliza a la cual se agrega este endoso, no cubre ningún daño que directa o indirectamente fuere* ocasionado por, resultare de, u ocurriere por:
A) Ruido (sea perceptible al oído humano o no), vibración, estallido sónico, o cualquier otro Fenómeno que se asocie a aquéllos;
B) Envenenamiento o contaminación de cualesquier clase y en cualesquier forma que se Presente;
C) Interferencias eléctricas o electromagnéticas;
D) Interferencia con el uso de bienes;

A menos que tales daños sean causados por o den como resultado un incendio, colisión o explosión por estallido, o una emergencia registrada durante el vuelo y que diera origen a alguna maniobra de la aeronave fuera de lo normal.

2.-      En lo que respecta a cualquier disposición de la póliza relacionada con cualesquier obligaciones de la compañía Aseguradora en la investigación y defensa de reclamaciones, tal disposición no será aplicable ni la Compañía Aseguradora estará obligada a defender:
A) Reclamaciones por daños excluidos según el párrafo 1 de esta cláusula;
B) Reclamaciones sobre riesgos cubiertos por la póliza, que se encuentren combinados con los excluidos por dicho párrafo 1.

3.-      En lo que respecta a las reclamaciones combinadas a que se refiere el inciso anterior, b), la Compañía Aseguradora reembolsará la proporción asignada a las reclamaciones sobre riesgos cubiertos por la póliza respectiva, derivada de las siguientes erogaciones, con sujeción, sin embargo, a la debida comprobación de los

3

**Mercer-Erwin/Moffett Exhibit 1.d**
**Case No. 4:20-CR-00212**
**Page 079**

**ESPECIFICACIÓN QUE SE ADHIERE Y FORMA PARTE INTEGRANTE DE LA PÓLIZA**
**03-034-07000064-0000-01**

gastos por siniestros y de los límites de dicha póliza:
  i)  Daños que por sentencia deba pagar el asegurado;
  ii)  Honorarios de defensa y gastos judiciales en que haya incurrido el asegurado.

4.-      Nada de lo indicado por el presente anulará cualquier cláusula de exclusión de contaminación radiactiva u otros riesgos, que se anexe a, o forme parte de, la presente póliza.

**AVN 46B / Traducción Libre**

**AVN 48B CLAUSULA EXCLUSION DE GUERRA, PIRATERIA Y OTROS RIESGOS  (AVIACION):**

Esta póliza no cubre reclamaciones que directa o indirectamente sean causadas por, o resulten de:
  A) Guerra, Invasión, actos de enemigos extranjeros, hostilidades (haya declaración de guerra o no), guerra civil, rebelión, revolución, insurrección, ley marcial, poder militar o usurpado, o tentativa de usurpación del poder.
  B) Detonación hostil de cualquier arma de guerra que emplee fisión atómica o nuclear, fusión, o cualquier otro tipo de reacción, fuerza radiactiva, u otras materias similares.
  C) Huelgas, motines, conmoción civil o disturbios de carácter laboral.
  D) Actos realizados por una o más personas, ya sean agentes de un poder soberano o no, realizados con fines políticos, o de terrorismo, y ya fuere que la pérdida o daños resultantes fueran accidentales o internacionales.
  E) Actos realizados por personas mal intencionadas, o actos de sabotaje.
  F) Confiscación, nacionalización, restricción, detención, apropiación, requisición para fines de uso, o siguiendo órdenes de cualquier autoridad o gobierno (ya sea civil, militar o "de facto", pública o local)
  G) Secuestro, apresamiento o ejercicio ilícito del control de la aeronave, o de su tripulación durante el vuelo (incluyendo cualquier interno para realizar dicho secuestro o control), realizados por personas que se encuentren a bordo de la aeronave y que estén actuando sin el consentimiento del asegurado.

Además, esta póliza tampoco cubre pérdidas que sobrevengan cuando la aeronave se encuentre fuera del control del Asegurado debido a cualquiera de los riesgos antes mencionados. Se considerará que la aeronave ha sido restituida al control del Asegurado cuando la misma se encuentre a salvo bajo el control del Asegurado, en un campo de aterrizaje ubicado en límites geográficos no excluidos por esta póliza y listo para entrar en operaciones. El regreso a salvo significará que la aeronave se encuentre estacionada con los motores parados y que no se encuentre bajo ninguna coacción.

**AVN 48B / Traducción Libre**

**Endoso de Extensión de Cobertura AVN 52E (Responsabilidades de Aviación)**

1.      CONSIDERANDO que la póliza de la que este endoso forma parte, incluye la Cláusula de exclusión de Guerra, Secuestro y Otros Riesgos, (Cláusula AVN 48B), Y EN CONSIDERACIÓN de una prima adicional de---------; queda por este medio, entendido y acordado que a partir de las------------; todos los párrafos de la Cláusula AVN 48B, excepto --------, la cual forma parte de esta Póliza, quedan cancelados, SUJETO A todos los términos y condiciones de este Endoso.

2.      EXCLUSIÓN aplicable a cualquier cobertura extendida, respecto a la cancelación del párrafo (a) de la cláusula AVN 48B.
La cobertura no deberá incluir responsabilidad por daño a cualquier tipo de propiedad en la tierra, ubicada fuera de Canadá y Estados Unidos de Norteamérica, al menos que sea causada, o provocada por el uso de la Aeronave.

3.      Limitación de Responsabilidad
El límite de Responsabilidad de los Suscriptores con respecto a la cobertura proveída por este Endoso esta sublimitada a --------- o lo aplicable por el límite de la Póliza, el que sea menor de los dos. Aplicable a cualquier

4

**ESPECIFICACIÓN QUE SE ADHIERE Y FORMA PARTE INTEGRANTE DE LA PÓLIZA**
**03-034-07000064-0000-01**

Ocurrencia y en el agregado anual, excepto con respecto a los pasajeros para los cuales los límite(s) completos de la Póliza deben ser aplicados. Este sublímite debe aplicar dentro del límite total de la Póliza y no en adición a la misma.

4.    Terminación Automática, en el grado dispuesto más adelante , la extensión de cobertura de éste Endoso debe ser TERMINADA AUTOMÁTICAMENTE en las siguientes circunstancias:

a.    Toda la Cobertura
    En el momento que estalle una guerra (ya sea declarada, o no) entre cualquiera dos o más de las siguientes naciones nominadas: Francia, La República del Pueblo Chino, La Federación Rusa, Reino Unido y los Estados Unidos de Norteamérica.

    b.  Cualquier cobertura extendida respecto a la cancelación del párrafo (a) de la Cláusula AVN 48B
    En el momento que sea detonada hostilmente cualquier arma de guerra  empleando fusión, o fisión atómica, o nuclear, o cualquier fuerza o materia similar de reacción, o radioactiva, cualquier clase; o en cualquier momento en que ocurra dicha detonación, ya sea que la aeronave asegurada este involucrada o no.
    c.  Todas las coberturas respecto a cualquier confiscación, del título, o del uso de la Aeronave asegurada:
En el momento de la confiscación.

CONSIDERANDO QUE  si una aeronave asegurada está en el aire cuando ocurran los eventos (a), (b), o (c), entonces la cobertura proporcionada por este Endoso, (al menos que haya sido cancelado, terminado, o suspendido de alguna manera), continuará respecto a dicha aeronave hasta que haya completado su primer aterrizaje después de cualesquiera de los eventos y de que todos los pasajeros hayan desembarcado.

5.    REVISIÓN Y CANCELACIÓN

a.    Revisión de Primas y, o de los Límites Geográficos ( 7 días)
Los suscriptores podrán dar aviso para revisar las primas, y /o límites geográficos. Este aviso surtirá efecto al terminar el séptimo día posterior a las 23.59 horas del Meridiano de Greenwich del día en que dicho aviso sea entregado.

b.    Cancelación Limitada (48 horas)
Después de una detonación hostil, según lo especificado en el punto 4. (b) anterior, los suscriptores podrán dar aviso de cancelación de una, o más partes de la cobertura proporcionada por el párrafo 1. De este Endoso, en referencia a los párrafos (c), (d), (e), (f) y, o (g) de la Cláusula AVN 48B. En este aviso surtirá efecto al terminar las cuarenta y ocho horas posteriores a las 23.59 horas del meridiano de Greenwich, del día en que dicho aviso sea entregado.

c.    Cancelación ( 7 días)
La cobertura proporcionada por este Endoso puede ser cancelada, ya sea por los Suscriptores, ya por el Asegurado, dando aviso, el cual surtirá efecto al terminar el séptimo día posterior a las 23.59 horas del Meridiano de Greenwich, del día en que dicho aviso sea entregado.

d.    Avisos.
Todos los avisos aquí mencionados deberán ser por escrito.
**AVN 52E 20.09.2001.**

**Cláusula de Pagos Suplementarios**

Queda entendido y convenido que se extiende esta póliza para incluir cobertura, según se establece con mayor detalle en los incisos que se especifican más adelante. Queda expresamente entendido que no se otorga cobertura bajo los términos de los incisos de esta cláusula que no se especifican más adelante.

5

**Mercer-Erwin/Moffett Exhibit 1.d**
**Case No. 4:20-CR-00212**
**Page 081**

**ESPECIFICACIÓN QUE SE ADHIERE Y FORMA PARTE INTEGRANTE DE LA PÓLIZA**
**03-034-07000064-0000-01**

Los aseguradores convienen en indemnizar al asegurado por concepto de:

(a) Cualesquiera gastos razonablemente incurridos en relación con operaciones de búsqueda y rescate con respecto a una aeronave asegurada bajo los términos de esta póliza, la cual está perdida y que no se ha reportado después de exceder del máximo tiempo de vuelo.

(b) Cualesquiera gastos razonablemente incurridos en relación con la aplicación de espuma a la pista de aterrizaje con el propósito de evitar o mitigar posible pérdida o daño a consecuencia de una falla o la posible falla de una aeronave asegurada bajo los términos de esta póliza.

(c) Cualesquiera gastos razonablemente incurridos con el propósito de levantar, remover o destruir los restos de una aeronave asegurada bajo los términos de la misma, así como los contenidos de la misma, incluyendo cualquier intento de levantar, remover o destruir los restos de una aeronave asegurada bajo los términos de esta póliza.

(d) Cualesquiera costos y gastos que el asegurado tiene la obligación de pagar en relación con cualquier investigación pública por parte de las autoridades de aviación civil o cualquier otra autoridad con jurisdicción sobre el asunto en relación con un incidente que involucra la aeronave asegurada.

Se otorga cobertura bajo los términos de los incisos (a, b, c y d) anteriores.

Siempre que la responsabilidad por parte de los aseguradores no excederá de $         USCy en el agregado, en lo que se refiere a todos los incisos asegurados.

**AVN 76  09.02.01**

**Cláusula de exclusión de asbestos.**

Esta póliza no cubre reclamo alguno de cualquier clase, directa o indirectamente relacionado a, proveniente de o a consecuencia de:
1.      la presencia actual, supuesta o amenazada de asbestos en cualquier forma, o cualquier material o producto conteniendo, o supuesto que contenga asbestos; o
2.      cualquier obligación, petición, demanda, orden, o exigencia estatutaria o regulatoria que algún asegurado u otros prueben para monitorear, limpiar, remover, contener, procesar, neutralizar, proteger en contra de o en cualquier otro modo para responder a la presencia actual, alegada o amenazada de asbestos o cualquier material o producto contiendo, o supuesto que contenga asbestos.

Sin embargo esta exclusión no aplicara a cualquier reclamo provocado por o resultando en un choque, incendio, explosión o colisión o una emergencia en vuelo registrada provocando la operación anormal de la aeronave.

No obstante cualquier provisión de esta Póliza, los aseguradores no tendrán el deber de investigar, defender o pagar los costos de defensa con respecto a cualquier reclamo excluido en su totalidad o en parte bajo los párrafos 1 o 2 de esto.
TODOS LOS DEMAS TERMINOS Y CONDICIONES DE LA POLIZA PERMANECEN SIN CAMBIO.

**2488AGM00003**

**Texto de refacciones para aeronaves**

1.      *Intención de la cobertura*

Sujeto a los términos, condiciones y exclusiones que más adelante se establecen, esta póliza ampara bienes, siendo únicamente turbinas, refacciones y equipo que se destina para instalar en o formar parte de una aeronave, siendo propiedad del asegurado o propiedad de terceros por los cuales el asegurado es responsable,

6

**Mercer-Erwin/Moffett Exhibit 1.d**
**Case No. 4:20-CR-00212**
**Page 082**

## ESPECIFICACIÓN QUE SE ADHIERE Y FORMA PARTE INTEGRANTE DE LA PÓLIZA
### 03-034-07000064-0000-01

mientras dichos bienes están bajo el cuidado, custodia o control del asegurado en tierra o mientras están siendo transportados como carga a bordo de aeronaves (incluyendo las aeronaves del asegurado) y/o embarcaciones (aprobadas y/o sujetas a cobertura a una prima por convenirse) y/o mientras están siendo transportados carretera y/o ferrocarril y/o otros medios de transporte.

2.    Condiciones

Todo riesgo de pérdida o daño material (sujeto a las exclusiones que más adelante se establecen), pero

Transporte aéreo
Cláusulas de carga del instituto (aire) 1/1/82

Transporte marítimo
Cláusulas de carga del instituto (a) 1/1/82

3.    Límites geográficos

Esta póliza ampara los bienes antes mencionados, contra los riesgos antes mencionados, en (respuesta).

4.    Exclusiones

Esta póliza no ampara:--

(a)    La pérdida de o el daño a los bienes que ocurre en cualquier momento posterior al inicio de la operación de instalarlo o colocarlo a bordo de la aeronave para la cual se destina.

(b)    La pérdida de o el daño a una turbina que ocurre durante la operación o prueba de la misma.

(c)    Rotura mecánica o falla eléctrica.

(d)    Perdida o daño ocasionado por desgaste o deterioro gradual.

(e)    Perdida o daño ocasionado por o a consecuencia de la omisión por parte del asegurado en lo que se refiere al uso de medios razonables para salvaguardar y conservar los bienes en el momento de y después de cualquier pérdida o daño.

(f) La pérdida de o el daño a cualquier bien que ha sido removido de una aeronave y que se pretende volver a instalar en la aeronave y no reemplazarlo con cualquier otro bien.

(g)    La pérdida de o el daño a cualquier bien asegurado bajo los términos de esta póliza que ocurre mientras está siendo sometido a cualquier proceso y directamente a consecuencia de dicho proceso.

(h)    Bienes transportados a bordo de una aeronave como parte de su "kit" de refacciones.

(i) Bienes instalados en o que forman parte de una aeronave.

(j) Los bienes, propiedad de terceros, transportados o almacenados por el asegurado, a cambio de una compensación.

(k)    Desaparición misteriosa o pérdida inexplicable o faltante que se descubren en el momento de realizar un inventario.

5.    Esta póliza está sujeta a la cláusula de exclusión de riesgos nucleares AVN 71.

7

**Mercer-Erwin/Moffett Exhibit 1.d**
**Case No. 4:20-CR-00212**
**Page 083**

**ESPECIFICACIÓN QUE SE ADHIERE Y FORMA PARTE INTEGRANTE DE LA PÓLIZA**
**03-034-07000064-0000-01**

6.      Esta póliza no ampara reclamaciones ocasionadas por:

(a)      Guerra, invasión, actos de enemigos extranjeros, hostilidades (con o sin una declaración de guerra), guerra civil, rebelión, revolución, insurrección, ley marcial, poder militar o la usurpación del poder o intentos de usurpación.

(b)      Cualquier detonación hostil de un arma de guerra que emplea fisión y/o fusión atómica o nuclear, o cualquier reacción, fuerza o material radioactivo similar.

(c)      Huelgas, motines, disturbios de carácter civil o laboral.

(d)      Cualquier acto por parte de una o más personas, sean o no agentes de una potencia soberana, para propósitos políticos o terroristas, independientemente de que la pérdida o el daño ocasionado sea accidental o intencional.

(e)      Cualquier acto mal intencionado o acto de sabotaje.

(f) Confiscación, nacionalización, incautación, restricción, detención, expropiación, requisición en propiedad o en usufructo, por o bajo órdenes de cualquier gobierno (sea civil, militar o de facto) o autoridad pública o local.

(g)      El secuestro o cualquier incautación ilegal o ejercicio de control indebido sobre la aeronave o la tripulación al estar en vuelo (incluyendo cualquier intento de dicha incautación o ejercicio de control), realizado por cualquier persona o personas a bordo de la aeronave que están actuando sin el consentimiento del asegurado.

(h)      El hecho de que cualquier aeronave este fuera del control del asegurado, con motivo de un riesgo excluido de cobertura bajo los términos de los párrafos (f) o (g).

7.    Deducible

Cada reclamación por perdida o daño que surge a consecuencia de un evento será ajustado por separado y, del monto de dicha reclamación ajustada, se deducirá la suma de (respuesta), pero reclamaciones por perdida o daño ocasionado por incendio, vientos tempestuosos, tornado y ciclón serán pagadas en su totalidad.

8.    Límites de responsabilidad

El límite de responsabilidad de la compañía no excederá de: $       USD.

(1)    (respuesta) cualquier edificio y/o ubicación.

(2)    (respuesta) cualquier envío.

(3)    El costo por concepto de la reparación o el costo de reposición o el valor asegurado, cualquier sea menor, en lo que se refiere a cualquier bien.

9.    Cláusula de reportes y ajuste de la prima

La prima por la cantidad de (respuesta) es la prima mínima y de depósito y será ajustada al vencimiento de esta póliza, de la siguiente manera:

(a) Dentro del transcurso de un mes, a partir de la fecha de vencimiento, el asegurado debe proporcionar a la compañía una declaración en donde se señalan todos los valores a riesgo en todas las ubicaciones al último día de cada mes durante la vigencia de la póliza.  Se sumaran dichas cifras y se dividirá el resultado

8

**Mercer-Erwin/Moffett Exhibit 1.d**
**Case No. 4:20-CR-00212**
**Page 084**

**ESPECIFICACIÓN QUE SE ADHIERE Y FORMA PARTE INTEGRANTE DE LA PÓLIZA**
**03-034-07000064-0000-01**

por el número de meses que tenía la vigencia de la póliza y la prima será pagadera con base en el monto resultante mediante la aplicación de una cuota de (respuesta).

(b) Si se cancela esta póliza antes de la fecha de vencimiento, el asegurado debe reportar el total de los valores mensuales a riesgo para cada mes completo antes de la fecha en que surte efecto la cancelación y la prima pagadera será calculada con en dichos valores reportados de la manera y con base en la cuota antes mencionada.

Es una condición de este seguro que el asegurado mantenga registros exactos de todos los bienes asegurados bajo los términos de esta póliza, así como los valores de los mismos.

10.     Clausula de salvamentos y recuperaciones

Todos los salvamentos, recuperaciones y pagos recuperados o recibidos después del finiquito de una reclamación bajo los términos de esta póliza serán aplicados como si hubieran sido recuperados o recibidos antes de dicho finiquito y las partes realizaran todos los ajustes necesarios.

11.     Clausula de siniestros

El pago de un siniestro bajo los términos de esta póliza no operara para reducir la suma asegurada.

12.     Clausula de cancelación

Esta póliza puede ser cancelada por el asegurado o la compañía mediante el envío por correo a la otra parte de un aviso por escrito, dirigido a la dirección señalada en la póliza, en donde se señala, con por lo menos (respuesta) días de anticipación, la fecha en que surtirá efecto la cancelación. El envío de la notificación, de la manera antes mencionada, será evidencia suficiente de haber dado aviso, y la fecha y hora de cancelación, señaladas en el aviso, se convertirán en el vencimiento de la póliza. La entrega personal de dicho aviso por escrito, sea por el asegurado o la compañía, será el equivalente de su envío por correo. En caso de cancelación, el asegurado acepta reportar los valores a riesgo y pagar la prima correspondiente a favor de la compañía, de acuerdo con lo establecido en la "clausula de reportes y ajuste de la prima", hasta la fecha de cancelación.

**10/96**
**LPO344C**

**PÓLIZA DE CASCO DE AVIACIÓN DE "GUERRA Y RIESGOS ALIADOS"**

**SECCIÓN UNO: PÉRDIDA O DAÑO DE AERONAVE**

Sujeto a los términos, condiciones y limitaciones previstas a continuación, esta Póliza cubre la pérdida o el daño de la Aeronave descrita en la Cédula en contra de reclamaciones excluidas de la Póliza "Todo Riesgo" de Casco del Asegurado causado por:

(a)     Guerra, invasión, actos de enemigos extranjeros, hostilidades (se haya declarado o no la guerra), guerra civil, rebelión, revolución, insurrección, ley marcial, poder militar o usurpado o intentos de usurpación de poder.

(b)     Huelgas, riñas, conmociones civiles y disturbios laborales.

(c)     Cualquier acto de una o más personas, sean o no agentes de un poder soberano, con fines políticos o terroristas y ya sea que la pérdida o daño que resulte de los mismos sea accidental o intencional.

(d)     Cualquier acto malicioso o acto de sabotaje.

9

**Mercer-Erwin/Moffett Exhibit 1.d**
**Case No. 4:20-CR-00212**
**Page 085**

**ESPECIFICACIÓN QUE SE ADHIERE Y FORMA PARTE INTEGRANTE DE LA PÓLIZA**
**03-034-07000064-0000-01**

(e)    Confiscación, nacionalización, incautación, restricción, detención, apropiación, requisición de título o uso por o bajo las órdenes de algún gobierno (ya sea civil, militar o de hecho) o autoridad pública o local.

(f)    Secuestro o cualquier incautación ilícita o ejercicio incorrecto del control de la Aeronave o de la tripulación en vuelo (incluyendo cualquier intento de dicha incautación o control) hecho por alguna persona o personas a bordo de la Aeronave y que actúen sin el consentimiento del Asegurado. Para los fines de este párrafo (f) únicamente, se considera que una aeronave está en vuelo en cualquier momento desde el momento en que se cierren sus puertas exteriores posterior al abordaje o embarcación hasta el momento en que dicha puerta es abierta para desembarcar o cuando la aeronave está en movimiento. Se considera que una aeronave de ala giratoria se encuentra en vuelo cuando los rotores se encuentran en movimiento como resultado de la acción de un motor, el momento generado del mismo, o autorotación.

Asimismo esta Póliza cubre las reclamaciones excluidas de la Póliza "Todo Riesgo" de Casco por ocurrencias mientras que la Aeronave se encuentre fuera del control del Asegurado con motivo de cualquiera de los riesgos antes mencionados. Se considerará que la Aeronave ha vuelto al control del Asegurado, con el regreso seguro de la Aeronave al Asegurado en un campo aéreo no excluido de los límites geográficos de esta Póliza, y totalmente en condiciones para la operación de la Aeronave (dicho regreso seguro requerirá que la Aeronave sea estacionada con los motores apagados y bajo ninguna coacción).

## SECCIÓN DOS: GASTOS DE EXTORSIÓN Y SECUESTRO

1.    Esta Póliza también indemnizará al Asegurado, sujeto a los términos, condiciones, exclusiones y limitaciones previstas a continuación, y hasta por el límite descrito en la Cédula, por el 90% de cualquier pago efectuado adecuadamente con respecto a:

(a)    amenazas en contra de la Aeronave descrita en la Cédula o de sus pasajeros o tripulación hechas durante la vigencia de esta Póliza.

(b)    Gastos extra en que se incurra necesariamente después de una confiscación, etc (al igual que la cláusula (e) de la Sección Uno) o secuestro, etc (al igual que la cláusula (f) de la Sección Uno) de cualquier Aeronave descrita en la Cédula.

2.    No se otorgará ninguna cobertura bajo esta Sección de la Póliza en ningún territorio en el que dicho seguro no sea lícito, y el Asegurado en todo momento será responsable de asegurarse de que no se realice ningún acuerdo que no sea permitido por las autoridades correspondientes.

## SECCIÓN TRES: EXCLUSIONES GENERALES

Esta Póliza excluye la pérdida, daño o gasto causado por una o cualquier combinación de los siguientes:

(a)    Guerra (haya o no una declaración de guerra) entre cualquiera de los siguientes estados: el Reino Unido, Estados Unidos de América, Francia, la Federación Rusa, la República Popular de China; no obstante ello, si una Aeronave se encontrara en el aire al momento en que dicha guerra estalle, esta exclusión no será aplicable con respecto a dicha Aeronave hasta que dicha Aeronave haya concluido su primer aterrizaje posterior a ese momento;

(b)    Confiscación, nacionalización, incautación, restricción, detención, apropiación, requisición de título o uso por o bajo las órdenes de la autoridad del gobierno(s) mencionado en la Cédula, o cualquier autoridad pública o local bajo su jurisdicción;

(c)    La emisión, descarga, liberación o escape de cualquier material químico, biológico o bioquímico o la amenaza de los mismos; sin embargo, esta exclusión no será aplicable:

10

**Mercer-Erwin/Moffett Exhibit 1.d**
**Case No. 4:20-CR-00212**
**Page 086**

**ESPECIFICACIÓN QUE SE ADHIERE Y FORMA PARTE INTEGRANTE DE LA PÓLIZA**
**03-034-07000064-0000-01**

(i) Cuando dichos materiales sean utilizados o se amenace que serán usados única y directamente en:

1. el Secuestro, incautación ilícita o ejercicio incorrecto del control de una Aeronave descrita en la Cédula y en este caso sólo con respecto a la pérdida o daño de dicha aeronave como se encuentra asegurada bajo la cláusula (f) de la Sección Uno anterior; o

2. cualquier amenaza en contra de una Aeronave descrita en la Cédula o sus pasajeros o tripulación y únicamente con respecto a pagos asegurados bajo la Sección Dos Anterior;

(ii) en cualquier caso distinto de lo previsto en el inciso 1 anterior, a la pérdida o daño causado a una Aeronave si el uso de dichos materiales es hostil y se origina única y directamente:

1. A bordo de dicha Aeronave, ya sea que se encuentre en tierra o en aire.

O

2. De forma externa a dicha Aeronave y cause un daño físico a la Aeronave mientras que las ruedas de la Aeronave no se encuentren en contacto con el suelo.

Cualquier emisión, descarga, liberación o escape que se origine de forma externa a la Aeronave y que cause daños a la Aeronave como resultado de la contaminación sin que exista ningún otro daño físico al exterior de la Aeronave, no se encontrará cubierto por esta Póliza.

(d)    cualquier deuda, falla de otorgar fianza o garantía o cualquier otra causa financiera bajo una orden de una corte o de cualquier otra forma;

(e)    la ejecución de una hipoteca o el intento de ejecución de una hipoteca sobre la Aeronave ya sea por el titular o que derive de cualquier acuerdo contractual del que algún Asegurado protegido bajo esta Póliza sea parte;

(f)    demora, pérdida de uso, o con excepción de lo específicamente previsto por la Sección Dos, cualquier otra pérdida consecuencial; ya sea posterior a una pérdida o daño de la Aeronave o de cualquier otra forma;

(g)    cualquier uso, hostil o de otro tipo, de contaminación o materia radioactiva, pero esta exclusión no será aplicable a la pérdida o daño de una Aeronave si dicho uso es hostil y se origina única y directamente:

(i)    A bordo de dicha Aeronave, ya sea que se encuentre en tierra o en aire; o

(ii)    De forma externa a dicha Aeronave y cause un daño físico a la Aeronave mientras que las ruedas de la Aeronave hayan dejado de estar en contacto con el suelo.

Dicho uso originado en el exterior de la Aeronave que cause un daño a la Aeronave como resultado de la contaminación sin ningún otro daño físico causado al exterior de la Aeronave, no se encuentra cubierto por esta Póliza.

(h)    cualquier uso, hostil o de otro tipo, de un pulso electromagnético, pero esta exclusión no será aplicable a la pérdida o daño causado a una Aeronave si dicho uso se origina única y directamente a bordo de dicha Aeronave, ya sea que se encuentre en tierra o aire.

(i)    Cualquier detonación hostil o de cualquier otro tipo, de algún dispositivo que emplee fisión y/o fusión atómica o nuclear u otra reacción similar y no obstante lo previsto en los incisos (g) y (h) anteriores, cualquier contaminación radioactiva y pulso electromagnético que resulte directamente de dicha detonación, también se encuentra excluido por esta Póliza.

11

**Mercer-Erwin/Moffett Exhibit 1.d**
**Case No. 4:20-CR-00212**
**Page 087**

**ESPECIFICACIÓN QUE SE ADHIERE Y FORMA PARTE INTEGRANTE DE LA PÓLIZA**
**03-034-07000064-0000-01**

### SECCIÓN CUATRO: CONDICIONES GENERALES

1.      Esta Póliza está sujeta a las mismas garantías, términos y condiciones (excepto con respecto a la prima, las obligaciones de investigar y defender, el acuerdo de renovación (si lo hubiere), el monto del deducible o la disposición de auto aseguramiento, cuando sean aplicables, Y CON EXCEPCIÓN DE LAS DISPOSICIONES EN CONTRARIO CONTENIDAS EN ESTA PÓLIZA), contenidas o que puedan ser adicionadas a la Póliza "Todo Riesgo" de Casco del Asegurado.

2.      En caso de que hubiere algún Cambio Material en la naturaleza o área de las operaciones del Asegurado, el Asegurado deberá notificar inmediatamente de dicho Cambio a las Suscriptoras; ninguna reclamación que derive de forma subsecuente a un Cambio Material sobre el cual el Asegurado tuviera control, será recuperable bajo esta Póliza salvo que dicho cambio hubiere sido acordado por las Suscriptoras.

"Cambio Material" significa cualquier cambio en la operación del Asegurado que las Suscriptoras razonablemente pudieran considerar que incrementa su riesgo en grado o frecuencia o que reduce sus posibilidades de recuperación o subrogación.

3.      La debida observancia y cumplimiento de los términos, disposiciones, condiciones y endosos de esta Póliza, serán condiciones precedentes a cualquier responsabilidad de las Suscriptoras de hacer algún pago bajo esta Póliza; en particular, el Asegurado deberá usar todos los esfuerzos razonables para asegurar que él cumple y continúe cumpliendo con las leyes (locales o de otro tipo) de cualquier país dentro de cuya jurisdicción pudiera encontrarse la Aeronave, y obtener todos los permisos necesarios para la operación lícita de la Aeronave.

4.      Sujeto a las disposiciones de la Sección Cinco, y de la Cédula, las Suscriptoras acuerdan seguir las disposiciones de la Póliza "Todo Riesgo" de Casco con respecto a la Cobertura de Incumplimiento de Garantía, Acuerdos de Sacar en Paz y a Salvo y Renuncias de Subrogación.

### SECCIÓN CINCO: CANCELACIÓN, REVISIÓN Y TERMINACIÓN AUTOMÁTICA

#### Modificación de los Términos o Cancelación

1.      (a) Las Suscriptoras podrán notificar, surtiendo efectos después de la expiración de 7 días a partir de la media noche G.M.T. del día en que se emita la notificación, para revisar la tarifa de la prima y/o los límites geográficos. En caso de que la revisión de la tarifa de la prima y/o de los límites geográficos no sea aceptada por el Asegurado, entonces a la expiración de dichos 7 días, esta Póliza será cancelada en esa fecha.

#### Revisión Automática de Términos o Cancelación

(b)      No obstante el inciso 1(a) anterior, esta Póliza está sujeta a la revisión automática por parte de las Suscriptoras de la tarifa de la prima y/o las condiciones y/o los límites geográficos a partir de la expiración de 7 días contados a partir del momento de alguna detonación hostil de un arma de guerra que emplee fisión y/o fusión atómica o nuclear u otra reacción similar o fuerza o materia radioactiva en dondequiera y cuando quiera que pudiera ocurrir dicha detonación, independientemente de que la Aeronave asegurada pudiera o no ser directamente afectada. En caso de que la revisión de la tarifa de la prima y/o de las condiciones y/o límites geográficos no fuera aceptada por el Asegurado, a la expiración de dichos 7 días, esta Póliza será cancelada en esa fecha.

#### Cancelación por Notificación

(c)      Esta Póliza podrá ser cancelada por el Asegurado o las Suscriptoras mediante notificación con no menos de 7 días de anticipación al final de cada período de 3 meses a partir del inicio de vigencia de la misma.

12

**ESPECIFICACIÓN QUE SE ADHIERE Y FORMA PARTE INTEGRANTE DE LA PÓLIZA**
**03-034-07000064-0000-01**

**Terminación Automática**

2.      Independientemente de que se haya o no notificado la cancelación, este seguro TERMINARÁ AUTOMÁTICAMENTE

(iii)      A partir del estallamiento de una guerra (haya o no una declaración de guerra) entre cualquiera de los siguientes estados: el Reino Unido, Estados Unidos de América, Francia, la Federación Rusa, la República Popular de China.

SIN EMBARGO, si una Aeronave se encontrara en el aire al momento en que dicha guerra estalle, este seguro, sujeto a sus términos y condiciones y siempre y cuando no sea cancelado, terminado o suspendido, continuará con respecto a dicha Aeronave hasta que dicha Aeronave haya concluido su primer aterrizaje posterior a ese momento.

04/06
LSW555D

13

**Mercer-Erwin/Moffett Exhibit 1.d**
**Case No. 4:20-CR-00212**
**Page 089**



**Control de Pago**
**Grupo Mexicano de Seguros S.A. de C.V.**
R.F.C. GMS971110BTA
www.gmx.com.mx
Tecoyotitla 412 Edificio GMX, Col. Ex Hacienda de Guadalupe Chimalistac, C.P. 01050,
Del. Álvaro Obregón, Ciudad de México, México Tel. (55) 5480 4000

**DATOS DEL CONTRATANTE**

| R.F.C. | CTR0906030G1 |
|---|---|
| Nombre: | CAMRO TRANSPORTES, S.A. DE C.V. |
| Calle: | CARRETERA FEDERAL COLOMBIA KM 9 . |
| Colonia: | ANDRES CABALLERO MORENO AGROP |
| Mplo. o Del.: | GENERAL ESCOBEDO, NUEVO LEON, MEXICO 66060 |
| Nombre del Agente: | LRC AGENTE DE SEGUROS Y DE FIANZAS SA DE CV |
| Clave de Agente: | 1275 | Srio.: | 1/1 |
| Póliza No. | 03-034-07000064-0000-01 |
| Vigencia: | 09/11/2018 AL 09/11/2019 |

Al ejecutar su pago, solicite su recibo de primas a su agente de seguros
1. Si paga con cheque debe ser a nombre de *Grupo Mexicano de Seguros S.A. de C.V.*
Anotar la leyenda de *NO NEGOCIABLE* para abono en cuenta beneficiario *"Paga en una sola exhibición"*
2. Si su pago se realiza después del plazo de gracia; (como lo estipula el contrato de seguro en el artículo 40) con silvestre ocurrido, el importe de la prima pagada será devuelta al asegurado mediante cheque nominativo a su favor, eximiendo de toda responsabilidad a *Grupo Mexicano de Seguros S.A. de C.V.*

Señalar forma de pago:

Efectivo [ ]    Transferencia bancaria [ ]    Cheque [ ]
Tarjeta de Crédito o Débito [ ]    No Identificado [ ]

En cualquier forma del pago de la prima, el Recibo de Primas debidamente sellado por el Banco o por la aseguradora hará prueba plena, no obstante lo anterior y a la falta de éste, el estado de cuenta en donde aparezca dicho cargo presumirá el pago hasta en tanto la institución entregue la factura correspondiente.

---

**Aviso de Cobro**
MO1 - 34764
Fecha y Hora de Emisión
09/11/2018 05:30:43 PM
Expedido en:
RIO TAMESIS 2ª PISO 1010 -  DEL VALLE, C.P.SAN PEDRO GARZA GARCIA, 66220, NUEVO LEON, MEXICO

Expedido por:

**EMISIÓN**

| CANTIDAD | P. UNITARIO | | IMPORTE AL COBRO |
|---|---|---|---|
| 1 | 8,250.00 | PRIMA NETA | $ 8,250.00 |
| 1 | 0.00 | RECARGOS | $ 0.00 |
| 1 | 75.00 | DERECHOS | $ 75.00 |
| | | SUBTOTAL | $ 8,325.00 |
| | | I.V.A. 16.00% | $ 1,332.00 |
| | | PRIMA TOTAL | $ 9,657.00 |
| 1 | (0.00) | DESC. ART. 41 | $ (0.00) |
| | | PAGO CON DESCUENTO | $ NO APLICA |

Importe con letra NUEVE MIL SEISCIENTOS CINCUENTA Y SIETE DOLARES 00/100 USD
Moneda DOLAR AMERICANO

Ref. No. 03181200682018529208
Si paga con cheque debe ser a favor de Grupo Mexicano de Seguros S.A. de C.V.

| BANCOS | PESOS | DOLARES |
|---|---|---|
| Bancomer | CIE: 913939 | CIE: 913970 |
| Santander | CONTRATO: 2501 | CUENTA: 82500486214 |
| BANORTE | CEP: 143778 | CEP: 80664 |
| Scotiabank | SERVICIO: 1720 | SERVICIO: 1733 |
| citibanamex | PA: 8149/01 | |
| MULTIVA | CTA: 6422063 | No Aplica |
| Bancomer | CLABE: 012914002009130398 | No Aplica |

El importe de recibo podrá ser pagado en las ventanillas de sucursales bancarias mencionadas en la parte superior, favor de remitirse a la cuenta o servicio según la institución que corresponde a través de la referencia bancaria.

---



**Control Agente**
**Grupo Mexicano de Seguros S.A. de C.V.**
R.F.C. GMS971110BTA
www.gmx.com.mx
Tecoyotitla 412 Edificio GMX, Col. Ex Hacienda de Guadalupe Chimalistac, C.P. 01050,
Del. Álvaro Obregón, Ciudad de México, México Tel. (55) 5480 4000

**DATOS DEL CONTRATANTE**

| R.F.C. | CTR0906030G1 |
|---|---|
| Nombre: | CAMRO TRANSPORTES, S.A. DE C.V. |
| Calle: | CARRETERA FEDERAL COLOMBIA KM 9 . |
| Colonia: | ANDRES CABALLERO MORENO AGROP |
| Mplo. o Del.: | GENERAL ESCOBEDO, NUEVOLEON,  MEXICO 66060 |
| Tipo de seguro | CARGOS AEREOS   LOS CICLOS |
| Póliza No. | 03-034-07000064-0000-01 |
| Vigencia desde: | 09/11/2018 AL 09/11/2019 |
| Conducto de envío: | | Serie de recibo: | 1/1 |
| Fecha de Expedido: | 09/11/2018 05:30:43 PM | Clave de Agente: | 1275 |
| Nombre del agente: | LRC AGENTE DE SEGUROS Y DE FIANZAS SA DE CV |
| Observaciones: | |

---

**Aviso de Cobro**
MO1 - 34764
Fecha y Hora de Emisión
09/11/2018 05:30:43 PM
Expedido en:
RIO TAMESIS 2ª PISO 1010 -  DEL VALLE, C.P.SAN PEDRO GARZA GARCIA, 66220, NUEVO LEON, MEXICO

Expedido por:

**EMISIÓN**

| CANTIDAD | P. UNITARIO | | IMPORTE AL COBRO |
|---|---|---|---|
| 1 | 8,250.00 | PRIMA NETA | $ 8,250.00 |
| 1 | 0.00 | RECARGOS | $ 0.00 |
| 1 | 75.00 | DERECHOS | $ 75.00 |
| | | SUBTOTAL | $ 8,325.00 |
| | | I.V.A. 16.00% | $ 1,332.00 |
| | | PRIMA TOTAL | $ 9,657.00 |
| 1 | (0.00) | DESC. ART. 41 | $ (0.00) |
| | | PAGO CON DESCUENTO | $ NO APLICA |

Importe con letra NUEVE MIL SEISCIENTOS CINCUENTA Y SIETE DOLARES 00/100 USD
Moneda DOLAR AMERICANO
El paga con cheque debe ser a favor de Grupo Mexicano de Seguros S.A. de C.V.

Fecha pago de Recibo:

| Código: | DX012750000090750 |
|---|---|
| Ref. No. | 03181200682018529208 |

| BANCOS | PESOS | DOLARES |
|---|---|---|
| Bancomer | CIE: 913939 | CIE: 913970 |
| Santander | CONTRATO: 2501 | CUENTA: 82500486214 |
| BANORTE | CEP: 143778 | CEP: 80664 |
| Scotiabank | SERVICIO: 1720 | SERVICIO: 1733 |
| citibanamex | PA: 8149/01 | |
| MULTIVA | CTA: 6422063 | No Aplica |
| Bancomer | CLABE: 012914002009130398 | No Aplica |

*PAGO EN UNA SOLA EXHIBICIÓN*



Grupo Mexicano de Seguros S.A. de C.V.
Tecoyotitla 412 Edificio GMX
Col. Ex Hacienda de Guadalupe Chimalistac,
Ciudad de México, 01050
Tel. (55) 5480 4000
Fax (55) 5662 9714
Fax (55) 5662 9716

## ENDOSO CAMBIOS DE DATOS DEL ASEGURADO
## CASCOS AÉREOS Y RC LEGAL

IDENTIFICADOR DE PÓLIZA: 03-034-07000064-0003-01

| OFICINA | | PRODUCTO | | NÚMERO DE PÓLIZA | ENDOSO | RENOVACIÓN |
|---|---|---|---|---|---|---|
| 03 | MONTERREY | LGS-CRCLG | 034 | 07000064 | 0003 | 01 |

Grupo Mexicano de Seguros, S.A. de C.V., en adelante mencionada como GMX SEGUROS, asegura de acuerdo a las condiciones generales y especiales de esta póliza a la persona física o moral denominado en adelante El Asegurado:

| | |
|---|---|
| Contratante | CAMRO TRANSPORTES, S.A. DE C.V. |
| Domicilio de Cobro | CARRETERA FEDERAL COLOMBIA KM 9  .  , ANDRES CABALLERO MORENO AGROP , GENERAL ESCOBEDO GENERAL ESCOBEDO |
| Entidad/C.P. | NUEVO LEON  66080 |
| Fecha de nacimiento / Constitución: | 03/06/2009 |

RFC: CTR090603DC1

| | |
|---|---|
| Agente | 1275 - LRC AGENTE DE SEGUROS Y DE FIANZAS SA DE CV |
| Vigencia | 365  Días |
| Desde | 09 NOVIEMBRE 2018   12:00 horas  de la Ciudad de México |
| Hasta | 09 NOVIEMBRE 2019   12:00 horas  de la Ciudad de México |
| Moneda | DOLAR AMERICANO |

Forma de Pago:     SEMESTRAL

Descripción de Bienes y Riesgos Cubiertos:

Los bienes cubiertos, ubicación, giro o actividad, sumas aseguradas, deducibles y, en su caso, coaseguro se describen en la especificación anexa a esta póliza.

| | Prima Neta | Recargo | Derecho | I.V.A. | Total |
|---|---|---|---|---|---|
| Prima | US$0.00 | US$0.00 | US$0.00 | US$0.00 | US$0.00 |

**En cumplimiento a lo dispuesto en el artículo 202 de la Ley de Instituciones de Seguros y de Fianzas, la documentación contractual y la nota técnica que integran este producto de seguro, quedaron registradas ante la Comisión Nacional de Seguros y Fianzas, a partir del día 08 de mayo de 1998, con el número DVA-256/98.**

Artículo. 25.- Si el contenido de la póliza o sus modificaciones no concordaren con la oferta, el Asegurado podrá pedir la rectificación correspondiente dentro de los treinta días que sigan al día que reciba la póliza. Transcurrido este plazo se considerarán aceptadas las estipulaciones de la póliza o de sus modificaciones.

Fecha de emisión:  21 / NOVIEMBRE / 2018

En términos de lo cual Grupo Mexicano de Seguros, S.A. de C.V., firma la presente póliza en la Ciudad de México. Esta póliza no es un comprobante de pago, por lo que es necesario exigir su recibo al liquidar la prima.



_____
Firma del funcionario autorizado

**Mercer-Erwin/Moffett Exhibit 1.d**
**Case No. 4:20-CR-00212**
**Page 091**



**Grupo Mexicano de Seguros S.A. de C.V.**
Tecoyotitla 412 Edificio GMX
Col. Ex Hacienda de Guadalupe Chimalistac,
Ciudad de México, 01050
Tel. (55) 5480 4000
Fax (55) 5662 9714
Fax (55) 5662 9716

## ENDOSO CAMBIOS DE DATOS DEL ASEGURADO
### CASCOS AÉREOS Y RC LEGAL

*GMX Seguros*, pone a disposición del asegurado sus derechos y obligaciones, así como las coberturas, exclusiones, restricciones que forman parte de este Contrato de Seguro que se encuentran contenidos en esta póliza y en toda la documentación que forman parte integral del Contrato de Seguro y pueden ser consultados en www.gmx.com.mx

Las condiciones generales aplicables al presente seguro se entregan al Asegurado junto con esta póliza, de igual modo se encuentran a su disposición en las oficinas de GMX Seguros en la dirección establecida en la presente.

Asímismo, el asegurado reconoce que la elección de las coberturas amparadas, deducibles y límites máximos de responsabilidad, han sido responsabilidad suya en su carácter de asegurado y/o contratante, además de que el monto de las primas es de su conocimiento, por lo que acepta que su elección no fue influenciada por la aseguradora en forma alguna, además de que sabe y entiende que la Institución cuenta con otras coberturas a las elegidas que no fueron de su interés.

En GMX Seguros, ponemos a su disposición en caso de alguna consulta, reclamación o aclaración relacionada con su Seguro, nuestra **Unidad Especializada de Atención a Usuarios (UNE)**, ubicada en Tecoyotitla número 412, Edificio GMX, colonia Ex Hacienda de Guadalupe Chimalistac, Código Postal 01050, Delegación Álvaro Obregón, Ciudad de México, o si lo prefiere comunicarse al teléfono 01 (800) 718 89 46 y al (55) 54 80 40 00, en un horario de atención de lunes a jueves de 8:30 a 17:30 horas y viernes de 8:30 a 15:00 horas, y al correo electrónico unidad.especializada@gmx.com.mx

En caso de dudas, quejas, reclamaciones o consultar información, podrá acudir a la **Comisión Nacional para la Protección y Defensa de los Usuarios de Servicios Financieros (CONDUSEF)** con domicilio en Insurgentes Sur Número 762, Colonia del Valle, Delegación Benito Juárez, Código Postal 03100, Ciudad de México, correo electrónico asesoria@condusef.gob.mx, teléfono 01 800 999 8080 y 5340 0999 o consultar la página electrónica en internet www.condusef.gob.mx.

**Glosario de Abreviaturas**

**C.P.**    Código Postal.

**I.V.A.**    Impuesto al Valor Agregado.

**R.C.**    Responsabilidad Civil.

**R.F.C.**    Registro Federal de Contribuyentes.

**S.M.E.**    Seguro Múltiple Empresarial.

**ESPECIFICACIÓN QUE SE ADHIERE Y FORMA PARTE INTEGRANTE DE LA PÓLIZA**
**03-034-07000064-0003-01**

**ESPECIFICACIONES**

Por medio del presente endoso a petición del asegurado y desde inicio de vigencia, se incluye el siguiente asegurado adicional:

Aircraft Guaranty Corporation, Trustee and its officers, managers and directors.

Dirección:

PO Box 891860, Oklahoma City, OK 73189 USA

Demás términos y condiciones permanecen sin modificación alguna.

1

**Mercer-Erwin/Moffett Exhibit 1.d**
**Case No. 4:20-CR-00212**
**Page 093**



Grupo Mexicano de Seguros, S.A. de C.V.
Tecoyotitla Nº 412, Edificio GMX
Ex Hacienda de Guadalupe Chimalistac
C.P. 01050, Álvaro Obregón, Ciudad de
México.
Tel. 54 804000
Fax. 56 629714

01 de Noviembre del 2017

DIRECCIÓN GENERAL DE AERONAUTICA CIVIL.
DIRECCION GENERAL ADJUNTA DE TRANSPORTE Y CONTROL AERONAUTICO.
DEPARTAMENTO DE SEGUROS Y FIANZAS

AT'N: LIC. MARIA DE LA LUZ RODRIGUEZ MURILLO

REFERENCIA: CAMRO TRANSPORTES, S.A. DE C.V. y/o AIRCRAFT GUARANTY CORPORATION, TRUSTEE AND IT'S
OFFICERS, MANAGERS AND DIRECTORS

AERONAVE: N986MA

Estimados Señores

Por medio de la presente nos permitimos confirmarles cobertura de Responsabilidad Civil efectiva a partir del 01 de NOVIEMBRE
del 2017 al 01 de DICIEMBRE del 2017 para la siguiente aeronave, bajo los límites mínimos exigidos por esa dependencia, los
1cuales se detallan a continuación

Responsabilidad Civil en Superficie, Límite Único y Combinado para daños a terceros en sus bienes y en sus personas, hasta un
monto de: 56,900 D.S.M.G.V.D.F. ($ 5,000.000.00 M.N) el cual se distribuye como sigue:

Para bienes hasta un monto de 35,000 D.S.M.G.V.D.F. ($ 3, 000,000.00 M.N.)
Para personas hasta un monto de 21,900 D.S.M.G.V.D.F. ($ 2, 000,000.00 M.N.)

| MARCA | MODELO | SERIE | MATRICULA | PAS/TRIP | AÑO |
|---|---|---|---|---|---|
| LEAR JET | 31A | 080 | N986MA | 8 + 2 | 1993 |
| USO: | | | AEROPUERTO BASE: | | |
| PRIVADO PLACER AYUDA INDUSTRIAL, CAPACITACION Y ADIESTRAMIENTO DE LOS PILOTOS DEL ASEGURADO | | | MONTERREY, NVO.LEON | | |
| AEROPUERTOS: | | | LIMITES GEOGRAFICOS: | | |
| A, B, C, D. | | | CONTINENTE AMERICANO EXCLUYENDO CUBA | | |

En breve enviaremos la póliza correspondiente.

Esperando que lo anterior merezca su conformidad, quedamos a sus órdenes para cualquier duda o aclaración al respecto.

Atentamente,

Lic. Alicia Romo García.
Suscripción Aviación
Grupo Mexicano de Seguros, S.A. DE C.V.
Tel: 54-80-40-00

Ccp. Lic. Miguel Mellado

Mercer-Erwin/Moffett Exhibit 1.d
Case No. 4:20-CR-00212
Page 094



AIRCRAFT GUARANTY
OWNER TRUSTEE

**October 20, 2017**

ITRC, LLC
Mr. Rodolfo Javier Camarillo Montemayor, Manager
Ave. Gomez Morin No. 900 L65 PH404
Col. Carrizalejo
66230 San Pedro Garza Garcia, Nuevo Leon, Mexico

     Re:    Continent Aircraft Statutory Trust No. 2814

Dear Sir(s),

Thank you for your engagement.

Continent Aircraft Trust No. 2814 has been allocated for ITRC, LLC.

Attached are the initial documents that require your signature:

- *To acquire beneficial interest in the trust.*

- *To transfer of beneficial interest in the trust to ITRC, LLC.*

When completed, return these documents to us via Email or fax.

Sincerely,

Debbie Mercer-Erwin, President
Aircraft Guaranty Corporation

P.O. Box 891860, Oklahoma City, Oklahoma  73189

Phone: 1-281-445-7594     Fax: 1-281-445-7599     Email: AGC@AGCORP.COM

**Mercer-Erwin/Moffett Exhibit 1.d**
**Case No. 4:20-CR-00212**
**Page 095**



# SERVICES AGREEMENT

This Services Agreement is entered into this October 20, 2017, between Aircraft Guaranty Corporation (AGC), a Wyoming corporation, with its administrative offices at POB 2547 (2058 FM 356 North), Onalaska, Texas 77360, USA and;

> **ITRC, LLC (BENEFICIARY)**
> Ave. Gomez Morín No. 900 L65 PH404
> Col. Carrizalejo
>
> 66230 San Pedro Garza Garcia, Nuevo Leon,  Mexico

WHEREAS, BENEFICIARY desires to engage AGC in its individual capacity to act as Trustee of Continent Aircraft Statutory (CAS) Trust No. 2814, and AGC agrees to be engaged to continue to act as Trustee for CAS Trust No. 2814, it is hereby,

AGREED, that at the request of BENEFICIARY, AGC, acting not in its individual capacity, but acting only in its capacity as Trustee for CAS Trust No. 2814, agrees to transfer 100 % of the beneficial interest in CAS Trust No. 2814, a Wyoming Statutory Trust, to ITRC, LLC or to whomever BENEFICIARY specifies in writing to AGC, and it is further,

AGREED, that in return for receiving this 100% beneficial interest in CAS Trust No. 2814, BENEFICIARY hereby agrees to pay to Aircraft Guaranty Holdings, LLC, on behalf of AGC, an Organizational Provisioning Fee of $1,500.00 USD for the transfer of said 100 % beneficial interest. This said fee includes the provisioning of FAA expedited registration, FCC Aircraft Radio License for International Flight, Trust documentation & related legal filings, documentation of Trust beneficial ownership, issuance of the Deed of Trust attesting to the ownership of said beneficial interest, documentation for assignment of aircraft title to the Trustee and the establishment of Trust Property, and International Flight Operations Operating Agreement Documentation, and it is further,

AGREED, that in addition to the aforesaid fees, Aircraft Guaranty Holdings LLC will invoice on behalf of AGC, for AGC's services as Trustee for CAS Trust No. 2814, a files management & annual international mail handling and forwarding fee of $500.00 USD, and an annual trustee Liability fee of $800.00 USD.

The aforesaid annual fees will be prorated from the date the aircraft is acquired by the Trust to December 31, and will be billed on the date the aircraft is acquired. Annual fees are billed on January 1 of each year for service to be rendered in the coming year.  Annual fees include Trustee service, forwarding of airworthiness directives, correspondence and communications with civil aviation authorities, and other aircraft management issues including insurance and operations issues.  Annual Fees do not include the Trustee's time & expense interacting with tax authorities, law enforcement agencies, or other judiciary entities; including the legal actions or lawsuits pertaining to the Trust or Trust Property. The aforesaid expenses are the financial responsibility of the Beneficiary and will be invoiced as occurred. Annual fees are a function of cost history and are subject to change.

**Mercer-Erwin/Moffett Exhibit 1.d**
**Case No. 4:20-CR-00212**
**Page 096**

Organization and Annual Fees do not include expense of counsel to respond to special requests of financial institutions, the client or client's outside counsel. Attorney & fiduciary fees range from $350.00 USD to $750.00 USD per hour. Nor do any fees include transaction related expenses such as the issue of the FAA Certificate of Airworthiness or any airworthiness related expenses, US state or foreign sales tax, US state or foreign Use tax, US state or foreign title transfer fees, fees for the Escrow of monetary funds or documents, US state or FAA title search fees, or any travel time & travel related expenses by an AGC representative or its counsel to attend any transaction related meeting outside of Onalaska, Texas, USA.

Annual Fees do not include any services associated with the collection or disbursement of lease payments or bank loan payments. Fees for services associated with cash receipts and disbursements will be negotiated on a case-by-case basis. Annual fees also do not cover any special legal or professional charges which may be incurred in the event of any administrative actions, the transfer or termination of a beneficial interest, the sale or registration of the aircraft, and any other changes which may be required by law or regulations. Any requests for additional services not provided for in this letter shall be subject to current fee structure in effect made at the time of the requested service.

In all dealings between the Trust, AGC, and the designated BENEFICIARY; Trust and Trust related documents may be executed in multiple counterparts, and delivered either originally signed or by facsimile, or by electronic means as a PDF file, each of which shall constitute an original and all of which shall constitute one and the same document. The terms of this agreement, any interpretations of this agreement, and any other associated agreements to this agreement shall be governed, construed and enforced in accordance with the laws of the State of Texas, USA, without regard to the principles of conflict of laws, except where U.S. Federal law preempts Texas law regarding aircraft. The Parties agree that venue for any dispute or litigation arising from this agreement shall be in Houston, Harris County, Texas, including all matters of construction, validity and performance.

For:    **Aircraft Guaranty Corporation, Trustee**
(Not in its individual capacity, but solely as Trustee of Continent Aircraft Statutory Trust No. 2814)

By:    *Debbie Mercer-Erwin*

Debbie Mercer-Erwin, President


ACKNOWLEDGED AND ACCEPTED as of the date first written above:

For:    **ITRC, LLC**

By:    _____

Mr. Rodolfo Javier Camarillo Montemayor, Manager

Trust 2814-ITRC, LLC
Page 2 of 2

SERVICES AGREEMENT

**INITIAL INVOICE - PAID ✓**          Invoice Number:  17/10/2814-01



**AIRCRAFT GUARANTY**
OWNER TRUSTEE

**BILL TO:**          ITRC, LLC
Ave. Gomez Morin No. 900 L65 PH404
Col. Carrizalejo
66230 San Pedro Garza Garcia, Nuevo Leon,  Mexico

**REFERENCE:**          Continent Aircraft Statutory Trust No. 2814

**AIRCRAFT:**          , LEARJET INC 31A, s/n: 080
Registration No. N986MA

Date:  October 20, 2017                    Payment terms:  Immediate Upon Receipt

| Item Description | Amount |
|---|---|
| Formation of Continent Aircraft Statutory Trust No. 2814 to include FAA Expedited Registration, FCC Radio License, International Operating Documentation | $ 1,250.00 |
| FAA Legal Opinion (non-refundable & a mandatory requirement from FAA for each trust & aircraft filing) | $ 250.00 |

**Total Amount Due:  $ 1,500.00**

***Reference invoice number 17/10/2814-01 on transfer paperwork***

| Method of Payment: | |
|---|---|
| U. S. Bank Check - Bank Wire - Credit Wire | Currency:  US Dollars |

**Remit Payment via Bank Wire Transfer to:**

CrossFirst Bank                    SWIFT Code: CSFFUS44
5001 Gaillardia Corporate Place          ABA Number: 101015282
Oklahoma City, OK  73142  USA

Credit To:
Aircraft Guaranty Holdings LLC
Account Number 201269783
**Invoice Number: 17/10/2814-01**

P.O. Box 891860, Oklahoma City, Oklahoma  73189
Phone: 1-281-445-7594          Fax: 1-281-445-7599          Email: AGC@AGCORP.COM

**Mercer-Erwin/Moffett Exhibit 1.d**
**Case No. 4:20-CR-00212**
**Page 098**



AIRCRAFT GUARANTY
OWNER TRUSTEE

## CONFIDENTIALITY & NON-CIRCUMVENTION AGREEMENT FOR
## CONTINENT AIRCRAFT STATUTORY TRUST AGREEMENT NO. 2814

TO:     Aircraft Guaranty Corporation, Trustee                    October 20, 2017

Because of the proprietary and confidential nature of the information being disclosed by Aircraft Guaranty Corporation ("AGC"), and its affiliates and agents, to the undersigned, at its request, the undersigned makes the following covenants as consideration for this disclosure and agrees to maintain confidential and limit disclosure of all the Proprietary Information, according to the following terms:

1.     Proprietary Information, unless otherwise limited or excluded in this Agreement, shall mean the following:

(a)     Information in writing clearly identified as proprietary or confidential information, which has been marked with a legend so indicating the nature of the information.

(b)     Orally disclosed information which is disclosed to be proprietary or confidential information by the disclosing party and which is reduced to writing or referred to in writing within 30 days.

(c)     Items and documents disclosed by AGC or its affiliates to the undersigned which are proprietary and confidential but may not be marked with a legend so indicating but which are later specifically identified through a written memorandum to the undersigned as Proprietary Information if the undersigned receives the memorandum prior to a public disclosure.

2.     The undersigned acknowledges the proprietary rights of AGC in and to the Proprietary Information, and the undersigned further agrees to take every precaution to safeguard and treat the Proprietary Information as confidential by not disclosing the Proprietary Information to any other party, except those within its organization who receive the Proprietary Information on a "need-to-know" basis and who have executed a similar Confidentiality and Non-Circumvention Agreement provided by the undersigned. The undersigned further agrees that it will not make use of any of the Proprietary Information, either directly or indirectly, which it receives or has received from AGC and its affiliates, other than with the prior written consent and authorization of AGC. And, the undersigned further agrees to advise its attorneys, accountants, consultants, advisors and any other third party to whom it may need to disclose the Proprietary Information of the confidentiality provisions of this Confidentiality Agreement and that aforesaid parties may be required to sign a disclaimer letter for the benefit of AGC prior to receiving the Proprietary Information. The limitation on disclosure of the Proprietary Information contained in this Agreement shall not apply to any disclosure required to be made by the undersigned to any governmental regulatory authority, provided that written notice of the disclosure is made to AGC.

**Mercer-Erwin/Moffett Exhibit 1.d**
**Case No. 4:20-CR-00212**
**Page 099**

3.     The undersigned agrees that it will not, directly or indirectly; seek to exploit to the exclusion of AGC and its affiliates any of the business structure and documentation which is disclosed by AGC and its affiliates following the execution of this Agreement.

4.     This agreement shall expire five years from the date of this Agreement.  The undersigned agrees and warrants that all Proprietary Information, which has been provided to the undersigned prior to the effective date, has been and will under this Agreement be considered Proprietary Information and protected under this Agreement.

5.     All Proprietary Information contained in written materials that are provided to the undersigned, including all copies made by the undersigned, shall, upon the request of AGC, be returned to it, and the undersigned shall not in any way retain copies of the Proprietary Information.

6.     The undersigned agrees that AGC has not granted any license by this Agreement, and that the disclosure of the Proprietary Information and all materials related to it shall not result in any commitment to grant to the undersigned any rights to any matter disclosed to the undersigned.

7.     The undersigned's obligations under this Agreement shall not relate to information which (a) be established to have been in the actual possession of the undersigned at the time revealed to it by AGC; or (b) was obtained from a source other than AGC prior to signing of this Agreement, provided that the undersigned has advised AGC of the receipt of the Proprietary Information from the third party source.

8.     The undersigned acknowledges that failure to abide by the terms of this Agreement may result in irreparable injury to AGC.  AGC may enforce this Agreement in any forum and may seek any remedy at law or in equity.

9.     This Agreement shall be governed, construed and enforced in accordance with the laws of the State of Texas, U.S., without regard to the principles of conflict of laws, except where U.S. Federal law preempts Texas law regarding aircraft.  The Parties agree that venue for any dispute or litigation arising from this agreement shall be in Houston, Harris County, Texas, including all matters of construction, validity and performance.

10.     If this Agreement is presented in more than one language, the interpretation of the English language version shall control.

EXECUTED as of the date first written above:

**For:     ITRC, LLC**

**By:**     _____
              Mr. Rodolfo Javier Camarillo Montemayor, Manager

CONFIDENTIALITY & NON-CIRCUMVENTION AGREEMENT

Trust 2814-ITRC, LLC
Page **2** of **2**

**Mercer-Erwin/Moffett Exhibit 1.d
Case No. 4:20-CR-00212
Page 100**

# CONTINENT AIRCRAFT STATUTORY TRUST NO. 2814

## DECLARATION OF TRUST

Between

**Aircraft Guaranty Corporation
as TRUSTEE**

and

**ITRC, LLC
as GRANTOR**

Copyright Notice

The format and content of the material contained herein is the proprietary information of Aircraft Guaranty Holdings LLC, and cannot be copied, reproduced, transmitted or communicated in any medium nor may any information contained hereon be faxed or transmitted over the Internet or other electronic media without the express prior written consent of Aircraft Guaranty Holdings, LLC.

1

**Mercer-Erwin/Moffett Exhibit 1.d
Case No. 4:20-CR-00212
Page 101**

# TABLE OF CONTENTS

Page No.

DEFINITIONS ........................................................................................................ 4
    1.1    Defined Terms..................................................................................... 4
    1.2    Singular to Include Plural ................................................................... 6

ESTABLISHMENT OF TRUST............................................................................. 6
    2.1    Appointment of the Trustee ................................................................. 6
    2.2    Trust Agreement Acceptance............................................................... 6
    2.3    Representations and Warranties of the Grantor and Subsequent Transferor .......... 6
    2.4    Activities ............................................................................................ 6
    2.5    Office................................................................................................... 6
    2.6    Situs of Trust ...................................................................................... 7
    2.7    Name ................................................................................................... 7

TRANSFER OF INTEREST..................................................................................... 7
    3.1    Transfer ............................................................................................... 7
    3.2    Limitations on Transfer....................................................................... 7
    3.3    Assignment of Right to Distributions ................................................. 7

CONCERNING THE BENEFICIARY ..................................................................... 7
    4.1    Restrictions on Beneficiary's Actions ................................................ 7
    4.2    Other Expenses Liabilities of the Trust .............................................. 8
    4.3    Beneficiary's Duties ........................................................................... 8

CONCERNING THE TRUSTEE............................................................................... 9
    5.1    Status. .................................................................................................. 10
    5.2    Acceptance of Trustee and Duties....................................................... 10
    5.3    Furnishing of Documents.................................................................... 11
    5.4    Reliance; Advice of Counsel............................................................... 11
    5.5    Not Acting in Individual Capacity ...................................................... 11
    5.6    Indemnification ................................................................................... 11

AUTHORITY AND DUTIES OF THE TRUSTEE.................................................... 12
    6.1    General Authority................................................................................ 12
    6.2    Specific Authority ............................................................................... 12
    6.3    Trustee Duties ..................................................................................... 13
    6.4    Limitations on Trustee's Authority..................................................... 13
    6.5    Accounting and Reports to the Beneficiary and Others....................... 14
    6.6    Signature of Returns........................................................................... 14
    6.7    Notice to Beneficiary .......................................................................... 15

2

Trust 2814

**Mercer-Erwin/Moffett Exhibit 1.d**
**Case No. 4:20-CR-00212**
**Page 102**

6.8    No Duties Except as Specified in This Agreement or in Instructions.................. 15
6.9    No Action Except Under Specified Documents or Instructions ........................... 15

COMPENSATION OF TRUSTEE ..................................................................................... 15
7.1    Trustee's Fees and Expenses ................................................................................ 15
7.2    Lien on Trust Property ......................................................................................... 15
7.3    Payments to the Trustee ....................................................................................... 15

INVESTMENT AND APPLICATION OF TRUST FUNDS ........................................... 16
8.1    Investment of Trust Funds ................................................................................... 16
8.2    Allocations and Distributions............................................................................... 16
8.3    Method of Payment ............................................................................................. .17

TERMINATION OF TRUST............................................................................................. 17
9.1    Termination of Trust ............................................................................................ 17
9.2    No Termination by Grantor or Beneficiary.......................................................... 17
9.3    Exercise of Trust Powers After Termination........................................................ 17
9.4    Termination pursuant to FAA Trust Policy. ........................................................ 17
9.5    Transfer of Title. .................................................................................................. 17

SUCCESSOR TRUSTEES AND ADDITIONAL TRUSTEES ................................................ 18
10.1    Resignation or Removal of Trustee; Appointment of Successor ......................... 18
10.2    Appointment of Additional Trustees.................................................................... 19

MISCELLANEOUS ......................................................................................................... 19
11.1    Supplements and Amendments ............................................................................ 19
11.2    Legal Title to Trust Property in Trustee. ............................................................ 19
11.3    Contracts Made by Trustee. ................................................................................ 19
11.4    Limitations on Rights of Others........................................................................... 20
11.5    Notices................................................................................................................. 20
11.6    Severability ......................................................................................................... 20
11.7    Separate Counterparts ......................................................................................... 20
11.8    Successors and Assigns........................................................................................ 20
11.9    Headings .............................................................................................................. 20
11.10    Not Influenced by Beneficiaries who are not U.S. Citizens or Resident Aliens... 20
11.11    Governing Law..................................................................................................... 20
11.12    Grantor Compliance with US Law........................................................................ 21
11.13    Beneficiary Compliance with US Law .................................................................. 21
11.14    Merger of Trusts.................................................................................................. 21

SIGNATURE PAGE......................................................................................................... 22

EXHIBITS ............................................................................................................ 23 thru 24

3

**Mercer-Erwin/Moffett Exhibit 1.d**
**Case No. 4:20-CR-00212**
**Page 103**

TRUST AGREEMENT ("Agreement") is dated as of October 20, 2017 between ITRC, LLC, as Grantor, and Aircraft Guaranty Corporation, a Wyoming corporation, as Trustee, in order to document the creation of a trust organized and operated under the Wyoming Statutory Trust Act, Wyoming Statutes Section 4-10-101 et seq., as made applicable to the document by Section 17-23-113 of the Act.  The Trustee shall hold and manage all property now or later transferred to the Trustee under this Agreement for the benefit of the beneficiaries subject to the terms, covenants, conditions, purposes and provisions of this document.

ARTICLE I

DEFINITIONS

1.1     **Defined Terms.**  For all purposes of this Agreement, the capitalized terms are defined as follows:

"*Aircraft*" means those certain airplanes or helicopters, including engines and parts, for which the Trustee holds title for the benefit of Beneficiary, and which shall constitute the Trust Property.

"*Agreement*" means this Trust Agreement, as it may be amended from time to time.

"*Authorized Officer*" means any officer of the Trustee who is as of the relevant time authorized to act for the Trustee in matters relating to, and binding upon, the Trust and whose name appears on a list of such authorized officers furnished by the Trustee as such list may be amended or supplemented from time to time.

"*Beneficiary*" or "*Beneficiaries*" each means the singular or plural, and each means the Grantor and each of the successors in interest as beneficiaries of the Trust pursuant to Article III.

"*Business Day*" means any day that is not a Saturday, Sunday or any other day on which commercial banking institutions in Jackson, Wyoming, are authorized or obligated by law or executive order to be closed.

"*Code*" means the Internal Revenue Code of 1986, as it may be amended from time to time and as it may be interpreted under regulations promulgated by the United States Department of the Treasury.

"*Distribution Date*" means the first Business Day following a day on which the Trustee receives funds unless the date is changed by written consent of Beneficiary.

"*Distribution Date Statement*" means the statement described as such in Section 8.2(c) hereof.

"*FAA*" means the United States Department of Transportation, Federal Aviation Administration.

"*FAA Trust Policy*" means the (i) Notice of Proposed Policy Clarification for the Registration of Aircraft to U. S. Citizen Trustees in Situations involving Non-U. S. Citizen Trustors and Beneficiaries (published in the Federal Register on February 9, 2012 (77 FR 6694)) and (ii) Notice of Policy Clarification for the Registration of Aircraft to U.S. Citizen Trustees in Situations involving Non-U.S. Citizen Trustors and Beneficiaries (published in the Federal Register on June 18, 2013 (78 FR 36412)), as each may be modified, amended or supplemented from time to time and as may be further enforced or interpreted by the FAA.

4

Trust 2814

**Mercer-Erwin/Moffett Exhibit 1.d
Case No. 4:20-CR-00212
Page 104**

*"FAA Trust Policy Certificate"* means the Certificate by the Beneficiary in the form attached hereto as Exhibit 2.

*"Fiscal Year"* means the period of time, regardless of duration, from the date of this Agreement through the next following December 31, and any successive calendar year from each January 1 to the following December 31.

*"Grantor" or "Trustor"* means Beneficiary and any successor in interest.

*"Lease"* means any lease (including subleases), operating agreement, bailment, or similar arrangement transferring possession and/or operational control of the Aircraft.

*"Operator"* means any party who (thru a written lease) exercises possession and/or operational control of the Aircraft

*"Ownership Percentage"* or *"Ownership Interest"* with respect to a Beneficiary means the proportion (expressed as a percentage) of the beneficial Interest in the Trust Property held by such Beneficiary.

*"Periodic Filings"* means submissions that the Trust is required to make with any state or federal regulatory agency or under the Code.

*"Person"* means any individual, corporation, partnership, joint venture, association, company, trust, non-incorporated organization, business or other entity, institution, but not including government or any agency or political subdivision thereof.

*"Regulatory Authority"* means the FAA or any other duly authorized air authority representatives of the United States or the government where the Aircraft is habitually based or operated.

*"Transfer"* means the sale, transfer or other assignment of all of a Beneficiary's right, title and interest in all or a portion of such Beneficiary's beneficial interest in the Trust.

*"Trust"* means the trust established by this Agreement.

*"Trust Property"* means all right, title and interest in any property contributed to the Trust or otherwise acquired or held by the Trust, including without limitation all distributions, payments or proceeds thereon or thereof. Each Beneficiary shall hold beneficial title and interest only in the specific Trust Property. The Trust Property, principally, shall be a certain Aircraft.

*"Trust Property Related Agreement"* means any instrument or agreement signed by the Trustee affecting Trust Property, including, but not limited to, any lease or any operating agreement, and any financing agreements or insurance agreements.

*"Trustee"* means Aircraft Guaranty Corporation, a Wyoming corporation, not in its individual capacity, but solely as trustee under this Agreement, and any successor trustee hereunder.

**1.2     Singular to Include Plural.** Unless another meaning is clearly indicated or required by context or circumstances, either singular or plural words shall include the other.

5

**Mercer-Erwin/Moffett Exhibit 1.d**
**Case No. 4:20-CR-00212**
**Page 105**

## ARTICLE II

### ESTABLISHMENT OF TRUST

**2.1    Appointment of the Trustee.**  The Grantor appoints the Trustee as trustee of the Trust, to have all the rights, powers and duties set forth herein.  The Trustee acknowledges having received in trust from the Grantor the sum of one hundred dollars, constituting the initial Trust Property.

**2.2    Trust Agreement Acceptance.**  The Trustee accepts the Trust created hereby and declares that it will hold the Trust Property in trust subject to the conditions provided in this Agreement for the use and benefit of the Trustor and any successor Beneficiary.

**2.3    Representations and Warranties of the Grantor and Subsequent Transferor.**  The Grantor, and any subsequent transferor transferring property to the Trust, hereby represents and warrants to the Trustee as follows:

(a) Upon the receipt of the Trust Property by the Trustee, under this Agreement, the Trustee will have good title to the Trust Property free and clear of any lien, encumbrance, defect or cloud in title ("Liens"). At the sole discretion of the Trustee, (i) any such Liens will be released, terminated or otherwise cured before Trustee receives title to the Trust Property, or (ii) Trustee may agree to receive title to the Trust Property subject to a title insurance policy in a form agreeable to the Trustee in its sole discretion.

(b) This Agreement has been duly and validly authorized, executed and delivered by, and constitutes a valid and binding agreement of the Grantor and any subsequent Transferor in accordance with its terms.

**2.4    Activities.**  The Trust may engage in the following activities:  (i) the ownership, management, registration and leasing of Trust Property, (ii) activities which are necessary, suitable or convenient to accomplish the foregoing, and (iii) such other activities as may be required in connection with conserving the Trust Property and making distributions to the Beneficiaries.

**2.5    Registered Agent and Office.**  The registered agent and street address for the Trust in the State of Wyoming is:  Frontier Registered Agency Services LLC, 199 East Pearl, Suite 101, Jackson, Wyoming 83001.  The address of the Trust's administrative office in the United States is POB 2549 (2058 FM 356 North), Onalaska, Texas 77360.  All records of the Trust required by the Act will be maintained at the administrative office.  The Trustee may at any time alter the location of the Trust's administrative office.

**2.6    Situs of Trust.**  The Trust will be administered in the State of Wyoming.

**2.7    Name.**    The Trust created hereby shall be known as Continent Aircraft Statutory Trust No. 2814, which name shall be used for describing this Trust under the relevant Uniform Commercial Code, and in which name the Trustee may conduct business, make and execute mortgages, leases, contracts and other instruments necessary to acquire, mortgage, lease, sell and transfer Trust Property or other property, and sue and be sued.  Any Aircraft which comprises a portion of the Trust Property shall be registered with the FAA in the name of the Trustee as contemplated by Section 6.2(c) herein.

### ARTICLE III

6

Trust 2814

**Mercer-Erwin/Moffett Exhibit 1.d
Case No. 4:20-CR-00212
Page 106**

TRANSFER OF INTEREST

**3.1    Transfer.**

(a)     Subject to the terms of this Agreement (including but not limited to Section 11.13 hereof), the beneficiary may Transfer all or any portion of the beneficial interest in the Trust Property.  Such Transfer may be made by the registered owner in person or by an attorney-in-fact duly authorized in writing upon written instrument of Transfer (in a form satisfactory to the Trustee) and which such signature guarantees and evidence of authority of the persons signing the instrument of Transfer as the Trustee may reasonably require.

(b)     As a condition precedent to any Transfer, the Trustee may require the payment of a sum sufficient to cover the payment of ay fees or other charges required to be paid in connection with such Transfer.

**3.2    Limitations on Transfer.**  No Transfer of a beneficial interest in the Trust shall be made to any person unless the Trustee determines that the transferee meets the Trustee's due diligence and vetting procedures for new customers.

**3.3    Assignment of Right to Distributions.**  A Beneficiary may, if the Trustee determines that the transferee meets the Trustee's due diligence and vetting procedures for new customers, assign all or any part of its right to receive distributions, but such assignment (in the absence of a permitted Transfer) shall cause no change in the ownership of the Ownership Interest (excepting only such assigned right to receive distributions) the Trust or the Trust Property or the Beneficiary's obligations hereunder.

## ARTICLE IV

### CONCERNING THE BENEFICIARY

**4.1    Restrictions on Beneficiary's Actions.**  Each Beneficiary shall comply with all applicable provisions of law and this Agreement in the manner necessary to effect the intention of the parties that legal title to Trust Property shall rest with the Trustee and that beneficial and equitable title shall rest in the Beneficiary according to the Ownership Percentage.  Beneficiary shall enjoy all the benefits and attributes of beneficial ownership of Trust Property.

**4.2    Other Expenses, Liabilities of the Trust.**  The Beneficiary shall be liable for obligations related to the Trust Property; provided, however, if the Trust has more than one Beneficiary, each Beneficiary shall be liable solely for the Trust Property in which the Beneficiary holds a Beneficial Ownership Interest.  Within ten business days of receipt of a statement delivered by the Trustee to the effect that amounts necessary to pay expenses or to meet any obligation of the Trust related to the Trust Property, and setting forth the basis for such expenses and such Beneficiary's allocable share of such expenses, each Beneficiary shall deliver to the Trustee immediately available funds in the amount of such Beneficiary's allocable share of such expenses.

The Beneficiary shall be liable for all obligations incurred by the Trustee in the performance of his duties hereunder, including, but not limited to, the payment of all fees and expenses incurred by the Trustee in the performance of his duties hereunder: provided, however, if the Trust has more than one Beneficiary, each

7

**Mercer-Erwin/Moffett Exhibit 1.d
Case No. 4:20-CR-00212
Page 107**

Beneficiary shall be liable solely for its allocable share of such expenses, and each Beneficiary shall deliver to the Trustee immediately available funds in the amount of such Beneficiary's allocable share of such expenses.

    **4.3**    **Beneficiary's Duties to Provide Information under FAA Trust Policy.**  The Beneficiary acknowledges that FAA may require the owner of an aircraft to provide certain information regarding the ownership, operation and condition of the Aircraft and there may be additional requirements applicable to the Trustee as set forth in the "FAA Trust Policy", and the Beneficiary hereby covenants and agrees:

    (a)    Beneficiary has reviewed the FAA Trust Policy and will provide Trustee and the FAA with the information required by the FAA Trust Policy.

    (b)    Beneficiary will execute the FAA Trust Policy Certificate and in a form acceptable to the Trustee providing the information required therein.  Beneficiary shall either monitor or cause the Aircraft to be monitored and will notify Trustee promptly if the information in the FAA Trust Policy Certificate changes. Beneficiary will also provide Trustee an updated FAA Trust Policy Certificate on an annual basis.  If requested by a Regulatory Authority, Beneficiary will provide the FAA Trust Policy Certificate and related information to the Regulatory Authority within the time frame noted in such request.

    (c)    If requested by a Regulatory Authority, the Beneficiary shall provide:

        (i) the following specific information within two (2) business days:  (A) information in relation to the Aircraft including but not limited to the location of maintenance and other aircraft records and where the Aircraft is normally based and operated, and (B) contact information of (x) the operator of the Aircraft (including but not limited to a phone number, email address, street address and where that person resides or has its principal place of business) and (y) any other person to whom the Regulatory Authority may look to gather information related to crew members for the Aircraft, the Aircraft's operations on specific dates, the location of the Aircraft, and maintenance and other aircraft records for the Aircraft.

        (ii) the following specific information within five (5) business days:  (A) information about the operator, crew (names and pilot certificate numbers) and aircraft operations on specific dates, including information about where the Aircraft will be on a specific date in the future; (B) copies of maintenance, operating logs and other aircraft records; and (C) the current airworthiness status of the Aircraft.

    (d)    In connection with any transfer of Beneficiary's interest in the Trust (other than a collateral assignment thereof), the Transferee must comply with the terms of this Agreement and provide the Trustee a new FAA Trust Policy Certificate.

    (e)    To provide the identity and contact information for the operator of the Aircraft under any Trust Property Related Agreement, or any Lease entered into from time to time by Beneficiary, or any Lease arrangement entered into from time to time by a third party, whether or not at Beneficiary's direction.

    (f)    To require that any Trust Property Related Agreement or any Lease provide the following or similar provisions to the same effect:

8

Trust 2814

**Mercer-Erwin/Moffett Exhibit 1.d
Case No. 4:20-CR-00212
Page 108**

(i)      that all further transfers or the rights to possession and operational control of the
Aircraft to a transferee must be in writing; provide the identity and contact information about the transferee;
to provide an FAA Trust Policy Certificate to the extent such information is available from the transferee and
the transferee's assurance that if and when the transferee is notified that the Trustee or Beneficiary has
made a request, to promptly provide information related to crewmembers of the Aircraft and the Aircraft's
operations on specific dates, the location of the Aircraft, and the maintenance and other records for the
Aircraft;

(ii)      that each such further transferee or operator shall provide (x) its reasonable
cooperation to Trustee, Beneficiary and the FAA in an expeditious manner with respect to any request from
the Regulatory Authority for information and access to records of the Aircraft and (y) shall authorize the
Regulatory Authority to inspect the Aircraft; and

(iii)      that each such further transferee or operator agrees that the above-referenced
information and inspection requirements would be made and agreed in all subsequent or downstream Leases
thereby requiring each such subsequent transferee or operator to provide such contact information in the
event that there has been a transfer of possession and operation to another party, to update such
information when any changes occur, and to promptly confirm such information at any time upon request
by Trustee or Beneficiary, to provide its reasonable cooperation to Trustee, Beneficiary and the Regulatory
Authority in an expeditious manner with respect to any request from the Regulatory Authority for
information and access to records of the Aircraft, and to authorize the Regulatory Authority to inspect the
Aircraft.

(g)      That the information received by Trustee or Beneficiary pursuant to this Agreement or as
Trustee may have in its position, may be delivered to the Regulatory Authority, without further consent or
acknowledgment of the Beneficiary, or any other third party.

(h)      If the FAA amends, supplements or modifies in any way, the FAA Trust Policy, Beneficiary
agrees to abide by such changes, and if necessary, agrees to amend this Agreement such that this Agreement
will comply with the changes to the FAA Trust Policy.

## ARTICLE V

## CONCERNING THE TRUSTEE

**5.1     Status.**  Trustee represents and warrants that it is a "citizen of the United States of America"
within the meaning of Title 49, Section 40102(a) (15) of the United Stated Code.

**5.2     Acceptance of Trustee and Duties.**  The Trustee accepts the trust created and accepts legal
title as Trustee to the Trust Property.  The Trustee agrees to perform its duties upon the terms of this
Agreement.  The Trustee shall not be personally liable under any circumstances, except (i) for its own willful
misconduct or gross negligence, (ii) for liabilities arising from the failure by the Trustee to perform obligations
expressly undertaken by it in the last sentence of Section 6.7, or (iii) for taxes, fees or other charges on, based
on or measured by any fees, commissions or compensation received by the Trustee in connection with any
of the transactions contemplated by this Agreement or a Trust Property Related Agreement.  Pursuant to
Wyoming Statute Section 14-23-105, the Trustee shall not be held to a more rigorous standard of care than

Trust 2814

**Mercer-Erwin/Moffett Exhibit 1.d
Case No. 4:20-CR-00212
Page 109**

that imposed upon directors of a business corporation under the Wyoming Business Corporation Act. In particular, but not by way of limitation:

(a)     The Trustee shall not be liable for any error of judgment made in good faith by an Authorized Officer of the Trustee;

(b)     The Trustee shall not be liable with respect to any action taken or omitted to be taken by the Trustee in good faith in accordance with the instructions of the persons holding all of the beneficial Ownership Interest.

(c)     No provision of this Agreement shall require the Trustee to expend or risk its personal funds or otherwise incur any financial liability in the performance of any of its rights or powers hereunder, if the Trustee shall have reasonable grounds for believing that repayment of such funds or adequate indemnity against such risk or liability is not reasonably assured or provided to it;

(d)     Under no circumstances shall the Trustee be personally liable for any indebtedness of the Trust under any Trust Property Related Agreement; and

(e)     The Trustee shall not be personally responsible for or in respect of the validity or sufficiency of this Agreement or for the due execution hereof by the Grantor, or for the form, character, genuineness, sufficiency, value or validity of any collateral, or for or in respect of the validity or sufficiency of a Trust Property Related Agreement.

(f)     Under no circumstance shall Trustee be liable to the Beneficiary under any provision of this Agreement or any other document, instrument or agreement entered into by the Trustee and/or the Trust with respect to the Aircraft, except and solely to the extent of any loss or claim incurred by the Beneficiary which is attributable to the gross negligence of willful misconduct of Trustee in its individual capacity or in its capacity as Trustee.

(g)     To the extent that the Trustee takes any action or inaction in accordance with any written instructions and/or advice of the Beneficiary given or in exercising its discretion under this Agreement such action or inaction shall not be deemed to be gross negligence or willful misconduct.

(h)     Trustee, in its individual capacity, shall have no liability the Beneficiary or to any other Person for any loss, claim, penalty or tax as a result of, or in connection with, the transactions contemplated by this Agreement.

(i)     Any claim by any Person other than Beneficiary resulting from or relating to the transactions contemplated by this Agreement and/or Trustee's role as Trustee hereunder shall be brought exclusively against the Trust and/or the Trustee and not against Trustee in its individual capacity, and shall be satisfied solely with and shall be limited to, the assets of the Trust Property.

(j)     To the extent that Trustee, in its capacity as Trustee hereunder, has any duties, fiduciary or otherwise to any Person, such duties are hereby eliminated and replaced solely and exclusively by the express duties of the Trustee to the Beneficiary as set forth herein.

10

Trust 2814

**Mercer-Erwin/Moffett Exhibit 1.d
Case No. 4:20-CR-00212
Page 110**

**5.3    Furnishing of Documents.**  The Trustee shall send to the Beneficiary, promptly upon receipt thereof, duplicates or copies of all material reports, notices, requests, demands, certificates, financial statements and any other instruments received by the Trustee hereunder (other than documents originated by or otherwise furnished to the Beneficiary).

**5.4    Reliance; Advice of Counsel.**

(a)    The Trustee shall incur no liability to anyone in acting upon any signature, instrument, notice, resolution, request, consent, order, certificate, report, opinion, bond or other document or paper believed by it to be genuine or believed by it to be signed by the proper party or parties.  The Trustee may accept a certified copy of a resolution of the board of directors or other governing body of any corporate party as conclusive evidence that such resolution has been duly adopted by such body and that the same is in full force and effect.  As to any fact or matter the manner of ascertainment of which is not specifically prescribed herein, the Trustee may for all purposes hereof rely on a certificate, signed by the president or any vice president or by the treasurer or any assistant treasurer or the secretary or any assistant secretary of the relevant party, as to such fact or matter, and such certificate shall constitute full protection to the Trustee for any action taken or omitted to be taken by it in good faith in reliance thereon.

(b)    In the exercise or administration of the Trust hereunder and in the performance of its duties and obligations under any of the Trust Property Related Agreement, the Trustee (i) may act directly or, at the expense of the Trust, through agents or attorneys pursuant to agreements entered into with any of them, and the Trustee shall not be liable for the default or misconduct of such agents or attorneys if such agents or attorneys shall have been selected by the Trustee with reasonable care; and (ii) may, at the expense of the Trust, consult with counsel, accountants and other skilled persons to be selected with reasonable care, and the Trustee shall not be liable for anything done, suffered or omitted in good faith by it in accordance with the advice or opinion of any such counsel, accountants or other skilled persons.

**5.5    Not Acting in Individual Capacity.**  In accepting the trusts hereby created the Trustee acts solely as a Trustee and not in its individual capacity, and all persons having any claim against the Trustee by reason of the transactions contemplated by this Agreement or any Trust Property Related Agreement shall look only to the Trust Property for payment or satisfaction.

**5.6    Indemnification.**  Pursuant to Wyoming Statute Section 17-23-121 the Trust shall indemnify each of its Trustee, and its officers, employees and agents and other persons designated by the Trustee to receive such indemnification, against all liabilities and expenses (including, without limitation, amounts paid in satisfaction of judgments, in compromise of as fines and penalties, and counsel fees; collectively, the "Expenses") reasonably incurred by him in connection with the defense or disposition of any action, suit or other proceeding by the Trust or any other person, whether civil or criminal , in which he may be involved or with which he may be threatened, while in office or thereafter, by reason of his being or having been such a Trustee, officer, employee, agent or otherwise designated person except as to any matter as to which he shall have been adjudicated to have acted with willful misconduct or gross negligence, provided, however, that the provisions of the Section shall not be construed to permit the indemnification of any agent of the Trust with respect to breaches by it of a contract between it and the Trust: and further provided, however, that as to any matter disposed of by a compromise payment by such Trustee, officer, employee, agent, or otherwise designated Person, no indemnification either for said payment or for any other expense shall be provided unless the Trust shall have received a written opinion from independent counsel approved by the Trustee to the effect that if the foregoing matters had been adjudicated, the defenses that could have been

11

Trust 2814

**Mercer-Erwin/Moffett Exhibit 1.d**
**Case No. 4:20-CR-00212**
**Page 111**

presented on behalf of such Trustee, officer, employee, agent or otherwise designated Person were meritorious.  The Trustee may make advance payments in connection with the indemnification under this paragraph provided that the indemnified Trustee, officer, employee, agent or otherwise designated person shall have given a written undertaking to reimburse the Trust in the event that it its subsequently determined that he is not entitled to such indemnification.  Any action taken by, or conduct on the part of the Trustee, and officer, or an employee of the Trust in conformity with, or in good faith reliance upon, the provisions of Section 5.4 hereof shall not, for the purpose of this Declaration of Trust constitute willful misconduct, or gross negligence.  For the avoidance of doubt, the foregoing indemnities shall apply to any Expenses which may result from, arise out of, or are in any manner related to the Regulatory Authority's receipt of the information set forth in Section 4.3 hereof.

## ARTICLE VI

## AUTHORITY AND DUTIES OF THE TRUSTEE

6.1    **General Authority.**  The Trustee is authorized to take all actions required or permitted to be taken by it pursuant to the terms of this Agreement and any Trust Property Related Agreement.

6.2    **Specific Authority.**  Beneficiary hereby confirms that the Trustee is hereby authorized and directed to take the following action, and Trustee covenants and agrees to take the following action:

(a)    Hold legal title to all Trust Property;

(b)    To accept and to return the legal title to any aircraft placed into the Trust as Trust Property by the Grantor or successor Beneficiary only from or to the Grantor or successor Beneficiary of record at the time of such title passage.

(c)    Take all actions which the Trustee deems necessary or advisable to register any Aircraft which comprises a portion of the Trust Property with the United States Federal Aviation Administration and to insure that such Aircraft maintains its registration and complies with related regulations and requirements.

(d)    Collect and dispense funds as described in this Agreement and any Trust Property Related Agreement.

(e)    Upon request by the FAA, and with the cooperation of the Beneficiary, to provide the FAA with the information required under Section 4.3. In connection with providing this information: Trustee shall have no liability in its individual capacity under this Section 6.2(e) except to the extent, and solely to the extent, that any failure to comply with any provision of this Section 6.2(e) is solely attributable to the gross negligence or willful misconduct of Trustee in its capacity as Trustee.  Under no circumstance shall Trustee in its individual capacity be liable to the Beneficiary under this Section 6.2(e), or any other provision of this Agreement, if any failure to comply with the requirements of this Section 6.2(e) or any other provision of this Agreement is caused by or is otherwise attributable to any action or inaction (whether or not performed in a timely manner) of any other Person (including the Beneficiary).  Under no circumstances shall Trustee, in its individual capacity, be liable to any Person (other than the Beneficiary as expressly provided in this Section 6.2(e)) for any breach of, or failure to comply with, the terms of this Section 6.2(e).

12

**Mercer-Erwin/Moffett Exhibit 1.d
Case No. 4:20-CR-00212
Page 112**

(f)      To immediately forward all applicable FAA airworthiness directives received by the FAA to the Beneficiary or the operator of the Aircraft, as applicable under any Trust Property Related Agreement, by the most expeditious means available.

(g)      To notify the FAA Aircraft Registry by the most expeditious means available of the Trustee's resignation or removal under Article X of this Agreement or of the termination of the Trust under Article IX of this Agreement.

(h)      To permit the inspection of the Aircraft and/or records of the Aircraft by any Regulatory Authority.

6.3      **Trustee Duties.**  It shall be the duty of the Trustee to discharge all of its responsibilities pursuant to the terms of this Agreement and to administer the Trust for the interest of the Beneficiary. Trustee shall have the right to grant to the Beneficiary the *independent power to manage, control and maintain the Trust Property in all things except* (i) those matters subject to the exclusive authority of the Trustee referred to in Sections 6.1 and 6.2 and (ii) the limitations set forth in Section 6.4 or as otherwise set forth herein.

6.4      **Limitations on Trustee Authority.**

(a)      Subject to paragraph (b) of this Section 6.4, and notwithstanding any other provision of this Agreement, the Beneficiary will have no rights or powers to direct, influence or control the Trustee in the performance of the Trustee's duties under this Trust Agreement including matters involving the ownership and operation of the Aircraft by the Trustee, Beneficiary, or any third party.  In all matters involving the ownership and operation of the Aircraft by the Trustee, Beneficiary, or any third party; Trustee shall have absolute and complete discretion in connection therewith and shall be free of any kind of influence or control whatsoever by the Beneficiary, and the Trustee shall exercise its duties under this Trust Agreement in connection with matters involving the ownership and operation of the Aircraft by the Trustee, Beneficiary, or any third party, as Trustee, in its discretion, shall deem necessary to protect the interests of the United States, notwithstanding any countervailing interest of any foreign power which, or whose citizens, may have a *direct or indirect interest in the Beneficiary and any such action by the Trustee shall not be considered malfeasance or in breach of any obligation which the Trustee might otherwise have to the Beneficiary;* provided, however, that subject to the foregoing limitations, the Trustee shall exercise its discretion in all matters arising under this Agreement, including the ownership and operation of the Aircraft by the Trustee, Beneficiary, or any third party, with due regard for the interests of the Beneficiary.  *Notwithstanding the foregoing, and for the avoidance of doubt, the parties acknowledge that the Trustee shall not be in operational control of the Aircraft at any time during the term of this Trust.*

(b)      Subject to the requirements of the preceding paragraph (a), the Trustee shall endeavor to seek the prior written consent of the Beneficiary prior to entering into any agreement to: (i) sell, mortgage, pledge or otherwise dispose of the Aircraft or other assets held in the Trust relating thereto, or (ii) amend any Trust Property Related Agreement, any Lease, or other document (other than a document over which Trustee has absolute and complete discretion established under Section 6.4(a) or give any consents thereunder except as otherwise expressly provided for herein. With respect to intent of this paragraph, it is not to be interpreted that the Trustee must have the written consent of beneficiary to act with respect to the sale, disposal, or encumbrance actions contained herein; however, Trustee reserves the right to require

Trust 2814

DECLARATION OF TRUST & EXHIBITS

**Mercer-Erwin/Moffett Exhibit 1.d**
**Case No. 4:20-CR-00212**
**Page 113**

the Beneficiary to give written consent to act in such matters if Trustee determines that such written consent is in the best interest of the Grantor and/or Beneficiary and/or Trustee.

(c)        The purpose of this Section 6.4 is to assure that (i) the Aircraft shall be controlled with respect to such matters as are described in Section 6.4(a) of this Agreement by a citizen of the United States (as defined in Sections 5.1 and 10.1(c) hereof), (ii) the Beneficiary shall have no power to influence or control the exercise of the Trustee's authority with respect to such matters, and (iii) Trustee shall be able to give the affidavit required by Section 47.7(c)(2)(iii) of the Federal Aviation Regulations. Therefore, Section 6.4 shall be construed in furtherance of the foregoing purpose.

(d)        In creating and accepting the Trust, Beneficiary and Trustee each acknowledges that in case of conflict, the limitations in Sections 6.4 and 11.10 of this Agreement are paramount and superior to any other terms and conditions in this Agreement; or in any other document or documents including without limitation, under any Trust Property Related Agreement, or any Lease to which Beneficiary and Trustee are a party in respect of the Trust. It is understood and agreed by the parties hereto that nothing in this Agreement shall relieve any of the Beneficiary, Trustee or any other Person of any obligation to comply with any law, rule or regulation of any governmental authority with respect to the ownership and operation of the Aircraft.

6.5        **Accounting and Reports to the Beneficiary and Others.**  The Trustee shall (i) maintain or cause to be maintained the financial books of the Trust relating to the receipt and disbursement of all funds received or disbursed by the Trustee, and (ii) deliver to each Beneficiary within 90 days of the end of each Fiscal Year, or more often, as may be required by applicable law, a copy of the annual financial statement of the Trust for such Fiscal Year and a statement in such form and containing such information and requirements as the beneficiary has appraised the Trustee in writing are necessary and appropriate to enable each Beneficiary to prepare its tax returns.

6.6        **Signature of Returns.**  The Trustee shall sign on behalf of the Trust any tax returns, annual return, and other Periodic Filings of the Trust, unless applicable law requires a Grantor or Beneficiary to sign such documents, in which case, the designated person shall sign such document.

6.7        **Notice to Beneficiary.**  In the event that the Trustee is unable to decide between alternative courses of action, or is unsure as to the application of any provision of this Agreement or any Trust Property Related Agreement, or such provision is ambiguous as to its application, or is, or appears to be, in conflict with any other applicable provision, or in the event that this Agreement or any Trust Property Related Agreement permits any determination by the Trustee or is silent or is incomplete as to the course of action which the Trustee is required to take with respect to a particular set of facts, the Trustee may give notice (in such form as shall be appropriate under the circumstances) to the Beneficiary requesting instructions and, to the extent that the Trustee shall have acted or refrained from acting in good faith in accordance with any instructions received from the holder of all of the beneficial Ownership Interest, the Trustee shall not be liable on account of such action or inaction to any person. If the Trustee shall not have received appropriate instructions within ten days of such notice (or within such shorter period of time as may be specified in such notice) the Trustee may, but shall be under no duty to, take or refrain from taking such action, not inconsistent with this Agreement or the Trust Property Related Agreement, as the Trustee shall deem to be in the best interests of the Beneficiary, and the Trustee shall have no liability to any person for such action or inaction.

14

Trust 2814

**Mercer-Erwin/Moffett Exhibit 1.d
Case No. 4:20-CR-00212
Page 114**

6.8    **No Duties Except as Specified in This Agreement or in Instructions.**  The Trustee shall not have any duty or obligation to manage, make any payment in respect of, record or otherwise deal with the Trust Property, or to otherwise take or refrain from taking any action under, or in connection with, any document contemplated hereby to which the Trustee is a party, except as expressly provided by the terms of this Agreement, or any Trust Property Related Agreement, and no implied duties or obligations shall be read into this Agreement against the Trustee.  Trustee agrees that it will deal with the Aircraft or any other part of the Trust Property in accordance with the terms of this Agreement and any Trust Property Related Agreement.  The Trustee nevertheless agrees that it will, at its own cost and expense, promptly take all action as may be necessary to discharge any liens on any part of the Trust Property which result from claims against the Trustee personally that are not related to the ownership or the administration of the Trust Property or the transactions contemplated by the Trust Property Related Agreement.

6.9    **No Action Except Under Specified Documents or Instructions.**  The Trustee shall not manage, control, use, sell, dispose of or otherwise deal with any part of the Trust Property except (i) in accordance with the powers granted to and the authority conferred upon the Trustee pursuant to this Agreement, (ii) in accordance with instructions delivered to the Trustee pursuant to Section 6.7 hereof, and (iii) as required by law.

## ARTICLE VII

### COMPENSATION OF TRUSTEE

7.1    **Trustee's Fees and Expenses.**  The Trustee shall receive compensation for its services as set forth on the fee schedule attached as Exhibit 1 or as separately agreed between the Trustee and Beneficiary(s). The Trustee shall be entitled to be reimbursed for its reasonable expenses and disbursements, including, without limitation, the reasonable compensation, expenses and disbursements of such agents, representatives, experts and counsel as the Trustee may employ in connection with the exercise and performance of its rights and duties under this Agreement and Trust Property Related Agreement.

7.2    **Lien on Trust Property.**  The Trustee shall have and is hereby granted a lien on the Trust Property, and the represented Ownership Interest, for any compensation or expenses and indemnity due, and this lien shall be prior to all other liens; provided any such lien shall automatically terminate upon distribution or removal of the Aircraft from the Trust Property.

7.3    **Payments to the Trustee.**  Any amounts paid to the Trustee from the Trust Property shall be deemed not to be part of the Trust Property immediately after such payment.

## ARTICLE VIII

### INVESTMENT AND APPLICATION OF TRUST FUNDS

8.1    **Investment of Trust Funds.**  Income with respect to and proceeds of the Trust Property which are received by the Trustee more than one day prior to a Distribution Date shall be invested and reinvested by the Trustee. All such investments shall have a maturity date no later than the Business Day preceding the next Distribution Date unless they are redeemable at the option of the Trustee prior to maturity. Interest earned from such investment and reinvestment shall be credited to the Trust Property.

15

Trust 2814

**Mercer-Erwin/Moffett Exhibit 1.d
Case No. 4:20-CR-00212
Page 115**

**8.2    Allocations and Distributions.**

(a)    Income with respect to and proceeds of Trust Property held by the Trustee on a Distribution Date shall be distributed by the Trustee on such Distribution Date in the following order:

      (i)    first, pay any amounts due to the Trustee under this Agreement;

      (ii)    second, to pay any amounts then due to any person under any Trust Property Related Agreement; and

      (iii)    third, to pay any other expenses associated with the Trust Property.

(b)    Income and proceeds with respect to the Trust Property held by the Trustee on a Distribution Date after the application of funds pursuant to Section 8.2(a) shall be distributed on such Distribution Date to the Beneficiaries holding beneficial Ownership Interest in the Trust Property, in proportion to their respective Ownership Percentages, determined as of the close of business on the Business Day immediately preceding such Distribution Date, and adjusted to take into consideration the duration that the Beneficiary has held the Ownership Percentage.  All payments to be made under this Agreement by the Trustee shall be made only from the income and proceeds of the Trust Property and only to the extent that the Trustee has received such income and proceeds.

(c)    With each distribution to a Beneficiary pursuant to Section 8.2(b) above, the Trustee shall deliver a Distribution Date Statement setting forth, for the period since the preceding Distribution Date:

      (i)    income and proceeds received by the Trustee with respect to the Trust Property;

      (ii)    amounts paid to the Trustee;

      (iii)    amounts paid to any person pursuant to a Trust Property Related Agreement; and

      (iv)    amounts paid for other expenses associated with the Trust Property.

(d)    Each net item of income, gain, loss, deduction, credit or allowance for any fiscal year, or applicable portion thereof, shall be allocated to the Beneficiary in the ratio of its Ownership Percentage in the Trust.  In the event that any tax is imposed on the Trust, such tax shall be charged against amounts otherwise distributable to the Beneficiaries on a pro rata basis according to the Ownership Percentage.  The Trustee is hereby authorized to retain from amounts otherwise distributable to the Beneficiaries sufficient funds to pay or provide for the payment of, and to actually pay, such tax as is legally owed by the Trust (but such authorization shall not prevent the Trustee from contesting any such tax in appropriate proceedings, and withholding payment of such tax, if permitted by law, pending the outcome of such proceedings).

**8.3    Method of Payment.**  All amounts payable to a Beneficiary pursuant to this Agreement shall be paid by the Trustee to such Beneficiary or a nominee therefor by check payable to such Beneficiary, mailed first class to the address of such Beneficiary appearing on the register maintained pursuant to Section 3.2, or by crediting the amount to be distributed to such Beneficiary to an account maintained by such Beneficiary

16

**Mercer-Erwin/Moffett Exhibit 1.d
Case No. 4:20-CR-00212
Page 116**

with the Trustee or by transferring such amount by wire transfer in immediately available funds to a banking institution with bank wire transfer facilities for the account of such Beneficiary, as instructed in writing from time to time by such Beneficiary.  The Trustee may require a Beneficiary to pay any wire transfer fees incurred in connection with any wire transfer made to such Beneficiary.

## ARTICLE IX

## TERMINATION OF TRUST

**9.1    Termination of Trust.**  The Trust created hereby shall terminate and the Trust Property shall be distributed to the Beneficiary in accordance with their respective Ownership Percentages, and this Agreement shall be of no further force or effect, upon the earliest of (i) the final distribution by the Trustee of all moneys or other property or proceeds of the Trust Property in accordance with the terms of this Agreement and the Trust Property Related Agreement, (ii) a decision by the Trustee that termination of the Trust will be in the best interests of the Beneficiary, or (iii) the removal or resignation of the Trustee without the appointment of a successor Trustee.  Otherwise the Trust shall have perpetual existence pursuant to Wyoming Statute Section 17-23-112.

**9.2    No Termination by Grantor or Beneficiary.**  Except as provided in Sections 9.1 and 9.4, neither the Grantor nor the Beneficiary shall be entitled to terminate or revoke the Trust established hereunder.

**9.3    Exercise of Trust Powers After Termination.**  After termination of the Trust as provided in Section 9.1, Trustee shall have no authority or power to act on behalf of the Trust.

**9.4    Termination pursuant to FAA Trust Policy.**  The Beneficiary agrees that it is required to abide by the FAA Trust Policy; and failure to do so, or to provide the information set forth in Section 4.3 hereof, shall constitute a breach by Beneficiary of this Agreement.  Under such circumstance, Trustee, in its sole discretion, may pursuant to Article X resign or terminate this Trust in accordance with the terms of this Agreement and the Trust Property Related Agreement and distribute the Trust Property (less any fees or other costs owed to the Trustee) in accordance with the respective Ownership Percentages. Prior to any resignation or termination, Trustee shall provide a thirty (30) day written notice to Beneficiary and all entities that are parties to any Trust Property Related Agreements.  Upon such termination, this Agreement shall be of no further force or effect.

**9.5    Transfer of Title.**  Upon any termination of the Trust pursuant to the provisions of Article IX hereof, Trustee shall convey title of the Trust Property to Beneficiary, unless otherwise agreed to in the sole discretion of the Trustee.  UNLESS OTHERWISE AGREED TO IN THE SOLE DISCRETION OF THE TRUSTEE, SUCH TITLE SHALL BE CONVEYED IN AN "AS IS, WHERE IS" CONDITION WITH ALL FAULTS, WITHOUT ANY REPRESENTATION OR WARRANTY OF ANY KIND OR NATURE MADE BY TRUSTEE, INCLUDING WITHOUT LIMITATION, ANY WARRANTY OF TITLE, ANY EXPRESS OR IMPLIED (STATUTORY OR OTHERWISE) WARRANTY OF MERCHANTABILITY, CONDITION, QUALITY, AIRWORTHINESS, DURABILITY, DESIGN, VALUE, OPERATION, FITNESS FOR USE, OR SUITABILITY OF THE TRUST PROPERTY, INCLUDING ANY COMPONENT THEREOF, OR ANY OTHER ASSET IN ANY RESPECT WHATSOEVER OR IN CONNECTION WITH THE TRUST PROPERTY OR FITNESS FOR ANY PARTICULAR PURPOSE.

## ARTICLE X

17

Trust 2814

DECLARATION OF TRUST & EXHIBITS

**Mercer-Erwin/Moffett Exhibit 1.d
Case No. 4:20-CR-00212
Page 117**

## SUCCESSOR TRUSTEES AND ADDITIONAL TRUSTEES

10.1     Resignation or Removal of Trustee; Appointment of Successor.

(a)     The Trustee may resign and appoint a successor Trustee at any time by giving the Beneficiary at least 30 days prior written notice before the effective date of Trustee's resignation given in the notice, such resignation to be effective upon the acceptance of appointment by a successor Trustee under Section 10.1(b) below or on the effective date of resignation stated in the Trustee's thirty day written notice to the Beneficiary if a successor Trustee has not been appointed by the Beneficiary or a court of competent jurisdiction. In addition, the Beneficiary holding one hundred percent of the Ownership Percentage, at any time, may remove the Trustee for cause only by an instrument in writing delivered to the Trustee - subject to the regulatory limitation that non-U.S. citizens not hold more than 25 percent of the aggregate power to remove Trustee - such removal to be effective upon the acceptance of appointment by a successor Trustee under Section 10.1(b) and 10.1(c), below. Such writing must be signed by an authorized person or persons. Said cause shall be determined by Wyoming District Court, 9th Judicial District or if applicable a United States District Court, District of Wyoming or other court with jurisdiction over the Trustee and may include willful misconduct or gross negligence, but cause will not include the refusal of Trustee to act or refrain from acting in a manner that (i) would violate the laws, regulations, court orders, or lawful directions of a government agency; (ii) is outside the scope of Trustee's authority, (iii) is contrary to Trustee's obligations hereunder; or (iv) is the subject of a mere disagreement between Trustee and Beneficiary. In case of the resignation or removal of the Trustee, the Beneficiary may appoint a successor Trustee by an instrument signed by the holder(s) of one hundred percent of the Ownership Percentage. If a successor Trustee shall not have been appointed within 30 days after the giving of written notice of such resignation or the delivery of the written instrument with respect to such removal, the Trustee or the Beneficiary may apply to any court of competent jurisdiction to appoint a successor Trustee to act until such time, if any, as a successor Trustee shall have been appointed as provided above. Any successor Trustee so appointed by such court shall immediately and without further act be superseded by any successor Trustee appointed as above provided within one year from the date of the appointment by such court.

(b)     Any successor Trustee, however appointed, shall execute and deliver to the predecessor Trustee an instrument accepting such appointment, and thereupon such successor Trustee, without further act, shall become vested with all the estates, properties, rights, powers, duties and trust of the predecessor Trustee in the Trust with like effect as if originally named the Trustee; but nevertheless, upon the written request of such successor Trustee, such predecessor Trustee shall execute and deliver an instrument transferring to such successor Trustee all the estates, properties, rights, powers, duties and trusts of such predecessor Trustee, and such predecessor Trustee shall duly assign, transfer, deliver and pay over to such successor Trustee all moneys or other property then held or subsequently received by such predecessor Trustee upon the Trust.

(c)     If the successor Trustee is not a United States citizen, then the successor Trustee shall take appropriate action to change the registration of title to Aircraft included as Trust Property to the country in which the successor Trustee qualifies for registration. For purposes of this Agreement, United States citizen means (i) an individual who is a citizen of the United States, (ii) a partnership of which each member is such an individual, or (iii) a corporation or association created or organized under the laws of the United States or of any state, territory, or possession of the United States, of which the president and two-thirds or more of the board of directors and other managing officers thereof are such individuals and in which at least seventy-

18

**Mercer-Erwin/Moffett Exhibit 1.d
Case No. 4:20-CR-00212
Page 118**

five percent (75%) of the voting interest is owned or controlled by persons who are citizens of the United States or of one of its possessions.

(d)     Any corporation or limited liability company into which the Trustee may be merged or converted or with which it may be consolidated, or any corporation resulting from any merger, conversion or consolidation to which the Trustee shall be a party, or any corporation to which substantially all of the corporate trust business of the Trustee may be transferred, shall, subject to the terms of Section 10.1(c), be the Trustee under this Agreement without further act.

10.2     **Appointment of Additional Trustees.**  At any time or times for the purpose of meeting any legal requirements of any jurisdiction in which any part of the Trust Property may at the time be located, the Trustee, by an instrument in writing, may appoint one or more individuals or corporations to act as separate trustee of all or any part of the Trust Property to the full extent that local law makes it necessary or appropriate for such separate trustee or separate trustees to act alone.

## ARTICLE XI

### MISCELLANEOUS

11.1     **Supplements and Amendments.**  This Agreement may be amended only by a written instrument signed by the Trustee and all of the Beneficiaries at the time of such amendment; provided, however, that if, in the opinion of the Trustee, any instrument required to be so executed adversely affects any right, duty or liability of, or immunity or indemnity in favor of, the Trustee under this Agreement or any of the documents contemplated hereby to which the Trustee is a party, or would cause or result in any conflict with or breach of any terms, conditions or provisions of, or default under, the charter documents or by-laws of the Trustee or any document contemplated hereby to which the Trustee is a party, the Trustee may in its sole discretion decline to execute such instrument.

11.2     **Legal Title to Trust Property in Trustee.**  The Trustee shall have legal title to the Trust Property and Beneficiary shall only have an undivided beneficial and equitable Ownership Interest therein.  No transfer, by operation of law or otherwise, of any right, title or interest of the Beneficiary in and to its undivided beneficial interest in the Trust Property shall operate to terminate this Agreement or the trust or entitle any successor transferee to an accounting or to the transfer to it of legal title to any part of the Trust Property.

11.3     **Contracts Made by Trustee.**  Upon receipt of written consent of the Beneficiaries, the Trustee has authority to execute any Trust Property Related Agreement and any documents provided for therein, and such action shall bind the Beneficiary and shall be effective to obligate the Trustee and the Beneficiary to the extent set forth in such Trust Property Related Agreement.  No third party shall be required to inquire as to the authorization, necessity, expediency or regularity of such action or as to the application of any proceeds by the Trustee.

11.4     **Limitations on Rights of Others.**  Nothing in this Agreement, whether express or implied, shall be construed to give to any person other than the Trustee and the Beneficiary any legal or equitable right, remedy or claim in the Trust Property or under or in respect of this Agreement or any covenants, conditions or provisions contained herein.

19

Trust 2814

DECLARATION OF TRUST & EXHIBITS

**Mercer-Erwin/Moffett Exhibit 1.d
Case No. 4:20-CR-00212
Page 119**

**11.5    Notices.**  *Unless otherwise expressly specified or permitted by the terms hereof, all notices* shall be in writing and delivered by hand or mailed by certified mail, postage prepaid, if to the Trustee, addressed to:  Aircraft Guaranty Corporation, POB 2549 (2058 FM 356 North), Onalaska, Texas 77360, *or to* such other address as the Trustee may have set forth in a written notice to the Beneficiary; and if to a Beneficiary, addressed to it at the address set forth for the Beneficiary in the register maintained by the Trustee.

**11.6    Severability.**  Any provision of this Agreement which is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof, and any such prohibition or unenforceability in any jurisdiction shall not invalidate or render unenforceable such provision in any other jurisdiction.

**11.7    Separate Counterparts.**  This Agreement may be executed by the parties hereto in separate counterparts, each of which when so executed and delivered shall be an original, but all such counterparts shall together constitute but one and the same instrument.

**11.8    Successors and Assigns.**  All covenants and agreements contained herein shall be binding upon, and *inure to the benefit of, the Trustee and its successors and assigns,* and each Beneficiary and its successors and permitted assigns, all as herein provided.  Any request, notice, direction, consent, waiver or other instrument or action by a Beneficiary shall bind the *successors and assigns of such Beneficiary.*

**11.9    Headings.**  The headings of the various articles and sections are for convenience *of reference* only and shall not define or limit any of the terms or provisions.

**11.10   Not Influenced by Beneficiaries or any other persons who are not U.S. Citizens or Resident Aliens.**  Notwithstanding anything to the contrary in this Agreement, the Trustee and the Beneficiary hereby agree as follows:

If persons who are neither U.S. Citizens or resident aliens have the power to direct or remove the Trustee, either directly or indirectly through the control of another person, those persons shall not have more than twenty-five percent (25%) of the aggregate power to direct or remove the Trustee.

**11.11   Governing Law.**  This Declaration of Trust is adopted by the Grantor and Trustee and delivered in the State of Wyoming and with reference to the laws thereof, and the rights of all parties and the validity, construction and effect of every provision hereof shall be subject to and construed according to the laws of the said State of Wyoming.

**11.12   Grantor Compliance with US Law.**  Grantor affirms that it is in full compliance with all laws and *regulations applicable to it* including, without limitation, (a) ensuring that no person who owns a controlling interest in or otherwise controls Grantor is or shall be (1) listed on the Specially Designated Nationals and Blocked Person List maintained by the *Office of Foreign Assets Control* **("OFAC")**, Department of the Treasury, and/or any other similar lists maintained by OFAC pursuant to any authorizing statute, Executive Order or regulation or (2) a person designated under Section 1(b), (c), or (d) of Executive Order No. 13224 (September 23, 2001), any related enabling legislation or any other similar Executive Orders.

**11.13   Beneficiary Compliance with US Law.**  Each Beneficiary acknowledges that the Aircraft may be subject to restrictions involving the export and re-export of the same pursuant to the laws and regulations

20

Trust 2814

**Mercer-Erwin/Moffett Exhibit 1.d
Case No. 4:20-CR-00212
Page 120**

of the United States, that the laws and regulations of the United States restrict the transfer of any interest in the Aircraft to certain persons (collectively, the "Export Restrictions") and that such Export Restrictions may apply to the Aircraft even after the Aircraft has been physically removed or transferred from the United States. Beneficiary acknowledges that Trustee, as an entity formed in the United States, may be subject to the laws and regulations of the United States, including, without limitation, those promulgated by OFAC and the Financial Crimes Enforcement Network (collectively, the "U.S. Laws"). Beneficiary agrees that it will comply with, and will not knowingly permit the Aircraft to be used in a manner that is contrary to Export Restrictions and U.S. Laws applicable to (i) the Beneficiary, (ii) the Trustee, or (iii) the Aircraft, including the acquisition, possession, operation, use, maintenance, leasing, subleasing, or other transfer or disposition thereof. Beneficiary agrees that it will not permit the assignment of this Agreement, any transfer of the beneficial interest created by this Agreement, or a lease or sublease of the Aircraft (collectively, a "Transfer") without Trustee's prior written approval of such Transfer. Trustee shall not unreasonably delay its decision on a request for approval from Beneficiary nor shall it unreasonably withhold its approval to such request. To facilitate Trustee's evaluation of the Transfer, Beneficiary agrees that it will use reasonable efforts to provide Trustee with any information reasonably requested by the Trustee regarding the Transfer, the proposed transferee and/or the ownership of the proposed transferee. Trustee's decision to approve or disapprove the proposed Transfer shall not be deemed to have been unreasonably delayed if Trustee has not obtained the information it needs to make the decision, and Trustee's approval of the proposed Transfer shall not be deemed to have been unreasonably withheld if Trustee has determined that the Transfer will or may reasonably be expected to put Trustee at risk of violating any laws or regulations applicable to Trustee including, without limitation, the Export Restrictions and/or U.S. Laws. If Trustee withholds approval of a Transfer as set forth herein, then (i) subject to the terms of this Agreement, Trustee may resign and (ii) Trustee shall have no obligation to consent to or facilitate a Transfer while Trustee's resignation is pending.

**11.14  Merger of Trusts**. After notice to the Beneficiaries, a Trustee may combine two (2) or more trusts into a single trust or divide a trust into two (2) or more separate trusts, if the result does not impair the rights of any beneficiary or adversely affect achievement of the purposes of the trust.

**[SIGNATURE PAGE TO FOLLOW]**

\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\ REMAINDER OF THIS PAGE LEFT BLANK ////////////////////////////

21

Trust 2814

**Mercer-Erwin/Moffett Exhibit 1.d**
**Case No. 4:20-CR-00212**
**Page 121**

IN WITNESS WHEREOF, the parties have caused this Trust Agreement for Continent Aircraft Statutory Trust No. 2814 to be duly executed by their respective officers, as of the day and year first above written.

For:  Aircraft Guaranty Corporation, Trustee

By: _____
Debbie Mercer-Erwin, President

For:  ITRC, LLC, Grantor

By: _____
Mr. Rodolfo Javier Camarillo Montemayor, Manager

22

Trust 2814

Mercer-Erwin/Moffett Exhibit 1.d
Case No. 4:20-CR-00212
Page 122

EXHIBIT 1 TO
TRUST AGREEMENT

SCHEDULE OF TRUSTEE FEES

Fees and charges to be paid by the Trust to Aircraft Guaranty Holdings, on behalf of Aircraft Guaranty Corporation as Trustee of the Trust known as the Continent Aircraft Statutory Trust No. 2814 created by the execution of the Trust Agreement dated _____, shall be in the annual amount of $_____ U.S. Dollars, or as agreed between the Trustee and the Beneficiary, are subject to annual adjustment at the discretion of the Trustee upon provision of 90 days notice to the Beneficiary.

The aforesaid annual fees will be prorated from the date legal title to the aircraft is acquired by the Trust to December 31, and will be billed on or after the date legal title to the aircraft is acquired. Annual fees are billed during the 4th quarter of each year for service to be rendered in the coming calendar year, and are payable in advance by February 15th for services to be rendered in the coming calendar year during the term of the Trust.

Accounts that are outstanding as of May 15th will be declared in default, non-regulatory administrative services will be suspended, a late payment collection fee will be applied to the outstanding balance, and a lien may be filed at Trustee's discretion with the FAA or a local court against the aircraft title.

Accounts that are outstanding as of July 15th will be subject to commencement of resignation proceedings by the Trustee.

Accepted and acknowledged this ____ day of _____, 20_____.

ITRC, LLC, Grantor

By: _____
Name:
Title:

23

Trust 2814

DECLARATION OF TRUST & EXHIBITS



**AIRCRAFT GUARANTY**
OWNER TRUSTEE

From:  ITRC, LLC
To:     Aircraft Guaranty Corporation, Trustee

## WAIVER OF SUBROGATION &
## LIABILITY INSURANCE

Effective as of October 20, 2017, ITRC, LLC as Beneficiary/Lessee agrees to indemnify and hold Aircraft Guaranty Corporation, (AGC), in its capacity as Trustee for Continent Aircraft Statutory Trust No. 2814 (the "Trust"), & its officers, directors, employees & agents harmless for and against any and all claims, losses, liability, damage and expense claims arising out of or in any way connected with the use of any Owner/Beneficiary/Lessee furnished aircraft, including but not limited to loss of (including loss of use) or damage to the aircraft itself, other than any such claims arising out of the gross negligence or willful misconduct of AGC.

ITRC, LLC as Beneficiary/Lessee also agrees to provision Liability Insurance in a minimum amount of $1,000,000 USD and to have its Liability Insurance Carrier to include AGC, its officers, directors, employees and agents as "Additional Insured or an Insured Party" with respect to legal liability for any aircraft requested by the beneficiary to be placed under the legal ownership of AGC as Trustee.

It is also agreed that the insurance mentioned above will be primary and non-contributory to any other insurance available to AGC, as an Insured or otherwise.

ITRC, LLC as Beneficiary/Lessee confirms that it will instruct its insurer to issue a Certificate of Insurance evidencing the above and provide evidence of same to the Trustee before AGC accepts legal title to any aircraft requested by the beneficiary to be placed under the legal ownership of AGC as Trustee. And also confirms that it will provide the Trustee each calendar year written proof that said insurance covering the aircraft and the Trustee is in place and is valid.

It is Also agreed that any default or failure to perform any act as specified in this agreement is grounds for the Trustee's resignation, per the terms of the Trust Agreement and shall be governed, construed and enforced in accordance with the laws of the State of Texas, U.S.A., without regard to the principles of conflict of laws, except where U.S. Federal law preempts Texas law regarding aircraft.  The Parties agree that venue for any dispute or litigation arising from this agreement shall be in Houston, Harris County, Texas, including all matters of construction, validity and performance.

ACCEPTED AND ACKNOWLEDGED as of the date first written above:

For:     ITRC, LLC

By:     _____

Mr. Rodolfo Javier Camarillo Montemayor, Manager

WAIVER OF SUBROGATION & LIABILITY INSURANCE

Trust 2814-ITRC, LLC
Page 1 of 1

Mercer-Erwin/Moffett Exhibit 1.d
Case No. 4:20-CR-00212
Page 125

## REGISTRATION NOT TRANSFERABLE

| UNITED STATES OF AMERICA<br>DEPARTMENT OF TRANSPORTATION – FEDERAL AVIATION ADMINISTRATION<br>CERTIFICATE OF AIRCRAFT REGISTRATION | This certificate must be in the air-craft when operated. |
|---|---|

| NATIONALITY AND REGISTRATION MARKS **N** 260RC | AIRCRAFT SERIAL NO.<br>080 |
|---|---|

MANUFACTURER AND MANUFACTURER'S DESIGNATION OF AIRCRAFT
LEARJET INC                31A

ICAO Aircraft Address Code:   50500167

I
S
S
U
E
D
T
O

AIRCRAFT GUARANTY CORP TRUSTEE
928 SW 107TH ST
OKLAHOMA CITY OK 73170-5244

Corporation

This certificate is issued for registration purposes only and is not a certificate of title. The Federal Aviation Administration does not determine rights of ownership as between private persons.

It is certified that the above described aircraft has been entered on the register of the Federal Aviation Administration, United States of America, in accordance with the Convention on International Civil Aviation dated December 7, 1944, and with Title 49, United States Code, and regulations issued thereunder.

| DATE OF ISSUE      November 7, 2017<br>EXPIRATION DATE   November 30, 2020 | *Steve Dio* | ADMINISTRATOR |
|---|---|---|

AC Form 8050-3 (10/2010) Supersedes previous editions

U.S. Department of Transportation
**Federal Aviation Administration**

[CUT ON DOTTED LINE]

---

U.S. Department
of Transportation
**Federal Aviation
Administration**

Civil Aviation Registry
P.O. Box 25504
Oklahoma City, OK  73125-0504

**Official Business**
Penalty for Private Use $300

AC Form 8050-3 (10/2010) Supersedes previous edition          260RC

**TO:** AIRCRAFT GUARANTY CORP TRUSTEE
928 SW 107TH ST
OKLAHOMA CITY OK 73170-5244

Mercer-Erwin/Moffett Exhibit 1.d
Case No. 4:20-CR-00212
Page 126

EFFECT OF REGISTRATION

Title 49 U. S. C. 44103(c)(2) provides: "A certificate of registration issued under this section is not evidence of ownership of aircraft in a proceeding in which ownership is or may be in issue." THIS CERTIFICATE MUST BE SIGNED AND RETURNED BY THE REGISTERED OWNER WITHIN 21 DAYS WHEN IT IS NO LONGER IN EFFECT FOR ANY REASON UNDER 14 CFR § 47.41(a)(1) through (7). Registration is canceled at the request of the owner for one of the following reasons (Must check and/or complete Block a,b,c,d or e.)

a. ☐ The aircraft is totally destroyed or scrapped.

b. ☐ United States citizenship has been lost, or the owner's status as a resident alien has changed (unless changed to that of a citizen).

c. ☐ Thirty days have elapsed since the death of the registered owner (estate representative should sign).

d. ☐ The aircraft is to be registered under the laws of a foreign country:

_____
(NAME OF FOREIGN COUNTRY)

_____
(SIGNATURE)                    (TITLE)                    (DATE)

e. ☐ The ownership of the aircraft is transferred to:

_____
(NAME)

_____
(ADDRESS)

_____
(CITY, STATE, ZIP)

This certificate must be returned to:
AIRCRAFT REGISTRATION BRANCH, P.O. BOX 25504, OKLAHOMA CITY, OKLAHOMA 73125-0504

RETAIN THIS INFORMATION
FOR FUTURE REFERENCE

CHANGE OF ADDRESS

Federal Aviation Regulations require that the registered owner of the aircraft shall report in writing within 30 days any change in permanent mailing address.  A revised Certificate of Registration will be issued without charge.  The Application for Registration AC Form 8050-1 may be used to report a change of address.

REPLACEMENT OF CERTIFICATE

If this certificate is lost, destroyed, or mutilated, a replacement may be obtained at the written request of the holder.  Send your request and $2.00 replacement fee (check or money order made payable to the Federal Aviation Administration) to:

Aircraft Registration Branch
P.O. Box 25504
Oklahoma City, Oklahoma 73125-0504

NOTE:  All correspondence should include the registration N-Number, manufacturer, model, and serial number of the aircraft.

To offer your feedback regarding the aircraft registration process, please visit our website at http://registry.faa.gov/arcert/

 01-907 (Rev.12-01/3)

# TEXAS AIRCRAFT EXEMPTION CERTIFICATE
# OUT-OF-STATE REGISTRATION AND USE

*Under Ch. 559, Government Code, you are entitled to review, request, and correct information we have on file about you, with limited exceptions in accordance with Ch. 552, Government Code. To request information for review or to request error correction, contact us at the address or toll-free number listed on this form.*

Name of purchaser

**Aircraft Guaranty Corporation, Trustee    (Trust 2814)**

Address (Street & number and P.O. Box number)

**POB 2547**

Phone (Area code & number)

**281 445 7594**

City, State, ZIP code

**Onalaska, Texas 77360**

Name of seller

**ITRC, LLC**

Seller's Texas sales tax permit number

Address (Street & number and P.O. Box number)

**Ave. Gomez Morin No. 900 L65 PH404    Col. Carrizalejo**

Phone (Area code & number)

**52-81-2475-0000**

City, State, ZIP cod

**66230 San Pedro Garza Garcia, Nuevo Leon,  Mexico**

The undersigned hereby certifies that the aircraft described below was purchased on _____

_Date of sale_

for a total sales price of $_____of which $_____was allowed as a trade-in,

resulting in a net sales price of $_____.

| Aircraft make | Model | Serial number | FAA registration number (Tail number) |
|---|---|---|---|
| **LEARJET INC** | **31A** | **080** | **N986MA** |

The aircraft will be registered in_____**Onalaska**_____,**Texas** as recorded with Federal Aviation Administration.

_City_     _State_

The aircraft will be **hangared** in_____,_____and is not purchased for use in Texas.

_City_     _State_

My correct mailing and location address are _____

_Mailing address_

_____

_Location address_

I claim an exemption from the Texas sales tax pursuant to Texas Tax Code Section 151.328(a)(4) because the aircraft is purchased for registration and use outside Texas.

I understand that by signing this form, I am authorizing the Texas Comptroller of Public Accounts to furnish copies to officials of my home state. I understand that the purpose of providing this information to officials of my home state is to facilitate the enforcement of any taxes imposed on the purchase or use of the aircraft in my home state.

*I understand that it is a misdemeanor punishable by a fine not to exceed $500 to provide this certificate of exemption if I know the aircraft will be used in a manner other than for registration and use outside Texas.*

**sign here▶** | Purchaser's signature | Date

**sign here▶** | Seller's signature | Date

*(Original to be retained by seller, seller to send copy to the Texas Comptroller of Public Accounts, Business Activity Research Team, P.O. Box 13003, Austin,  Texas, 78711-3003, and copy to the Purchaser.)*

**Mercer-Erwin/Moffett Exhibit 1.d**
**Case No. 4:20-CR-00212**
**Page 127**